LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
TARA C. RENGIFO (Bar No. 307670)
trengifo@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622
Fax: (805) 962-3152

*Attorneys for Environmental Defense Center,
Get Oil Out!, Santa Barbara County Action
Network, Sierra Club, and Santa Barbara
Channelkeeper*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| SABLE OFFSHORE CORP.; PACIFIC PIPELINE COMPANY; PACIFIC OFFSHORE PIPELINE COMPANY; EXXON MOBIL CORPORATION, MOBIL PACIFIC PIPELINE COMPANY, AND EXXONMOBIL PIPELINE COMPANY,<br><br>                    Petitioners/Plaintiffs,<br><br>          v.<br><br>COUNTY OF SANTA BARBARA; SANTA BARBARA COUNTY BOARD OF SUPERVISORS and DOES 1-20,<br><br>                    Respondents/Defendants, | Case No.: 2:25-cv-04165-DMG-(AGRx)<br><br>**PROPOSED INTERVENORS' NOTICE OF MOTION, MOTION TO INTERVENE, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hon. Dolly M. Gee<br><br>Hearing: July 11, 2025<br>Time: 9:30 a.m.<br>Place: Courtroom 8C |

and

ENVIRONMENTAL DEFENSE
CENTER, GET OIL OUT!, SANTA
BARBARA COUNTY ACTION
NETWORK, SIERRA CLUB, and
SANTA BARBARA
CHANNELKEEPER,

      Proposed Defendants/ Intervenors.

## NOTICE OF MOTION AND MOTION TO INTERVENE

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 11, 2025, at 9:30 a.m., or as soon thereafter as the matter may be heard, before Honorable Dolly M. Gee in the above-titled Court, Courtroom 8C of the First Street Federal Courthouse, 350 West 1st Street, Los Angeles, CA 90012, the Environmental Defense Center ("EDC"), Get Oil Out! ("GOO!"), Santa Barbara County Action Network ("SBCAN"), Sierra Club, and Santa Barbara Channelkeeper ("SBCK") (collectively, "Proposed Intervenors") will and hereby do move for leave to intervene as respondents and defendants in this case as a matter of right pursuant to Federal Rule of Civil Procedure 24(a). Alternatively, Proposed Intervenors move for permission to intervene pursuant to Federal Rule of Civil Procedure 24(b).

This Motion is made following the conference of counsel prior to filing the Motion pursuant to Local Rule 7-3, which took place on May 16, 2025, May 19, 2025, and May 20, 2025. *See* Declaration of Linda Krop ¶¶ 18-20; *see also* Declaration of Tara Rengifo ¶ 5. Petitioners/Plaintiffs have neither confirmed nor denied whether they will oppose this Motion, and Respondents/Defendants will not oppose this Motion. *Id.*

This Motion is based on this Notice of Motion and Motion; Memorandum of Points and Authorities; Declarations of Linda Krop, Chief Counsel of EDC, Alex Katz, Executive Director of EDC, Tara C. Rengifo, Senior Attorney for EDC, Michael T. Lyons, President of GOO!, Ken Hough, Co-Executive Director of SBCAN, Maureen

Ellenberger, Santa Barbara/Ventura Chapter Chair for the Sierra Club, and Walter

Edward Morton, Executive Director of SBCK; exhibits corresponding to those

declarations; Proposed Answer; the argument of counsel; all pleadings and papers on file

in this action; and upon such other matters as may be presented to the Court before the

Court's decision.

WHEREFORE, Proposed Intervenors pray that the Court grant this motion and

thereby grant them leave to intervene as defendants and respondents in this action. In

addition, if intervention is granted, Proposed Intervenors further request that the Court

accept their Proposed Answer.

Respectfully submitted this 12 day of June, 2025.

*/s/ Linda Krop*

LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
TARA C. RENGIFO (Bar No. 307670)
trengifo@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Tel.: (805) 963-1622 / Fax: (805) 962-3152

*Attorneys for Environmental Defense Center,
Get Oil Out!, Santa Barbara County Action
Network, Sierra Club, and Santa Barbara
Channelkeeper*

PROPOSED INTERVENORS' NOTICE OF MOTION, MOTION TO INTERVENE, AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION TO INTERVENE ................................................2

TABLE OF CONTENTS ........................................................................................4

TABLE OF AUTHORITIES ...................................................................................5

INTRODUCTION ................................................................................................7

FACTUAL BACKGROUND ..................................................................................8

PROPOSED INTERVENORS ...............................................................................13

LEGAL BACKGROUND .....................................................................................15

ARGUMENT ....................................................................................................16

I.   The Court Should Grant Intervention as of Right. ..................................16

    A. The Motion to Intervene is Timely. ................................................16

    B. Proposed Intervenors Have Significantly Protectable Interests. ........17

       1. Proposed Intervenors Participated in the Administrative Process. ................18

       2. Proposed Intervenors Use and Enjoy the Affected Environment. ................19

    C. Disposition of This Case May Impair or Impede Proposed Intervenors' Interests. ................................................................................20

    D. Existing Parties Do Not Adequately Represent Proposed Intervenors' Interests. ................................................................................21

       1. Respondents' Interests Diverge from Those of Proposed Intervenors Such That They May Not Be Capable of Making All of the Same Arguments as Proposed Intervenors or Willing to Do So. ............................22

       2. Proposed Intervenors Will Add Necessary Elements to the Case. ................24

II.  In the Alternative, Proposed Intervenors Satisfy the Standard for Permissive Intervention. ................................................................................25

    A. Proposed Intervenors' Motion is Timely. .......................................25

    B. Proposed Intervenors Satisfy the Requirement of a Common Question of Law or Fact. ................................................................................25

    C. Proposed Intervenors Will Not Unduly Delay or Prejudice Parties. ................26

    D. Equitable Considerations Weigh in Favor of Granting Intervention. ................26

CONCLUSION ..................................................................................................27

4

PROPOSED INTERVENORS' NOTICE OF MOTION, MOTION TO INTERVENE, AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

**Cases**

*Arakaki v. Cayetano*,
    324 F.3d 1078 (9th Cir. 2003)........................................................21, 24

*Cal. Dump Truck Owners Ass'n v. Nichols*,
    275 F.R.D. 303 (E.D. Cal. 2011) ...................................................17, 20

*Cal. Sea Urchin Comm'n*,
    2013 WL 12114517.....................................................................20, 21, 26

*California ex rel. Lockyer v. United States*,
    450 F.3d 436 (9th Cir. 2006).........................................................18, 19, 21

*California Trout, Inc. v. United States Bureau of Reclamation*,
    115 F. Supp. 3d 1102 (C.D. Cal. 2015)...........................................17, 18

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*,
    152 F.3d 1184 (9th Cir. 1998)..............................................................23

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
    647 F.3d 89 (9th Cir. 2011).......................................................19, 20, 21

*Forest Conservation Council v. U.S. Forest Serv.*,
    66 F.3d 1489 (9th Cir. 1995)..............................................................23

*Idaho Farm Bureau Fed'n v. Babbitt*,
    58 F.3d 1392 (9th Cir. 1995)........................................................17, 20

*Kootenai Tribe of Idaho v. Veneman*,
    313 F.3d 1094 (9th Cir. 2002)..............................................................25

*Nat'l Assoc. of Home Builders v. San Joaquin Valley Unified Air Pollution Dist.*,
    No. 1:07cv0820 LJO DLB, 2007 WL 2757995 (E.D. Cal. Sept. 21, 2007) .............22

*Nooksack Indian Tribe v. Zinke*,
    321 F.R.D. 377 (W.D. Wash. 2017)........................................................25

*Nw. Forest Res. Council v. Glickman*,
    82 F.3d 825 (9th Cir. 1996)................................................................18

*Orange County. v. Air Cal.*,
    799 F.2d 535 (9th Cir. 1986)..............................................................16

*Sagebrush Rebellion, Inc. v. Watt*,
    713 F.2d 525 (9th Cir. 1983)..............................................................18

*SEC v. U.S. Realty & Impvt. Co.*,
    310 U.S. 434 (1940).......................................................................16

*Spangler v. Pasadena City Bd. of Ed.,*
   552 F.2d 1326 (9th Cir. 1977)..............................................................26

*Sw. Ctr. for Biological Diversity v. Berg,*
   268 F.3d 810 (9th Cir. 2001).................................................16, 22, 23

*United States v. Carpenter,*
   526 F.3d 1237 (9th Cir. 2008)..............................................................19

*Va. House of Delegates v. Bethune-Hill,*
   139 S. Ct. 1945 (2019) .........................................................................16

*W. Watersheds Project v. Haaland,*
   22 F.4th 828 (9th Cir. 2022)..........................................................17, 21

*Wilderness Soc'y v. U.S. Forest Serv.,*
   630 F.3d 1173 (9th Cir. 2011)........................................................15, 18

*Yniguez v. Arizona,*
   939 F.2d 727 (9th Cir. 1991)................................................................15

**Rules**

Fed. R. Civ. P. 24(a)(2) ...................................................................7, 15

Fed. R. Civ. P. 24(b)...............................................................................7

Fed. R. Civ. P. 24(b)(1).........................................................................25

Fed. R. Civ. P. 24(b)(1)(B)....................................................................16

Fed. R. Civ. P. 24(b)(3)...................................................................16, 25

PROPOSED INTERVENORS' NOTICE OF MOTION, MOTION TO INTERVENE, AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Pursuant to Federal Rule of Civil Procedure ("Rule") 24, the Environmental Defense Center ("EDC"), Get Oil Out! ("GOO!"), Santa Barbara County Action Network ("SBCAN"), Sierra Club, and Santa Barbara Channelkeeper ("SBCK") (collectively "Proposed Intervenors") respectfully request that this Court grant them leave to intervene as of right pursuant to Rule 24(a)(2), or in the alternative, permission to intervene under Rule 24(b), as Respondents/Defendants in this action as to all claims. In this case, Petitioners/Plaintiffs Sable Offshore Corp. ("Sable Offshore"), Pacific Pipeline Company ("PPC"), and Pacific Offshore Pipeline Company ("POPCO") (collectively, "Sable") and Petitioners/Plaintiffs Exxon Mobil Corporation ("ExxonMobil"), Mobil Pacific Pipeline Company ("MPPC"), and ExxonMobil Pipeline Company ("EMPCo") (collectively, "ExxonMobil Affiliates") (together with Sable, "Petitioners") challenge the Santa Barbara County ("County") Board of Supervisors' ("Board") (collectively, "Respondents") February 25, 2025 tie vote after a de novo hearing on applications submitted by Sable to the County pursuant to Chapter 25B of the County Code.

Proposed Intervenors have championed protections for the California coastline, local communities, and the marine environment from the impacts of oil and gas development. Ensuring that oil and gas operations in the County are safe, well capitalized, and in full compliance with applicable laws and permit requirements is indispensable to Proposed Intervenors' work. Throughout the County's administrative proceedings and on appeal, Proposed Intervenors submitted several comment letters and substantial evidence opposing the permit transfers to Sable, despite staff's support, the Planning Commission's approval, and a split Board vote. Proposed Intervenors seek to protect their significant interests in preserving the County's unique natural resources and safeguarding public safety by ensuring that Respondents do not transfer the Permits unless and until Sable complies with the requirements under Chapter 25B.

**FACTUAL BACKGROUND**

The Santa Ynez Unit ("SYU") is a dormant oil and gas production unit located on the Gaviota Coast. County Administrative Record ("AR"), ECF No. 13, AR-003202. It consists of three offshore platforms and an onshore oil processing facility in Las Flores Canyon. *Id*. The processing facility and related infrastructure is permitted under Final Development Plan ("FDP") Permit No. 87-DP-032cz (RV06) (the "SYU Permit"). AR-002954. Once processed, crude oil from the SYU travels from Las Flores Canyon inland through CA-324 and CA-325 (the "Las Flores Pipeline System"). AR-003202. The Las Flores Pipeline System is permitted under an FDP approved in 1986 and revised in 1988 and 2003 (No. 88-DPF-033 (RV01)z; 88-CP-60 (RV01); and 88-DPF-25cz, 85-DP-66cz, 83-DP-25cz)) (the "LFP Permit"). *Id.* Natural gas produced in the SYU is processed at the Pacific Offshore Pipeline Company ("POPCO") Gas Plant (together with the SYU and Las Flores Pipeline System, the "Facilities"). *Id.* The POPCO Gas Plant is permitted under FDP Permit No. 93-FDP-015 and 74-CP-11(RV1) (the "POPCO Permit," and together with the SYU and LFP Permits, "FDPs" or the "Permits"). AR-002954.

On May 19, 2015, pipeline CA-324 ruptured at Refugio State Beach Park, releasing more than 120,000 gallons of heavy crude oil into the surrounding environment. *Id.* Thousands of acres of shoreline and subtidal habitat were destroyed, and numerous wildlife were injured or killed. *Id.* The spill forced the closure of fisheries and beaches, which jeopardized local businesses and caused an estimated 140,000 lost recreational user days between Santa Barbara and Ventura Counties. AR-003202-3203. Proposed Intervenors were involved in the immediate response to the spill, and several of their members witnessed the extreme devastation and loss caused by the spill. See, Krop Decl. ¶¶ 7-8, Ellenberger Decl. ¶¶ 8-9, Hough Decl. ¶ 6, Lyons Decl. ¶¶ 8-10, Morton Decl. ¶ 8.

Following the spill, the Las Flores Pipeline System was idled. AR-003203. Due to the unavailability of the pipelines, production at the SYU was suspended. *Id.* On or around September 19, 2023, the Board granted de novo approval of a transfer of the Las

Flores Pipeline System from Plains Pipeline, L.P. to Pacific Pipeline Company (Owner), ExxonMobil Pipeline Company (Operator), and ExxonMobil Corporation (Guarantor). Krop Decl. ¶ 11. Yet the transfer of the Permits did not end there.

Effective on or around February 14, 2024, Exxon sold the SYU and all associated assets to Sable, which was initially formed as several special purpose entities organized to acquire the SYU assets. AR-000018, 003204. Exxon also divested its exclusive ownership of shares in PPC to Sable, and with it, the Las Flores Pipeline System. AR-003204. To finance the $625 million dollar purchase price, Sable secured a $622 million dollar loan from Exxon. AR-3204-3205.

The Permits, which are subject to Chapter 25B of the County Code, do not currently list Sable as the owner, operator, and/or guarantor of the Facilities. AR-002954. The Permits cannot be changed, except in accordance with Chapter 25B. Chapter 25B is intended to protect public safety and preserve environmental quality by ensuring responsible operations, financial solvency, and adherence to regulatory requirements. EDC supported the adoption of Chapter 25B in 2002. Krop Decl. ¶ 5, Exh. A.

On or around March 14, 2024, Sable submitted applications for a change of owner, operator, and guarantor to Sable on the FDPs for the Facilities pursuant to Chapter 25B (herein "Applications"). AR-002954. Throughout the administrative proceedings, Proposed Intervenors urged Respondents to deny the Applications due to a lack of evidence to support the findings required by Chapter 25B. AR-001867-001972, AR-002058-AR-002169, AR-003199-AR-003472.[1] In particular, Proposed Intervenors offered evidence that Sable is not financially capable of operating the Facilities and has not secured all financial guarantees required by the Permits; Exxon and Sable are not in compliance with existing permit conditions; Sable has not submitted all necessary compliance plans and demonstrated a capability of complying with those plans; and Sable

[1] The letter dated February 21, 2025 is identified in the Administrative Record Index, ECF No. 13, ("AR") as Bates Nos. AR-003199 through AR-003272. Several of the Bates Nos. in Volume 12 of the AR are not in order and the February 21 letter attachments in the AR are not true and correct copies of the attachments submitted to the Board. Proposed Intervenors will request a correction of the AR if allowed to intervene.

has not shown that it has the skills, training, and resources necessary to operate the Facilities and that its management team has a record of compliance and safe operations. AR-003199-AR-003472.

On October 22, 2024, County staff released their staff report prior to the Planning Commission hearing. AR-000015-000067. In the report, County staff recommended that the Planning Commission make the required findings and approve the Applications. AR-000016-000017. Proposed Intervenors submitted written comments opposing the requested transfer. See, e.g., Morton Decl. ¶ 10; Ellenberger Decl. ¶ 10; Lyons Decl. ¶ 9; Hough Decl. ¶ 8; Katz Decl. ¶ 8; Krop Decl. ¶ 13; see also AR-001746-001748; AR-001752-001758; AR-001781-001782; AR001795-001797; AR-001867-001972.

At the Planning Commission hearing on October 30, 2024, representatives from each organization testified, raising several significant issues regarding Sable's ability to safely restart the facilities, responsibly operate them, and fulfill its remediation obligations if another spill were to occur. See, Katz Decl. ¶ 8; Ellenberger Decl. ¶ 10; Hough Decl. ¶ 9; Lyons Decl. ¶ 12; Morton Decl. ¶ 10. Many of the issues raised by Proposed Intervenors were echoed by an outpouring of opposition from community members at the hearing. See, e.g., AR-006830, 006835-006837, 006839-006840, 006845-006846. In response to the Commissioners' questions at the hearing, County staff relied on a narrow interpretation of the required findings under Chapter 25B. See, e.g., AR-006886-006899, 006927-006930. Based on staff's direction and guidance, the Planning Commission adopted County staff's recommendations and approved the Applications in a 3-1 vote. AR-002007-002009.

On November 7, 2024, GOO!, EDC, and SBCAN filed an appeal of the Planning Commission's decision to the Board. AR-002058-AR-002169. The Center for Biological Diversity along with the Wishtoyo Foundation also filed an appeal on November 5, 2024. AR-002050-AR-002057.

On February 4, 2025, the appeal hearing was set for February 25, 2025, and a Board Letter was publicly circulated prior to the February 25 hearing. AR-002047-

002049, 002953-002969. In the Board Letter, County staff recommended that the Board deny the appeals but also that the Board grant de novo approval of the Applications. AR-002953. In addition to the appellants, SBCK and Sierra Club submitted comments prior to the Board hearing and testified at the hearing. Morton Decl. ¶ 11, Ellenberger Decl. ¶ 11.

On February 21, 2025, GOO!, EDC, and SBCAN submitted a comment letter to the Board with over 200 pages of evidence attached, urging the Board to deny Sable's Applications. AR-003200-003472. As part of their submittal, they included a letter from John Day, former Planning and Development staff and one of the authors of Chapter 25B, to counter staff's impermissibly narrow interpretation of its requirements. AR-003208-003209. Proposed Intervenors also submitted several notices of violations and cease and desist orders issued by State agencies to Sable concerning alleged non-compliance with state laws. AR-003234-003235. The letter also compared Sable's cash assets, debt, and insurance limits to the $870 million dollar price tag on the 2015 spill to demonstrate inadequate financial resources to respond to another spill. AR-003215-003216. Absent Proposed Intervenors' participation in these proceedings (and appeal), this evidence would not have been presented to the Board for consideration.

At the Board's de novo hearing on February 25, 2025, the Board heard the matter anew, received additional evidence, and decided whether it should grant or deny the Applications. EDC, on behalf of GOO!, SBCAN, and EDC, presented its evidence at the hearing to the Board. AR-006630-006647. During deliberations, Chair Capps stated that "even within the narrow confines of what we're actually doing here, there are too many red flags … this is about fiscal oversight." AR-007140-007141. Chair Capps questioned why Sable's insurance policy had not been provided to Respondents; "If they had wanted to show the insurance policy, they could have, and so much has been made over the last several months about this policy. Why not just show it?" AR-007141. Chair Capps concluded by stating that she could not "say that this transfer gives [her] reassurance of fiscal stability." AR-007142.

The Board ultimately voted 2-2 on a motion to grant de novo approval of the Applications. AR-007142-007143. As set forth in the Board Letter, de novo approval of the Applications by the Board required a majority vote. AR-002953. A tie vote is "no action" and does not satisfy the requirement for an affirmative majority vote to grant de novo approval of Sable's Applications.

On February 26, 2025, counsel for Sable Offshore Corp. sent a letter to the County to request that the County immediately transfer the Permits to Sable. AR-006771-006773. The letter contends that the Board's tie vote affirms the Planning Commission's approval. AR-006772. The letter does not address the de novo standard of review on appeal to the Board under Chapter 25B-12(b)(4) or County staff's recommended action to the Board to grant de novo approval of the Applications.

Following the appeal to the Board, SBCK and Sierra Club retained EDC to represent their organizations. Morton Decl. ¶ 11, Ellenberger Decl. ¶ 11. In a letter to the Board dated March 1, 2025, Proposed Intervenors provided support for its position that a tie vote was "no action" and did not affirm the Planning Commission's approval. AR-006774-006778. On March 7, 2025, Proposed Intervenors submitted a second letter to the Board responding to Sable Offshore Corp.'s February 26 letter. Krop Decl. ¶ 16, Exh. B. The March 7 letter described County Counsel's recorded statements during the Board's similar de novo hearing on appeal from the Planning Commission's April 26, 2023 denial of the Existing Oil Lines 901/903 Valve Upgrade Project. *Id.* After the Board's tie vote at that hearing, County Counsel explained the "no action" vote neither affirmed nor denied the Planning Commission decision. *Id.*

On April 11, 2025, Sable sent the County a letter requesting transfer of the Permits and if not, notifying the County that Sable would initiate litigation. Respondents have not transferred the Permits to Sable. The Board discussed Sable's April 11 correspondence during closed session on April 16, 2025, but no reportable action was taken. AR-006783. Petitioners filed the instant litigation on May 8, 2025, ECF No. 1, and Respondents filed

their Answer on May 30, 2025, ECF No. 21. On June 6, 2025, the Court bifurcated the action into two phases and set a briefing schedule for Phase I. ECF No. 24.

### PROPOSED INTERVENORS

Proposed Intervenor EDC is a California public benefit, non-profit corporation, headquartered in Santa Barbara, California. Katz Decl. ¶ 4. Founded in response to the 1969 Santa Barbara oil spill, EDC defends nature and advances environmental justice on California's Central Coast through advocacy and legal action. *Id*. EDC's program areas include climate and energy, ocean, land and water, and environmental justice. *Id.* EDC has more than 2,400 members and advocates on behalf of itself and other non-profit, environmental organizations. Since its founding, EDC has worked to protect the local coastline, marine environment, watersheds, and terrestrial environment of Santa Barbara County from the risks and impacts of oil production. *Id.* at ¶ 5.

Proposed Intervenor GOO! is a public interest group dedicated to the protection of the Santa Barbara Channel and coastline from the deleterious environmental, economic, and esthetic impacts of oil development. Lyons Decl. ¶ 4. GOO!'s core membership is comprised of approximately 1,500 politically, socially, and economically diverse individuals from the Santa Barbara area and surrounding counties. *Id*. GOO!'s primary activities include enhancing public awareness about oil-related issues and impacts through education and opposing the proliferation of oil development, or minimizing its impacts, by participating in the administrative and legislative processes. *Id.* GOO! was formed in the wake of the Santa Barbara Oil Spill of 1969, and throughout its existence, it has fought to protect California from further oil development and exploitation. *Id.*

Proposed Intervenor SBCAN is a countywide non-profit membership-based organization that has been dedicated to promoting social and economic justice; preserving environmental and agricultural resources; and creating sustainable communities for over two decades. Hough Decl. ¶ 4. SBCAN has an email list of approximately 1,200 interested people as well as an estimated 120 active members. *Id.* at 3. SBCAN focuses its efforts to protect Santa Barbara County's natural resources

PROPOSED INTERVENORS' NOTICE OF MOTION, MOTION TO INTERVENE, AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   and community from the risks associated with oil and gas operations. *Id.* at ¶ 4.

2        Proposed Intervenor Sierra Club is a national organization of over one million

3   members, including more than 105,000 members in California and around 5,005 active

4   members in the Santa Barbara-Ventura Chapter. Ellenberger Decl. ¶¶ 3, 5. Sierra Club is

5   dedicated to exploring, enjoying, and protecting the wild places of the earth; practicing

6   and promoting the responsible use of the earth's ecosystems and resources; educating and

7   enlisting humanity to protect and restore the quality of the natural and human

8   environment; and using all lawful means to carry out these objectives. *Id.* at ¶ 3.

9   Consistent with its mission, Sierra Club is committed to the transition away from fossil

10  fuels. *Id.* at ¶ 6. Sierra Clubs and its members are concerned about the dangers posed by

11  oil and gas drilling, its threats to the safety and health of those who live, learn, work, and

12  recreate along the pipeline route, the risks of major accidents that would devastate the

13  local environment, such as oil spills, and its contribution to the ongoing climate crisis. *Id.*

14       Proposed Intervenor Channelkeeper is a non-profit public benefit corporation

15  founded in 1999. Morton Decl. ¶ 3. Channelkeeper's mission is to protect and restore the

16  Santa Barbara Channel and its watersheds. *Id.* Channelkeeper accomplishes its mission

17  through science-based advocacy, education, fieldwork, enforcement, and community

18  engagement. *Id.* Channelkeeper and its members are committed to protect the Santa

19  Barbara Channel from pollution threats such as coastal and offshore oil development,

20  including pollution from pipeline oil spills such as the May 2015 spill near Refugio State

21  Beach. *Id.* at ¶ 6. Channelkeeper has more than 2,000 members. *Id.* at ¶ 5.

22       All Proposed Intervenors have members who live, work, and/or recreate near or

23  around the Facilities. *See, e.g.* Katz Decl. ¶ 6; Morton Decl. ¶ 5; Ellenberger Decl. ¶ 5;

24  Hough Decl. ¶ 3; Lyons Decl. ¶ 4. Proposed Intervenors have an interest in protecting

25  their communities from risky oil and gas operations. *See, e.g.* Katz Decl. ¶¶ 4-5; Morton

26  Decl. ¶ 6; Ellenberger Decl. ¶¶ 4, 6; Hough Decl. ¶ 4; Lyons Decl. ¶ 4. Ensuring that any

27  owner, operator, and guarantor of these Facilities has the skills, training, and resources,

28  particularly of a fiscal nature, reduces the environmental impacts and safety risks that

directly affect Proposed Intervenors. *See, e.g.* Katz Decl. ¶¶ 8, 10; Morton Decl. ¶ 13; Ellenberger Decl. ¶ 13; Hough Decl. ¶ 11; Lyons Decl. ¶ 13.

Proposed Intervenors have firmly opposed the Applications throughout the administrative review process and dedicated substantial resources to provide evidence to demonstrate that Sable does not have the skills, training, and resources necessary to safely and responsibly operate. *See, e.g.* Krop Decl. ¶¶ 13-15; Katz Decl. ¶ 8-9; Morton Decl. ¶¶ 10-12; Ellenberger Decl. ¶¶ 10-12; Hough Decl. ¶¶ 8-10; Lyons Decl. ¶¶ 11-12. They attended and testified at Planning Commission and Board hearings and submitted written comments urging denial of the Applications. *Id.*

## LEGAL BACKGROUND

When deciding whether to grant motions for intervention as of right under Federal Rule of Civil Procedure 24(a)(2), the Ninth Circuit applies a four-part test:

> (1) the motion must be timely; (2) the applicant must claim a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (*quoting Sierra Club v. U.S. Env't Prot. Agency*, 995 F.2d 1478, 1481 (9th Cir. 1993)). Applicants who meet this test must be allowed to intervene. *Yniguez v. Arizona*, 939 F.2d 727, 731 (9th Cir. 1991).

Rule 24(a)(2) is generally interpreted "broadly in favor of proposed intervenors," by following "practical and equitable considerations." *Wilderness Soc'y*, 630 F.3d at 1179 (*quoting United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002)). This is because a "liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Id.* (*quoting City of Los Angeles*, 288 F.3d at 397–98). A proposed intervenor's "well-pleaded, nonconclusory" allegations in their

motion to intervene and supporting documents must be taken "as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001). Where a proposed intervenor seeks to participate purely defensively, it need not separately establish Article III standing. *See Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951–52 (2019).

Additionally, under Rule 24(b), the court may permit anyone to intervene, upon "timely motion," who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Rule 24(b) "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." *SEC v. U.S. Realty & Impvt. Co*., 310 U.S. 434, 459 (1940). A court has "broad discretion" to grant permissive intervention. *Orange County. v. Air Cal*., 799 F.2d 535, 539 (9th Cir. 1986). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

## ARGUMENT

Proposed Intervenors satisfy the requirements for intervention as of right under Rule 24(a)(2). In the alternative, they meet the requirements of Rule 24(b) and request that the Court exercise its discretion to allow them to intervene. Allowing Proposed Intervenors to intervene and defend Respondents' action to protect the environment from an unsafe, non-compliant, and financially irresponsible oil and gas activities meets the purpose of the intervention statute.

## I.    The Court Should Grant Intervention as of Right.

Proposed Intervenors satisfy the Ninth Circuit's four-part test for intervention as of right.

### A.    The Motion to Intervene is Timely.

Courts weigh the following three factors in assessing timeliness of a motion to intervene: (1) the stage of the proceedings; (2) prejudice to existing parties; and (3) the reason for and length of delay in moving to intervene. *W. Watersheds Project v. Haaland*,

22 F.4th 828, 835-36 (9th Cir. 2022) (*quoting Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016)).

Proposed Intervenors' Motion is timely because it is being filed at a very early stage of the litigation. *See Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (holding motion timely when filed four months after complaint, two months after answer, and "before any hearings or rulings on substantive matters"); *see also Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 306 (E.D. Cal. 2011) (finding motion timely when no substantive proceedings had occurred). The filing date is a little more than a month after Petitioners initiated this action on May 8, 2025, ECF No. 1, and roughly thirteen days after Respondents filed their Answer, on May 30, 2025, ECF No. 21. There have been no hearings or rulings on substantive matters, and no discovery has occurred. If granted intervention, Proposed Intervenors would adhere to the existing briefing schedule as set forth in the Scheduling and Case Management Order (Phase I) filed on June 6, 2025, and they would agree to reasonable conditions or limitations on intervention, as necessary. ECF No. 24. There is no potential prejudice to the other parties and no delay in seeking leave to intervene. *W. Watersheds Project*, 22 F.4th at 840 (holding no unreasonable delay and motion was timely when filed "just three months after [holder of oil and gas leases] discovered" its leases were involved in the litigation).

For these reasons, the Motion is timely.

**B.    Proposed Intervenors Have Significantly Protectable Interests.**

Proposed Intervenors have "significantly protectable" interests relating to the subject of the action. *California Trout, Inc. v. United States Bureau of Reclamation*, 115 F. Supp. 3d 1102, 1118-20 (C.D. Cal. 2015). The interest test does not require a "specific legal or equitable interest" nor that the interest be protected by the specific statutes under which the litigation is brought. *Id.* at 1118 (*quoting Wilderness Soc'y*, 630 F.3d at 1179 (citations omitted)). Instead, the test is satisfied if (1) "the interest is protectable under some law" and (2) "there is a relationship between the legally protected interest and the

1  claims at issue." *Wilderness Soc'y*, 630 F.3d at 1179 (*quoting Sierra Club*, 995 F.2d at

2  1484).

3        While there is no bright-line rule, the test is met if an applicant will "suffer a

4  practical impairment of its interests as a result of the pending litigation." *California ex*

5  *rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006). The Ninth Circuit has

6  noted that this test is "primarily a practical guide to disposing of lawsuits by involving as

7  many apparently concerned persons as is compatible with efficiency and due process."

8  *California Trout, Inc.*, 115 F. Supp. at 1118-19 (*quoting Wilderness Soc'y*, 630 F.3d at

9  1179 (citation omitted)). Proposed Intervenors have significant protectable interests based

10  both on their active participation throughout the administrative process leading to this

11  litigation and their use and enjoyment of the affected environment.

12        1.   Proposed Intervenors Participated in the Administrative Process.

13        An organization that was actively involved in the decision-making process leading

14  to the litigation at issue has a significantly protectable interest sufficient for intervention

15  as of right. *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837–38 (9th Cir. 1996)

16  (recognizing that the Ninth Circuit has repeatedly granted intervention of right where

17  "groups were directly involved in the enactment of the law or in the administrative

18  proceedings out of which the litigation arose" (citations omitted)). In such circumstances,

19  "there can be no serious dispute" concerning "the existence of a protectable interest on

20  the part of the applicant." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527–28 (9th

21  Cir. 1983).

22        Proposed Intervenors participated at every stage of the administrative proceedings,

23  investing significant staff time and financial resources. *See, e.g.,* Morton Decl. ¶¶ 10-11;

24  Ellenberger Decl. ¶¶ 10-11; Lyons Decl. ¶¶ 9, 12; Hough Decl. ¶¶ 8-9; Katz Decl. ¶ 8;

25  Krop Decl. ¶ 13; *see also* AR-001746-001748; AR-001752-001758; AR-001781-001782;

26  AR001795-001797; AR-001867-001972; AR-002058-AR-002169; AR-003200-003472;

27  AR-006630-006647. Proposed Intervenors advocated for the denial of Sable's

28  Applications both before the Planning Commission and Board of Supervisors. These

PROPOSED INTERVENORS' NOTICE OF MOTION, MOTION TO INTERVENE, AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

efforts included convening a coalition of concerned groups and individuals to coordinate input, testifying at public hearings, filing an appeal, and submitting detailed written comments. *See, e.g.*, Krop Decl. ¶¶ 13-15; Morton Decl. ¶¶ 10-12; Ellenberger Decl. ¶¶ 10-12; Hough Decl. ¶¶ 8-10; Lyons Decl. ¶¶ 9-10.

Their direct involvement in the administrative process provides a clear basis for demonstrating protectable interests sufficient to support intervention of right. Their interests in the outcome of the litigation are therefore direct, specific, and substantial. *See California ex rel. Lockyer*, 450 F.3d at 441 (*quoting Dilks v. Aloha Airlines*, 642 F.2d 1155, 1156-57 (9th Cir. 1981) (holding proposed intervenors' interest was neither undifferentiated nor generalized even though statute at issue did not give them any enforceable rights or protect their existing legal rights).

2.    Proposed Intervenors Use and Enjoy the Affected Environment.

Specific interests in the enjoyment of nature and wildlife are significantly protectable for purposes of intervention. See Citizens for *Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (recognizing interest in "conserving and enjoying" an area); see also *United States v. Carpenter*, 526 F.3d 1237, 1240 (9th Cir. 2008). Proposed Intervenors are environmental conservation organizations operating in Santa Barbara County and whose members live and recreate in the affected area. See, e.g. Katz Decl. ¶ 4; Morton Decl. ¶ 3; Ellenberger Decl. ¶ 6; Hough Decl. ¶ 4; Lyons Decl. ¶ 4. They have a significant protectable interest relating to the County's decision not to transfer the Permits given their decades of strategic engagement to prevent oil and gas development that threatens the use and enjoyment of the County's natural resources.

Proposed Intervenors have a long history of advocating for environmental protection in the County with specific interests in protecting water quality, preserving biodiversity, and safeguarding local communities from harm caused by oil spills and other accidents. *See, e.g.* Katz Decl. ¶ 4; Morton Decl. ¶ 3; Ellenberger Decl. ¶ 6; Hough Decl. ¶ 4; Lyons Decl. ¶ 4. Their members live and work in communities along the Las Flores Pipeline System route. *See, e.g.* Morton Decl. ¶ 5, Ellenberger Decl. ¶ 5, Hough

Decl. ¶ 3, Katz Decl. ¶ 6. Their members also hike, birdwatch, view wildlife and their habitat, and generally enjoy the scenic beauty of several areas along the pipeline route. *See, e.g.* Ellenberger Decl. ¶ 7 ("spend many hours walking along the Gaviota Coast beaches including the beaches at Refugio, El Capitan, and Gaviota. … hike regularly on many of the trails that are adjacent to or cross over the pipeline, including those in the Arroyo Hondo preserve, Gaviota trails including Los Cruces, and at Baron Ranch"); Morton Decl. ¶ 7; Hough Decl. ¶ 5 ("I travel east through Cuyama Valley to photograph landscapes there"); Lyons Decl. ¶ 5; Krop Decl. ¶ 8. Due to their unique activities in the area, they have an interest in "conserving and enjoying" the stretch of coastline along Highway 101 and the sensitive watersheds and resources through which the Las Flores Pipeline System route passes. *Citizens for Balanced Use*, 647 F.3d at 897.

Proposed Intervenors' enjoyment of this region would be severely reduced if an operator like Sable is permitted to assume operations without an adequate showing under Chapter 25B. *See, e.g.* Katz Decl. ¶ 10; Morton Decl. ¶ 13; Ellenberger Decl. ¶ 13; Hough Decl. ¶ 11; Lyons Decl. ¶ 13. They are the intended beneficiaries of Chapter 25B and EDC directly supported the adoption of Chapter 25B. Krop Decl. ¶ 5, Exh. A; *see Idaho Farm Bureau Fed'n*, 58 F.3d at 1397 ("A public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported."); *California Dump Truck Owners Ass'n*, 275 F.R.D. at 306 ("…public interest organization has a significantly protectable interest in defending legislation it supported.").

In sum, Proposed Intervenors have demonstrated protectable interests sufficient to support their intervention of right in this case.

## C.    Disposition of This Case May Impair or Impede Proposed Intervenors' Interests.

As this Court has recognized, "[o]nce a court determines that an intervenor has a 'significantly protectable' interest in an action, the third prong is easily satisfied." *Cal. Sea Urchin Comm'n*, 2013 WL 12114517, at *3; *see also California ex rel. Lockyer*, 450

F.3d at 442. If Petitioners prevail and the Permits are transferred to Sable, Proposed
Intervenors' ability to protect their interests in prohibiting irresponsible energy
development pursuant to Chapter 25B's requirements and protecting the environment
from oil spills or other accidents would be impaired. *See Cal. Sea Urchin Comm'n*, 2013
WL 12114517, at *3 (*citing Sagebrush Rebellion*, 713 F.2d at 528). An adverse decision
would prohibit Proposed Intervenors from ensuring that Sable has the financial capacity,
operator capability, and compliance record to safely operate the Facilities prior to the
Permits being transferred.

### D.    Existing Parties Do Not Adequately Represent Proposed Intervenors' Interests.

Courts address adequacy of representation according to three factors: "(1) whether
the interest of a present party is such that it will undoubtedly make all of a proposed
intervenor's arguments; (2) whether the present party is capable and willing to make such
arguments; and (3) whether a proposed intervenor would offer any necessary elements to
the proceeding that other parties would neglect." *Arakaki v. Cayetano*, 324 F.3d 1078,
1086 (9th Cir. 2003) (citation omitted). The burden in showing inadequate representation
is satisfied if the applicant can demonstrate that representation of its interests *may* be
inadequate. *Citizens for Balanced Use*, 647 F.3d at 898 (*quoting Arakaki*, 324 F.3d at
1086 (citation omitted)).

While a rebuttable presumption of adequacy arises where parties have the same
ultimate objective, or when the government acts on behalf of its constituency, that
presumption can be rebutted by a compelling showing otherwise. *Citizens for Balanced
Use*, 647 F.3d at 898. Even in such circumstances, "[t]he burden of showing inadequacy
of representation is minimal…." *W. Watersheds Project*, 22 F.4th at 840 (*quoting
Citizens for Balanced Use*, 647 F.3d at 898 (citation omitted)). The "most important
factor," ultimately, is "how the interest compares with the interests of existing parties."
*Citizens for Balanced Use*, 647 F.3d at 898 (citation omitted). Here, Proposed

Intervenors' interests naturally diverge from those of Respondents, and they add necessary elements to the case.

       1.     <u>Respondents' Interests Diverge from Those of Proposed Intervenors Such That They May Not Be Capable of Making All of the Same Arguments as Proposed Intervenors or Willing to Do So.</u>

To demonstrate inadequate representation, it is not necessary at this early stage in the litigation for Proposed Intervenors to anticipate specific differences in potential argument or strategy; rather, it is enough to show that "because of the difference in interests, it is likely that [the County] will not advance the same arguments as [proposed intervenors]." *Berg*, 268 F.3d at 824. Here, the parties' interests differ in fundamental ways such that it is likely Proposed Intervenors and Respondents will make different arguments.

First, although Proposed Intervenors are hopeful that Respondents will strongly defend the decision to withhold transfer of the Permits, it is far from certain. Two of the four Board members voted to grant de novo approval of the Applications, suggesting that the Board's interests may diverge from the Proposed Intervenors' interests. County staff recommended approval of the Applications to both the Planning Commission and the Board, and the staff reports ignored, contested, and/or dismissed Proposed Intervenors' comments based on a narrow interpretation of Chapter 25B. It was Proposed Intervenors (not County staff) who performed the research to develop an evidentiary record that supports denial. This evidence would not have been provided to the Board but for Proposed Intervenors' appeal and comment letters.

Second, Proposed Intervenors' interests are much narrower than Respondents' interests, and they may take different positions on both the merits and any appropriate remedy should this Court agree with Petitioners. *See Nat'l Assoc. of Home Builders v. San Joaquin Valley Unified Air Pollution Dist*., No. 1:07cv0820 LJO DLB, 2007 WL 2757995, at *5 (E.D. Cal. Sept. 21, 2007) (finding environmental organizations and government entity "share[d] a general interest in public health" but "the [government

entity] has a much broader interest in balancing the need for regulations with economic considerations," making it doubtful it would advance the same arguments as proposed intervenors). The Ninth Circuit has found such differences to be enough to overcome the presumption of adequate representation where the government "is required to represent a broader view than" the proposed intervenor. *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173; *see also Berg*, 268 F.3d at 823.

Proposed Intervenors are all organizations with specific, focused missions dedicated to environmental protection and preservation and enjoyment of the natural environment. *See, e.g.* Katz Decl. ¶ 4; Morton Decl. ¶ 3; Ellenberger Decl. ¶ 5; Hough Decl. ¶ 4; Lyons Decl. ¶ 4. Respondents, in contrast, represent a variety of County-wide interests. Respondents' broad constituency includes individuals supportive of transferring the Permits, not solely those concerned about adverse impacts. Indeed, even some Board members voted to approve the Applications. The differences between Respondents and Proposed Intervenors' interests could lead to fundamentally differing points of view with regards to the litigation as a whole. For example, Respondents may be tempted to settle the litigation with Petitioners, which would jeopardize Proposed Intervenors' interests. The differences between Respondents' interests and Proposed Intervenors' interests are further evidenced by the fact that Proposed Intervenors' Proposed Answer challenges certain allegations that the Respondents appear to admit. *Compare, e.g.,* Answer, ECF No. 21 ¶ 2 and Proposed Answer ¶ 2.

Finally, Proposed Intervenors' members would be impacted by the transfer of the Permits to Sable in unique and personal ways, which stands in contrast to Respondents' more general interest in defending their own decision. *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998). For example, Proposed Intervenors were directly involved in the cleanup efforts after the 2015 spill. *See, e.g.*, Morton Decl. ¶ 8, Krop Decl. ¶ 7, Lyons Decl. ¶¶ 8-10. The closed beaches, harm to wildlife, and destruction of shoreline and subtidal habitat prevented

Proposed Intervenors' members from enjoying a variety of recreational uses. *See, e.g.*,
Ellenberger Decl. ¶ 7; Morton Decl. ¶ 7; Hough Decl. ¶ 5; Lyons Decl. ¶ 5; Krop Decl. ¶
8. Proposed Intervenors' concerns about another spill or accident are amplified by the
uncertainty surrounding Sable's financial capacity and ability to operate safely. Unlike
County staff, Proposed Intervenors did not take Sable's claims at face value and have
expended significant resources to evaluate the company according to the requirements
under Chapter 25B. The information that Proposed Intervenors uncovered from this
investigation has only heightened their concerns about whether these Facilities will be
operated safely and be protective of the environment under Sable's leadership.

For these reasons, Proposed Intervenors have demonstrated that their interests
differ from Respondents' much broader interests, Respondents will not "undoubtedly
make all of a proposed intervenor's arguments," and that Respondents may not be
"capable and willing to make such arguments." *Arakaki*, 324 F.3d at 1086 (citation
omitted). In fact, Respondents have not responded to Proposed Intervenors' March 1 and
March 7 letters or indicated support of their position. Krop Decl. ¶ 17.

2.    <u>Proposed Intervenors Will Add Necessary Elements to the Case.</u>

The final factor likewise weighs in favor of intervention because Proposed
Intervenors will contribute "necessary elements to the proceeding that other parties would
neglect." *Arakaki*, 324 F.3d at 1086 (citation omitted). Proposed Intervenors are five
organizations representing environmental and conservation interests that would not
otherwise have a voice in this lawsuit. *See, e.g.* Katz Decl. ¶ 4; Morton Decl. ¶ 3;
Ellenberger Decl. ¶ 5; Hough Decl. ¶ 4; Lyons Decl. ¶ 4. Collectively, they represent
thousands of individual members concerned about an outcome that would permit an oil
and gas operator with no track record to assume full responsibility over Facilities that
caused one of the worst oil spills in California history and sat idle for a decade. *See, e.g.*
Katz Decl. ¶¶ 4, 10; Morton Decl. ¶¶ 3, 13; Ellenberger Decl. ¶¶ 3, 5; Hough Decl. ¶¶ 3,
11; Lyons Decl. ¶¶ 4, 13. These include community members who live, work, and/or
recreate in the vicinity of these Facilities. *See, e.g.* Katz Decl. ¶ 6; Morton Decl. ¶ 5;

Ellenberger Decl. ¶ 5; Hough Decl. ¶ 3; Lyons Decl. ¶ 4. If intervention were denied, the
Court would hear only the oil industry and a municipality's perspective. The current party
composition is off balance, and Proposed Intervenors have made a compelling showing
that existing parties may not adequately represent their interests. In sum, all the
requirements under Rule 24(a)(2) are met, and Proposed Intervenors have a right to
intervene.

## II.     In the Alternative, Proposed Intervenors Satisfy the Standard for Permissive
Intervention.

Courts may approve permissive intervention where (1) an applicant files a timely
motion and (2) the applicant's claim or defense shares a common question of law or fact
with the main action; and if such requirements are met, the court considers whether (3)
intervention will not unduly delay or prejudice the adjudication of rights of the existing
parties. Fed. R. Civ. P. 24(b)(1), (b)(3).  Proposed Intervenors meet all these
requirements, and there are additional equitable considerations that weigh in favor of
intervention here.

### A.     Proposed Intervenors' Motion is Timely.

As explained above, the Motion to Intervene is timely.

### B.     Proposed Intervenors Satisfy the Requirement of a Common Question
of Law or Fact.

The common questions of law and fact prong of permissive intervention is to be
"liberally construed." *Nooksack Indian Tribe v. Zinke*, 321 F.R.D. 377, 383 (W.D. Wash.
2017) (citation omitted). Proposed Intervenors' defenses raise exclusively common
questions of law and fact with the main action and readily satisfy this requirement.
Proposed Intervenors would seek to defend Respondents' decision to not transfer the
Permits with respect to all the causes of action raised in the complaint. Accordingly, their
defenses share common questions of law and fact with the main action. *See Kootenai
Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110–11 (9th Cir. 2002), *abrogated on other
grounds by Wilderness Soc'y*, 630 F.3d 1173 (upholding grant of permissive intervention

where proposed intervenors' defenses were "directly responsive" to the claims in plaintiffs' complaint). In addition, all the parties will reference the same administrative record; thus, there will be common factual questions raised in Proposed Intervenors' defenses and the main action.

### C. Proposed Intervenors Will Not Unduly Delay or Prejudice Parties.

If granted intervention, Proposed Intervenors would adhere to the existing schedule ordered by the Court on June 6, 2025. ECF No. 24. In addition, they would agree to reasonable conditions or limitations on intervention, such as coordinating with the County to minimize duplication. See *Cal. Sea Urchin Comm'n*, 2013 WL 12114517, at *6. Accordingly, their participation raises no concern under this factor.

### D. Equitable Considerations Weigh in Favor of Granting Intervention.

In considering permissive intervention, courts may exercise discretion to assess issues such as "the nature and extent of the intervenors' interest" and "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977). As explained above, Proposed Intervenors spent a significant amount of time to research Sable's financial and operator history in the interest of protecting the community and sensitive local resources from risky and unsafe oil and gas operations. They are therefore in a strong position to contribute to the Court's understanding of the issues in this case.

Equitable considerations warrant intervention because Respondents took a different position throughout the County's administrative process. Now that Respondents' decision to not transfer the Permits is being challenged in court, Proposed Intervenors deserve to have a say in the matter. The outcome of this case will have direct impacts in their lives and communities for years to come.

//

//

1

## CONCLUSION

2    For the foregoing reasons, Proposed Intervenors' motion to intervene as defendants

3  and respondents in this action should be granted as a matter of right. In the alternative,

4  Proposed Intervenors respectfully request the Court to allow permissive intervention.

5

6    Respectfully submitted this 12 day of June, 2025.

7

8                                    */s/ Linda Krop*

9                                    LINDA KROP (Bar No. 118773)
                                     lkrop@environmentaldefensecenter.org
10                                   JEREMY M. FRANKEL (Bar No. 344500)
                                     jfrankel@environmentaldefensecenter.org
11                                   TARA C. RENGIFO (Bar No. 307670)
                                     trengifo@environmentaldefensecenter.org
12
                                     ENVIRONMENTAL DEFENSE CENTER
13                                   906 Garden Street
                                     Santa Barbara, CA 93101
14                                   Tel.: (805) 963-1622 / Fax: (805) 962-3152

15                                   *Attorneys for Environmental Defense
                                     Center, Get Oil Out!, Santa Barbara County
16                                   Action Network, Sierra Club, and Santa Barbara
                                     Channelkeeper*
17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2

The undersigned, counsel of record for Environmental Defense Center, Get Oil

3

Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara

4

Channelkeeper, certifies that this brief contains 6,876 words, which complies with the

5

word limit of L.R. 11-6.1.

6

7

Dated: June 12, 2025                    */s/ Linda Krop*

8

LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org

9

JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org

10

TARA C. RENGIFO (Bar No. 307670)
trengifo@environmentaldefensecenter.org

11

ENVIRONMENTAL DEFENSE CENTER

12

906 Garden Street

13

Santa Barbara, CA 93101

14

Tel.: (805) 963-1622 / Fax: (805) 962-3152

15

*Attorneys for Environmental Defense*
*Center, Get Oil Out!, Santa Barbara County*

16

*Action Network, Sierra Club, and Santa Barbara*
*Channelkeeper*

17

18

19

20

21

22

23

24

25

26

27

28