1   LATHAM & WATKINS LLP
        Jessica Stebbins Bina (Bar No. 248485)
2       *jessica.stebbinsbina@lw.com*
    10250 Constellation Blvd. Suite 1100
3   Los Angeles, CA  90067
    Telephone:  +1 424.653.5500
4   Facsimile:   +1 424.653.5501

5   Attorneys for Petitioners Sable Offshore
    Corp., Pacific Pipeline Company, and Pacific
6   Offshore Pipeline Company

7   O'MELVENY & MYERS LLP
        Dawn Sestito (Bar No. 214011)
8       *dsestito@omm.com*
        Lauren Kaplan (Bar No. 294703)
9       *lkaplan@omm.com*
    400 South Hope Street, 19th Floor
10  Los Angeles, California 90071
    Telephone:  +1 213.430.6000
11  Facsimile:   +1 213.430.6407

12  Attorneys for Petitioners and Plaintiffs Exxon
    Mobil Corporation, Mobil Pacific Pipeline
13  Company, and ExxonMobil Pipeline
    Company
14  *[Additional counsel listed on signature page]*

15                    **UNITED STATES DISTRICT COURT**

16                    **CENTRAL DISTRICT OF CALIFORNIA**

17

18

19  SABLE OFFSHORE CORP.;              CASE NO. 2:25-cv-04165-DMG-(AGRx)
    PACIFIC PIPELINE COMPANY;
20  PACIFIC OFFSHORE PIPELINE          **PETITIONERS OPPOSITION TO**
    COMPANY; EXXON MOBIL               **MOTION TO INTERVENE**
21  CORPORATION, MOBIL PACIFIC
    PIPELINE COMPANY, AND              Hearing: July 11, 2025
22  EXXONMOBIL                         Time: 9:30 a.m.
    PIPELINE COMPANY,                  Place: Courtroom 8C
23
              Petitioners/Plaintiffs,
24
         v.
25
    COUNTY OF SANTA BARBARA;
26  SANTA BARBARA COUNTY
    BOARD OF SUPERVISORS and
27  DOES 1-20,

28            Respondents/Defendants.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   FACTUAL BACKGROUND ....................................................................... 3

    A.    The FDPs ........................................................................................... 3

    B.    The County's Chapter 25B Process and Failure to Act ...................... 4

    C.    Chapter 25B's Lack of Environmental Impact and EDC's
        Other Paths To Asserting Its Interests ................................................ 6

III.  GOVERNING LAW .................................................................................... 7

IV.   THE REQUEST TO INTERVENE SHOULD BE DENIED ....................... 8

    A.    EDC Does Not Meet the Standard for Intervention as of
        Right ................................................................................................... 8

        1.    EDC Lacks A "Significantly Protectable Interest"
            In The Permit Transfers ........................................................... 9

            a.    Participation in County Process Not
                Sufficient ..................................................................... 10

            b.    General Interest in Environment is
                Insufficient .................................................................. 12

            c.    EDC's Generalized Interest Lacks a
                Relationship to the Claims at Issue .............................. 13

        2.    Disposition Will Not Impair EDC's Purported
            Interests .................................................................................. 14

        3.    EDC's Putative Interests are Adequately
            Represented by Defendants ..................................................... 16

    B.    EDC Does Not Meet the Standard for Permissive
        Intervention ...................................................................................... 18

        1.    The First Two Factors Weigh Against Granting
            Permissive Intervention .......................................................... 19

        2.    Permitting Intervention Will Negatively Impact
            Judicial Economy and Prejudice the Original
            Parties ..................................................................................... 19

        3.    EDC Will Not Contribute to Development of Facts .............. 20

        4.    EDC Will Not Significantly Contribute to
            Adjudication of Legal Issues .................................................. 20

V.    CONCLUSION .......................................................................................... 21

i

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Am. Nat'l Bank & Trust Co.*, 865 F.2d at 147 ........................................................16

*Arakaki, et al. v. Cayetano, et al.*,
    324 F.3d at 1086 .........................................................................................16

*Athens Lumber Co., Inc. v. Fed. Election Comm'n*,
    690 F.2d 1364 (11th Cir. 1982) .................................................................12

*Berg*, 268 F.3d at 823 ............................................................................................17

*Bush v. Viterna*,
    740 F.2d 350 (5th Cir. 1984) .....................................................................21

*Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*,
    54 F.4th 1078 (9th Cir. 2022) ......................................................................9

*Center for Biological Diversity v. Lubchenco*,
    No. 09-04087 EDL, 2010 WL 1038398 (N.D. Cal. Mar. 19, 2010) ..................14

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
    647 F. 3d 893 (2011) ...................................................................13, 14, 17

*Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*,
    642 F.3d 728 (9th Cir. 2011) .....................................................................16

*Donnelly v. Glickman*,
    159 F.3d 405 (9th Cir. 1998) ...................................................................8, 18

*Fireman's Fund Ins. Co. v. Gerlach*,
    56 Cal. App. 3d 299 (1976) .......................................................................19

*Freedom from Religion Foundation, Inc. v. Geithner*,
    644 F.3d 836 (9th Cir. 2011) .....................................................................18

*Greater Yellowstone Coal., Inc. v. Servheen*,
    2008 WL 11348733 (D. Mont. Apr. 25, 2008) .................................................11

*Greene v. United States*,
    996 F.2d 973 (9th Cir. 1993) .......................................................................9

ii

*Kootenai Tribe of Idaho v. Veneman*,
   313 F.3d 1094 (9th Cir. 2002)..........................................................................21

*Lippman v. City of Los Angeles*,
   234 Cal. App. 3d 1630 (1991).....................................................................8, 18

*Montana v. United States Envtl. Protection Agency*,
   137 F.3d 1135 (9th Cir. 1998), *cert. denied*, 1998 WL 249357
   (U.S. Oct. 5, 1998)..............................................................................................9

*Nw. Forest Res. Council v. Glickman*,
   82 F.3d 825 (9th Cir. 1996), as amended on denial of reh'g (May
   30, 1996)...................................................................................8, 9, 11, 13

*Or. Envt'l Council v. Or. Dept. of Envt'l Quality*,
   775 F. Supp. 353 (D. Or. 1991)........................................................................21

*Orange v. Air Cal.*,
   799 F.2d 535 (9th Cir. 1986)............................................................................18

*Pavlock v. Holcomb*,
   337 F.R.D. 173 (N.D. Ind. 2020)........................................................................1

*People ex rel. State Lands Comm'n v. City of Long Beach*,
   183 Cal. App. 2d 271 (1960)............................................................................20

*Perry v. Brown*,
   587 F.3d 947 (9th Cir. 2009)..............................................................................8

*Portland Audubon Soc. v. Hodel*,
   866 F.2d 302 (9th Cir.), cert. denied, 492 U.S. 911 (1989)................................9

*Prete, et al. v. Bradbury, et al.*,
   438 F.3d at 956.......................................................................................16, 18

*Roman Cath. Bishop of Monterey v. Cota*,
   711 F. App'x 428 (9th Cir. 2018)......................................................................12

*Roman Cath. Bishop of Monterrey v. Cota*,
   No. CV158065JFWRAOX, 2016 WL 320741 (C.D. Cal. Jan. 8,
   2016)................................................................................................................12

*Simpson Redwood Co. v. California*,
   196 Cal. App. 3d 1192 (1987)..........................................................................20

iii

*Spangler v. Pasadena City Bd. of Educ.*,
   552 F.2d 1326 (9th Cir. 1977) ................................................................ 18, 20

*State ex rel. Lockyer v. United States*,
   450 F.3d 436 .................................................................................. 9, 14, 16

*United States v. Alisal Water Corp.*,
   370 F.3d 914 (9th Cir. 2004) ......................................................................... 9

*United States v. Carpenter*,
   526 F. 3d 1237 (2008) ................................................................................... 14

*Venegas v. Skaggs*,
   867 F.2d 527 (9th Cir. 1989) .................................................................. 18, 19

*Wilderness Soc'y v. U.S. Forest Service*
   630 F.3d 1173 (9th Cir. 2011) (en banc) ............................................ 8, 9, 13

## STATUTES

43 U.S.C. § 1331 ................................................................................................ 7

Gov. Code § 8670.37.51 ................................................................................... 6

Gov. Code § 8670.37.53 ................................................................................... 6

Gov. Code § 8670.37.54 ................................................................................... 6

Santa Barbara County Code §  B9(b)(2) ...................................................... 15

Santa Barbara County Code § 10(a)(1) .......................................................... 4

Santa Barbara County Code § 10(a)(2) .......................................................... 4

Santa Barbara County Code § 10(a)(4) .......................................................... 4

Santa Barbara County Code § 10(a)(5) .......................................................... 4

Santa Barbara County Code § 10(a)(6) .......................................................... 4

Santa Barbara County Code § 10(a)(7) .......................................................... 4

Santa Barbara County Code § 10(a)(9 ............................................................ 5

Santa Barbara County Code § 10(a)3 ............................................................. 4

iv

Santa Barbara County Code § 25B-1 ................................................................4

Santa Barbara County Code § B-10(2)...........................................................15

Santa Barbara County Code § B-10(6)...........................................................15

Santa Barbara County Code § B-10(7)...........................................................15

Santa Barbara County Code § B-10(9)...........................................................15

Santa Barbara County Code § B-9(a)(2).........................................................15

Santa Barbara County Code § B-9(e)(1).........................................................15

Santa Barbara County Code §10(a)(8) .............................................................5

Santa Barbara County Code Chapter 25B ..............................................passim

## RULES

Fed. R. Civ. P. 24(a) ...........................................................................passim

Fed. R. Civ. P. 24(b)(3) ...............................................................................8

## REGULATIONS

2 CCR § 2129(a).............................................................................................7

30 C.F.R. § 550.101.........................................................................................7

8 CCR § 6502 ..................................................................................................7

8 CCR § 6750 ..................................................................................................7

## I.    INTRODUCTION

This case is a simple one, focused entirely on Santa Barbara County's (the "County") process for transferring final development permits ("FDPs"). Phase I of this case challenges the County's failure to follow its own transfer processes, and Phase II, if it is reached, focuses on the constitutional questions and material consequences Petitioners face if the County does not effectuate the transfers at issue.[1]

In the County, an FDP can authorize the operation of certain oil and gas production facilities. Upon its issuance, the FDP authorizes the construction and operation of such facilities consistent with the terms and requirements of the FDP. Once issued and relied upon, the FDP is a vested entitlement that runs with the facilities it authorizes, subject to its terms. In every other county in California, when oil and gas production facilities are sold, the FDP transfers automatically or near-automatically to the new owner and operator. In the County, however, there is an extra administrative process, codified in Santa Barbara County Code Chapter 25B ("Chapter 25B".) Petitioners and Plaintiffs Sable Offshore Corp. ("Sable Offshore"), Pacific Pipeline Company ("PPC"), and Pacific Offshore Pipeline Company ("POPCO") (collectively, "Sable"), Exxon Mobil Corporation ("ExxonMobil"), Mobil Pacific Pipeline Company ("MPPC"), and ExxonMobil Pipeline Company ("EMPCo") (collectively, "ExxonMobil affiliates") (together with Sable, "Petitioners") contend that the procedures outlined in Chapter 25B are ministerial and mandatory. The County Planning Commission agreed and, in October 2024, granted Sable's application to transfer the FDPs for three oil and gas processing facilities (the "Facilities") from ExxonMobil affiliates to Sable.

---

[1] Environmental Defense Center, Get Oil Out! ("GOO!"), Santa Barbara County Action Network ("SBCAN"), Sierra Club, and Santa Barbara Channelkeeper's ("SBCK") (collectively "EDC") motion addresses only grounds for intervening in the first phase of this action, as it seems to concede EDC would have no basis to intervene in Phase II's constitutional claims. *See, e.g., Pavlock v. Holcomb*, 337 F.R.D. 173, 179 (N.D. Ind. 2020) (no basis to intervene in takings claims).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

Chapter 25B permits a broad class of "interested persons" to appeal the Planning Commission's decision to grant or deny a permit transfer application to the Board of Supervisors ("Board"). Three of the proposed intervenors, along with other organizations, filed such an appeal. County staff recommended the Board deny all appeals. However, the Board split the vote two-two. The two supervisors who voted against denying the appeals cited reasons far outside the scope of Chapter 25B as their basis for doing so. Because the Board failed to uphold the appeals, the Planning Commission's vote in favor of transfer stands and the FDPs must be transferred. Nonetheless, the County refuses to transfer the permits, leaving Petitioners in administrative and legal limbo.

By stipulation, Petitioners and the County are proceeding to an expedited Phase I summary judgment briefing, through an agreed administrative record with no discovery. (Dkt. Nos. 17, 24.)  In Phase I, the Court will determine whether the underlying Planning Commission decision to transfer the permits remains in place. (Dkt. 1, ¶ 87.) Should the Court decide this first question in Petitioners' favor, this case will be over. If the Court does not side with Petitioners on the first: Phase I will also consider what criteria was the Board permitted to consider under Chapter 25B in evaluating the appeals and whether the Board exceeded those criteria in evaluating the appeals? (Dkt. 1, ¶ 104.) Petitioners contend the statute is mandatory and ministerial, Sable met all of the conditions set forth in Chapter 25B; thus the Board was required to deny the appeals. (Dkt. 1, ¶¶ 95-96.)

Should the case proceed to Phase II, Petitioners also raise constitutional questions: does Chapter 25B effectively prohibit ExxonMobil from transferring its vested entitlements and prevent Sable from enjoying the vested entitlements it purchased, and if so, does Chapter 25B take Petitioners' property without due process? Further, does Chapter 25B violate the Supremacy Clause by effectively giving the County control over matters within the exclusive jurisdiction of federal and state law?

None of these questions implicate the environmental interests EDC advocates for but instead are purely legal questions for this Court to resolve. As the Planning Commission rightly explained, the transfer of an FDP is not an action that has any impact on the physical environment. (Dkt. 1, ¶ 50; Dkt. 13-1, 73; 242-243 [transfer has no potential for physical change to the environment].) And it has *no impact* on whether or not Sable restarts oil and gas operations in the County. Rather, such restart decisions lie in the exclusive jurisdiction of federal and state authorities (e.g., the California Office of the State Fire Marshal ("OSFM"), Federal Bureau of Safety and Environmental Enforcement ("BSEE"), and Federal Bureau of Ocean Energy Management ("BOEM"))—all of which EDC or groups aligned with EDC have *separately* sued.

EDC and its fellow environmental groups have ample paths available to them to challenge pipeline restart, and they have actively walked those paths. But they lack any interest cognizable under the Federal Rules of Civil Procedure in *this* case. EDC does not meet the standard for intervention by right under Rule 24(a): (1) the environmental interests it seeks to protect are generalized and undifferentiated from those of the general public; (2) EDC's interests in the environment will not be impaired through this action; and (3) the County adequately represents EDC's alleged interests. EDC likewise does not meet the standard for permissive intervention under Rule 24(b): (1) it lacks a significant protectable interest; (2) intervention will only prolong or unduly delay the litigation; (3) EDC will not significantly contribute to full development of factual issues; and (4) EDC presents no new questions to the Court. The motion should be denied.

## II.    FACTUAL BACKGROUND

### A.    The FDPs

Sable acquired the Facilities, which are partly located in the County, in February 2024. (Dkt. 13-1, 23.) The FDPs for the Facilities were issued in 1987, 1988, and 1993 pursuant to then-existing County requirements. The FDPs include

3

various conditions regulating the construction, operation, and eventual abandonment of the Facilities, which outline specific compliance obligations, penalties for non-compliance, and review procedures for requested changes to the authorized uses. (Dkt. 13-11, 825; 845-925; 926-951; 952-1000.) The Facilities' initial owners constructed and began operations of them after obtaining all other necessary state and federal authorizations, vesting the right to continue operation of each Facility consistent with the FDPs. Sable, as successor in interest to the Facilities' original owners, has vested rights vis-à-vis the County to own and operate the Facilities.

**B.     The County's Chapter 25B Process and Failure to Act**

The County adopted Chapter 25B in 2001, more than ten years after the FDPs vested, creating a formal process for transferring already-issued (and vested) FDPs for existing facilities to new owners, operators, or guarantors.

The stated purpose of Chapter 25B is to "ensur[e] that safe operation, adequate financial responsibility, and compliance with all applicable county laws and permits are maintained during and after all changes of owner, operator or guarantor of certain oil and gas facilities." (County Code § 25B-1). Chapter 25B requires, *inter alia*, that (1) outstanding fees have been paid (§§ 10(a)(1) [change of operator]; 9(a)(1) [change of owner]); (2) insurance, bonds or other assurances required by the County and necessary to comply with the permit and County ordinances have been updated to reflect the new owner (§§ 10(a)(2) [change of operator]; 9(a)(2) [change of owner]; 9(e)(1) [change of guarantor]; (3) acceptance of the conditions of the permit (§§10(a)3) [change of operator]; 9(a)(3) [change of owner]); (4) the provision of a copy of the most recent county safety audit to the new owner (§§10(a)(4) [change of operator]; 9(a)(4) [change of owner]); (5) compliance with permit requirements or a written agreement to come into compliance (§§10(a)(5) [change of operator]; 9(a)(5) [change of owner]; (6) updated emergency plans with new contact information (§10(a)(6)); (7) a transition plan to ensure that the new operator has "good working knowledge" of those emergency plans (§10(a)(7)); (8) County-approved emergency

4

response drills (§10)(a)(8); and (9) the proposed operator has the skills, training, and resources necessary to operate in compliance with the permit and County codes, a determination that is made by reviewing the operator's history to confirm it does not have a record of "non-compliant or unsafe operations systemic in nature for similar facilities" (§10(a)(9.)

Sable provided all required information to satisfy the FDP transfer process. (Dkt. 13-1 245-317.) County staff confirmed that Sable met Chapter 25B's requirements and recommended approval of the transfers, (Dkt. 13-1, 27-58), and in October 2024, the Planning Commission approved them. (Dkt. 13-1, 21-22.) As part of this approval, the Planning Commission repeatedly confirmed that the permit transfers had nothing to do with, and did not authorize, pipeline restart. (See, e.g., Dkt. 13-10, 228 [Planning Commission staff presentation stating "[r]estart is [a] separate process under regulatory authority of several state and federal agencies"], Dkt. 13-21, 49, 52, 67, 70 [Planning Commissioners making similar statements].)

After the Planning Commission approval, two sets of environmental organizations appealed the decision to the Board. (Dkt. 13-10, 299-306, Dkt. 13-10, 307- Dkt. 13-11, 27.) These appeals urged the Board to bar the permit transfers based on alleged "facts" (primarily financial allegations) wholly outside the statutory scheme. (*Ibid*; see also Dkt. 13-11, 813-826 [Board letter responding to appeal issues].) County staff urged the Board to deny the appeals. (Dkt. 13-11, 811 [Board letter], Dkt. 13-20, 9-29 [Staff Presentation].)

At the February 2025 hearing, the Board's five members split 2-to-2, with the fifth supervisor permanently recused. (Dkt. 13-21, 10 [Minute Order].) The two supervisors who voted against the denial motion made clear that their votes were not based on the limited criteria in Chapter 25B. One explained that he thought restarting oil operations in the County—something wholly outside the scope of Chapter 25B— was an "insane idea." (Dkt. 13-21, 393.) The other recognized that pipeline restart "is not what we're doing here," (Dkt. 13-21, 397) but stated that the Facilities' sale

5

1  to Sable didn't pass her "smell test." (Dkt. 13-21, 397.) The two remaining

2  Supervisors voted to deny the appeals. (Dkt. 13-21, 398-399.)

3      After the appeals failed to gain a majority vote, Sable sought transfer of the

4  permits based on the Planning Commission's still-valid decision, but the County

5  refuses.

6  **C.    Chapter 25B's Lack of Environmental Impact and EDC's Other**

7  **       Paths To Asserting Its Interests**

8      It is undisputed that the County's Chapter 25B approval would not authorize

9  restarting oil operations at the Facilities. Such operations are not only outside the

10  criteria in Chapter 25B, but also outside the County's jurisdiction. Under federal

11  law, the Pipeline Hazardous Materials Safety Administration ("PHMSA") has

12  authority to regulate oil pipeline safety, restart, and operation, and has delegated

13  authority over pipeline safety to OSFM. This means that the County is entirely

14  preempted from regulating pipeline operations, including restart. (Dkt. 1, ¶¶ 121-

15  123.)  Moreover, as raised in prior disputes before this Court, the County entered

16  into a settlement in 1988 affirming that the County has no role in regulating pipeline

17  safety for these particular pipelines.[2]

18      Other state and federal agencies have authority over other aspects of pipeline

19  operations, foreclosing County authority. The California Department of Fish and

20  Wildlife Office of Spill Prevention and Response is charged with ensuring that

21  operators of production facilities that could impact waters of the state demonstrate

22  financial responsibility sufficient to address any potential spill that could occur.

23  (Gov. Code §§ 8670.37.51, 8670.37.53, 8670.37.54.) The State Lands Commission

24  regulates oil and gas production operations on leases on state tide and submerged

25  lands, which are applicable to mobile rigs, fixed offshore structures, and upland

26

27  [2] Feb. 8, 1988, Settlement Agreement Between Celeron Pipeline Company of
California and the County of Santa Barbara, in *Celeron Pipeline Company of

28  California v. County of Santa Barbara* (Case No. CV 87-02188) ("*Celeron*
settlement").

1    locations serving these leases. (2 CCR § 2129(a).) The California Department of

2    Industrial Relations – Division of Occupational Safety and Health establishes

3    minimum safety standards for drilling, production, refining, and transportation of

4    petroleum products. (8 CCR §§ 6502, 6750.). Oil and gas operations in federal

5    waters are regulated by BOEM and BSEE. (43 U.S.C. § 1331; 30 C.F.R. § 550.101.)

6    These state and federal agencies completely "occupy the field" and preempt local

7    regulation of oil and gas production, pipeline operations, and safety work.

8         EDC and similarly-focused organizations strongly oppose Sable's efforts to

9    restart oil and gas operations at the Facilities and are pursuing multiple legal avenues

10   to try to prevent restart. The Environmental Defense Center and the Center for

11   Biological Diversity ("CBD"), for example, have sued OSFM and sought injunctive

12   relief. (*Environmental Defense Center et al. v. Cal. Dept. of Forestry and Fire

13   Protection et al.*, No. 25CV02247 (Santa Barbara County Superior Court, filed April

14   15, 2025); *CBD v. Cal. Dept. of Forestry and Fire Protection et al*., No. 25CV-2244

15   (Santa Barbara County Superior Court, filed April 15, 2025).) And other

16   organizations with similar missions—notably CBD, who also appealed the Planning

17   Commission's FDP transfer decision—have launched federal lawsuits against

18   BOEM and BSEE. (*CBD et al. v. Haaland et al.*, No. 2:24-cv-05459 (C.D. Cal., filed

19   June 27, 2024); *CBD et al v. Burgum et al*. No. 2:25-cv-02840 (C.D. Cal., filed April

20   2, 2025).) Unlike this case, those lawsuits are actually targeted at agencies with a

21   role in the restart of the Facilities.

22   **III.    GOVERNING LAW**

23        Rule 24 permits two types of intervention: intervention as of right and

24   permissive intervention.

25        To intervene as of right, a party must meet *all* the requirements under Federal

26   Rule of Civil Procedure 24(a). Courts in this Circuit apply a four-part test: "(1) the

27   motion must be timely; (2) the applicant must claim a 'significantly protectable'

28   interest relating to the property or transaction which is the subject of the action; (3)

7

the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action." (*Wilderness Soc'y v. U.S. Forest Service* 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc) (citation omitted).) The applicant bears the burden of proving all four elements, and "[f]ailure to satisfy any one of the requirements is fatal to the application." (*Perry v. Brown*, 587 F.3d 947, 950 (9th Cir. 2009).) In addition, to demonstrate a significant protectable interest, a proposed intervenor "must establish that (1) 'the interest [asserted] is protectable under some law,' and (2) there is a 'relationship between the legally protected interest and the claims at issue.'" (*Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996).)

Permissive intervention, governed by Rule 24(b), is subject to the Court's discretion. Rule 24(b)(1)(B) provides that, on timely motion, "the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." (Fed. R. Civ. P. 24(b)(1)(B).) Courts also consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." (*Id.* at 24(b)(3).) A court has broad discretion to deny intervention even if the putative intervenor meets all criteria for permissive intervention. (*Lippman v. City of Los Angeles*, 234 Cal. App. 3d 1630 (1991); *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998).)

## IV.    THE REQUEST TO INTERVENE SHOULD BE DENIED

### A.    EDC Does Not Meet the Standard for Intervention as of Right

EDC fails to meet its burden on three of the elements it must establish to justify intervention as of right, providing this Court with three independent grounds to deny the motion.

1.    **EDC Lacks A "Significantly Protectable Interest" In The Permit Transfers**

To intervene as of right under Rule 24(a), EDC must demonstrate that it has a "significantly protectable interest" in the "transaction" that is the subject of this suit. (*Forest Conservation Council v. U.S. Forest Serv*., 66 F.3d 1489, 1493 (9th Cir. 1995).) "Whether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry." (*Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993).) It is the movant's burden to demonstrate that the interest is "significantly protectable." (*Ibid*., citing *Portland Audubon Soc. v. Hodel*, 866 F.2d 302, 308 (9th Cir.).)

A court determines whether a proposed intervenor has a "significantly protectable" interest by examining "whether the 'interest is protectable under some law' and whether 'there is a relationship between the legally protected interest and the claims at issue.'" (*Wilderness Soc'y*, 630 F.3d at 1180-1181; *Nw. Forest Res. Council*, 82 F.3d at 837.) "If these two core elements are not satisfied, a putative intervenor lacks any 'interest' under Rule 24(a)(2), full stop." (*Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc*., 54 F.4th 1078, 1088 (9th Cir. 2022).)

While a significant protectable interest may be found if a legally protected interest will "suffer a practical impairment" in the pending litigation, (*State ex rel. Lockyer v. United States*, 450 F.3d 436, 441), "an undifferentiated, generalized interest in the outcome of an ongoing action" does not suffice. (*United States v. Alisal Water Corp*., 370 F.3d 914, 920 (9th Cir. 2004).) There must also be an actual "relationship between the legally protected interest and the claims at issue." (*Forest Conservation Council*, 66 F.3d at 1493 (citation omitted).) In other words, the proposed intervenor must show that resolution of the claims will actually affect it. (See *Montana v. United States Envtl. Protection Agency*, 137 F.3d 1135, 1141-42 (9th Cir. 1998) [requisite interest lacking because proposed intervenors did not have type of permit that was the subject of action]; *Greene v. United States*, 996 F.2d 973,

9

976-78 (9th Cir. 1993) [requisite interest lacking when resolution of plaintiff's claims would not affect applicant directly].)

EDC asserts two alleged protectable interests: (1) its participation in the administrative process leading to this litigation; and (2) its generalized use and enjoyment of the environment in the County. (Motion, pp. 18-20.) Neither of these provides EDC with the requisite "significantly protectable interest."

### a.    Participation in County Process Not Sufficient

EDC argues its opposition to the FDP transfer during the administrative process as a member of the public, including participation in hearings and submission of written comments, and the subsequent filing of a permissive appeal to the Board, means that it should be granted leave to intervene in this action. (See Motion, p. 18.) While this argument has superficial appeal, it is wrong because the legal standards are different:  participation in the County process does not automatically grant EDC a "significantly protectable interest" under Rule 24(a).

EDC has no independent interest separate and apart from the County in the interpretation of Chapter 25B. Chapter 25B does not regulate the environmental matters that EDC's mission is focused on, but rather the transfer of permitting paperwork. EDC has no interest in that permit transfer process, other than as a proxy to further wage war against Sable. *Sable* initiated that process in order to comply with the County Code. (Dkt. 13-1, 245-317.) *Sable* submitted the applications, *Sable* spent months submitting materials and working with County staff to answer questions, and *Sable* agreed to be bound by the terms of the FDPs.

EDC played *no role* until the Planning Commission hearing in October 2024, when it merely exercised its right to provide comment, the same as other members of the public. (Dkt. 13-9, 545-13-10, 221.) Only after the Planning Commission granted the applications to transfer the permits did EDC appear formally, taking advantage of an administrative process that permits virtually anyone to appeal a Chapter 25B decision. (*See* Chapter 25B-12(b) [allowing appeals by "any interested

10

person adversely affected by such decision"].) The mere participation in that appellate process, however, does not amount to a "significant protectable interest" within the meaning of Rule 24. (See *Greater Yellowstone Coal., Inc. v. Servheen*, 2008 WL 11348733, at *1 (D. Mont. Apr. 25, 2008) [denying intervention of group of conservation organizations because "participation in the administrative process … by itself, is not sufficient to constitute a 'significant protectable interest.'"])

EDC argues that *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996) stands broadly for the proposition that any group involved in an administrative proceeding, no matter how permissive or irrelevant that involvement was, has a protectable interest. But *Glickman* is inapposite and in fact demonstrates why intervention is *not* appropriate here. The Ninth Circuit explained that, not only must the proposed intervenors demonstrate a legally protected interest, but that "interest must relate to the litigation in which it seeks to intervene." (*Ibid.*) Here, the disputes at issue—the legal impact of a tie vote under, and the requirements of, Chapter 25B—are far removed from EDC's environmental advocacy and "efforts to support the transition away from oil." (Dkt. 25-4, ¶ 6.) (describing "Sierra Club's interest in this case"). The FDP transfer does not authorize restart or have *any impact whatsoever* on the physical environment. (E.g., Dkt. 13-10, 228 (Planning staff noting "[r]estart is [a] separate process under regulatory authority of several state and federal agencies"); Dkt. 13-21, 397 [Supervisor recognizing that restart "is not what we're doing here"].)

Indeed, the cases on which *Glickman* relies further demonstrate that EDC does not have the requisite interest here: all involve instances where the environmental organizations specifically sponsored a law's enactment or the establishment of a particular environmental protection (such as establishing a wildlife sanctuary). The County, not EDC, passed Chapter 25B over two decades ago. Petitioners, not EDC, are bound by the FDPs, and Petitioners, not EDC, are the ones affected by the outcome of this litigation. If Petitioners prevail, an oil company (Sable) will be

11

named on the FDPs, but if Petitioners do not prevail, an oil company (ExxonMobil affiliates) will be named on the FDPs. And, regardless of who is on the permit, neither Sable nor ExxonMobil can restart the pipeline without the consent and authority of OSFM because state and federal law regulate oil and gas operations in California. Granting a non-party standing to intervene as of right on someone else's permit transfer application—when it has no direct interest in the property at issue— is a slippery slope and this Court should decline to do so.

### b. General Interest in Environment is Insufficient

EDC's alternative proposed protectable interest—its "decades of strategic engagement to prevent oil and gas development" in the County and "enjoyment of the region"—is not adequately specific or unique to meet Rule 24(a)'s standard.

The proposed intervenors are environmental conservation organizations operating in Santa Barbara County and whose members live and recreate in the affected area. (See, e.g., Dkt. 25-2, ¶ 4; Dkt. 25-7, ¶ 3; Dkt. 25-4 ¶ 6; Dkt. 25-5, ¶ 4; Dkt. 25-6, ¶ 4.) They also express concern about the "County's process" and whether a decision here could "affect other County decisions as well." (Dkt. 25-5, ¶ 11.) EDC's interests are identical to the general public's interest and are too generalized and undifferentiated to satisfy the requirements of Rule 24(a). (See, e.g., *Pub. Serv. Co. of N.H.*, 136 F.3d 197, 205 (1st Cir. 1998) [advocates' purported interest in lower electricity rates was identical to "every electricity consumer . . . and every person who does business with any electricity consumer" and did not mandate intervention]; see also *Roman Cath. Bishop of Monterrey v. Cota*, No. CV158065JFWRAOX, 2016 WL 320741, at *5 (C.D. Cal. Jan. 8, 2016), aff'd sub nom. *Roman Cath. Bishop of Monterey v. Cota*, 711 F. App'x 428 (9th Cir. 2018) [proposed intervenors' 'concern[] with the preservation of Santa Barbara's beautiful Santa Ynez Valley, including the health, safety, welfare, and environment of all citizens . . . who are and will be impacted by the construction and expansion of the hotel/casino'" was "simply not an interest permitting intervention."].)

1            **c.**     **EDC's Generalized Interest Lacks a Relationship to**

2                    **the Claims at Issue**

3        Rule 24(a) requires a "relationship between the legally protected interest and

4 the claims at issue" in the action. As explained above, the dispute here is merely

5 about Chapter 25B's process to transfer FDPs. It has no impact on "the region" of

6 the County or its environment. Resolution of this dispute neither authorizes nor

7 prohibits pipeline restart, nor does it have any other physical effects on the

8 environment. It is a paperwork change. (See, e.g., Dkt. 1, Exh. 7 [Board discussing

9 how Chapter 25B's process "is an administrative action" and approving the transfer

10 simply ensures the FDP "actually matches the company that owns the pipeline."];

11 *see also supra*, Section II.C.)  EDC's "decades of strategic engagement to prevent

12 oil and gas development" are thus not implicated by this dispute. (*Forest*

13 *Conservation Council*, 66 F.3d at 1493 (citation omitted).)

14        Again, *Glickman* is instructive. There, a timber industry association brought

15 suit against federal agencies to release sales under the 1995 Rescission Act. (82 F.3d

16 at 828.) The district court refused to allow several environmental organizations to

17 intervene, and the proposed intervenors appealed, asserting their non-profit status

18 and longstanding environmental interests. (*Id*. at 837.) The Ninth Circuit denied

19 intervention, noting that the statute under which the case was brought did not

20 implicate these interests. (*Id.* at 837-38.)  The same is true here:  Chapter 25B does

21 not implicate the environment or environmental law, and thus the required

22 connection between EDC's legal interest and this case is lacking.

23        EDC cannot meet its burden to demonstrate that its articulated interest here

24 has a "relationship … [to] the claims at issue" in this case, as Rule 24(a) requires.

25 (*Wilderness Soc'y*, 630 F.3d at 1180-1181.) In fact, the two cases EDC relies on to

26 support its argument that a general interest in environmental protection suffices to

27 justify intervention are distinguishable on this basis. (Motion, p. 19:13-17.) In

28 *Citizens for Balanced Use v. Montana Wilderness Ass'n*, conservation groups

13

challenged the district court's denial of their motion to intervene in a case challenging an order restricting recreational vehicle use in a section of a national forest, claiming this violated the Montana Wilderness Study Act ("MWSA"). (647 F.3d 893, 895 (9th Cir. 2011).) The court found the groups had a significantly protectable interest in preserving the wilderness character of the Study Area which would be directly affected by the claims at issue in the case. (*Id.*, at 897). Similarly, in *United States v. Carpenter*, the court found that a conservation group seeking to intervene in a Quiet Title Act action and settlement that would impact use of a logging road in a protected wilderness area had a significantly protectable interest in preserving the wilderness area that was directly impacted by the action and settlement. (526 F.3d 1237, 1238-40 (9th Cir. 2008).)

*Center for Biological Diversity v. Lubchenco*, No. 09-04087 EDL, 2010 WL 1038398 (N.D. Cal. Mar. 19, 2010) underscores the necessity for a direct and substantial connection between the intervenor's interests and the legal claims at issue. In *Lubchenco*, the district court denied Alaska's motion to intervene in a case challenging the National Marine Fisheries Service's decision not to list the ribbon seal under the Endangered Species Act ("ESA"). Because the case only challenged the listing decision under the ESA, and not the management of wildlife directly, Alaska's asserted interests in wildlife management, citizen welfare, and energy policy were deemed too remote and speculative to warrant intervention. (*Id.* at *2, *7.) Similarly, EDC's generalized environmental interests do not establish a direct, legally protectable interest in the County's process for transferring an FDP from one oil company to another.

### 2.    Disposition Will Not Impair EDC's Purported Interests

Even if EDC could establish that it had a protectable interest here (and it cannot) it nonetheless fails the second prong of Rule 24(a)'s test, because EDC will not "suffer a practical impairment of its interest in the environment as a result of the pending litigation" (*Lockyer*, 450 F.3d at 441): whether or not the County is

14

1    compelled by this Court to transfer the FDPs has no bearing on restart or any other

2    aspect of the environment. Moreover, EDC has substantial other legal means of

3    protecting its interests, which EDC is actively pursuing. (*id.* "Even if this lawsuit

4    would affect the proposed intervenors' interests, their interests might not be impaired

5    if they have 'other means' to protect them.") (quotation omitted.) As noted above,

6    EDC and organizations with similar environmental interests have sued OSFM and

7    sought injunctive relief in its ongoing effort to prevent restart of the Facilities.

8    (*Environmental Defense Center et al. v. California Dept. of Forestry and Fire*

9    *Protection et al.*, No. 25CV02247 (Santa Barbara County Superior Court, filed April

10   15, 2025).)

11          EDC argues that an adverse decision would prohibit it from ensuring Sable's

12   "financial capacity, operator capability, and compliance record to safely operate the

13   Facilities." (Motion, p. 21.) This argument is a red herring: it the job of state and

14   federal regulators to evaluate Sable's proposals for restarting the pipeline and its

15   operations for the Facilities, not the County's or EDC's. EDC fails to actually quote

16   Chapter 25B, which does not require broad review of "financial capacity, operator

17   capability, and compliance record to safely operate the Facilities." Rather, with

18   respect to finances, Chapter 25B merely requires that existing financial guarantees

19   have been updated to reflect the new owner/operator (§§ B-9(a)(2), B9(b)(2), B-

20   10(2), and that the new guarantor provide financial instruments "necessary to

21   comply with the permit and any county ordinance," (§ B-9(e)(1)). And with respect

22   to operator capability and compliance, Chapter 25B requires only that the new

23   operator/owner be familiar with critical safety plans (§B-10(6), (7), (9), and that the

24   County review records to determine that the "proposed operator does not reflect a

25   record of non-compliant or unsafe operations systemic in nature for similar

26   facilities," (§ B-10(9).) EDC has no separate or special interest in ensuring

27   compliance with these provisions over and above the general public or the County.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

### 3.    EDC's Putative Interests are Adequately Represented by Defendants

Even if EDC had a significantly protectable interest in this action (and it does not), that interest is fully represented by the County and Board who are presumed to have an adequate interest in defending and interpreting their own Code. EDC fails to explain how the County is not best-positioned to advocate for the construction of Chapter 25B or how EDC's participation in this action would improve the Court's ability to construe the statute. (See Motion, pp. 21-25.)

There is "an assumption of adequacy when the government is acting on behalf of a constituency that it represents. In the absence of a very compelling showing to the contrary, it will be presumed that a state [or local government] adequately represents its citizens when the applicant shares the same interest." (*Prete, et al. v. Bradbury, et al.*, 438 F.3d at 956 (quoting *Arakaki, et al. v. Cayetano, et al.*, 324 F.3d at 1086); *Lockyer v. U.S*, 450 F.3d at 443; see also *Forest Conservation Council*, 66 F.3d at 1499 [presumption of adequacy ""when the representative is a governmental body or officer charged by law with representing the interests of the absentee'"] (citation omitted); *Am. Nat'l Bank & Trust Co.*, 865 F.2d at 147 [applying rule to city's representation of citizens' interests]; *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 740 (9th Cir. 2011). A mere difference in litigation strategy and vague speculation of inadequate representation is not enough to justify intervention. (*Lucent Techs.,* 642 F.3d at 740-41.)

There is no indication that the County lacks an interest in defending its construction of Chapter 25B—a chapter whose purpose is not to protect the environment or society broadly, but rather ensure that new owners, operators, and guarantors of oil and gas facilities have limited County oversight over a subset of issues not otherwise governed by federal or state law. EDC asserts that it wants the County to "strongly defend the decision to withhold transfer of the Permits," and speculates that the County "may not be capable of making all of the same arguments

16

as Proposed Intervenors or willing to do so." (Motion, p. 22:3-5, 13-14.) However, the whole point of this case is that the County did not make a decision to withhold transfer of the permits; rather, the Planning Commission made the decision to *grant* transfer, and the Board failed to set that decision aside.

EDC cites two cases where intervention was granted despite the applicants' sharing the same goals as the government in an attempt to rebut the presumption that the County's representation is adequate. (Motion, pp. 21-22.) But *Citizens for Balanced Use* and *Berg* are distinguishable because in those cases there was evidence that the agencies would not defend the law strongly. (See *Citizens for Balanced Use*, 647 F.3d at 895-96, 899 [Forest Service defended land management plan adopted under court order while separately appealing order requiring the plan]; *Berg*, 268 F.3d at 823 [city expressly stated it would not represent proposed intervenors' interests].) Here, EDC's alleged interests are either fully concordant with the County's or outside the scope of the legal questions at issue.

EDC also argues that it has a separate, specific focus on the natural environment (Motion, p. 23:8-10) but that is irrelevant for the reasons discussed above: permit transfer has no environmental impact, and EDC has other places to seek redress of its claims regarding the regulatory framework required for pipeline restart. (*See supra*, section IV.A). EDC finally argues it has unique concern over Sable's financials and technical capability heightened and distinct from the County because it was "directly involved in the cleanup efforts after the 2015 spill" and because its members use the County for a variety of recreational uses. (Motion, pp. 23:26-27; 24:1.) Setting aside the absurdity of the argument that EDC's recreational use of County land is somehow greater than the County's own interest in it, or that the County that suffered an oil spill was not involved in its clean up, this argument is again irrelevant because ***Chapter 25B does not have any environmental impacts***. EDC's interests are outside the scope of this case.

1    EDC further presents no evidence for its conclusory statement that the County

2    will not adequately defend its interests and thus has failed to make the required "very

3    compelling showing" that the government representation is not adequate. (*Prete*, 438

4    F.3d at 956 (citation omitted).) EDC will not contribute any unique, relevant

5    arguments to this action that the County is not already best positioned to present and

6    will instead seek to expand the issues beyond the scope of the issue presented in this

7    case.[3] Its request for intervention by right should be denied.

8    ### B.    EDC Does Not Meet the Standard for Permissive Intervention

9    Permissive intervention should also be denied because none of the grounds

10    developed by the Ninth Circuit for permitting intervention are met here. (*Spangler*

11    *v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).)

12    When a proposed intervenor does not bring new claims, the Court evaluates

13    permissive intervention under the discretionary factors adopted by the Ninth Circuit.

14    (*Freedom from Religion Foundation, Inc. v. Geithner*, 644 F.3d 836, 843-44 (9th

15    Cir. 2011); Fed. R. Civ. P. 24(b).) Rule 24(b) "necessarily vests 'discretion in the

16    district court to determine the fairest and most efficient method of handling a

17    case…'" (*Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989) (quotation omitted))

18    and a court has broad discretion to deny intervention. (*Lippman v. City of Los*

19    *Angeles*, 234 Cal. App. 3d 1630 (1991); *Donnelly v. Glickman*, 159 F.3d 405, 412

20    (9th Cir. 1998); *Orange v. Air Cal.*, 799 F.2d 535, 539 (9th Cir. 1986).)

21    The Ninth Circuit outlines a nonexclusive list of relevant factors for the

22    Court's consideration in exercising its discretion, including the nature and extent of

23    the intervenors' interest, adequacy of representation of that interest, potential delay

24    resulting from intervention, and whether intervenors will significantly contribute to

25    the full development of factual and legal issues. (*Spangler*, 552 F.2d at 1329.)

26    

27    [3] EDC claims its Proposed Answer evidences divergent interests but the only unique
argument EDC points to is its assertion that the FDPs are no longer valid, a claim

28    that is not at issue and beyond the scope of this matter. (Motion, p. 23:18-21;
Proposed Answer para 2).

18

Judicial economy and potential prejudice to the original parties are also relevant. (*Venegas*, 867 F.2d at 530; Fed. R. Civ. P. 24(b).)

EDC wholly fails to demonstrate that exercise of the Court's discretion to permit intervention is appropriate.

### 1.    The First Two Factors Weigh Against Granting Permissive Intervention

Regarding the first factor, the nature and extent of the intervenors' interest, as discussed in Section IV.A, EDC lacks a significant protectable interest because this case does not relate to environmental conditions or restarting the pipelines – it is purely about an administrative function of the County and transferring FDPs. (*Fireman's Fund Ins. Co. v. Gerlach*, 56 Cal. App. 3d 299 (1976) [asserted interest is sufficiently direct only when it is "of such a direct and immediate character that [the intervenor] will either gain or lose by the direct legal operation and effect of the judgment].) Regarding the second factor, adequacy of representation of the interest, as discussed in Section IV.A.2, EDC's legitimate interests—to the extent it has any—are adequately represented by the County.

### 2.    Permitting Intervention Will Negatively Impact Judicial Economy and Prejudice the Original Parties

This case, at least in Phase I, is narrow by design. The existing Parties have agreed to a tight, focused briefing schedule without discovery or the admission of any evidence beyond the administrative record. Once the legal issues raised by Phase I are resolved, this case will either be over or will proceed to a Phase II proceeding on Petitioners' constitutional claims.

EDC's motion has already disrupted this schedule, requiring Petitioners to brief intervention while also preparing their opening brief on summary judgment, and every aspect of EDC's motion indicates its intent to further enlarge the issues in this narrow case. Rather than focusing on Chapter 25B's language and requirements, EDC makes policy arguments regarding oil and gas operations, including whether

19

they should proceed in the County at all, that are simply not at issue and are far outside the narrow confines of Chapter 25B. Permitting intervention will thus expand the issues all existing Parties must address, to no benefit because those issues have nothing to do with whether the County was required to transfer the permits under its own Chapter 25B procedures.

Permitting intervention will only serve to burden the Court and Parties, and prolong or unduly delay the litigation, impacting judicial economy and prejudicing the original parties in the adjudication. (*Simpson Redwood Co. v. California*, 196 Cal. App. 3d 1192 (1987) [addressing "potential delay and confusion which arguably might flow from intervention" when determining whether action is enlarged]; *People ex rel. State Lands Comm'n v. City of Long Beach*, 183 Cal. App. 2d 271 (1960) ["intervention may be denied if [purposes of intervention] are outweighed by the rights of the original parties to conduct their lawsuit on their own terms"].)

### 3.    EDC Will Not Contribute to Development of Facts

EDC will not "significantly contribute" to full development of factual issues. Phase I involves only an assessment of a closed administrative record; there are no facts to develop. And Phase II involves Petitioners' constitutional claims if Chapter 25B were to be interpreted to prohibit the transfer of a fully-vested FDP, or to permit the County to regulate oil pipeline safety notwithstanding the exclusive jurisdiction of PHMSA, delegated to OSFM. None of this requires development of facts in the possession of EDC.

### 4.    EDC Will Not Significantly Contribute to Adjudication of Legal Issues

Similarly, EDC cannot "significantly contribute to … the just and equitable adjudication of the legal questions presented." (*Spangler*, 552 F.2d at 1329.) EDC has made no showing that its intervention in this suit will "assist the court in its orderly procedures leading to the resolution of this case" because it fails to show how the County cannot fully and adequately defend its own conduct and its own

20

1  Code. (*Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002).)

2  Furthermore, any contribution EDC might make to the Court's understanding of the

3  legal issues could be made through an amicus brief. (*Or. Envt'l Council v. Or. Dept.*

4  *of Envt'l Quality*, 775 F. Supp. 353, 360 (D. Or. 1991) ("Where proposed intervenors

5  would present no new questions to the court, conferring amicus status is generally

6  preferred over a grant of permissive intervention.") (citing *Bush v. Viterna*, 740 F.2d

7  350, 359 (5th Cir. 1984)).

8  **V.    CONCLUSION**

9      EDC fails to meet the requirements of Rule 24(a) and Rule 24(b), and the

10  court should deny the motion to intervene.

11

12

13  Dated: June 20, 2025              Respectfully submitted,

                                 LATHAM & WATKINS LLP

14

15                           By: */s/Jessica Stebbins Bina*

16                                Jessica Stebbins Bina
                              10250 Constellation Blvd., Suite 1100
                              Los Angeles, CA 90067

17                                Tel.: (424) 653-5500
                              Fax: (424) 653-5501

18                                Attorneys for Plaintiffs and

19                                Petitioners Sable Offshore Corp.,
                              Pacific Pipeline Company, and Pacific
                              Offshore Pipeline Company

20

21                            O'MELVENY & MYERS LLP

22                           By: */s/Lauren Kaplan*

23                                Lauren Kaplan (Bar No. 294703)
                              lkaplan@omm.com

24                                Dawn Sestito (Bar No. 214011)
                              dsestito@omm.com

25                                400 South Hope Street, 19th Floor
                              Los Angeles, California  90071

26                                Telephone:  +1 213.430.6000
                              Facsimile:   +1 213.430.6407

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Attorneys for Petitioners and
Plaintiffs Exxon Mobil Corporation,
Mobil Pacific Pipeline Company, and
ExxonMobil Pipeline Company

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:25-CV-04165-DMG-(AGRX)
PETITIONERS' OPPOSITION TO MOTION TO INTERVENE

## **ATTESTATION STATEMENT**

I, Jessica Stebbins Bina, am the ECF User whose identification and password are being used to the file this stipulation. Pursuant to Local Rule 5-4.3.4(a)(2)(i), I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.


*/s/ Jessica Stebbins Bina*
Jessica Stebbins Bina

23

1

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants, hereby certifies that this Petitioners' Opposition to Motion to Intervene contains 6,744 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 20, 2025                          /s/ Jessica Stebbins Bina

                                             Jessica Stebbins Bina

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

24

CASE NO. 2:25-CV-04165-DMG-GRX
PETITIONERS' OPPOSITION TO MOTION TO
INTERVENE