LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
TARA C. RENGIFO (Bar No. 307670)
trengifo@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622
Fax: (805) 962-3152

*Attorneys for Environmental Defense Center,
Get Oil Out!, Santa Barbara County Action
Network, Sierra Club, and Santa Barbara
Channelkeeper*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| SABLE OFFSHORE CORP., et al.<br><br>   Petitioners/Plaintiffs,<br><br> v.<br><br>COUNTY OF SANTA BARBARA, et al.<br><br>   Respondents/Defendants,<br><br> and<br><br>ENVIRONMENTAL DEFENSE CENTER, et al.<br><br>   Proposed Defendants/Intervenors. | Case No.: 2:25-cv-04165-DMG-(AGRx)<br><br>**PROPOSED INTERVENORS' REPLY IN SUPPORT OF MOTION TO INTERVENE**<br><br>Hon. Dolly M. Gee<br><br>Hearing: Vacated *(previously July 11, 2025)* |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... 3

INTRODUCTION ............................................................................... 5

ARGUMENT ...................................................................................... 6

   I.    This Court Should Grant Intervention as of Right. ..................................... 6

      A.   Proposed Intervenors Have a Significantly Protectable Interest that
May be Impaired by the Disposition of this Case. ................................ 6

         1.   Proposed Intervenors Have Demonstrated Three Significantly
Protectable Interests to Support Intervention as of Right. ................ 6

            a.   Proposed Intervenors Participated in the Administrative Process
and Disposition of This Litigation Could Resolve the Issues
Raised in Their Appeal. ............................................................... 7

            b.   Proposed Intervenors Have a Legally Protectable Interest in the
Use and Enjoyment of the Environment. ...................................... 8

            c.   EDC Directly Supported the Adoption of Chapter 25B. ............... 10

         2.   Proposed Intervenors' Interests Directly Relate to This Case. ............. 10

         3.   The Disposition of This Action May, As A Practical Matter, Impair
or Impede Proposed Intervenors' Ability to Protect Their Interest. ......... 14

      B.   Proposed Intervenors Have Made a Compelling Showing that the
County May Not Adequately Represent Their Interests ................................ 16

   II.   Alternatively, This Court Should Grant Permissive Intervention. ...................... 18

   III.   Proposed Intervenors Should be Allowed to Participate in All Phases of
the Litigation ......................................................................................... 20

   IV.   Conclusion .......................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*California Dump Truck Owners Ass'n v. Nichols,*
  275 F.R.D. 303 (E.D. Cal. 2011) ...........................................................................10

*Citizens for Balanced Use v. Mont. Wilderness Ass'n,*
  647 F.3d 893 (9th Cir. 2011) ...........................................................................8, 16

*County of Fresno v. Andrus,*
  622 F.2d 436 (9th Cir. 1980) ...........................................................................18

*Ctr. for Biological Diversity v. Lubchenco,*
  2010 WL 1038398 (N.D. Cal. Mar. 19, 2010) ...........................................14

*Forest Conservation Council v. U.S. Forest Serv.,*
  66 F.3d 1489 (9th Cir. 1995) ...........................................................................17

*Golden Gate Rest. Ass'n v. City & County of San Francisco,*
  No. C 06-06997 JSW, 2007 WL 1052820 (N.D. Cal. Apr. 5, 2007) ......................17

*Greene v. United States,*
  996 F.2d 973 (9th Cir. 1993) ...........................................................................11, 12

*Levin Richmond Terminal Corp. v. City of Richmond,*
  482 F. Supp. 3d 944 (N.D. Cal. 2020) ...........................................................21

*NW Forest Res. Council v. Glickman,*
  82 F.3d 825 (9th Cir. 1996) ...........................................................................7, 13

*Pavlock v. Holcomb,*
  337 F.R.D. 173 (N.D. Ind. 2020) ...........................................................20, 21

*Pub. Serv. Co. of New Hampshire v. Patch,*
  136 F.3d 197 (1st Cir. 1998) ...........................................................................9

*Roman Cath. Bishop of Monterrey v. Cota,*
  No. CV158065JFWRAOX, 2016 WL 320741 (C.D. Cal. Jan. 8,
  2016), *aff'd sub nom. Roman Cath. Bishop of Monterey v. Cota,*
  711 F. App'x 428 (9th Cir. 2018) ...........................................................9, 10

*Sagebrush Rebellion, Inc. v. Watt,*
  713 F.2d 525 (9th Cir.1983) ...........................................................................10, 16

*Sierra Club v. United States EPA*,
    995 F.2d 1478 (9th Cir. 1993) ................................................................................21

*Smith v. L.A. Unified Sch. Dist.*,
    830 F.3d 843 (9th Cir. 2016) ..................................................................................21

*Spangler v. Pasadena City Bd. of Ed.*,
    552 F.2d 1326 (9th Cir. 1977) ..........................................................................18, 19

*Sw. Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001) ..............................................................................5, 17

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972) ................................................................................................16

*United States v. Carpenter*,
    526 F.3d 1237 (9th Cir. 2008) ..................................................................................8

*United States v. City of Los Angeles*,
    288 F.3d 391 (9th Cir. 2002) ..................................................................................18

*United States v. State of Or.*,
    745 F.2d 550 (9th Cir. 1984) ..................................................................................20

*Washoe Tribe of Nevada & California v. Greenley*,
    674 F.2d 816 (9th Cir. 1982) ..................................................................................20

*WildEarth Guardians v. Nat'l Park Serv.*,
    604 F.3d 1192 (10th Cir. 2010) ................................................................................8

*Wilderness Soc. v. U.S. Forest Serv.*,
    630 F.3d 1173 (9th Cir. 2011) ............................................................................6, 17

**Rules**

Federal Rule of Civil Procedure § 24(a) ........................................................................6

Federal Rule of Civil Procedure § 24(b) .................................................................6, 19

Federal Rules of Civil Procedure § 24(a)(2) ..............................................................22

Santa Barbara Cnty., Cal., Code § 25B-1 .............................................................6, 12

Proposed Intervenors' Reply in Support of Motion to Intervene

# INTRODUCTION

The Court should grant the request of Proposed Defendant-Intervenors Environmental Defense Center ("EDC"), Get Oil Out! ("GOO!"), Santa Barbara County Action Network ("SBCAN"), Sierra Club, and Santa Barbara Channelkeeper ("SBCK") (collectively, "Proposed Intervenors") to intervene as of right, or in the alternative, to permissively intervene, in this case.[1] Chapter 25B lies at the center of this dispute. Its purposes "are *to protect public health and safety, and safeguard the natural resources and environment of the county of Santa Barbara*, by ensuring that safe operation, adequate financial responsibility, and compliance with all applicable county laws and permits are maintained during and after all changes of owner, operator or guarantor of certain oil and gas facilities." Santa Barbara Cnty., Cal., Code § 25B-1 (emphasis added). Accordingly, a permit transfer is not merely a "paperwork change." ECF No. 29 at 25.

This litigation proceeds directly from Proposed Intervenors' advocacy of their interests in the Chapter 25B administrative proceedings, thereby warranting intervention in this case. Proposed Intervenors have significant interests in defending the County's decision to proceed as required by Chapter 25B. They are public interest groups who have advocated for decades to protect the environment and the Santa Barbara community from the risks of producing crude oil. Proposed Intervenors have a protectable interest in preserving and enjoying the Gaviota Coast and the sensitive watersheds and resources through which the Las Flores Pipeline System route passes. They have also made a compelling showing that the County may not adequately represent their interests in this litigation—a point that the County did not oppose. ECF No. 26.

Proposed Intervenors have demonstrated that they meet all requirements for intervention as of right under Rule 24(a) and that permissive intervention under Rule 24(b) is also appropriate and warranted.

---

[1] "Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the [proposed answer], and declarations supporting the motion as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

**ARGUMENT**

## I.    This Court Should Grant Intervention as of Right.

Proposed Intervenors have a clear interest in the subject of this litigation. They have demonstrated that the disposition of this suit may, as a practical matter, impair their ability to protect their interests. There is also overwhelming evidence that their interests are inadequately represented by Respondents.[2] The arguments set forth by Petitioners/Plaintiffs Sable Offshore Corp. ("Sable Offshore"), Pacific Pipeline Company ("PPC"), and Pacific Offshore Pipeline Company ("POPCO") (collectively, "Sable") and Petitioners/Plaintiffs Exxon Mobil Corporation ("ExxonMobil"), Mobil Pacific Pipeline Company ("MPPC"), and ExxonMobil Pipeline Company ("EMPCo") (collectively, "ExxonMobil Affiliates") (together with Sable, "Petitioners") are without merit.

### A.    Proposed Intervenors Have a Significantly Protectable Interest that May be Impaired by the Disposition of this Case.

"In evaluating whether Rule 24(a)(2)'s requirements are met, [Courts] normally follow 'practical and equitable considerations' and construe the Rule 'broadly in favor of proposed intervenors.'" *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (*citing United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir.2002)). Proposed Intervenors have established significantly protectable interests to warrant intervention as of right. Their interests fall squarely within the scope of the protections afforded under Chapter 25B, which is the underlying subject matter in Phases I and II.

#### 1.    Proposed Intervenors Have Demonstrated Three Significantly Protectable Interests to Support Intervention as of Right.

Petitioners contest that Proposed Intervenors have a significantly protectable interest in defending the County's denial of the permit transfers—an issue central to this litigation. ECF No. 29 at 15—20. Proposed Intervenors have demonstrated sufficiently specific and substantial interests to warrant intervention, which include: (1) participation in the administrative proceedings; (2) their members' interests in "safeguard[ing] the

---

[2] Petitioners do not dispute that the Motion was timely.

natural resources and environment of the county of Santa Barbara, by ensuring [] safe operation, adequate financial responsibility, and compliance with all applicable county laws and permits" during a change of owner, operator, and/or guarantor of oil and gas facilities; and (3) their interests in upholding Chapter 25B—the adoption of which EDC actively supported.

      *a.*    *Proposed Intervenors Participated in the Administrative Process and Disposition of This Litigation Could Resolve the Issues Raised in Their Appeal.*

First, Petitioners claim that participation in the administrative process alone is insufficient to show a significantly protectable interest under Rule 24(a), citing *Greater Yellowstone Coal., Inc. v. Servheen*. ECF No. 29 at 16–17; 2008 WL 11348733, at *1 (D. Mont. Apr. 25, 2008) (denied intervention as of right because only alleged an interest from participating in the administrative process but granted permissive intervention). However, the Ninth Circuit expressly recognized in *NW Forest Res. Council v. Glickman* that "the cases in which we have allowed public interest groups to intervene generally share a common thread: … these groups were directly involved in the enactment of the law or *in the administrative proceedings out of which the litigation arose*." *NW Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996), *as amended on denial of reh'g* (May 30, 1996) (emphasis added). Here, Proposed Intervenors assert several interests in this case, including participation in the administrative proceedings.

    Proposed Intervenors participated at every possible stage of the administrative proceedings, including filing an appeal, which is limited to "interested person *adversely affected by such decision*"—not "virtually anyone." ECF No. 29 at 16; § 25B-12(a)(1). A decision in this case could impair Proposed Intervenors' ability to protect their right to participate in the administrative proceedings, and particularly, the resolution of their appeal given the Board's tie vote. Petitioners are essentially asking this Court to decide Proposed Intervenors' appeal. *See, e.g.,* ECF No. 1 at ¶ 97. If this Court determines the

Permits[3] must be transferred rather than, for example, offering Petitioners an opportunity to re-apply under Chapter 25B with the additional information requested by the Board, this litigation will essentially bypass the administrative framework and Proposed Intervenors' role in the decision-making process would be eliminated. *See, e.g.,* AR-007141.

Petitioners not only misunderstand the express intent of Chapter 25B—describing its purpose as mere "permitting paperwork"—but also Proposed Intervenors' interest in advocating for strict adherence to its requirements. ECF No. 29 at 16. Their interest in upholding the required findings under Chapter 25B was, and continues to be, to ensure adequate financial resources and skills to cleanup and remediate any oil spill or accident and during abandonment. Their interest in the outcome of the litigation is therefore direct, specific, and substantial.

> b.   *Proposed Intervenors Have a Legally Protectable Interest in the Use and Enjoyment of the Environment.*

Second, Proposed Intervenors' concern for the environment constitutes an independent protectable interest sufficient to support intervention. *See Citizens for Balanced Use v. Mont. Wilderness Ass'n,* 647 F.3d 893, 898 (9th Cir. 2011) ("Applicants have a significant protectable interest in conserving and enjoying the wilderness character of the Study Area . . . ."); *United States v. Carpenter*, 526 F.3d 1237, 1240 (9th Cir. 2008) ("[I]ntervenors were entitled to intervene because they had the requisite interest in seeing that the wilderness area be preserved for the use and enjoyment of their members."); *see also WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010) (declaring it "'indisputable' that a prospective intervenor's environmental concern is a legally protectable interest") (citation omitted).

The two cases Petitioners cite are inapplicable and do not show that Proposed Intervenors' environmental interests are overly generalized. ECF No. 29 at 18. The court

---

[3] "Permits" refer to Nos. 87-DP-032cz (RV06), 88-DPF-033 (RV01)z, 88-CP-60 (RV01), 88-DPF-25cz, 85-DP-66cz, 83-DP-25cz, 93-FDP-015, and 74-CP-11(RV1).

in *Pub. Serv. Co. of New Hampshire v. Patch* established "that an undifferentiated,
generalized interest in the outcome of an ongoing action is too porous a foundation on
which to premise intervention as of right." 136 F.3d 197, 205 (1st Cir. 1998). There, a
citizens' group of several hundred residential and commercial electricity consumers
sought to intervene in an action brought by utility companies against the state of New
Hampshire's public utilities commission. *Id*. at 203–4. Although the intervenors argued
that they had an interest in the outcome of the litigation because it would affect their
ability to obtain lower utility rates, the First Circuit found that this theory "operates at too
high a level of generality," as "every electricity consumer in New Hampshire ... yearns
for lower electric rates." *Id*. at 205.

Conversely, here, Proposed Intervenors would be directly and substantially
affected in a practical sense by the Court's decision in this litigation, particularly as to
their use and enjoyment of the environment if Petitioners are successful in this litigation.
Transfer of the Permits to Sable based on the information provided to the decision-
makers during the administrative process would have the immediate effect of making
Sable directly responsible for the safe operation of the Facilities,[4] paying the cleanup
costs should a spill or accident occur during testing now or during restart if that should
occur, and paying for the eventual abandonment of the Facilities.

*Roman Cath. Bishop of Monterrey v. Cota* is also distinguishable. There, the court
held that the proposed intervenor "allege[d] only incidental 'quality of life' effects, and
ha[d] not alleged damage to its property." *Roman Cath. Bishop of Monterrey v. Cota*, No.
CV158065JFWRAOX, 2016 WL 320741, at *5 (C.D. Cal. Jan. 8, 2016), *aff'd sub nom.*
*Roman Cath. Bishop of Monterey v. Cota*, 711 F. App'x 428 (9th Cir. 2018). The court
also concluded that "there [was] no relationship between those interests and the claims
previously adjudicated in [the] case" because the action was a quiet title action and "[a]t

---

[4] "Facilities" include the Santa Ynez Unit (SYU), Las Flores Pipeline System, and Pacific
Offshore Pipeline Company Gas Plant.

no point did [the] quiet title action address issues affecting 'the health, safety, welfare, and environment of all citizens and residents' of the Santa Ynez Valley…." *Id.* at *6.

Unlike in *Roman Cath. Bishop of Monterrey*, Proposed Intervenors' interests are direct, specific, and substantial. Several of Proposed Intervenors' members live and recreate in areas where the Facilities covered by Chapter 25B are located. *See, e.g.,* Morton Decl. ¶ 5, Ellenberger Decl. ¶ 5, Hough Decl. ¶ 3, Katz Decl. ¶ 6. They walk the beaches along the Gaviota Coast, they hike the trails in Arroyo Hondo preserve and at Baron Ranch, and they enjoy wildlife photography throughout Cuyama Valley. *See, e.g.,* Ellenberger Decl. ¶ 7, Hough Decl. ¶ 5. Their interests stem from the same public health and environmental concerns that Chapter 25B seeks to address, which are central to this litigation. For these reasons, Proposed Intervenors have demonstrated protectable interests sufficient to support their intervention of right in this case.

### c.    EDC Directly Supported the Adoption of Chapter 25B.

Finally, EDC advocated for the adoption of Chapter 25B decades ago. "…[A] public interest organization has a significantly protectable interest in defending legislation it supported." *California Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 307 (E.D. Cal. 2011) (*citing Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir.1995) ("A public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported."); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir.1983). Petitioners fail to address this argument in their Opposition and therefore Proposed Intervenors' argument remains unopposed.

Taken together, Proposed Intervenors' significantly protectable interests have been demonstrated and their interests are sufficient to support intervention as of right.

### 2.    Proposed Intervenors' Interests Directly Relate to This Case.

To grant intervention as of right, the requisite interest need not be direct if it may be impaired by the outcome of the litigation. *California Dump Truck Owners Ass'n*, 275 F.R.D. at 306 (*citing Cascade Natural Gas Corp. v. El Paso Natural Gas Co*., 386 U.S.

129, 135–36 (1967)). Petitioners devote much of their argument to challenge whether Proposed Intervenors have demonstrated a relationship between their interests and the claims at issue in this case, but their position lacks merit. ECF No. 29 at 19. Their argument is premised on the erroneous claim that "Chapter 25B does not implicate the environment…" *Id.* To reach this faulty conclusion, Petitioners obscure Chapter 25B's purpose by only partially excerpting section 25B-1 and omitting the following language: "The purposes of this chapter are to protect public health and safety, and *safeguard the natural resources and environment of the county of Santa Barbara*…." ECF No. 29 at 10; § 25B-1 (emphasis added). Chapter 25B grew out of the County's increasing concern and need to protect the public from potentially inexperienced and/or undercapitalized oil and gas operators. AR003209. In adopting Chapter 25B, the Board specifically cited the following as the impetus for the ordinance:

> The County stands to suffer significant adverse environmental impacts and substantial harm to public health, safety, and welfare unless all owners and operators are a) capable of operating oil refineries and onshore oil and gas facilities that support the recovery of offshore reserves in a safe manner and in full compliance with permit conditions and applicable law, b) financially capable of paying the cost of proper abandonment, including remediation of contaminated soils and waters, and c) financially capable of paying for all legally compensatory damages or injuries suffered by any property or person that result from or arise out of any oil spill or other accident. *Id.*

The cases Petitioners cite, namely *Montana v. United States Envtl. Protection Agency* and *Greene v. United States* are inapposite. *See* ECF No. 29 at 15; *Montana v. United States Envtl. Protection Agency*, 137 F.3d 1135, 1141-42 (9th Cir. 1998); *Greene v. United States,* 996 F.2d 973, 976-78 (9th Cir. 1993). In both cases, the courts denied intervention as of right because the litigation had "'no immediate or any foreseeable, demonstrable effect upon the proposed intervenors.'" *Montana*, 137 F.3d at 1141 (citation omitted); *Greene*, 996 F.2d at 975-77. *Montana* involved a challenge to the

agency's decision to permit Tribes to be "treated as a state" (TAS) in setting water quality standards for permits. *Montana*, 137 F.3d at 1138. The court reasoned that resolution of the litigation would not affect proposed intervenors because they did not actually hold these permits such that "their uses of the land are not sources…regulated by the Clean Water Act." *Id.* at 1138. The court also held that they would not be subject to tribal jurisdiction because TAS status did not give the Tribes enforcement authority and "a speculative and purely economic interest does not create a protectable interest in litigation concerning a statute that regulates environmental…interests." *Id.* at 1141-42.

In *Greene*, a federally recognized Indian Tribe sought to intervene in an action by a non-recognized Indian Tribe against the federal government to obtain federal recognition for the latter Tribe. *Greene*, 996 F.2d at 975. The intervenor was concerned that federal recognition would dilute their fishing rights under a federal treaty. *Id.* The court held in relevant part that this interest was too speculative to provide a basis for intervention because fishing rights was not an issue in the proceeding. *Id*. at 976-77.

Here, by contrast, a favorable outcome to Petitioners in this litigation would have an immediate and foreseeable effect upon Proposed Intervenors. A threshold requirement to operate under the existing County Permits is satisfaction of the requirements under Chapter 25B. § 25B-4(c). Proposed Intervenors fully participated in the administrative proceedings and have a significant protectable interest in enjoying and protecting the natural environment where the Facilities are located. If Sable restarts the Facilities, then Sable—not Exxon—would be responsible for any spills or accidents at the Facilities, and Sable would be charged with ensuring "safe operation" of the Facilities "to protect public health and safety, and safeguard the natural resources and environment of the county." ECF No. 1 at ¶ 2 ("Sable plans to restart the Facilities…."); §§ 25B-1, 25B-4(i). Proposed Intervenors and their members already suffered one of the worst oil spills in California's history from the Las Flores Pipeline System and their evidence shows it is a matter of when, not if, another spill will occur. *See* Krop Decl. ¶¶ 7-8, Ellenberger Decl. ¶¶ 8-9, Hough Decl. ¶ 6, Lyons Decl. ¶¶ 8-10, Morton Decl. ¶ 8; AR001901-001906. It is of the

utmost importance to Proposed Intervenors that the Facilities' owners, operators, and guarantors have the financial and operational capacity to manage both daily operations and emergency spill response should the Facilities restart—a showing that Sable has failed to demonstrate.

Even if Sable does not restart the Facilities, transferring the Permits would mean Sable—not Exxon—is first in line to fund abandonment of the Facilities. § 25B-4(i). The extensive evidence provided to decision-makers by Proposed Intervenors demonstrates that these are responsibilities that Sable is ill-equipped to take on financially and operationally. AR001867-001972, AR002058-002169, AR003199-003493. Chapter 25B and other environmental laws protect Proposed Intervenors' interests in using and enjoying the County's natural resources by preventing undercapitalized or unqualified oil and gas operators from operating.

Petitioners also attempt to analogize this case with *Glickman*. ECF No. 29 at 19. But in that case, the statute "explicitly preempt[ed]" existing environmental laws, such that the Ninth Circuit reasoned that the environmental protections against logging on public lands that the intervenor claimed it had supported would not protect its interests with respect to the claims in that litigation. *Glickman*, 82 F.3d at 837.[5]

Proposed Intervenors have shown a relationship between their interests and the claims at issue. An express purpose of Chapter 25B is to ensure that environmental safeguards are maintained when certain oil and gas facilities are transferred from the existing entity to a new entity, and several of the findings addressed above implicate whether the new entity would run the facility in a way that protects the environment.

Finally, Petitioners attempt (but fail) to analogize this case to *Ctr. for Biological Diversity v. Lubchenco,* in which Alaska sought to intervene in a case brought by two

---

[5] The court also denied intervention because the intervenor was not involved in the enactment of the law or in the administrative proceedings. *Glickman*, 82 F.3d at 837-38. Proposed Intervenors participated fully in the administrative proceedings before the County and EDC also advocated for the adoption of Chapter 25B. Krop Decl. ¶ 5, Exh. A.

environmental organizations alleging that the federal wildlife agency violated the Endangered Species Act by failing to list a species.[6] 2010 WL 1038398, at *1 (N.D. Cal. Mar. 19, 2010). The court denied intervention in part because no relationship existed between Alaska's interests and the claims where the "litigation [was] a first step in a process that could eventually lead to change in the final listing decision,…." *Id*. at *3, *5. If Petitioners are successful in this litigation, the status quo would be disrupted, thereby affecting Proposed Intervenors' protectable interests. There is also no other legal recourse for Proposed Intervenors to obtain a decision on its appeal, on which Proposed Intervenors expended significant resources to protect their interests.

Thus, a specific and substantial relationship exists between Proposed Intervenors' legally protectable interests and the claims at issue to support intervention.

### 3. The Disposition of This Action May, As A Practical Matter, Impair or Impede Proposed Intervenors' Ability to Protect Their Interest.

As demonstrated above, the disposition of this action may impair or impede Proposed Intervenors' ability to protect their interests should the Court require the County to effectuate the permit transfers to Sable.[7] In particular, Proposed Intervenors' interests in enjoying the environment and conserving wildlife and their habitats where the Facilities are located would be impaired. A decision favorable to Petitioners would result in the transfer of Permits from Exxon to Sable, thereby making Sable responsible for restarting or abandoning the Facilities and responding to any environmental disaster from a spill or accident. There are drastic differences in the financial resources and operator

---

[6] Petitioners do not explain how the instant case is distinguishable from *Citizens for Balanced Use v. Mont. Wilderness Ass'n,* 647 F.3d 893, 895 (9th Cir. 2011) and *United States v. Carpenter*, 526 F.3d 1237, 1238-40 (9th Cir. 2008). ECF No. 29 at 19—20. These cases support granting intervention as of right given Proposed Intervenors' environmental interests in preserving and enjoying the coastline, waterways, hiking trails, and open spaces where the Facilities are located or that could be impacted should another spill occur.

[7] Petitioners do not contest impairment of Proposed Intervenors' interests stemming from their direct involvement in the administrative proceedings and EDC's participation in the adoption proceedings for Chapter 25B.

history between these two entities that could have resulting environmental impacts. Also, it is Sable—not Exxon—that has been pursuing restart of these Facilities which had previously sat dormant for a decade. Moreover, an outcome favorable to Petitioners would effectively deny Proposed Intervenors' appeal, which remains unresolved due to the Board's tie vote, and prohibit EDC from defending provisions that it supported during the adoption process. Krop Decl. ¶ 5, Exh. A.

Petitioners contend that Proposed Intervenors nevertheless have alternative legal means to protect their interests, which is without basis, and that transferring the Permits would not impact the environment, which is contrary to the clear purpose of Chapter 25B and the substantial evidence that Proposed Intervenors put into the record. ECF No. 29 at 20—21. Proposed Intervenors have no other means to protect their interests in defending the County's decision to withhold transfer of the Permits under Chapter 25B. It is true that several other agencies are involved in the restart permitting but none of these processes involve or affect the specific determination under Chapter 25B—that authority is exclusively vested with the County. Moreover, because the Board's vote on their appeal was split, Proposed Intervenors will be entirely deprived of an opportunity to resolve their appeal issues unless intervention is granted. The issues central to the pending litigation against the Office of the State Fire Marshall are separate and distinct from the requirements of Chapter 25B and the County's jurisdiction over permit transfers. This is a point that Petitioners concede, noting that Chapter 25B provides the County with direct oversight over new owners, operators, and/or guarantors of oil and gas facilities related to "issues not otherwise governed by federal or state law." ECF No. 29 at 22. Proposed Intervenors have no alternative forum to protect their interests and seek resolution of the issues they raised in their appeal.

Accordingly, the disposition of this case may, as a practical matter, impair or impede Proposed Intervenors' interests.

//

**B.    Proposed Intervenors Have Made a Compelling Showing that the County
May Not Adequately Represent Their Interests**

As both sides recognize, there is a presumption of adequate representation where
parties have the same ultimate objective or when the government acts on behalf of its
constituency, but that the presumption can be rebutted by a compelling showing
otherwise. *Citizens for Balanced Use*, 647 F.3d at 898. To rebut the presumption of
adequate representation, Proposed Intervenors need only show that the existing parties'
representation "may be" inadequate; this burden is "minimal." *Trbovich v. United Mine
Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (citation omitted). In assessing the
adequacy of representation, the focus should be on the "subject of the action," not just the
particular issues before the court at the time of the motion. *Sagebrush*, 713 F.2d at 528.
There is also compelling evidence to rebut this presumption here where the Respondent
government entity does not oppose Proposed Intervenors' Motion. ECF No. 26.

Petitioners wrongly assert that Proposed Intervenors share the County's objectives
and interests, while completely overlooking numerous reasons this is not true. ECF No.
29 at 22. There is no guarantee that Respondents and Proposed Intervenors' objectives
align in this case. Respondents have not expressed support for Proposed Intervenors'
position on the effect of the Board's tie vote. Krop Decl. ¶ 17. As set forth fully in the
Motion, Respondents may not fully defend denial of the permit transfers as Proposed
Intervenors would. ECF No. 25 at 22. For example, two of the four Board members voted
to grant de novo approval of the Applications, and the Planning Commission voted in
favor of the transfers. But for GOO!, EDC, and SBCAN's appeal, the transfers would
have been approved.

Proposed Intervenors have made a compelling showing of inadequate
representation. County staff repeatedly emphasized a narrow interpretation of Chapter
25B than Proposed Intervenors. The Planning Commission adopted this narrow
interpretation to approve the transfers, and the Board made a split decision as to Chapter
25B's requirements. The Ninth Circuit has found this type of difference between a

broader and narrower interpretation to support "differing points of view" for purposes of the adequate representation prong. Citizens for Balanced Use, 647 F.3d 893, 899 (9th Cir. 2011).

The presumption of adequacy is also rebutted here because the government "is required to represent a broader view than the more narrow, parochial interests" of Proposed Intervenors. *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995) (citations omitted), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173; *see also Golden Gate Rest. Ass'n v. City & County of San Francisco*, No. C 06-06997 JSW, 2007 WL 1052820, at *4 (N.D. Cal. Apr. 5, 2007) (governments' interests were distinct from proposed intervenor seeking to defend an ordinance because the governments represented the "public generally, including businesses and employers who may claim to be harmed by the passage of the Ordinance"). Additionally, "[i]nadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public." *Forest Conservation Council*, 66 F.3d at 1499 (citations omitted).

In addition, the private interests of the intervenors are "important elements to the proceedings" that may be neglected by the existing government entities in the litigation. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823. Proposed Intervenors have narrower, more personal, and mission-driven interests based on their concerns about the environment and community health. *See, e.g.,* Katz Decl. ¶ 4; Morton Decl. ¶ 3; Ellenberger Decl. ¶ 5; Hough Decl. ¶ 4; Lyons Decl. ¶ 4. While the County also has an interest in protecting public health and the environment, its interests are broader and include other, often conflicting, interests related to financial and economic impacts on the County and its constituency.

As described above, there is ample evidence demonstrating that the County's broad interests could lead it to take different positions in the litigation that Proposed Intervenors would consider undesirable. Respondents' defenses may be influenced by its other interests, including its interest in supporting development in the County and in reaching

an expeditious resolution to litigation. As this litigation progresses, Proposed Intervenors and Respondents may also disagree on whether settlement terms are acceptable or whether to appeal an unfavorable decision. *See County of Fresno v. Andrus*, 622 F.2d 436, 439 (9th Cir. 1980) (government's unwillingness to appeal, where intervenor would have, is evidence of inadequate representation).

## II.    Alternatively, This Court Should Grant Permissive Intervention.

Proposed Intervenors also meet the criteria for permissive intervention under Federal Rule of Civil Procedure 24(b). Even if the Court is not inclined to grant intervention of right, it has broad discretion to allow permissive intervention and should do so here.

Petitioners ask that this Court consider other factors in making its decision on permissive intervention, citing to the *Spangler* discretionary factors. *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977). Should the Court consider these other factors in making its decision, Proposed Intervenors satisfy all to support granting permissive intervention.

First, as discussed above, Proposed Intervenors have demonstrated a significant protectable interest, a relationship between that interest and the claims at issue, impairment of Proposed Intervenors' ability to protect that interest if Petitioners are successful, and inadequate representation of those interests by the County. Petitioners' arguments therefore fail.

Second, as addressed in the Motion, Proposed Intervenors will not unduly delay or prejudice parties if granted intervention. ECF No. 25 at 26. "[T]he idea of 'streamlining' the litigation . . . should not be accomplished at the risk of marginalizing those . . . who have some of the strongest interests in the outcome." *United States v. City of Los Angeles*, 288 F.3d 391, 404 (9th Cir. 2002). Proposed Intervenors moved to intervene early and agreed to adhere to the existing schedule. ECF No. 25 at 24. These concessions were sufficient for the County, which does not oppose Proposed Intervenors' Motion. ECF No. 26. Equity and fairness concerns outweigh Petitioners' arguments regarding delay

and prejudice, especially given that Proposed Intervenors represent the interests of communities that will be directly affected by the outcome of this litigation.

Petitioners claim Proposed Intervenors, if permitted to intervene, would enlarge the litigation beyond the "narrow confines of Chapter 25B." ECF No. 29 at 26. But central to the dispute in this litigation are Chapter 25B's requirements, including the Board's discretion at the de novo hearing. *See, e.g.,* ECF No. 1 at ¶ 104 ("...the requirements of Chapter 25B are so narrow in scope that the Board lacked legitimate discretion to grant the Appeals and deny the Transfers."), ECF No. 21 at ¶ 104 ("County denies any description or characterization that is inconsistent with the 2025 Board Agenda Letter," and "[s]aid paragraph contains legal assertions, arguments, or conclusions to which ... County denies ....") Proposed Intervenors' arguments focus on Chapter 25B's express findings and Sable's failure to support them with substantial evidence—not general "policy arguments." ECF No. 29 at 25. These issues go to the heart of the matter such that Proposed Intervenors will not "expand the issues" as Petitioners allege. *Id*. at 19-20; *see, e.g.,* AR003236-003238.

Third, Proposed Intervenors have already "significantly contribute[ed]" to the facts at issue in this case as evidenced by the administrative record, which contains several comment letters, reports, studies, other agency records, and oral testimony submitted by Proposed Intervenors. *See, e.g.,* AR001867-001972, AR002058-002169, AR003199-003493. This evidence would not be a part of the record but for Proposed Intervenors' active participation in the administrative proceedings. Petitioners' argument also ignores that EDC was part of the adoption process for Chapter 25B and therefore has a particular interest in ensuring it is upheld in all phases of this litigation.

Finally, Proposed Intervenors participation "will significantly contribute to ... the just and equitable adjudication of the legal questions presented" given Proposed Intervenors' experience with the issues and full participation in the administrative proceedings up to this point. ECF No. 29 at 26; *Spangler*, 552 F.2d at 1329. Proposed Intervenors' specialized expertise and thorough understanding of Chapter 25B, including

its legislative history, will ensure the issues are fully evaluated in an efficient, just, and

speedy manner. Furthermore, Proposed Intervenors have made an overwhelming showing

for why the County may not adequately defend its own decision not to transfer the

Permits, as explained above.

Proposed Intervenors offer a unique and highly relevant factual perspective to the

law, its development, and its impact such that granting permissive intervention, rather

than conferring amicus status as Petitioners suggest, is warranted. Amici status would not

provide Proposed Intervenors with the opportunity to fully defend their interests,

including the ability to appeal the judgment. *See, e.g., United States v. State of Or.*, 745

F.2d 550, 553 (9th Cir. 1984) (unlike amici status, intervention allows a party to "insure

its participation in the negotiations and discussions . . . on the same basis as other

participants."); *see also Washoe Tribe of Nevada & California v. Greenley*, 674 F.2d 816,

818 (9th Cir. 1982) ("The general rule is that one who was not a party of record before

the trial court may not appeal that court's judgment.").

**III.  Proposed Intervenors Should be Allowed to Participate in All Phases of the Litigation.**

Proposed Intervenors seek intervention as of right, or alternatively permissive

intervention, for all phases of this litigation—a point that they have not conceded, and

Respondents have not opposed. ECF No. 26. Indeed, Proposed Intervenors' Proposed

Answer responds to all of Petitioners' claims in this case. ECF No. 25-8. The Phase II

claims all seek relief related to the same decision to withhold transfer of the Permits, and

Proposed Intervenors' interests will be implicated in the same manner with respect to

those claims. *See, e.g.,* ECF No. 1 at ¶¶ 109-12, 114-19, 124-29.

Petitioners cite *Pavlock v. Holcomb*, 337 F.R.D. 173, 179 (N.D. Ind. 2020) to

demonstrate an insufficient basis to intervene in takings claims. That case is

distinguishable because there, "the plaintiffs claim[ed] that their private property was

wrongly taken for public use. … Accordingly, the [] legal interests were the

1   government's power to exercise eminent domain and the property owner's title to the

2   property subject to condemnation"—which are not at issue here. *Id.*

3       The correct standard for intervention concerns the Proposed Intervenors' "interest

4   relating to the property or transaction that is the *subject of the action*." Fed. R. Civ. P.

5   24(a)(2) (emphasis added); *see also Sierra Club v. United States EPA,* 995 F.2d 1478,

6   1484 (9th Cir. 1993) ("We rejected . . . the proposition that 'the intervenor's interest . . .

7   [is] measured in relation to the particular issue before the court at the time of the motion

8   and not in relation 'to the subject of the action' . . . ."). Courts have previously allowed

9   intervention of environmental public interest groups in cases with very similar claims

10  without limiting intervenors to certain phases of the litigation. *See, e.g., Levin Richmond

11  Terminal Corp. v. City of Richmond*, 482 F. Supp. 3d 944, 953, 968 (N.D. Cal. 2020)

12  (granting permissive intervention to conservation groups in case defending the City of

13  Richmond's ordinance against attacks from companies who alleged the City violated the

14  Commerce Clause and Takings Clause). As such, Proposed Intervenors seek to intervene

15  as Defendants with the same rights and privileges enjoyed by the existing parties and for

16  all issues before the Court. Any of Petitioners' six claims for relief, individually or

17  together, would substantially impair the Proposed Intervenors' interests in this case.

18  **IV.    Conclusion**

19       If there is any question about how to apply the criteria of Rule 24, the Ninth

20  Circuit has "repeatedly instructed that the requirements . . . are to be broadly interpreted

21  in favor of intervention." *Smith v. L.A. Unified Sch. Dist*., 830 F.3d 843, 853 (9th Cir.

22  2016) (citations omitted). For the foregoing reasons, Proposed Intervenors respectfully

23  request that the Court grant them intervention as a matter of right under Rule 24(a), or

24  alternatively, permissive intervention under Rule 24(b).

25  //

26  //

27  //

28

Respectfully submitted this 3rd day of July, 2025.

/s/ Linda Krop

LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
TARA C. RENGIFO (Bar No. 307670)
trengifo@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Tel.: (805) 963-1622 / Fax: (805) 962-3152

*Attorneys for Environmental Defense
Center, Get Oil Out!, Santa Barbara County
Action Network, Sierra Club, and Santa Barbara
Channelkeeper*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper, certifies that this brief contains 5,759 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 3, 2025                              */s/ Linda Krop*

LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
TARA C. RENGIFO (Bar No. 307670)
trengifo@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Tel.: (805) 963-1622 / Fax: (805) 962-3152

*Attorneys for Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper*