1  LATHAM & WATKINS LLP
     Jessica Stebbins Bina (Bar No. 248485)
2     *jessica.stebbinsbina@lw.com*
   10250 Constellation Blvd. Suite 1100
3  Los Angeles, CA 90067
   Telephone: +1 424.653.5500
4  Facsimile: +1 424.653.5501

5  Attorneys for Petitioners Sable Offshore
   Corp., Pacific Pipeline Company, and Pacific
6  Offshore Pipeline Company

7  O'MELVENY & MYERS LLP
     Dawn Sestito (Bar No. 214011)
8     *dsestito@omm.com*
     Lauren Kaplan (Bar No. 294703)
9     *lkaplan@omm.com*
   400 South Hope Street, 19th Floor
10 Los Angeles, California 90071
   Telephone: +1 213.430.6000
11 Facsimile: +1 213.430.6407

12 Attorneys for Petitioners and Plaintiffs Exxon
   Mobil Corporation, Mobil Pacific Pipeline
13 Company, and ExxonMobil Pipeline
   Company

14

15            **UNITED STATES DISTRICT COURT**

16            **CENTRAL DISTRICT OF CALIFORNIA**

17 SABLE OFFSHORE CORP. et al.,          CASE NO. 2:25-cv-04165-DMG-AGR

18                                        **MEMORANDUM OF POINTS AND**
          Petitioners/Plaintiffs,        **AUTHORITIES IN SUPPORT OF**
19                                        **PETITIONERS' MOTION FOR**
          v.                             **SUMMARY JUDGMENT**
20
   COUNTY OF SANTA BARBARA et
21 al.,                                   Complaint Filed: May 8, 2025

22        Respondents/Defendants.        Date:    September 12, 2025
                                         Time:    2:00 p.m.
23                                       Ctrm.:   8C
                                         Judge:   Dolly M. Gee
24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ............................................................................... 1

II.  FACTUAL BACKGROUND ............................................................. 2

    A.   The Facilities and FDPs ......................................................... 2

    B.   The County's Chapter 25B Process ....................................... 2

    C.   Planning Commission Approval of FDP Transfer................... 4

    D.   Appeals and Board Failure to Act.......................................... 4

III. STANDARD OF REVIEW ............................................................... 6

IV.  ARGUMENT .................................................................................... 8

    A.   The Failure of the Board to Act Leaves the Planning
        Commission's Approval in Place ......................................... 8

    B.   The Board Has A Mandatory Duty to Act on and Deny
        the Appeals.......................................................................... 11

        1.   The Board Was Required To Act On The Appeals.............. 12

        2.   The Board Was Required to Deny the Appeals
            Because the Chapter 25B Findings are Ministerial
            and Met ........................................................................ 13

    C.   The Board Must Consider Only the Chapter 25B Factors................. 19

V.   CONCLUSION ............................................................................... 22

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

i

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anderson v. Pittenger*,
197 Cal. App. 2d 188 (1961) ........................................................................ 10, 11

*Bright Dev. v. City of Tracy*,
20 Cal.App.4th 783 (1993) ........................................................................ 7

*Clark v. City of Hermosa Beach*,
48 Cal.App.4th 1152 (1996) ........................................................ 10, 11, 12, 19

*CV Amalgamated LLC v. City of Chula Vista*,
82 Cal.App.5th 265 (2022) ........................................................................ 12

*Dept. of Fin. v. Comm'n on State Mandates*,
1 Cal.5th 749 (2016) ........................................................................ 7

*Eat Right Foods Ltd. v. Whole Foods Mkt., Inc.*,
880 F.3d 1109 (9th Cir. 2018) ........................................................................ 6

*Friends of Juana Briones House v. City of Palo Alto*,
190 Cal.App.4th 286 (2010) ........................................................................ 13

*Friends of Westwood, Inc. v. City of L.A.*,
191 Cal.App.3d 259 (1987) ........................................................................ 18, 19

*Gabric v. City of Rancho Palos Verdes*,
73 Cal.App.3d 183 (1977) ........................................................................ 19

*Grist Creek Aggregates, LLC v. Super. Ct.*,
12 Cal.App.5th 979 (2017) ........................................................................ 8, 9

*Health First v. March Joint Powers Auth.*,
174 Cal.App.4th 1135 (2009) ........................................................................ 13

*King City v. Cmty. Bank*,
131 Cal.App.4th 913 (2005) ........................................................................ 13

*Lazan v. Cnty. of Riverside*
140 Cal.App.4th 453 (2006) ........................................................................ 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

ii

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

*Lindstrom v. Cal. Coastal Comm'n*,
    40 Cal.App.5th 73 (2019)................................................................................ 7

*Lopez v. Imperial Cnty. Sheriff's Off.*,
    165 Cal.App.4th 1 (2008)............................................................................... 9

*McMillan v. City of Palm Springs*,
    No. E032066, 2003 WL 1521908 (Cal. Ct. App. Mar. 25, 2003).................... 10

*Move Eden Hous. v. City of Livermore*,
    100 Cal.App.5th 263 (2024)........................................................................... 7

*Nollan v. Cal. Coastal Comm'n*,
    483 U.S. 825 (1987) ...................................................................................... 18

*Planning & Conservation League, Inc. v. Lungren*
    38 Cal.App.4th 497 (1995)............................................................................. 12

*Prentiss v. City of So. Pasadena*,
    15 Cal.App.4th 85 (1993)............................................................................... 13

*Rea Enters. v. Cal. Coastal Zone Conservation Comm'n*,
    52 Cal.App.3d 596 (1975).............................................................................. 11

*Riddick v. City of Malibu*,
    99 Cal.App.5th 956 (2024)........................................................................ 18, 19

*Schmid v. City & Cnty. of San Francisco*,
    60 Cal.App.5th 470 (2021)............................................................................. 7

*Senior & Disability Action v. Weber*
    62 Cal.App.5th 357 (2021)............................................................................. 13

*Serv. Emps. Int'l Union Local 1021 v. Cnty. of Mendocino*,
    No. 20-CV-05423, 2021 WL 3471176 (N.D. Cal. Aug. 6, 2021) ................... 9

*Sierra Club v. Cnty. of Sonoma*,
    11 Cal.App.5th 11 (2017).............................................................................. 13

*Sierra Club v. Napa Cnty. Bd. of Supervisors*,
    205 Cal.App.4th 162 (2012)........................................................................... 14

*Sustainability of Parks, Recycling & Wildlife Legal Defense Fund v.
    Cnty. of Solano Dept. of Res. Mgmt.*
    167 Cal.App.4th 1350 (2008).......................................................................... 13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

iii

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

*Today's Fresh Start, Inc. v. Los Angeles Cnty Off. of Educ.*,
128 Cal.Rptr.3d 822 (2011), *aff'd, depublished, and superseded by*
57 Cal.4th 197 (2013) ........................................................................ 9

*Topanga Ass'n. for a Scenic Cmty. v. Cnty. of Los Angeles*,
11 Cal.3d 506 (1974) ................................................................. 7, 20

*Vedanta Soc'y of So. Cal. v. Cal. Quartet, Ltd.*,
84 Cal.App.4th 517 (2000) .................................................... 8, 10, 11

*Witt Home Ranch, Inc. v. Cnty. of Sonoma*,
165 Cal.App.4th 543 (2008) ................................................... 13, 18

## STATUTES

Cal. Code Civ. Proc.
§ 1085 ........................................................................................ 7
§ 1094.5 ............................................................................... 7, 22
§ 1094.5(b) .......................................................................... 7, 22
§ 1094.5(f) ........................................................................... 7, 22

Santa Barbara County Code
§ 1-2 ......................................................................................... 12
§ 25B ................................................................................. *passim*
§ 25B-1 ............................................................................... 3, 19
§ 25B-3 ....................................................................................... 3
§ 25B-8(a) ................................................................................... 3
§ 25B-8(b) ......................................................................... 3, 8, 11
§ 25B-8(c) ......................................................................... 3, 8, 11
§ 25B-9 .............................................................................. 3, 14
§ 25B-9(a)(1) ............................................................................. 14
§ 25B-9(a)(2) ............................................................................. 15
§ 25B-9(a)(3) ............................................................................. 15
§ 25B-9(a)(4) ............................................................................. 15
§ 25B-9(a)(5) ............................................................................. 16
§ 25B-9(e) ................................................................................. 15
§ 25B-9(g) ................................................................................. 18
§ 25B-10 ........................................................................... 3, 8, 14
§ 25B-10(a) ............................................................................... 12
§ 25B-10(a)(1) ..................................................................... 3, 14
§ 25B-10(a)(2) ..................................................................... 3, 15
§ 25B-10(a)(3) ..................................................................... 3, 15
§ 25B-10(a)(4) ..................................................................... 3, 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

iv

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

§ 25B-10(a)(5) ................................................................................. 3, 6, 16
§ 25B-10(a)(6) ...................................................................................... 3, 16
§ 25B-10(a)(7) ...................................................................................... 3, 16
§ 25B-10(a)(8) ...................................................................................... 3, 17
§ 25B-10(a)(9) ...................................................................................... 3, 17
§ 25B-10(b) ..................................................................................... 3, 18, 19
§ 25B-12 ...................................................................................................... 11
§ 25B-12(b)(1) .............................................................................................. 4
§ 25B-12(b)(2) ................................................................................. 4, 19, 20
§ 25B-12(b)(4) ................................................................................... *passim*

## RULES

Fed. R. Civ. P. 56(a) ................................................................................... 6

## REGULATIONS

CEQA Guidelines § 15378(b)(5) ................................................................. 21

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

v

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

# I.    INTRODUCTION

In Santa Barbara County (the "County"), a final development permit ("FDP") authorizes oil and gas facility construction and operation, becoming a vested entitlement that runs with the facilities it authorizes. In every other county in California, when such facilities are sold, the FDP transfers automatically or near-automatically to the new owner and operator. In the County, however, there is an extra administrative process, codified in County Code Chapter 25B - Change of Owner, Operator, or Guarantor for Certain Oil and Gas Facilities ("Chapter 25B"). The procedures outlined in Chapter 25B are ministerial and mandatory. Petitioners and Plaintiffs Sable Offshore Corp. ("Sable Offshore"), Pacific Pipeline Company ("PPC"), and Pacific Offshore Pipeline Company ("POPCO") (collectively, "Sable") have met the requirements of Chapter 25B and therefore the County is mandated to transfer the FDP from Petitioners and Plaintiffs Exxon Mobil Corporation ("ExxonMobil"), Mobil Pacific Pipeline Company ("MPPC"), and ExxonMobil Pipeline Company ("EMPCo") (collectively, "ExxonMobil affiliates") (together with Sable, "Petitioners"). The County Planning Commission agreed with Petitioners and, in October 2024, granted Sable's application to transfer the FDPs for the three oil and gas facilities (the Las Flores Pipeline ("Pipeline"), the POPCO facilities ("POPCO Facilities"), and Santa Ynez Unit ("SYU") at issue (collectively, the "Facilities")).

Following the Planning Commission's approval, several environmental organizations appealed, arguing that the transfers should be denied based on considerations well beyond those contemplated in Chapter 25B. Despite County staff's recommendation to deny the appeals, the Board of Supervisors ("Board") split the vote 2-2, failing to reach a decision.

This Phase I summary judgment motion focuses on the County's process. Per Chapter 25B and controlling legal authorities, the Board's tie vote on the appeals fails to overturn the Planning Commission's decision, which still stands. In their first

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

1

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

claim for relief, Petitioners thus ask the Court to issue a writ of traditional mandamus requiring the County to transfer the permits consistent with the Planning Commission's decision.

Alternatively, in failing to deny the appeals, the Board neglected two ministerial duties under Chapter 25B: (1) its duty to decide the appeals; and (2) its duty to deny the appeals based on the mandatory, ministerial criteria in Chapter 25B. In their second claim for relief, Petitioners seek a writ of traditional mandamus directing the Board to deny the appeals.

Finally, in their third alternative claim for relief, Petitioners request a writ of administrative mandamus directing the Board to exercise its duty to deny the appeals, or alternatively, to decide the appeals based solely on the Chapter 25B criteria, not the personal views of Board members.

## II.   FACTUAL BACKGROUND

### A.   The Facilities and FDPs

The Facilities' FDPs were issued between 1987 and 1993 under then-existing County requirements. (SUF ¶¶ 1-6.) The FDPs include various conditions regulating the construction, operation, penalties for non-compliance, and procedures for changes to the authorized uses. (SUF ¶¶ 1, 3, 5.) Sable acquired the Facilities in February 2024, becoming legal owner, operator, and guarantor. (SUF ¶ 9.) As the County concedes in its Answer, the FDPs authorize the construction, maintenance, and operation of the Facilities and have no expiration date. (Dkt. 21, 2, 9.)

### B.   The County's Chapter 25B Process

Adopted in 2002—long after the Facilities' FDPs vested—Chapter 25B formalizes the transfers of FDPs to new owners, operators, or guarantors for certain oil and gas facilities. The purpose of Chapter 25B is to "protect public health and safety, and safeguard the natural resources and environment of the County of Santa Barbara, by ensuring that safe operation, adequate financial responsibility, and compliance with all applicable County laws and permits are maintained during and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

2

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

1    after all changes of owner, operator or guarantor of certain oil and gas facilities."

2    (County Code § 25B-1.) Applications to change ownership or guarantor are

3    considered by the director of planning and development ("Director") (§ 25B-3, 8(a)),

4    changes to operator by the Planning Commission (§ 25B-8(b)), and combined

5    applications by the Planning Commission. (§ 25B-8(c)).

6         Chapter 25B creates a ministerial review process. As relevant here, Chapter

7    25B requires nine objective and readily verifiable findings[1]: (1) payment of

8    outstanding fees (§§ 10(a)(1) [operator]; 9(a)(1) [owner]); (2) updated insurance,

9    bonds, or assurances reflecting the new owner (§§ 10(a)(2) [operator]; 9(a)(2)

10   [owner]; 9(e)(1) [guarantor]); (3) acceptance of permit conditions (§§ 10(a)(3)

11   [operator]; 9(a)(3) [owner]); (4) provision of the latest county safety audit to the new

12   owner (§§ 10(a)(4) [operator]; 9(a)(4) [owner]); (5) compliance with permit

13   requirements or an agreement to comply (§§ 10(a)(5) [operator]; 9(a)(5) [owner]);

14   (6) updated compliance and emergency plans with new contact details (§ 10(a)(6)

15   [operator]; (7) a transitional plan ensuring the new operator's "good working

16   knowledge" of emergency plans (§ 10(a)(7) [operator]); (8) County-approved

17   emergency response drills (§ 10(a)(8) [operator]); and (9) confirmation that the

18   proposed operator has the skills, training, and resources to comply with the permit

19   and County codes, determined by reviewing the operator's history to ensure no

20   record of "non-compliant or unsafe operations systemic in nature for similar

21   facilities" (§ 10(a)(9) [operator]).

22        Upon making the findings, Chapter 25B mandates "the planning commission

23   **shall** approve the change" of operator, owner, or guarantor. (§§ 25B-10(b);[2] 25B-

24   9(g); 25B-8(c).)

25

26   _____

[1] The findings overlap depending on the transfer sought. Transfer of owner requires
27   four findings, transfer of operator requires nine, and transfer of guarantor only one.
     (*See* County Code §§ 25B-9, 25B-10.) Petitioners address all nine as Sable applied
28   to become the new owner, operator, and guarantor of the Facilities.

[2] Emphases added and citations omitted throughout unless otherwise stated.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

3

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

### C.    Planning Commission Approval of FDP Transfer

Sable submitted a combined application to the County to change the owner, guarantor, and operator for the Facilities' FDPs, providing all required information for the transfer. (SUF ¶¶ 10-12.) County staff deemed the application complete, thoroughly analyzed Sable's application confirming compliance with Chapter 25B requirements for each Facility, and recommended approval. (SUF ¶¶ 13-14.) In October 2024, the Planning Commission adopted staff's findings 3-1, confirmed that Chapter 25B's requirements were satisfied, and approved the transfers. (SUF ¶ 16.)

### D.    Appeals and Board Failure to Act

Transfer of the FDPs pursuant to Chapter 25B neither authorizes nor prevents restart of the Pipeline.[3] (SUF ¶¶ 25-26, 105, 107, 113.) Rather, "[r]estart is [a] separate process under regulatory authority of several state and federal agencies," and is governed by a federal consent decree. (Dkt. 13-21, 70; *see also* SUF ¶¶ 25-26, 105, 107, 113.)

Nonetheless, various environmental groups have seized on the County's ministerial process as a means to protest oil production in California generally. Chapter 25B provides that any interested person may appeal a Planning Commission's decision to the Board. (County Code § 25B-12(b)(1).) Any appellant "shall **state specifically** in the appeal" how the decision "is inconsistent with the provisions or purposes of" Chapter 25B; or how "there was an error or abuse of discretion by the [P]lanning [C]ommission." (§ 25B-12(b)(2).) The Board reviews the decision *de novo* and "shall affirm, reverse, or modify the planning commission's decision at a public hearing." (§ 25B-12(b)(4).)

After the Planning Commission approved the transfers, two appeals were submitted to the Board by environmental organizations, rehashing many of the same arguments that the Board rejected in 2023 when the same Pipeline permit was

---

[3] The Pipeline was shut-in after it sustained an oil spill in 2015 while under prior ownership by a third party.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

4

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

transferred from its prior owner to the ExxonMobil affiliates. (SUF ¶¶ 17, 104, 107.) The appeals urged the Board to bar the permit transfers, but did not "specifically" state how the Planning Commission's decision was inconsistent with Chapter 25B or how the Planning Commission abused its discretion, as required. (*See* SUF ¶¶ 17, 18, 104-107.) Instead, to avoid the mandatory result, appellants made policy arguments untethered to Chapter 25B and pointed to "facts" unrelated to the statutory scheme. They argued against Pipeline restart and raised general concerns about the oil and gas industry and safety. (SUF ¶¶ 104-107.) They argued (despite the contrary Board finding in 2023) that Petitioners were out of compliance with the FDPs, and that the FDPs themselves should be revoked or revised. (SUF ¶ 30, 104.) They argued new environmental review was necessary—again despite the recent contrary Board finding. (SUF ¶¶ 30, 104, 107.) And they made various allegations regarding Sable's financial condition. (SUF ¶¶ 104-106.)

County staff carefully reviewed and prepared a report addressing each of appellants' arguments. (SUF ¶¶ 18, 105-108.) County staff determined that the various grounds raised by appellants failed on various grounds: (1) much of what appellants requested is outside the County's jurisdiction and/or preempted by state and federal law (Pipeline restart, Pipeline operations, state agency requirements); (2) other matters were entirely outside the scope of Chapter 25B (demanding extra materials not required by statute, CEQA review, issuance of new bonds); and (3) others were simply wrong (alleged non-compliance with FDP conditions, claimed "non-final" status of various reports). (SUF ¶¶ 105-107.) County staff confirmed again that Sable met each of Chapter 25B's requirements (SUF ¶¶ 18, 105-107), and recommended the Board deny the appeals (SUF ¶¶ 18, 108).

At the Board hearing, the vote split 2-2, with the fifth supervisor permanently recused. (SUF ¶¶ 19-20, 109-110.) The Board did not dispute the Planning Commission's findings under Chapter 25B. (SUF ¶ 111.) Rather, the two supervisors who voted against the denial motion raised concerns outside the scope of Chapter

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

5

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

25B. Supervisor Lee stated that he considered restarting oil operations in the County—which was not before the Board—an "insane idea." (SUF ¶ 112.) Board Chair Capps recognized that the County had no role in Pipeline restart, noting that was "not what we're doing here" but nevertheless stated that the Facilities' sale to Sable didn't pass her "smell test." (SUF ¶ 113.) Chair Capps also acknowledged Sable and "met the requirements of this sort of checklist" in Chapter 25B, but criticized Sable for not going "above and beyond the checklist" by providing additional materials neither required nor requested by the Chapter or County staff, (SUF ¶ 114), and for supposed noncooperation with the Coastal Commission (a state agency) after the application completeness date (SUF ¶ 116).[4] Finally, despite Sable's $1.35B valuation, over $400M in liability insurance, and more than $110M in cash and equivalents, Chair Capps argued that Sable did not meet some nebulous financial condition beyond Chapter 25B's criteria. (*See* SUF ¶¶ 46, 114-115.)

The two remaining Supervisors voted to follow staff's recommendation and deny the appeals. (SUF ¶¶ 20, 117.)

The tie vote resulted in "no action" by the Board on the appeals, leaving the Planning Commission decision in place. (SUF ¶ 20.) The County has since refused to process the Planning Commission's permit transfer approval, leaving Petitioners in regulatory limbo. (SUF ¶¶ 21-23.)

## III. STANDARD OF REVIEW

Summary judgment should be granted when there is no dispute over facts "that might affect the outcome of the suit under the governing law" and "the movant is entitled to judgment as a matter of law." (*Eat Right Foods Ltd. v. Whole Foods Mkt., Inc.*, 880 F.3d 1109, 1118 (9th Cir. 2018); *see also* Fed. R. Civ. P. 56(a)).

---

[4] This related to a notice of violation issued by the Coastal Commission on September 27, 2024 (SUF ¶¶ 104, 116), after the date that the County deemed Sable's application complete on July 30, 2024 (SUF ¶ 13), and therefore irrelevant to the Chapter 25B findings. (*See* County Code, § 25B-10(a)(5)).

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
CENTURY CITY

6

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

Petitioners' first and second claims for relief are for traditional mandamus under California Code of Civil Procedure section 1085, and their third alternative claim for relief is for administrative mandamus under California Code of Civil Procedure section 1094.5. Traditional mandamus "is used to compel a public entity to perform a legal and usually ministerial duty." (*Move Eden Hous. v. City of Livermore*, 100 Cal.App.5th 263, 272 (2024) (quoting *Schmid v. City & Cnty. of San Francisco,* 60 Cal.App.5th 470, 484-485 (2021)).) The reviewing court applies an abuse of discretion standard, reviewing "whether the agency's action was arbitrary or capricious." (*Bright Dev. v. City of Tracy*, 20 Cal.App.4th 783, 795 (1993)). However, "[t]he question whether a statute or executive order imposes a mandate is a question of law." (*Dept. of Fin. v. Comm'n on State Mandates,* 1 Cal.5th 749, 762 (2016).) Whether an administrative body failed to act as required by law is a legal issue for courts to decide based on their independent judgment. (*Move Eden Hous.* 100 Cal.App.5th at 272-273.)

Under section 1094.5, the Court evaluates (1) whether the agency proceeded without, or in excess of, jurisdiction; (2) whether there was a fair hearing; and (3) whether the agency abused its discretion. (*Lindstrom v. Cal. Coastal Comm'n,* 40 Cal.App.5th 73, 93 (2019); Cal. Civ. Proc. Code § 1094.5(b).) "[T]he reviewing court must determine both whether substantial evidence supports the administrative agency's findings and whether the findings support the agency's decision." (*Topanga Ass'n. for a Scenic Cmty. v. Cnty. of Los Angeles,* 11 Cal.3d 506, 514-515 (1974).) "Abuse of discretion is established if the [agency] has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Cal. Civ. Proc. Code § 1094.5(b)) When a court finds that a decision should be set aside, the court may order the agency to reconsider its decision and to take action "as is specially enjoined upon it by law." (Cal. Civ. Proc. Code § 1094.5(f).)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

7

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

IV.  **ARGUMENT**

A.  **The Failure of the Board to Act Leaves the Planning Commission's Approval in Place**

With respect to Petitioners' first claim for relief, the Court should issue a traditional writ of mandamus and require the permit transfers, as the Board's tie vote leaves the Planning Commission's approval intact.

Chapter 25B vests the Planning Commission with authority to approve or deny permit transfers. (County Code §§ 25B-8(b), (c), 25B-10.) Although Chapter 25B allows "interested persons" to appeal permit transfer decisions to the Board, the Board acts solely as a court of review. County Code section 25B-12(b)(4) limits the Board to reviewing the Commission's decisions de novo for error, with the power to "affirm, reverse, or modify *the planning commission's decision* at a public hearing," similar to a Court of Appeal; the Board itself does not grant or deny transfers.

Case law on tie votes among administrative bodies distinguishes between instances where the body acts as a court of review, as here, and those where it must act directly by statute or regulation. Under the ordinary rule, if a statute does not require an administrative body to issue findings or decide directly, a tie vote in a reviewing agency affirms the appealed decision, similar to a tie vote in a circuit court affirming a district court decision. (*Grist Creek Aggregates, LLC v. Super. Ct.*, 12 Cal.App.5th 979 (2017).) An exception occurs when the statute requires the reviewing body to issue its own findings or take direct action, such as issuing a permit itself. In such cases, a tie vote may leave the matter unresolved and require mandamus. (*Vedanta Soc'y of So. Cal. v. Cal. Quartet, Ltd.*, 84 Cal.App.4th 517, 521 (2000).) Chapter 25B follows the ordinary rule because it does not require the Board to issue its own findings or issue permits itself, but instead reviews the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

8

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

1  Planning Commission's decision. This means the tie vote left the Planning

2  Commission's decision to grant the permit transfers in place.[5]

3        *Grist Creek Aggregates* illustrates how the ordinary rule operates. There,

4  plaintiffs applied to the Mendocino County Air Quality Management District for an

5  industrial project permit, which was approved. (12 Cal.App.5th at 982.) An

6  environmental group appealed to the Air District's hearing board, resulting in a tie.

7  The board explained that this meant that "no further action would be taken, leaving

8  the permit in place." (*Id*.) The environmental group petitioned for writ of mandamus,

9  arguing the board abused its discretion by not reversing the approval. (*Id*. at 984.)

10 The main issue before the court was whether the board's inaction was reviewable by

11 writ of mandamus. (*Id*. at 990.) The Court of Appeal held it reviewable, because the

12 "the effect of the Hearing Board's tie vote here was to deny [the] appeal, leaving the

13 [District's approval] intact." (*Id*.) The court explained that due to the tie vote, the

14 original approval "was allowed to stand, which was effectively a decision not to

15 revoke it." (*Id*. at 991.)

16       Similarly, in *Today's Fresh Start, Inc. v. Los Angeles Cnty Off. of Educ.*, a

17 county board of education split 4-4 on appeal of a school charter revocation,

18 resulting in a final decision that denied the appeal and upheld the revocation. (128

19 Cal.Rptr.3d 822, 840 (2011), *aff'd, depublished, and superseded by* 57 Cal.4th 197

20 (2013)).[6] The same principal applied in *Lopez v. Imperial Cnty. Sheriff's Off.*, 165

21 Cal.App.4th 1, 5 (2008), where a tie vote from an appellate body left intact the lower

22 body's decision to terminate two employees. Further, in *Serv. Emps. Int'l Union

23 Local 1021 v. Cnty. of Mendocino*, No. 20-CV-05423, 2021 WL 3471176 (N.D. Cal.

24 Aug. 6, 2021), a 2-2 tie vote on appeal left the County's original termination decision

25

26 [5] The Board cannot act without a majority. *See* Procedural Rules Governing

27 Planning, Zoning and Subdivision Hearings Before the Board of Supervisors and Planning Commission (County Res. No. 91-333, § VI.1).

28 [6] Unpublished California opinions are persuasive authority in federal court, cited here to illustrate the application of the general rule.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

9

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

intact, "much like an appellate court." Likewise, in *McMillan v. City of Palm Springs*, No. E032066, 2003 WL 1521908, at *1 (Cal. Ct. App. Mar. 25, 2003), a city council's tie vote resulted in the denial of a permitting appeal, leaving a planning commission's original decision in place.

This "classic common law rule that a tie . . . leaves the decision being appealed from intact" controls here. (*Vedanta*, 84 Cal.App.4th at 521.) Yet, the County has refused to act without any explanation—seemingly relying on the exception to the ordinary rule, which applies when a supervising agency must issue its own findings or take direct action on the underlying matter. In such instances—not present here— a tie vote can leave the matter in an administrative limbo. (*See*, *i.e.*, *Clark v. City of Hermosa Beach*, 48 Cal.App.4th 1152 (1996).)

The cases applying the exception show that it does not apply to a decision under Chapter 25B. In *Clark*, 48 Cal.App.4th 1152, plaintiffs sought permits from the Hermosa Beach planning commission to demolish a condominium. (*Id*. at 1159.) After approval, a resident appealed to the city council, which denied the permits by a 3–2 vote. (*Id.*) Plaintiffs argued a councilmember's recusal would have tied the vote and, applying the ordinary rule, affirmed the commission's decision. (*Id.* at 1175.) The Court of Appeal disagreed, noting the Hermosa Beach code required the council to decide on permits directly, not just review the commission's decision. (*Id.*) The council itself was required to take evidence and "order that the conditional use permit be granted, denied or modified." (*Id.*) This meant that "no action" left the permit in limbo. Chapter 25B, however, does not require the Board to take evidence or grant or deny the *permits*, but instead to "affirm, reverse, or modify the *planning commission's decision.*" (§ 25B-12(b)(4).)

*Anderson v. Pittenger*, 197 Cal. App. 2d 188 (1961) confirms the exception doesn't apply here. In *Anderson*, West Covina's planning commission granted a zoning variance. (*Id.* at 189.) The city council first tied on appeal but later denied the variance. (*Id.* at 191-192.) The petitioner claimed the tie should affirm the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

10

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

commission's initial approval, but the court disagreed, noting that "[a]fter the appeal was taken, the function of the council was not merely to review the proceedings before the commission and *affirm, reverse, or modify* the order of the commission," but instead to "order[] that the variance be granted or denied or modified." (*Id.* at 194-195.) Like *Clark*, the zoning code in *Anderson* required the council to "*grant, deny, or modify"* the variance itself, not merely the commission's decision. (*Id.* at 194.) Similarly, in *Rea Enters. v. Cal. Coastal Zone Conservation Comm'n*, 52 Cal.App.3d 596 (1975), the South Coast Regional Commission granted a coastal zone development permit and on appeal the Coastal Zone Commission reached a tied vote. (*Id.* at 601-602.) The court ruled the tie didn't affirm the lower decision due to the Coastal Act's requirement that "no permit shall be issued without the affirmative vote of a majority" of the Commission. (*Id.* at 606.) Thus, the Commission did not serve as a reviewing body, it had to directly "issue" the permit.

Here, in contrast, approval of FDP transfers is vested with the Planning Commission and the Board's role is limited to reviewing ***that decision***. (§§ 25B-8(b), (c); 25B-12(b)(2), (4).) The Board does not "decide[] whether *it* should grant or deny the permit." (*Clark*, 48 Cal.App.4th at 1175.) Rather Chapter 25B limits the Board's decision to "affirm[ing], revers[ing], or modify[ing] *the planning commission's decision*." (§25B-12(b)(4).)[7] Thus, the general rule applies; the tie vote left the Planning Commission's determination in place as a matter of law, and the Court should issue a writ of mandamus directing the County to transfer the FDPs.

**B.    The Board Has A Mandatory Duty to Act on and Deny the Appeals**

Alternatively, with respect to Petitioners' second claim, if the Court finds the exception applies and the Board's tie vote left the FDP transfer in limbo, it should issue a writ of mandamus due to the Board's failure to fulfill its ministerial duties to act on and deny the appeals.

---

[7] Chapter 25B likewise does not require the Board to make written findings of fact or take new evidence. (§ 25B-12.) (*Cf. Vedanta*, 84 Cal.App.4th at 522.)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

11

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

The Board had two ministerial duties. First, it had to act on the appeals. County Code section 25B-12(b)(4) provides that, for permit transfer appeals, the Board "*shall* affirm, reverse, or modify the planning commission's decision at a public hearing."

Second, it had to deny the appeals because Chapter 25B is ministerial and the Board did not identify any lawful basis to reverse the Planning Commission's decision. Chapter 25B mandates that the Planning Commission "shall" transfer the permits if the required findings are met. (County Code §§ 25B-10(a) [change of operator], 25B-9(a) [change of owner], 25B-9(e) [change of guarantor].) Section 1-2 of the County Code defines "shall" as "mandatory." By using the term "*shall*," County Code section 25B-12(b)(4) imposes a mandatory, ministerial duty upon the Board to act on the appeals, and the above sections impose a mandatory, ministerial duty upon the Planning Commission to grant the permit transfers when the findings are met. (*See*, e.g., *Lazan v. Cnty. of Riverside* 140 Cal.App.4th 453, 460 (2006) (code's use of "shall" created "ministerial duty"); *Planning & Conservation League, Inc. v. Lungren* 38 Cal.App.4th 497, 501 (1995) (same).) The Board had to act on the appeals under section 25B-12(b)(4), and to deny them under section 25B-10(a).

### 1.    The Board Was Required To Act On The Appeals.

The Board's role on appeal of the Planning Commission's decision was narrowly limited to *affirming, reversing, or modifying* the decision. (County Code § 25B-12(b)(4).) So long as the Board did not reverse the Planning Commission's decision, it was required to affirm or modify that decision. (*Id*.) Yet the Board took no action. (21 AR6754-6755; 21 AR7144.)

The Board's failure to act constitutes a dereliction of its mandatory duty to act on the appeals and an abuse of discretion. (*Clark*, 48 Cal.App.4th at 1175 (City required to act); *CV Amalgamated LLC v. City of Chula Vista*, 82 Cal.App.5th 265, 280-81 (2022) (City abused discretion by not following ministerial and mandatory duty to follow its own procedures).)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

12

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

**2.      The Board Was Required to Deny the Appeals Because the Chapter 25B Findings are Ministerial and Met**

A ministerial action is a decision in which ***little or no discretion is vested in the agency***; that is, the agency must take action as required by statute or regulation. (*King City v. Cmty. Bank*, 131 Cal.App.4th 913, 926 (2005); *Senior & Disability Action v. Weber* 62 Cal.App.5th 357, 364 (2021).) "A ministerial action involves the application of fixed standards or objective measurements…" (*Health First v. March Joint Powers Auth.*, 174 Cal.App.4th 1135, 1143 (2009); *Sustainability of Parks, Recycling & Wildlife Legal Defense Fund v. Cnty. of Solano Dept. of Res. Mgmt.* 167 Cal.App.4th 1350, 1359 (2008)) and is "taken under regulations that allow for little or no exercise of [subjective] judgment" (*Sierra Club v. Cnty. of Sonoma*, 11 Cal.App.5th 11, 22 (2017)).

Each of Chapter 25B's findings requires the Planning Commission to apply "fixed standards" to determine "objective" objective facts, such as whether fees have been paid or documents provided, or whether Sable is in conformity with various County requirements. Case law demonstrates that such findings are ministerial, as they do not permit the exercise of discretionary judgment. For example, in *Prentiss v. City of So. Pasadena*, the court of appeal explained that the issuance of a building permit is ministerial when the public official merely determines whether the applicant has paid the required fee and met certain code requirements. (15 Cal.App.4th 85, 90-91 (1993).) Similarly, in *Witt Home Ranch, Inc. v. Cnty. of Sonoma*, the court of appeal confirmed that determining whether an applicant was in compliance with certain code requirements or the existence of certain documents is ministerial. (165 Cal.App.4th 543, 565 (2008)). Indeed, such "box-checking" exercises are routinely held ministerial. (*See, e.g.*, *Health First*, 174 Cal.App.4th at 1144 (checklist determining whether application is consistent with fixed standards is ministerial); *Friends of Juana Briones House v. City of Palo Alto*, 190 Cal.App.4th 286, 305-306 (2010) (determining whether permit requirements are met is

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

13

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

1   ministerial)); (*Sierra Club v. Napa Cnty. Bd. of Supervisors*, 205 Cal.App.4th 162,

2   180 (2012) (determining conformity with local laws is ministerial).)

3          The Board previously recognized the ministerial nature of Chapter 25B when

4   it evaluated the prior transfer of the Pipeline to the ExxonMobil affiliates. (SUF ¶¶

5   29-31.) Indeed, current Board Chair Capps explained, at the prior hearing, that a

6   transfer under Chapter 25B "is an administrative action" that ensures the FDP

7   "matches the company that owns the pipeline." (SUF ¶ 31; Dkt. 1-7, 143; *see also*

8   Request for Judicial Notice, Exh. 1, p. 56.) And here, County staff again confirmed

9   the ministerial nature of the findings in their report to the Board: "Approval of the

10  Change of Owner, Operator, and Guarantor is limited to the County's ability to make

11  the required findings outlined in Chapter 25B." (Dkt. 13-11, 816 (Board Letter for

12  the Feb. 25 Board Meeting); *see also* SUF ¶¶ 14, 16, 105-107.)

13         Undisputed evidence demonstrates that the Planning Commission properly

14  found each of the Chapter 25B check-the-box requirements was satisfied.

15  Accordingly, the Planning Commission was required to grant the applications, and

16  the Board had no discretion to reverse that decision.

17                **a.    Planning Commission Findings Were Properly Made.**

18         Undisputed evidence confirms that each of the nine ministerial findings

19  necessary for the transfer of owner, operator, and/or guarantor were satisfied, as

20  outlined in Chapter 25B.[8]

21         ***Fees and Exactions.*** The first finding for transfer of owners and operators is

22  that "[a]ll outstanding county required fees and exactions due for the facility have

23  been paid." (County Code §§ 25B-9(a)(1), 10(a)(1).) Undisputed evidence

24  demonstrates that this ministerial finding was properly made by the Planning

25  Commission: "Planning and Development has verified with Accounting staff that no

26

27  _____

28  [8] As noted above, while all of the nine findings apply to a change in operator, only
    five are required for a change in owner and only one for guarantor. (*See generally*
    County Code §§ 25B-9, B-10.)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY                                14

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

1  outstanding payments are due for the facility, or related planning and compliance

2  cases." (SUF ¶¶ 37-42.)

3      ***Financial Instruments.*** For the second finding, applicable for owners,

4  operators, and guarantors, the County must determine whether "instruments or

5  methods of financial responsibility approved by the county and necessary to comply

6  with the permit and any county ordinance have been updated, if necessary, to reflect

7  the new [entity] and will remain in full effect following the [owner/operator]

8  change." (County Code §§ 25B-10(a)(2), 9(a)(2), 9(e).) Undisputed evidence

9  confirms the Planning Commission properly made this finding: staff determined that

10 (1) all required County bonds and endowments were satisfied, and (2) the SYU

11 Facility abandonment responsibility was met through property tax payments until

12 site restoration completion. (SUF ¶¶ 46-51.)

13     ***Permit Obligations Acceptance.*** The third ministerial finding, concerning

14 owner and operator transfers, requires Sable to accept all permit conditions. (County

15 Code §§ 25B-9(a)(3), 10(a)(3).) The undisputed evidence shows (and the Planning

16 Commission confirmed) that the County confirmed receipt of this letter from Sable.

17 (SUF ¶¶ 54-59.)

18     ***Copy of Safety Audit***. The fourth ministerial finding, for owner and operator

19 transfers is for the County to confirm that "a copy of the most recent county-

20 conducted comprehensive safety audit of the physical facility, along with a

21 description of the status of implementing its recommendations, [was provided] to

22 the proposed new operator." (County Code §§ 25B-10(a)(4), 9(a)(4).) Undisputed

23 evidence supports this finding: staff determined that Sable has a copy of the latest

24 audit and all recommendations from the 2014 safety audit of the SYU and the

25 POPCO Gas Plant were implemented to the County's satisfaction. (SUF ¶¶ 62-67.)

26     ***Compliance with Permit Requirements as of Application Date***. Under the

27 fifth finding, applicable to owner and operator transfers, the County must confirm

28 that "current operator is in compliance with all requirements of the permit, including

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

15

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

1  any requirements of a county-required safety audit, any notice of violation, and any

2  county ordinance, or the owner and proposed operator have entered into a written

3  agreement with the director that specifies an enforceable schedule to come into

4  compliance with such requirements." (County Code §§ 25B-10(a)(5), 9(a)(5).)

5  The Commission's role was to confirm ExxonMobil's compliance with all

6  objective FDP requirements when Sable's transfer application was deemed complete

7  on July 30, 2024. (Dkt. 13-1, 23 (Staff Report).) Undisputed evidence shows this

8  ministerial finding was properly made: Planning staff found, and the Commission

9  confirmed, that the Facilities complied with all FDP requirements as of the

10  application completion date, with no notices of violation or County enforcement

11  actions. (SUF ¶¶ 70-75.)

12  ***Updated Contact Information on Safety Plans.*** The sixth finding, for

13  operators only, requires the County to confirm that: certain specified programs and

14  plans have been or will be updated "with current emergency contact information

15  pertaining to the new operator." (County Code § 25B-10(a)(6).) Undisputed

16  evidence shows the Planning Commission properly made this ministerial finding:

17  Sable updated all existing and approved plans with its information and agreed in

18  writing to revise any other plans needed. (SUF ¶¶ 77-82.)

19  ***Approved Transitional Plan***. The seventh finding, for operators, is that "[t]he

20  current owner or operator and proposed operator have submitted a transitional plan

21  that will demonstrate the proposed operator shall receive adequate training,

22  including by means of cross training by the current operator, where feasible, and

23  shall have a good working knowledge of [specified compliance plans.]" (County

24  Code § 25B-10(a)(7).) Undisputed evidence shows the Planning Commission

25  properly made this finding: Sable submitted two comprehensive transitional plans—

26  one for the SYU and POPCO Facilities and one for the Pipeline—that met the

27  requirements and were approved by the Planning Director. (SUF ¶¶ 84-89.)

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

16

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

***County-approved Emergency Response Drill***. Under the eighth finding, for operators the Planning Commission must confirm that "[t]he proposed operator has adequately performed one or more county approved emergency response plan drills necessary to respond to emergency episodes that may occur at the facility." (County Code § 25B-10(a)(8).) Undisputed evidence shows the Planning Commission properly made this finding: Sable performed the required drill. (SUF ¶¶ 91-96.)

***Operator Record of Skills, Training, and Resources***. The final finding, for operators only, is for the Planning Commission to determine that "[t]he proposed operator has the skills, training, and resources necessary to operate the permitted facility in compliance with the permit and all applicable county codes and has demonstrated the ability to comply with [certain specified] compliance plans." (County Code § 25B-10(a)(9).) The section prescribes how the Planning Commission is to do this: "The director shall require relevant records of compliance, and corrective actions taken subsequent to any major incidents for facilities, if any, that are similar in nature to those that are the subject of the permit, as may be necessary to make findings. These records shall be used to provide sufficient assurance that the proposed operator does not reflect a record of non-compliant or unsafe operations systemic in nature for similar facilities to those being considered for operatorship." (*Id.*)

Appellants argued below that this provision gives the Planning Commission broad discretion to consider *any* "skills, training, and resources" it could imagine. However, as Planning staff noted, the second sentence makes this section ministerial by detailing steps the County may take, such as reviewing compliance records and corrective actions for major incidents at similar facilities, to ensure the proposed operator "does not reflect a record of non-compliant or unsafe operations systemic in nature for similar facilities." (SUF ¶¶ 98-103.) As in *Prentiss*, the review of compliance records and the history of corrective action is ministerial, akin to the *Prentiss* confirmation of compliance with the zoning and building codes. (*Prentiss*,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

17

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

15 Cal.App.4th at 85.) And as in *Witt Home Ranch* the Planning Commission was required to confirm only objective facts: whether there is a history of "non-compliant or unsafe operations systemic in nature for similar facilities." (165 Cal.App.4th at 565-566.) To interpret the provision as appellants urged, on the other hand, would be arbitrary and capricious, and would interfere with Petitioners' vested rights in the FDPs. (*See, e.g.*, *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 837 (1987) (permit conditions not tethered to stated public purpose constitute unconstitutional taking).)

Undisputed evidence confirms the Planning Commission's findings were proper. County staff noted Sable's executive team has over three decades of experience in oil and gas operations across the Pacific Ocean, Gulf of Mexico, and California, including Santa Barbara County. (SUF ¶¶ 98-103.) Its management teams are experienced with local facilities, and nearly two-thirds of employees transferred from ExxonMobil in similar roles at the very same Facilities. (SUF ¶¶ 98-103.) Further, Sable has no record of prior major incidents or unsafe operations. (SUF ¶¶ 98, 100, 102.)

Because the Planning Commission properly found that all required ministerial findings of Chapter 25B were satisfied, the Planning Commission was required to transfer the FDPs. (County Code §§ 25B-10(b), 9(g).)

### b.    The Board was Required to Deny the Appeals Because the Application Satisfied all Findings

The Board was likewise required, to deny the appeals. (*Friends of Westwood, Inc. v. City of L.A.*, 191 Cal.App.3d 259, 267 (1987) (private party was entitled to legally compel approval of a ministerial project that satisfied all requisite objective standards); *Riddick v. City of Malibu*, 99 Cal.App.5th 956, 966 (2024) (when facts meet code requirements, the agency must act "in a prescribed manner in obedience to the mandate of legal authority," disregarding its own judgment or opinion).)[9]

---

[9] Chapter 25B permits the Planning Commission to impose additional conditions to ensure that any insurance or guarantees "submitted and relied on the by planning

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

18

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

On appeal, the Board reviews "the planning commission's decision" de novo under the same ministerial standard. It has no additional discretionary authority but considers only whether "the planning commission's decision is inconsistent with the provisions or purposes of this chapter" or whether "there was an error or abuse of discretion by the planning commission." (County Code § 12(b)(2).) Upholding the ministerial standard on appeal aligns with Chapter 25B's purpose to ensure "safe operation, adequate responsibility, and compliance with all applicable county laws and permits" after ownership or operational changes (County Code § 25B-1). This excludes discretionary or subjective inquiry into the operation of oil and gas facilities generally.

As detailed above, each of the required Chapter 25B findings was properly made by the Planning Commission. Accordingly, the Board **lacked discretion** to reverse the Planning Commission's decision, and was required to deny the appeals. (11 AR2170-2171; *Riddick*, 99 Cal.App.5th at 966; *Friends of Westwood*, 191 Cal.App.3d at 267; *Gabric v. City of Rancho Palos Verdes,* 73 Cal.App.3d 183, 192 (1977).) Thus, if the Court does not (as it should) simply order the County to transfer the FDPs as set forth in Section IV.A, it should issue a writ of mandamus directing the Board to perform its ministerial duty to deny the appeals. (*Clark*, 48 Cal.App.4th at 1175 (court may direct decision to be set aside and no further administrative hearings, "where… [there is a] purely ministerial act, such that the council has no discretion in the matter").)

## C.    The Board Must Consider Only the Chapter 25B Factors

As a final alternative, if the Court determines there is any discretionary element of Chapter 25B (there is not for the reasons discussed above), it should issue an order on Petitioners' third claim for relief and issue an administrative writ

commission as a basis" for Chapter 25B findings are maintained.  (County Code § 25B-10(b).) This provision does not change ministerial nature of the nine findings, as it does not authorize the Board to deny transfer; it only permits additional submissions to ensure compliance.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

directing the Board to act on the appeal by denying it, or alternatively to decide it by considering only the nine factors under Chapter 25B. The decision by two Board members to consider factors far outside Chapter 25B's scope constitutes an abuse of discretion warranting administrative mandamus, and warrants, at minimum, remand for the Board to decide the appeals and issue findings supporting their determination consistent with Chapter 25B. (*Topanga Ass'n*, 11 Cal. 3d. at 514-15.)

As noted above and in the SUF (*see* SUF ¶¶ 104-107), at the Board hearing and in the Board appeals, appellants raised a number of arguments wholly outside Chapter 25B and outside of the County's jurisdiction. These arguments were refuted by staff in the Board report, which found that appellants failed to demonstrate inconsistency with Chapter 25B requirements or any abuse of discretion by the Planning Commission, and thus failed to provide a basis for reversal under section 25B-12(b)(2):

- Appellants argued generally that the oil industry was risky for the environment and that the County should not permit oil and gas operations in the County, including Pipeline restart, at all. (SUF ¶¶ 104, 107.) Staff confirmed that nothing in the Chapter 25B process permits consideration of such factors, and reiterated that the restart of the Facilities' operations is governed by federal and state law. (SUF ¶¶ 25-26, 105, 107.)

- Appellants argued that, despite being maximally insured under federal requirements and having substantial cash balances, Sable should be required, *inter alia*, to post additional bonds and provide additional insurance not required by the FDPs, and provide "final" certifications of financial responsibility ("COFRs"). (SUF ¶ 104.) Staff correctly determined that neither Chapter 25B nor the FDPs authorized these additional demands and that the County lacked jurisdiction to require much of what was requested, as state authorities set specific requirements for COFRs, which were met. (SUF ¶ 105.)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

20

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

- Appellants alleged that the Pipeline was out of compliance with the FDP, claiming the FDP required certain cathodic protections, and also argued that new or revised permits were required for the Pipeline and SYU Facility. (SUF ¶ 104.) These arguments were previously made and rejected by the Board in the 2023 Pipeline permit transfer. (SUF ¶¶ 29-30.). Staff confirmed again that these arguments were wrong, clarifying the FDP did not contain the claimed cathodic protection requirements and the permit transfer process did not require modifications to the Facilities or FDPs. (SUF ¶ 105.)

- Appellants argued that permit transfer required environmental review. (SUF ¶¶ 104, 107.) This argument was also made and rejected in 2023 (SUF ¶¶ 29-30), and staff confirmed again here that environmental review is unnecessary for permit transfers, as they do not authorize physical changes to the environment. (SUF ¶ 105, citing CEQA Guidelines section 15378(b)(5) (exempting "administrative activities of governments that will not result in direct or indirect physical changes to the environment").)

- Appellants argued that the Board should consider a dispute between Sable and the Coastal Commission, a state agency, that arose after the application completion date. (SUF ¶ 104.). Staff rejected this argument as well, explaining that Chapter 25B does not examine compliance with non-County permits and that the Coastal Commission dispute did not reflect "systemic non-compliance or unsafe operations related to major incidents," and thus was outside Chapter 25B's scope. (SUF ¶ 105.)

While none of these arguments were proper for the Board to consider under Chapter 25B, it is apparent that these extra-statutory arguments influenced two Supervisors, who openly considered issues wholly outside Chapter 25B's scope and irrelevant to the FDP transfer process, calling Petitioners' business "insane" and the sale of the Facilities "fishy." (SUF ¶¶ 112, 115.) These two Supervisors ignored their

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

21

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

1    duty to apply Chapter 25B criteria in evaluating the FDP transfer, thus violating the
2    County Code with their votes. This was an abuse of discretion. (*See* Cal. Civ. Proc.
3    Code § 1094.5(b).) Should the Court determine that Chapter 25B permits the
4    exercise of any discretion, that discretion must be limited to the actual statutory
5    factors, and mandamus should be granted pursuant to California Code of Civil
6    Procedure section 1094.5, directing the Board to either deny the appeals outright, or
7    to hold another hearing and enter findings based *only* on the criteria set forth in
8    Chapter 25B. (Cal. Civ. Proc. Code § 1094.5(f).)

9    **V.    CONCLUSION**

10       The Court should grant traditional mandamus on Petitioners' first claim for
11   relief and direct the permit transfers based on the Board's failure to overturn the
12   Planning Commission's still-intact decision. In the event it does not do so, the Court
13   should grant traditional mandamus on Petitioners' second claim for relief and require
14   the Board itself to deny the appeals based on the ministerial duties set forth in
15   Chapter 25B. As a final alternative, the Court should grant administrative mandamus
16   on Petitioners' third claim for relief and require the Board either to deny the appeals
17   or to consider only the Chapter 25B factors, and not the irrelevant and extraneous
18   arguments made above.

19       For the foregoing reasons, the Court should grant the requested relief.

20

21   Dated: July 3, 2025                    Respectfully submitted,

22                                          LATHAM & WATKINS LLP

23                                   By: /s/*Jessica Stebbins Bina*
24                                        Jessica Stebbins Bina
                                          *Jessica.stebbinsbina@lw.com*
25                                        10250 Constellation Blvd., Suite 1100
                                          Los Angeles, CA 90067
26                                        Tel.: (424) 653-5500
                                          Fax: (424) 653-5501

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

22

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

1

2

3

Attorneys for Plaintiffs and
Petitioners Sable Offshore Corp.,
Pacific Pipeline Company, and Pacific
Offshore Pipeline Company

4

O'MELVENY & MYERS LLP

5

By: /s/*Lauren Kaplan*

6

7

8

9

Lauren Kaplan (Bar No. 294703)
*lkaplan@omm.com*
Dawn Sestito (Bar No. 214011)
*dsestito@omm.com*
400 South Hope Street, 19th Floor
Los Angeles, California 90071
Telephone: +1 213.430.6000
Facsimile: +1 213.430.6407

10

11

Attorneys for Petitioners and
Plaintiffs Exxon Mobil Corporation,
Mobil Pacific Pipeline Company, and
ExxonMobil Pipeline Company

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

23

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

1

## ATTESTATION STATEMENT

2   I, Jessica Stebbins Bina, am the ECF User whose identification and password

3 are being used to file this Memorandum of Points and Authorities in Support of

4 Petitioners' Motion for Summary Judgment.  Pursuant to Local Rule 5-4.3.4(a)(2)(i),

5 I attest that all other signatories listed, and on whose behalf the filing is submitted,

6 concur in the filing's content and have authorized the filing.

7

8             /s/*Jessica Stebbins Bina*

9             Jessica Stebbins Bina

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
CENTURY CITY

24

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Petitioners Sable Offshore Corp, Pacific Pipeline Company, and Pacific Offshore Pipeline Company, certifies that this brief contains 6,999 words, which complies with the word limit of L.R. 11-6.1.

Dated; July 3, 2025                    /s/*Jessica Stebbins Bina*
                                       Jessica Stebbins Bina

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
CENTURY CITY

25

CASE NO. 2:25-cv-04165-DMG-AGR
MEMORANDUM ISO PETITIONERS' MOTION
FOR SUMMARY JUDGMENT