1  SANTA BARBARA COUNTY COUNSEL
2  RACHEL VAN MULLEM, County Counsel
   CALLIE KIM, Deputy County Counsel (SBN 257213)
3  105 East Anapamu Street, Suite 201
   Santa Barbara, California 93101
4  Telephone (805) 568-2950 / Fax (805) 568-2982
   E-mail: ckim@countyofsb.org

5  Attorneys for Respondents and Defendants
   COUNTY OF SANTA BARBARA and
6  SANTA BARBARA COUNTY
   BOARD OF SUPERVISORS

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 | SABLE OFFSHORE CORP. et al, | Case No: 2:25-cv-04165-DMG-AGR

12 |                             | **RESPONDENTS COUNTY OF**
   | Petitioners/Plaintiffs,     | **SANTA BARBARA AND SANTA**
13 |                             | **BARBARA COUNTY BOARD OF**
14 |                             | **SUPERVISORS' RESPONSE TO**
   | v.                          | **PETITIONERS' MOTION FOR**
15 |                             | **SUMMARY JUDGMENT**

16 | COUNTY OF SANTA BARBARA      | [Filed concurrently with Request to
17 | et al.,                     | Take Judicial Notice; Response to
                                   Petitioners' Statement of
18 |      Respondents/Defendants, | Uncontroverted Facts and Conclusions
19 | and                         | of Law; and [Proposed] Order]
20

21 |                             | Complaint Filed: May 8, 2025

22 | ENVIRONMENTAL DEFENSE        | Date:  September 12, 2025
   | CENTER et al.,              | Time: 2:00 p.m.
23 |                             | Ctrm.: 8C
   |      Intervenors.           | Judge: Hon. Dolly M. Gee
24 |                             | Mag. Judge: Hon. Alicia G. Rosenberg
25

26

27

28

Respondents/Defendants County of Santa Barbara and Santa Barbara County Board of Supervisors (collectively "County") hereby respectfully submit the below Memorandum of Points and Authorities in response to Petitioners/Plaintiffs Sable Offshore Corp., Pacific Pipeline Company, Pacific Offshore Pipeline Company ("Sable"), Exxon Mobil Corporation, Mobil Pacific Pipeline Company, and Exxonmobil Pipeline Company's ("Exxon" and collectively "Petitioners") Memorandum of Points and Authorities in Support of their Motion for Summary Judgment on the first, second, and third causes of action in this matter.

Dated:  August 1, 2025                    Respectfully submitted,

                                          RACHEL VAN MULLEM
                                          COUNTY COUNSEL

                                          By: /S/ - Callie Patton Kim
                                          Callie Patton Kim
                                          Senior Deputy County Counsel for
                                          COUNTY OF SANTA BARBARA
                                          and SANTA BARBARA COUNTY
                                          BOARD OF SUPERVISORS

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................7

II.     FACTUAL BACKGROUND ..................................................................8
        A.    The Facilities...............................................................................8
        B.    Sable's Application to Transfer the Permits and
              the Tie Vote..................................................................................9

III.    LEGAL STANDARDS .......................................................................10

IV.     LEGAL ISSUES ................................................................................11
        A.    County Code Chapter 25B..........................................................11
        B.    The Legal Effect of the Tie Vote Is Ambiguous. .........................12
        C.    The County Does Not Have a Mandatory, Ministerial Duty
              to Deny the Appeals...................................................................17
        D.    A New Hearing May Be Appropriate to Allow the Board
              to Reach a Decision and Make Findings. .....................................24

V.      CONCLUSION ..................................................................................26

CERTIFICATE OF COMPLIANCE ..............................................................27

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

**COUNTY'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

# TABLE OF AUTHORITIES

**Federal Cases**

*Cnty. of Amador v. United States Dep't of the Interior*,
   872 F.3d 1012 (9th Cir. 2017)................................................22

*Herrera v. Zumiez, Inc.*,
   953 F.3d 1063 (9th Cir. 2020)................................................20

*Nolan v. Heald Coll.*,
   551 F.3d 1148 (9th Cir. 2009)................................................10

*Serv. Emps. Int'l Union Local 1021 v. Cnty. of Mendocino*,
   2021 WL 3471176 (N.D. Cal. Aug. 6, 2021) ................................14

*Turnacliff v. Westly*,
   546 F.3d 1113 (9th Cir. 2008)................................................19

**State Cases**

*AIDS Healthcare Found. v. Los Angeles Cnty. Dep't of Pub. Health*,
   197 Cal.App.4th 693 (2011) ...........................................17, 18

*Anderson v. Pittenger*,
   197 Cal.App.2d 188 (1961)...........................................15, 16

*Breakzone Billiards v. City of Torrance*,
   81 Cal.App.4th 1205 (2000) ................................................24

*Clark v. City of Hermosa Beach*,
   48 Cal.App.4th 1152 (1996) ...........................................15, 26

*Common Cause v. Bd. of Supervisors*,
   49 Cal.3d 432 (1989)........................................................23

*CV Amalgamated LLC v. City of Chula Vista*,
   82 Cal.App.5th 265 (2022)...........................................17, 18

*Grist Creek Aggregates, LLC v. Superior Court*,
   12 Cal.App.5th 979 (2017) ........................................12, 13, 16

*Lagrutta v. City Council*,
   9 Cal.App.3d 890 (1970)...........................................14, 23

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

*Lopez v. Imperial County Sheriff's Office,*
 165 Cal.App.4th 1 (2008).............................................................................13, 25

*Mountain Def. League v. Bd. of Supervisors,*
 65 Cal.App.3d 723 (1977)..................................................................................25

*Murphy v. Kenneth Cole Prods., Inc.,*
 40 Cal.4th 1094 (2007) .....................................................................................20

*Prang v. Los Angeles Cnty. Assessment Appeals Bd.,*
 15 Cal.5th 1152 (2024) ......................................................................................20

*Pub. Emp. Rels. Bd. v. Bellflower Unified Sch. Dist.,*
 29 Cal.App.5th 927 (2018)................................................................................10

*REA Enterprises v. California Coastal Zone Com.,*
 52 Cal.App.3d 596 (1975).................................................................................16

*Symons Emergency Specialties v. City of Riverside,*
 99 Cal.App.5th 583 (2024)................................................................................19

*Today's Fresh Start, Inc. v. Los Angeles County Office of Education,*
 128 Cal.Rptr.3d 822 (2011) ..............................................................................13

*Topanga Assn. for a Scenic Cmty. v. Cnty. of Los Angeles,*
 11 Cal.3d 506 (1974)..........................................................................................25

*Yamaha Corp. of Am. v. State Bd. of Equalization,*
 19 Cal.4th 1 (1998) ............................................................................................20

*Witt Home Ranch, Inc. v. Cnty. of Sonoma,*
 165 Cal.App.4th 543 (2008) .............................................................................19

**State Statutes**

Cal. Civ. Proc. Code § 1085 ..................................................................................10

Cal. Civ. Proc. Code § 1094.5 ...............................................................10, 11, 24

Cal. Gov. Code § 25005 .........................................................................................18

Cal. Gov. Code § 54954.3 ......................................................................................24

Cal. Health & Safety Code § 42302.1 ...................................................................12

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

**COUNTY'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

Cal. Educ. Code § 47607, subd. (g)(2) ................................................................. 13

**Federal Rules**

Fed. R. Civ. P. 56(a) ............................................................................................ 10

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

**COUNTY'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

# I. INTRODUCTION

The County of Santa Barbara adopted Chapter 25B of the County Code to protect public health and safety, natural resources, and the environment by ensuring that safe operation, adequate financial responsibility, and regulatory compliance are maintained during and after any change to the owner, operator, or guarantor of certain oil and gas facilities. Chapter 25B requires any new owner, operator, or guarantor to submit certain documentation and information to the County and for the County to make findings for approval before issuing a new permit reflecting the transfer.

This case concerns the application of Chapter 25B to facilities that caused a catastrophic oil spill in 2015 and have been largely shut down since that time. Exxon acquired the facilities in 2023 and then sold the facilities in 2024 to a new company, Sable Offshore Corporation. Sable filed Chapter 25B applications for the facilities, and after conducting a public hearing, the County Planning Commission voted three-to-two to approve the transfers.

Several organizations appealed to the County Board of Supervisors, asserting that the transfer of potentially hazardous facilities from a major oil company to a smaller, less experienced, and less financially secure company was precisely the scenario Chapter 25B was designed to address and that the findings to approve the transfer could not be made. The Board received substantial documentation and held a lengthy de novo hearing. Ultimately, the Board, with one member recused, voted two-to-two on separate motions: one to approve the requested transfers and one to deny the requested transfers. Because the Board cannot act without the concurrence of a majority of all the members, the permits remain in Exxon's name.

Petitioners filed this lawsuit to force the County to transfer the permits. In their motion for summary judgment, Petitioners ask this Court to hold: 1) the Board's tie vote left the Planning Commission's approval of the transfers intact,

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

7

2) Chapter 25B's process is ministerial and the Board has a mandatory duty to deny the appeals and approve the transfers, or 3) the Board must hold another public hearing that complies with Chapter 25B.

The County disputes that Chapter 25B's process is ministerial. Although there are aspects of the process that function like a checklist and require little judgment, there are other aspects of the process that call for the exercise of discretion. With respect to Petitioners' other arguments, in light of the absence of a Board majority, the County responds by setting forth the facts and applicable law without taking a position on whether the Board's tie vote leaves the Planning Commission decision intact or whether this Court should remand for another hearing before the Board.

## II.    FACTUAL BACKGROUND

As may be seen from the County's Response to Petitioner's Statement of Undisputed Facts, the County does not dispute the majority of facts asserted by Petitioners. The County, therefore, offers the following short summary.

### A. The Facilities

The Santa Ynez Unit (SYU) and Pacific Offshore Pipeline Company (POPCO) Gas Plant are existing permitted facilities that produce and treat crude oil and natural gas from offshore Platforms Hondo, Harmony, and Heritage in the Santa Barbara Channel. (SUF ¶¶ 1, 3.) Historically, oil produced from the SYU was transported via the Las Flores Pipeline System to the Pentland Station in Kern County (formerly known as the Plains All American Pipeline). (SUF ¶ 5; Dkt. 13-1, 22.) In 2015, a section of the Las Flores Pipeline System ruptured and released over 100,000 gallons of crude oil onto the beach and into the ocean near Refugio State Beach ("Refugio Oil Spill") resulting in the shutdown of both the Las Flores Canyon Facilities and the pipeline system. (Dkt. 13-1, 25; Dkt. 13-10, 118; Dkt. 13-20, 13.) The Refugio Oil Spill caused significant financial and environmental damage and harm to the surrounding communities and cost

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

roughly $100 million dollars to remediate in the immediate aftermath of the spill and is projected to cost the company responsible for the spill a total of $750 million.  (Dkt. 13-10, 1875.)

### B. Sable's Application to Transfer the Permits and the Tie Vote

Sable was created for the purpose of acquiring the facilities from Exxon. (Dkt. 13-10, 119.)  As a new company, Sable lacked the capital to purchase the facilities outright, and therefore entered into an agreement with Exxon similar to a loan.  (Dkt. 13-10, 120.)  Sable acquired the SYU, as well as POPCO and Pacific Pipeline Company (PPC), the owners of the Gas Plant and the Las Flores Pipeline System, in 2024.  (SUF ¶ 9.)  The Facilities are Sable's only assets. (Dkt. 13-10, 120; Dkt. 13-21, 283.)

Sable submitted applications to transfer the permits for the three facilities on March 14, 2024.[1]  (SUF ¶ 10.)  After staff for the Department of Planning and Development determined the applications were complete, staff recommended the Planning Commission approve the transfers.  (SUF ¶¶ 13, 14.) The Planning Commission held a hearing, made findings, and approved the transfers.  (SUF ¶ 16.)

The Environmental Defense Center ("EDC"), Get Oil Out! ("GOO!"), and Santa Barbara County Action Network ("SBCAN") submitted a notice of appeal from the Planning Commission's decision.  (SUF ¶ 17.)  The Center for Biological Diversity ("CBD") and the Wishtoyo Foundation also submitted a notice of appeal.  (*Id*.)  After holding a lengthy public hearing, the Board, with one member recused, voted two-to-two on the following motions: one to approve the requested transfers and one to deny the requested transfers. (SUF ¶ 20.)

---

[1]    The parties refer to the applications as requesting the "transfer" of the three permits.  The request is actually to issue revised permits reflecting the new owner, operator, or guarantor.  For ease of reading, however, the County uses the term "transfer" to describe the request.

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

9

COUNTY'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT

After the hearing, Sable sent the Director of the Planning and Development Department a letter stating that the Board's tie vote results in the affirmance of the Planning Commission's approval and requested that the Department transfer the permits. (SUF ¶ 21.)  Separately, the County received letters from EDC asserting the tie vote did not affirm the Planning Commission's decision and constituted no action, which effectively resulted in denial of the request to transfer the permits.  (Dkt. 13-21, 30-33; Dkt. 33-1, 9-12.)  The County has not transferred the permits.  (SUF ¶ 23.)

### III.    LEGAL STANDARDS

Summary judgment is proper under Federal Rule of Civil Procedure 56 if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[S]ummary judgment must be denied if, viewing the evidence in the light most favorable to the non-moving party,' there are genuine issues of material fact." *Nolan v. Heald Coll*., 551 F.3d 1148, 1154 (9th Cir. 2009).

In their first and second causes of action, Petitioners seek a traditional writ of mandamus under California Civil Code section 1085.  To obtain relief under Code of Civil Procedure section 1085, the petitioner must show among other things that the respondent has a clear, present, and ministerial duty to act in a particular way.  *Pub. Emp. Rels. Bd. v. Bellflower Unified Sch. Dist*., 29 Cal.App.5th 927, 939 (2018).

In their third cause of action, Petitioners challenge the County's inaction in response to its requests to transfer the permits pursuant to California Code of Civil Procedure section 1094.5.  In a writ of administrative mandate under California Code of Civil Procedure section 1094.5, the inquiry is "whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or

/ / /

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

**COUNTY'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

1  decision is not supported by the findings, or the findings are not supported by

2  the evidence." Cal. Civ. Proc. Code § 1094.5(b).

### IV.    LEGAL ISSUES

#### A. County Code Chapter 25B

In 2002, the County of Santa Barbara adopted Chapter 25B of the County
Code.  Chapter 25B was a response to major oil companies selling facilities to
smaller and smaller companies, and the County's concern that smaller
companies did not have the financial resources or capability of operating
facilities in a safe manner.  (Dkt. 13-21, 232-33.)  Chapter 25B's purpose is "to
protect public health and safety, and safeguard the natural resources and
environment of the [C]ounty of Santa Barbara, by ensuring that safe operation,
adequate financial responsibility, and compliance with all applicable county
laws and permits are maintained during and after all changes of owner, operator
or guarantor of certain oil and gas facilities."  Respondents' Request to Take
Judicial Notice in Support of Response to Petitioner's Motion for Summary
Judgment ("RJN"), Exhibit A, County Code § 25B-1 ("Chapter 25B," "Section
25B" or "§25B").  To achieve this purpose, Chapter 25B requires the decision-
maker to make certain findings before the County will transfer permits to a new
owner, operator, and/or guarantor.  *See* §§25B-9, 25B-10.

Chapter 25B provides, "[t]he decision of the planning commission to
approve or deny an application may be appealed to the board of supervisors by
the applicant or any interested person adversely affected by such decision."
§25B-12(b).  The appellant must state how the planning commission's decision
is inconsistent with the provisions or purposes of Chapter 25B or how there was
an error or abuse of discretion by the planning commission.  §25B-12(b)(2).
When an appeal is filed, the planning commission sends to the board "copies of
the application, including all attachments and related materials, and a statement
of findings setting forth the reasons for the planning commission's decision."

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

11

COUNTY'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT

§25B-12(b)(3).  "The board of supervisors hearing shall be de novo and the board shall affirm, reverse, or modify the planning commission's decision at a public hearing."  §25B-12(b)(4).

Although Chapter 25B does not set forth findings the Board must make on appeal, the ordinance does provide findings that must be made by the decision-maker tasked with reviewing the application.  §25B-9 & 25B-10. Those same findings are considered on appeal.  (*See* Dkt. 13-11, 828-844 (proposed Board findings); *see also* Dkt. 36-6, 9 (Board findings made when the transfer of the same permits from its prior owner to the Exxon affiliates were challenged on appeal in 2023).)

## B. The Legal Effect of the Tie Vote Is Ambiguous

In their Motion for Summary Judgment ("Mot." or "Motion"), Petitioners ask the Court to issue a traditional writ of mandamus requiring the County to transfer the permits because the Board's tie vote leaves the Planning Commission approval intact.  Mot. at 8.  According to Petitioners, the Board acts solely as a reviewing body in a Chapter 25B appeal, reviewing only the decision made by the Planning Commission and not deciding whether to grant or deny the underlying transfers.  *Id.*

Petitioners rely on a number of cases where, unlike the appeals process under Chapter 25B, the decision-maker on appeal was not required to consider the matter de novo or make de novo findings.  For instance, in *Grist Creek Aggregates, LLC v. Superior Court*, the court held that a tie vote on appeal from an air quality management district effectively allowed the district's permit approval to stand.  12 Cal.App.5th 979, 991 (2017).  Unlike Chapter 25B, the hearing board in *Grist Creek* was not required to review the denial de novo.  The applicable statute states only that:  "the hearing board shall hold a public hearing

/ / /

/ / /

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

12
COUNTY'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT

1    and shall render a decision on whether the permit was properly issued." Cal.

2    Health & Safety Code § 42302.1.[2]

3    Petitioners also rely on *Today's Fresh Start, Inc. v. Los Angeles County*

4    *Office of Education*, which has been depublished and superseded.  Mot. at 9.

5    There, a school board revoked the charter for a school and the decision was

6    appealed to the State Board of Education.  *Today's Fresh Start, Inc. v. Los*

7    *Angeles County Office of Education*, 128 Cal.Rptr.3d 822, 828 (2011).  The

8    State Board held a hearing that ended in a tie vote on whether the decision to

9    revoke the charter should be reversed.  *Id.* at 833.  The statute governing the

10    appeal provided that the State Board may reverse the decision to revoke a

11    charter if it determines that the findings made below "are not supported by

12    substantial evidence.'"  *Id.* at 839 (citing Cal. Educ. Code § 47607, subd. (g)(2)).

13    Because the statute did not require the State Board to make independent factual

14    findings, the court concluded that the tie vote amounted to a final decision by

15    the State Board to deny the appeal and uphold the revocation.  *Id.* 839-40.

16    Petitioners also rely on cases in the employment context, which rest on a

17    burden of proof that is not applicable in Chapter 25B appeals.  In *Lopez v.*

18    *Imperial County Sheriff's Office,* employees of the sheriff's office appealed their

19    termination to a county employment appeals board.  165 Cal.App.4th 1, 3

20    (2008).  The hearing before the board ended in a tie vote, which the terminated

21    employees argued meant that their terminations had been reversed.  *Id.* at 3-4.

22    The court noted that "[i]n disciplinary administrative proceedings, the burden of

23    proving the charges rests upon the party making the charges."  *Id.* at 4.  It

---

24    [2]  Also unlike the circumstances in this case, the applicant and appellant agreed
25    that the tie vote resulted in affirming the district's decision to grant the permit.
      *Grist Creek Aggregates,* 12 Cal.App.5th at 986.  The decision was therefore
26    focused on the hearing board's position, which had been adopted by the trial
      court, that there was nothing for the court to review because the hearing board
27    had not adopted findings.  The appellate court rejected this argument,
      concluding that the trial court may review whether the hearing board proceeded
28    in the manner required by law or whether the decision not to set aside the
      district's approval was supported by the evidence.  *Id.* at 991.

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

1  concluded, the sheriff's office did not meet its burden of proving its charges to

2  the satisfaction of a majority of the board.  *Id.* at 5.  But, the court held the

3  board's inaction did not require a reversal of the sheriff's office's termination

4  decisions.  Instead it returned the employees "to the status *quo ante*", and the

5  terminations "remain in effect until the [b]oard conducts another vote."  *Id.; see*

6  *also Serv. Emps. Int'l Union Local 1021 v. Cnty. of Mendocino*, 2021 WL

7  3471176 (N.D. Cal. Aug. 6, 2021) (holding that because "just cause" for

8  termination was found below, a tie vote at the Civil Service Commission was

9  sufficient to carry the County's burden on appeal and left the County's original

10  termination decision intact).

11  None of Petitioners' cases are directly on point because Chapter 25B

12  requires the Board to hold a de novo hearing and because in deciding Chapter

13  25B appeals, the Board makes independent findings without deference to the

14  Planning Commission.  §25B-12(b)(4).  Petitioners assert the Board does not

15  make its own findings on a Chapter 25B appeal.  Mot. at 10, fn. 7.  Yet, the

16  Board made de novo findings when it granted Exxon's request to transfer the

17  permits in 2023, and staff presented the Board with proposed de novo findings at

18  the hearing at issue in this case, which the Board lacked a majority to adopt.

19  (Dkt. 13-11, 828-844; Dkt. 36-6, 9.)  Indeed, Petitioners appear to acknowledge

20  that the Board must determine for itself whether the findings can be made when

21  it asks this Court to issue an administrative writ directing the Board to decide the

22  appeals by considering only the nine factors under Chapter 25B.  Mot. at 20.

23  Petitioners liken the Board's role in a Chapter 25B appeal to that of an appellate

24  court, however, a de novo proceeding in an administrative process is different

25  and typically means "the entire case is repeated."  *Lagrutta v. City Council*, 9

26  Cal.App.3d 890, 895 (1970).

27  The cases the Environmental Defense Center ("EDC") cited in its letters

28  to the County to support its position that the Board's tie vote does not affirm the

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

1  Planning Commission's decision involve local codes that require the decision

2  maker on appeal to take direct action on the underlying matter.  For example, in

3  *Clark v. City of Hermosa Beach*, the planning commission approved a project

4  and the approval was appealed to the city council.  48 Cal.App.4th 1152, 1159

5  (1996).  By a three-to-two vote, the city council denied the project.  The trial

6  court later determined, however, that one member of the city council had a

7  conflict of interest and that the applicants were denied a fair hearing on appeal.

8  *Id.* at 1166.  As a remedy, the trial court ordered that due to the resulting two-to-

9  two split, the planning commission's approval of the permits should be

10  reinstated.  *Id.* at 1167.  The appellate court reversed, holding that on appeal

11  from a planning commission decision on a conditional use permit, the city

12  council does not merely review the commission's decision for error—it hears

13  the matter de novo, takes additional evidence, and decides whether to grant or

14  deny the permit.  *Id.* at 1175.  Accordingly, the court held the city council must

15  vacate its decision and rehear the appeal.  *Id.* at 1177.

16  Another case previously cited by EDC is *Anderson v. Pittenger*, which

17  concerned an ordinance that required the appellate body to order a variance or

18  conditional use permit to be granted, denied, or modified and state its reasons

19  for doing so.  197 Cal.App.2d 188, fn. 3 (1961).  There, an applicant for a

20  variance filed a lawsuit after the planning commission's decision to approve the

21  variance was appealed to the city council, which first reached a tie vote and later

22  denied the variance.  *Id.* at 190-92.  The applicant argued that due to the tie vote,

23  the city council failed to comply with its ordinance, which required a decision

24  within 30 days after closing the hearing.  *Id.* at 192.  The trial court ordered that

25  the denial be vacated and the planning commission's approval reinstated.  *Id.* at

26  193.  The appellate court reversed, holding that the tie vote was no action, it was

27  not an affirmance of the order of the commission.  *Id.* at 194.  "[T]he function of

28  the council was not merely to review the proceedings before the commission and

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

15

1  affirm, reverse, or modify the order of the commission; it was required to act

2  upon the appeal." *Id.* at 195.  The court noted "there is no limitation upon the

3  right of the council to hear new or additional testimony.  If the council were

4  bound by the findings of the commission, there would be no point in requiring

5  the council to hold a public hearing." *Id.*

6       In *REA Enterprises v. California Coastal Zone Com*., a regional

7  commission approved a development permit, which was then appealed to a state

8  commission.  52 Cal.App.3d 596, 601 (1975).  The state commission held a

9  public hearing and reached a tie vote and as a consequence refused to issue the

10  permit.  *Id.* at 602.  The trial court held that the state commission only had

11  limited jurisdiction of an appellate nature and therefore held the tie vote

12  amounted to an affirmance of the lower body's decision.  *Id*.  The appellate

13  court reversed, holding that the "failure to obtain a majority vote . . . effectuated

14  a denial of the issuance of the development permit." *Id.* at 607.  The court noted

15  the applicable section of the Public Resources Code required "an affirmative

16  vote by the majority of the authorized members of the State Commission to

17  grant a permit." *Id*. at 609.  The court also examined the term "de novo" and

18  interpreted it in the context of an administrative body reviewing the decision of

19  a lower body to "contemplate not merely a new public hearing, but that all

20  matters involved are to be decided 'anew; afresh; over again.'" *Id.* at 613.

21       In sum, it is unclear whether Chapter 25B's unique process, whereby the

22  Board is required to review the decision of the Planning Commission not the

23  underlying transfers, but conducts a de novo hearing, takes new evidence, and

24  makes de novo findings without deference to the Planning Commission, is more

25  akin to the *Grist Creek Aggregates* line of cases or the *Anderson* line of cases.

26  Given the lack of a majority on this issue, the County defers to the Court and

27  will abide by the Court's decision.

28  / / /

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

**COUNTY'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

## C. The County Does Not Have a Mandatory, Ministerial Duty to Deny the Appeals.

Petitioners argue in the alternative that this Court should issue a writ of mandamus because the Board failed to fulfill its mandatory, ministerial duties. Mot. at 11. A ministerial duty is one "that a public officer is required to perform in a prescribed manner . . . without regard to his [or her] own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists." *AIDS Healthcare Found. v. Los Angeles Cnty. Dep't of Pub. Health*, 197 Cal.App.4th 693, 700 (2011) (citations omitted). Discretion on the other hand "is the power conferred on public functionaries to act officially according to the dictates of their own judgment." *Id.*

According to Petitioners, the Board had two ministerial duties: 1) to act on the appeals and 2) to deny the appeals because Chapter 25B is ministerial and the Board did not identify any lawful basis to reverse the Planning Commission's decision. *Id.* Petitioners rely on *CV Amalgamated LLC v. City of Chula Vista*, 82 Cal.App.5th 265 (2022), *as modified on denial of reh'g* (Aug. 12, 2022). There, a court held that a city had "a mandatory and ministerial duty to follow" the procedures outlined in the city's ordinance. *Id.* at 282. The court distinguished the procedures for processing an application from "the discretionary merit-based scoring the City undertakes as part of its decision process." *Id.* at 282. "In deciding what merit-based score to assign to an applicant, the City indisputably exercises discretion and judgment" and therefore the court's review was limited to "whether it was 'arbitrary, capricious or entirely without evidentiary support, and whether it failed to conform to procedures required by law.'" *Id.* at 284.

Here, Petitioners do not contend that the County failed to follow its procedures for processing Chapter 25B appeals to the Board, which require:

/ / /

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

17

COUNTY'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT

- The Clerk of the Board to notify the Planning Commission that an appeal has been filed;
- The Planning Commission to transmit to the Board copies of the application, including all attachments and related materials, and a statement of findings setting forth the reasons for the Planning Commission's decision;
- Notice of the time and place of the hearing be given in accordance with Santa Barbara County Code and also mailed to the appellant; and
- The Board hearing to be de novo.

§25B-12(b).

The only aspect of the process Petitioners assert the County failed to follow is the requirement that the Board "affirm, reverse, or modify the planning commission's decision at a public hearing." §25B-12(b)(4).  But the term "shall" does not necessarily create a mandatory duty—if the duty requires the public entity to exercise significant discretion, the duty is still discretionary. *See AIDS Healthcare Found.*, 197 Cal.App.4th at 701.  As discussed below, the Board's ultimate decision about whether it can make the requisite findings for approval requires the Board to exercise its discretion, much like the discretionary merit-based scoring the City undertakes in *CV Amalgamated LLC*, 82 Cal.App.5th at 282.  In other words, the only aspect of the process Petitioners allege the County failed to adhere to is making the final discretionary decision, not some mandatory procedural requirement leading up to that decision.

Moreover, the County Code does not provide for any mandatory duty the County must take in the event of a tie vote.  The individual members of the Board who were not recused did move and vote to affirm or reverse the Planning Commission's decision.  Yet, as Petitioners acknowledge, without a majority the

/ / /

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

18

COUNTY'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT

1    Board was without authority to take a final action.  Mot. at fn. 5; Cal. Gov't

2    Code § 25005.

3    Petitioners also argue the County had a mandatory duty to deny the

4    appeals.  They contend Chapter 25B's findings require the decision maker to

5    apply "fixed standards" to determine "objective" facts that do not permit the

6    exercise of discretionary judgment.  Mot. at 13.  They rely on *Witt Home Ranch,*

7    *Inc. v. Cnty. of Sonoma*, where a court held the issuance of a certificate of

8    compliance "is a ministerial act, requiring the responsible local agency to

9    determine whether a valid final or parcel map has been recorded or, if not, what

10    must be done to complete the process."  165 Cal.App.4th 543, 565 (2008).  The

11    Court contrasted the certificate of compliance with "the actual approval of a

12    subdivision map" which requires "the exercise of judgment, and the careful

13    balancing of conflicting interests[.]"  *Id.* at 565-66.

14    Chapter 25B includes a mix of ministerial and discretionary elements.

15    For instance, 25B requires that an appeal must state how "the planning

16    commission decision is inconsistent with the provisions or purposes" of

17    [Chapter 25B] or that "there was an error or abuse of discretion by the planning

18    commission."  §25B-12(b) (emphasis added).  And at least one of the Chapter

19    25B findings clearly calls for the exercise of discretion—the decision-maker

20    must determine whether "[t]he proposed operator has the skills, training, and

21    resources necessary to operate the permitted facility in compliance with the

22    permit and all applicable county codes."  §25B-10(a)(9).

23    Petitioners assert that finding 10(a)(9) does not provide the County with

24    broad discretion to consider any skills, training, and resources.  Mot. at 17.

25    They contend the ordinance should be interpreted to set out a narrow objective

26    path for making the finding—by examining only relevant records of compliance

27    and corrective actions to determine whether the proposed operator has a record

28    / / /

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

19

**COUNTY'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

1  of non-compliance or unsafe operations systemic in nature for similar facilities.

2  *Id.*

3      Federal courts apply California's rules of statutory construction when

4  interpreting a state statute or local ordinance.  *See Turnacliff v. Westly*, 546 F.3d

5  1113, 1117–18 (9th Cir. 2008) (interpreting a state statute); *Symons Emergency*

6  *Specialties v. City of Riverside*, 99 Cal.App.5th 583, 594 (2024) ("Courts

7  interpret municipal ordinances in the same manner and pursuant to the same

8  rules applicable to the interpretation of statutes.").  "Statutory interpretation

9  under California law begins with the words themselves, giving them 'their plain

10 and commonsense meaning[.]'" *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1071

11 (9th Cir. 2020) (citing *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal.4th 1094

12 (2007)). If the "language is clear and unambiguous [the] inquiry ends." *Id.*  "If

13 the relevant statutory language permits more than one reasonable interpretation,

14 [courts] look to appropriate extrinsic sources, such as the statute's purpose,

15 legislative history, and public policy." *Prang v. Los Angeles Cnty. Assessment*

16 *Appeals Bd.*, 15 Cal.5th 1152, 1170 (2024).  California courts also extend some

17 deference to the agency's construction of the statute or ordinance if the agency

18 has consistently maintained the interpretation in question and the interpretation

19 is long-standing.  *Id.*; *see also Yamaha Corp. of Am. v. State Bd. of Equalization*,

20 19 Cal.4th 1, 13 (1998).

21      Petitioners' narrow construction of finding 10(a)(9) is contrary to the

22 plain language of the ordinance.  There is no language in the ordinance that

23 limits what the decision-maker may consider when evaluating the proposed

24 operator's skills, training, and resources.  Certain relevant records must be

25 considered to evaluate past compliance, but there is nothing precluding the

26 decision-maker from considering any other information or records it deems

27 necessary:

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

28

(9) Operator Capability. The proposed operator has the skills, training, and resources necessary to operate the permitted facility in compliance with the permit and all applicable county codes and has demonstrated the ability to comply with compliance plans listed in section 25B-10.1.f. The director shall require relevant records of compliance, and corrective actions taken subsequent to any major incidents for facilities, if any, that are similar in nature to those that are the subject of the permit, as may be necessary to make findings. These records shall be used to provide sufficient assurance that the proposed operator does not reflect a record of non-compliant or unsafe operations systemic in nature for similar facilities to those being considered for operatorship.

Moreover, legislative history does not support Petitioners' narrow interpretation.  A memorandum drafted by staff of the Planning and Development Department to the Planning Commission about an earlier draft of the ordinance included a summary explaining how aspects of Chapter 25B had been revised in response to objections from the oil and gas industry.  (Dkt. 28-1, 11-57.)  It states:

> Industry expressed two concerns about the requirement for review of an incoming operator's safety and compliance records, namely, the absence of hard and fast standards of past operating performance, and how to qualify a new operator that lacks the requisite track record.  In staff's opinion, . . . fair evaluation of operating records can only be done on [a] case by case basis; evaluation of diverse records is <u>not amendable to fixed standards</u>, which preclude the use of judgment as well as consideration of all the relevant facts.

(Dkt. 28-1, 30 (emphasis added).)

When the ordinance went to the Board, the finding discussed above for "Operation Record" had been revised.  It had been replaced with a "Operator Capability" finding, which staff described as "broader" than the "Operation Record" finding.  (Dkt. 28-1, 77)  Staff informed the Board: "To make this finding, the Director may require records of compliance and major incidents.  Thus, the review of a proposed operator could consider track record, renders experience and expertise, criminal convictions, and any other information

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

germane to assessing the capabilities of a proposed operator." (*Id.*)  This legislative history reveals neither staff, nor the Board when it ultimately adopted the language proposed by staff, intended finding 10(a)(9) to restrict the decision maker to evaluating only fixed standards and objective facts that call for no judgment.  §25B-10(a)(9).

The County's past practice also supports the County's interpretation of finding 10(a)(9).  As evidenced by the proposed findings provided by staff as well as the Board's 2023 findings and Sable's own presentation to the Board, this finding has been interpreted broadly to look at the applicant's years of experience and other evidence supporting the requisite expertise.  (Dkt. 13-11, 828-844; Dkt. 13-20, 73; Dkt. 36-6, 9.) "A court should hesitate before construing a statute in a way that renders years of consistent agency practice unlawful." *Cnty. of Amador v. United States Dep't of the Interior*, 872 F.3d 1012, 1023–24 (9th Cir. 2017).

Petitioners also assert that undisputed evidence confirms the Planning Commission's 10(a)(9) finding was correct.  Mot. at 14, 17.  They point to evidence presented at the hearing that Sable's executive team has decades of experience, that management teams are experienced with local facilities and nearly two-thirds of employees transferred from Exxon to Sable, and that Sable has no record of prior major incidents or unsafe operations.  Mot. at 17.

Petitioners fail to discuss, however, the contrary evidence presented by appellants and members of the public, including:

- A Cease and Desist Order from the California Coastal Commission for unpermitted work in sensitive habitat. (Dkt. 28-1, 161-174.)
- A letter from United States Department of the Interior that work Sable was doing on the pipeline could injure or kill endangered species and directing Sable to seek an exemption or take authorization to comply with federal law. (Dkt. 28-1, 176-178.)

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

- A letter from the Central Coast Regional Water Quality Control Board notifying Sable it had "evidence of unauthorized discharge of waste to waters of the state," as well as a second and third notice of noncompliance.  (Dkt. 28-1, 181-186.)
- Public comment that:
  - "Sable has never operated an oil and gas facility.  All we have to judge is the last year and in that short time, it has repeatedly violated state law, racking up close to a dozen [Notices of Violation] and cease and desist orders and it has willfully ignored these directives."  (Dkt. 13-12, 247.)
  - "They were digging up in creeks, drainages, really sensitive areas along the Gaviota coast, all willfully ignoring these agency directives.  I think it paints a very concerning picture of what we can expect them to be like as an operator."  (Dkt. 13-21, 256.)

In addition, Petitioners emphasize staff's recommendations and the Planning Commission's conclusions in its statement of undisputed facts.  But the Board, not County staff and not the Planning Commission, have purview to decide de novo appeals to the Board.  *See Lagrutta,* 9 Cal.App.3d at 895-96 (noting the city council makes final decisions, not the planning commission).

In short, the County does not have a mandatory duty to deny the appeals.  The decision of whether findings for approval can be made is discretionary and the Board heard evidence in support of both approval and denial.  Because the County cannot be forced to exercise its discretion in a particular manner, this Court should deny Petitioners' request to direct the Board to deny the appeals and approve the transfers.  *See Common Cause v. Bd. of Supervisors*, 49 Cal.3d 432, 442 (1989) ("Mandamus will not lie to control an exercise of discretion, i.e., to compel an official to exercise discretion in a particular manner.").

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

23

### D. A New Hearing May Be Appropriate to Allow the Board to Reach a Decision and Make Findings.

As a final alternative, Petitioners ask this Court to issue an administrative writ directing the Board to deny the appeals or decide the appeals by considering only the nine factors under Chapter 25B.  In a writ of administrative mandate, a court considers whether there was a prejudicial abuse of discretion, which "is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." Cal. Civ. Proc. Code § 1094.5(b).

Petitioners assert that two Supervisors, Chair Capps and Supervisor Lee, abused their discretion by considering matters outside Chapter 25B's scope. Mot. at 20.  But the majority of the statements Petitioners point to were made by appellants, CBD and the Wishtoyo Foundation and EDC, GOO!, and SBCAN in writing and at the hearing.  Mot. at 20-21.  Chapter 25B provides a right of appeal and the Brown Act requires the County to allow public comment on all matters within its jurisdiction.  Cal. Gov't Code § 54954.3.  The arguments made by appellants or any members of the public are outside the County's control.  *See Breakzone Billiards v. City of Torrance*, 81 Cal.App.4th 1205, 1242 (2000) ("Members of the public have a right to voice their views at [de novo] hearings and neither applicant nor council member can be certain of the specific facts that will be presented.").

As for the two Supervisors who allegedly abused their discretion, Chair Capps kept her deliberation within the scope of the Chapter 25B process, which includes the evaluation of whether "[t]he proposed operator has the skills, training, and resources necessary to operate the permitted facility in compliance with the permit and all applicable county codes."  §25B-10(a)(9).  She noted that the hearing was not about pipeline restart, stating:  "That is not what we're

/ / /

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

**COUNTY'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

doing here." (Dkt. 13-21, 397.)  She then identified a variety of "red flags" that led her to believe she could not make the findings to approve the transfers:

- Sable was formed to take over a pipeline that was deemed to be potentially too risky by a major company;

- Sable did not have adequate funds to purchase the pipeline so Exxon loaned Sable the money;

- Sable refused to provide its insurance policy when it was requested; and

- Sable violated cease and desist orders from the California Coastal Commission.

(Dkt. 13-21, 397-398.)

As for Supervisor Lee, although he mentioned pipeline restart, with respect to his decision on the transfer of the permits, he stated: "After considering listening to the appellant and Sable and listening to the public, and I came to conclude that I support upholding the appeals, because that's the right thing to do, and that's where I'm at." (Dkt. 13-21, 393-94.)  This fails to establish Supervisor Lee relied on evidence outside the scope of Chapter 25B when voting on the item.

This Court may, however, conclude that a remand is necessary to allow the Board to affirm, deny, or modify the decision of the Planning Commission and to set forth findings "sufficient both to enable the parties to determine whether and on what basis they should seek review and, in the event of review, to apprise a reviewing court of the basis for the board's action."  *Topanga Assn. for a Scenic Cmty. v. Cnty. of Los Angeles*, 11 Cal.3d 506, 514 (1974); *see also Mountain Def. League v. Bd. of Supervisors*, 65 Cal.App.3d 723, 732 (1977) ("Although the raw evidence supports the decision of the Board, there is nothing to bridge the gap between the evidence and the Board's resolution. The matter / / /

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

must be remanded for the Board to make the necessary findings to support its resolution.").

Similar to the court in *Lopez*, this Court may remand the matter for a rehearing before the Board because neither Sable nor the appellants met their burden of convincing a majority of the members of the Board to affirm, deny, or modify the decision of the Planning Commission. *See Lopez*, 165 Cal.App.4th at 4-5 (holding that the tie vote constituted a failure to act and affirming trial court's decision to remand for the board to conduct another vote because respondent did not meet its burden of proving its charges to the satisfaction of a majority of the Board); *cf. Clark*, 48 Cal.App.4th at 1172-73 (holding the trial court should have remanded the matter for a rehearing before the city council because one member who voted with the majority in a three-to-two vote had a conflict of interest).

## V.    CONCLUSION

For the foregoing reasons, the County respectfully requests that this Court decide whether the tie vote affirmed the decision of the Planning Commission or requires a remand for a hearing to allow the Board to decide the appeals and make findings to support its decision.

Dated:  August 1, 2025                    Respectfully submitted,

RACHEL VAN MULLEM
COUNTY COUNSEL

By: /S/ - Callie Patton Kim
    Callie Patton Kim
    Senior Deputy County Counsel for
    COUNTY OF SANTA BARBARA
    and SANTA BARBARA COUNTY
    BOARD OF SUPERVISORS

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

1

## CERTIFICATE OF COMPLIANCE

2
3
4

The undersigned, counsel of record for Respondent and Defendant, certifies that this brief contains 6505 words, which complies with the word limit of L.R. 11-6.1.

5    Dated:  August 1, 2025                    Respectfully submitted,

6                                              RACHEL VAN MULLEM
                                               COUNTY COUNSEL
7

8                                              By: /S/ - Callie Patton Kim
                                               Callie Patton Kim
9                                              Senior Deputy County Counsel for
                                               COUNTY OF SANTA BARBARA
10                                             and SANTA BARBARA COUNTY
                                               BOARD OF SUPERVISORS
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

**COUNTY'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT**