LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
TARA C. RENGIFO (Bar No. 307670)
trengifo@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622
Fax: (805) 962-3152

*Attorneys for Environmental Defense Center,
Get Oil Out!, Santa Barbara County Action
Network, Sierra Club, and Santa Barbara
Channelkeeper*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| SABLE OFFSHORE CORP., et al.<br><br>    Petitioners/Plaintiffs,<br><br>  v.<br><br>COUNTY OF SANTA BARBARA, et al.<br><br>    Respondents/Defendants,<br><br>  and<br><br>ENVIRONMENTAL DEFENSE CENTER, et al.<br><br>    Intervenors. | Case No.: 2:25-cv-04165-DMG-(AGRx)<br><br>**INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT**<br><br>Hon. Dolly M. Gee<br><br>Hearing: September 12, 2025<br>Time: 2:00 p.m.<br>Place: Courtroom 8C |

| Petitioners' Uncontroverted Facts and Supporting Evidence | Intervenors' Response to Petitioners' Uncontroverted Facts and Supporting Evidence |
|---|---|
| Facilities For Which the Planning Commission Granted Transfer of Permits | |
| **1.** The Santa Ynez Unit ("SYU") consists of the onshore components connecting offshore platforms Hondo, Harmony, and Heritage to the associated onshore processing facilities. The SYU is authorized by the County under FDPs 87-DP-32cz (modified on July 25, 2001, with 87-DP-032cz (RV05) Synergy Project) (modified on Feb. 19, 2003, with 87-DP-032cz (RV06) Offshore Power Cable Repair & Enhancement Project). *Evidence:* Dkt. 13-1, 8 (Agenda for October 30, 2024 Planning Commission Hearing "Planning Commission Agenda"); Dkt. 13-1, 21-26 (October 22, 2024, Planning Commission Staff Report for a Change of Owner, Operator, and Guarantor for the Santa Ynez Unit, POPCO Gas Plant, and Las Flores Pipeline System Final Development Plan Permits ("Staff Report"); "Background Information"); Dkt. 13-10, 257-258 (Minutes of October 30, 2024 | Undisputed, with the exception that the SYU is "permitted" under the County permits. *Evidence*: Dkt. 13-1, AR000017 (Staff Report). |

| | |
|---|---|
| Planning Commission Hearing ("Planning Commission Minutes")); Dkt. 13-1, 86-166 (Draft SYU FDP conditions of approval); Dkt. 13-11, 845-925 (Draft SYU FDP conditions of approval). | |
| **2.** The County issued the FDP for SYU in 1987.<br>*Evidence:*<br>Dkt. 13-1, 86-166 (Draft SYU FDP conditions of approval); Dkt. 13-11, 845-925 (Draft SYU FDP conditions of approval); Dkt. 13-6, 157 (SYU Groundwater Management Plan); Dkt. 13-1, 24 (Staff Report "Background Information"). | Undisputed. |
| **3.** The Pacific Offshore Pipeline Company Gas Plant ("POPCO Facilities") are onshore oil and gas production facilities located in the Las Flores Canyon authorized by the County under FDPs 93-FDP-015, 93-FDP-015 (RV01), 93-FDP-015 (RV02) (modified September 29, 1995, March 24, 1997, August 25, 1999, and July 25, 2001) and 74-CP-ll (RVl).<br>*Evidence:*<br>Dkt. 13-1, 8 (Planning Commission Agenda); Dkt. 13-1, 21-26 (Staff Report | Undisputed, with the exception that the POPCO facilities are "permitted" under the County permits.<br>*Evidence*:<br>Dkt. 13-1, AR000017 (Staff Report). |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| "Background Information"); Dkt. 13-10, 257-258 (Planning Commission Minutes); Dkt. 13-1, 167-912 (Draft POPCO Facilities FDP conditions of approval); Dkt. 13-11, 926-951 (Draft POPCO Facilities FDP conditions of approval). | |
| **4.**    The County issued the FDP for the POPCO Facilities in 1993. *Evidence:* Dkt. 13-1, 167-912 (Draft POPCO Facilities FDP conditions of approval); Dkt. 13-11, 926-951 (Draft POPCO Facilities FDP conditions of approval); Dkt. 13-1, 24 (Staff Report "Background Information") | Undisputed, with the exception that the cited evidence does not state a FDP was issued in 1993. *Evidence*: Dkt. 13-1, AR000162 (Draft Conditions of Approval for POPCO Gas Plant Expansion); Dkt. 13-11, AR003068 (Draft Conditions of Approval for POPCO Gas Plant Expansion). |
| **5.**    The Las Flores Pipeline ("Pipeline") is a crude oil pipeline that generally runs, in the County, from the Gaviota Coast to the Kern County boundary. The Pipeline is authorized by the County under FDPs 88-DPF-033 (RV01)z, 88-CP-60 (RV01), 88-DPF-25cz, 85-DP-66cz, and 83-DP-25cz (modified May 2003 and September 19, 2023 with change of ownership, operator, and guarantor to ExxonMobil affiliates). *Evidence:* | Undisputed, with the following clarifications and exceptions: (1) the Las Flores Pipeline System was previously authorized as the Celeron / All American and Getty Pipeline Projects. Dkt. 13-1, AR000019 (Staff Report "Background Information"); AR000271 (Sable Pipeline Application). (2) the Las Flores Pipeline System is "permitted" under the County permits. Dkt. 13-1, AR000017 (Staff Report). |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| Dkt. 13-1, 8 (Planning Commission Agenda); Dkt. 13-1, 21-26 (Staff Report "Background Information"); Dkt. 13-10, 257-258 (Planning Commission Minutes); Dkt. 13-1, 193-241 (Draft Pipeline FDP conditions of approval); Dkt. 13-11, 952-1000 (Draft Pipeline FDP conditions of approval). | (3) the evidence to which Movants cite as establishing that a change of ownership, operator, and guarantor took place in 2023 to "ExxonMobil affiliates" is language that is stricken out from the Las Flores Pipeline System Final Development Plan Conditions.  Dkt. 13-1, AR000193 (Las Flores Pipeline System Final Development Plan Conditions, modified 2024); Dkt 13-11, AR003099 (Las Flores Pipeline System Final Development Plan Conditions, modified 2025). |
| **6.**  The County issued the FDP for the Pipeline in 1988. *Evidence:* Dkt. 13-1, 193-241 (Draft Pipeline FDP conditions of approval); Dkt. 13-11, 952-1000 (Draft Pipeline FDP conditions of approval); Dkt. 13-1, 335 (Pipeline Transition Plan); Dkt. 13-1, 24 (Staff Report "Background Information"). | Undisputed. |
| **7.**  The Facilities were operated by their prior owners for decades, vesting the right to continue under the FDPs. *Evidence:* Dkt. 13-1, 24-26 (Staff Report "Background Information"); Dkt. 13-21, | Undisputed regarding the fact that "The Facilities were operated by their prior owners for decades." The rest of the statement requires a legal conclusion. |

| | |
|---|---|
| 241, 266, 288 (Feb 25, 2025 Board of Supervisors Hearing Transcript ("Board Hearing Transcript")). | |
| **8.**     The FDP for the Pipeline was previously transferred in 2023 from Plains Pipeline L.P., its former owner, operator, and guarantor, to PPC (then owned by MPPC), ExxonMobil, and EMPCo, respectively. In 1998, prior to the adoption of Santa Barbara County Code Chapter 25B, it was transferred from its initial holder, Celeron, to Plains Pipeline. *Evidence:* Dkt. 13-11, 957 (Pipeline FDP conditions of approval); Dkt. 13-1, 24, 27 (Staff Report "Background Information"). | Undisputed, with the exception that the evidence cited as establishing that PPC was previously owned by MPPC is stricken out from the cited document. Dkt. 13-11, AR003099 (Las Flores Pipeline System Final Development Plan Conditions). |
| Sable Purchases the Facilities and Applies for Permit Transfer | |
| **9.**     On February 14, 2024, Sable acquired full ownership of PPC and POPCO, the owners of the Pipeline and POPCO facility, from MPPC and ExxonMobil, respectively. Sable also acquired the SYU, which was owned by ExxonMobil. *Evidence:* Dkt. 13-1, 23 (Staff Report); | Undisputed, with the clarification that to finance the $625 million dollar purchase price of the facilities, Sable secured a $622 million dollar loan from Exxon. *Evidence*: ECF No. 13-11, AR003204–05. |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| Dkt. 13-1, 245-250 (SYU Application, March 14, 2024); Dkt. 13-1, 259-273 (POPCO Application, March 14, 2024); Dkt. 13-1, 274-288 (Pipeline Application, March 14, 2024). | |
| **10.** On March 14, 2024, Sable submitted a combined application to the County to change the owner, guarantor, and operator for the Facilities' FDPs. Specifically, Sable applied to make the following changes:<br><br>• A Change of Owner, Operator, and Guarantor of the SYU FDP Permit from ExxonMobil to Sable Offshore Corp.<br>• A Change of Operator and Guarantor of the POPCO Facilities FDP Permit from ExxonMobil to Sable.[1]<br>    o POPCO, now a subsidiary of Sable, remains the owner of the POPCO Facilities.<br>• A Change of Operator and Guarantor of the Pipeline FDP Permit from EMPCo and ExxonMobil, respectively, to Sable.<br>    o PPC, now a subsidiary of Sable, remains the owner of the Pipeline.<br><br>*Evidence:* | Undisputed. |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| Dkt. 13-1, 245-250 (SYU Application, March 14, 2024); Dkt. 13-1, 259-273 (POPCO Application, March 14, 2024); Dkt. 13-1, 274-288 (Pipeline Application, March 14, 2024).<br><br>[1] Sable also submitted a request for a Change of Owner for POPCO and the Pipeline in abundance of caution, given the change in parent company for the owners of both Facilities. Dkt. 13-1, 259-273 (POPCO Application, March 14, 2024); Dkt. 13-1, 274-288 (Pipeline Application, March 14, 2024). However, the Planning Commission did not consider the transfer of ownership of the Pipeline and POPCO, as POPCO remains the Owner of the POPCO Gas Plant, and PPC remains the Owner of the Pipeline. Dkt. 13-1, 26 (Staff Report); see also, Dkt. 13-11, 812 (Board Letter). | |
| **11.**    Sable supplemented its application over several months in response to County staff inquiries and notices.<br>*Evidence:*<br>Dkt. 13-1, 289-298 (First Response to Notice of Incompleteness, May 22, 2024); | Undisputed. |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| Dkt. 13-1, 299-311 (Second Response to Notice of Incompleteness, July 1, 2024); Dkt. 13-1, 312-349 (Third Response to Notice of Incompleteness, July 23, 2024). | |
| **12.**    As part of its application, Sable submitted the following documents:<br>• An application for each of the Facilities<br>• Emergency Response Plan (April 2024)<br>• Enterprise Value and Post-Close Financials<br>• Letters from a responsible official representing the owner and operator formally accepting all conditions and requirements in the permits<br>• Transition Plan (SYU-POPCO)<br>• Transition Plan (Pipeline)<br>• Las Flores Pipeline Integrated Contingency Plan<br>• Las Flores Pipeline Noise Monitoring and Control Plan<br>• Las Flores Pipeline Pump Station Fire Protection Plan<br>• Las Flores Pipeline Safety Inspection Maintenance and Quality Assurance Program ("SIMQAP")<br>• Las Flores Pipeline Site Security Plan<br>• SYU City of Santa Barbara Harbor Use | Undisputed. |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

Plan
- SYU Groundwater Monitoring Plan
- Integrated Noise Monitoring Plan
- SYU POPCO Emergency Response Plan
- SYU POPCO Fire Protection Plan
- SYO POPCO Natural Gas Liquids Inventory Management Plan
- SYU POPCO Preservation Task List
- SYU POPCO SIMQAP
- SYI Security Control Plan
- SYU Transportation Risk Management and Prevention Program
- Certificates of Insurance
- Certificates of Financial Responsibility
- Sable Incident Management Team Overview
- Written responses to the County's requests for additional materials related to the application

*Evidence:*

Dkt. 13-1, 245-250 (SYU Application, March 14, 2024); Dkt. 13-1, 259-273 (POPCO Application, March 14, 2024); Dkt. 13-1, 274-288 (Pipeline Application, March 14, 2024); Dkt. 13-1, 289-298 (First Response to Notice of Incompleteness);

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| Dkt. 13-1, 299-311 (Second Response to Notice of Incompleteness); Dkt. 13-1, 312-349 (Third Response to Notice of Incompleteness). | |
| **13.** On July 30, 2024, County staff determined Sable's application was complete.<br>*Evidence:*<br>Dkt. 13-1, 23 (Staff Report). | Undisputed. |
| **14.** County staff concluded that Sable's application satisfied all the requirements required by Chapter 25B for each of the permit transfers requested in the application and recommended the Planning Commission approve the transfers.<br>*Evidence:*<br>Dkt. 13-1, 27-58 (Staff Report "Consistency with Chapter 25B"); Dkt. 13-10, 228-234 (Staff presentation to Planning Commission at October 30, 2024 hearing ("Staff Presentation I")). | Undisputed, with the clarification that County staff's conclusion is a recommendation and does not have any legal effect. |
| Planning Commission Approval and Board Tie Vote | |
| **15.** As the County has acknowledged, with respect to jurisdiction, "the review authority" for the Chapter 25B permit | Undisputed, with the clarification that the Planning Commission's determination is subject to appeal to the Board of Supervisors. To the extent Movants |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| transfers at issue here is "the Planning Commission."<br><br>*Evidence:*<br>Santa Barbara County Code Chapter 25B-8(C); Dkt. 13-1, 22 (Staff Report "Jurisdiction"); Dkt. 13-10, 225 (Staff Presentation I). | suggest that *only* the Planning Commission has review authority, that is a legal conclusion regarding how Chapter 25B is intended to function. |
| **16.** On October 30, 2024, after timely notice and a public hearing that lasted approximately six hours, the Planning Commission approved the FDP transfers from the ExxonMobil affiliates to Sable after confirming that all Chapter 25B requirements were met. The Planning Commission approved the Transfers by a vote of 3 to 1.<br><br>*Evidence:*<br>Dkt. 13-1, 10-19 (Noticing Documents for October 30, 2024 Planning Commission hearing ("Planning Commission Noticing Documents")); Dkt. 13-10, 256-258 (Planning Commission Minutes); Dkt. 13-11, 28-29 (November 4, 2024 Planning Commission Action Letter ("Planning Commission Action Letter")); Dkt. 13-21, 43-195 (October 30, 2024 Planning | Undisputed, with the clarification that the Planning Commission "found" that all Chapter 25B requirements were met. *Evidence*: Dkt. 13-11, COSB AR002170 (Planning Commission Letter).<br><br>Further, "timely notice" is a legal conclusion. The notice of the October 30, 2024 hearing was published in the Santa Barbara Independent on October 17, 2024. *Evidence:* Dkt. 13-1, COSB AR000006. |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| Commission Hearing Transcript "Planning Commission Transcript"). | |
| **17.** On November 5, 2024, the Center for Biological Diversity ("CBD") and the Wishtoyo Foundation provided notice of appeal from the Planning Commission's decision. On November 7, 2024, the Environmental Defense Center ("EDC"), Get Oil Out! ("GOO!"), and Santa Barbara County Action Network ("SBCAN") provided notice of appeal from the Planning Commission's decision. The appeals were noticed for a public hearing on February 25, 2025.<br>*Evidence:*<br>Dkt. 13-10, 299-306 (CBD appeal); Dkt. 13-10, 307-312 (EDC appeal); Dkt. 13-11, 783 (Feb. 4, 2025 Minute Order); Dkt. 13-11, 785, 807 (Agenda for Feb. 25, 2025 Board meeting ("Board Agenda")). | Undisputed. |
| **18.** In advance of the Board of Supervisors hearing, County staff prepared another report, in the form of a letter to the Board, and another presentation, each confirming that Sable's application complied with all the requirements of | Undisputed, with the clarification that County staff prepared a report and presentation, each "recommending" that the Board find that Sable's application complied with all the requirements of Chapter 25B, deny the appeals, and grant de novo approval of Sable's applications. |

| | |
|---|---|
| Chapter 25B, and recommending denial of the appeals.<br><br>*Evidence:*<br>Dkt. 13-11, 811-827 (February 25, 2025 staff letter to Board ("Board Letter")); Dkt. 13-11, 828-844 (Findings of Approval); Dkt. 13-20, 9-28 (Staff presentation to Board of Supervisors at February 25, 2025 hearing ("Staff Presentation II")). | *Evidence:*<br>Dkt. 13-11, COSB AR002953 (listing "Recommended Actions"); Dkt 13-20, COSB AR006614 (offering "Staff Recommendation"). |
| **19.**    The Board of Supervisors is composed of five members. One of the five members, Supervisor Hartmann, is permanently recused on matters related to the Facilities.<br><br>*Evidence:*<br>Dkt. 13-11, 785 (Board Agenda); Dkt. 13-21, 10 (Minute order documenting Board actions taken February 25, 2025 ("Board Minute Order")); Dkt. 13-21, 213, 400 (Board Hearing Transcript). | Undisputed, with the clarification that Supervisor Hartmann was not "permanently" recused on matters related to the Facilities.<br><br>*Evidence:*<br>Exhibit 1 of Intervenors' RJN in Support of Intervenors' Opposition to Motion for Summary Judgment (Letter to Rachel Van Mullem, County Counsel, Santa Barbara County, from Dave Bainbridge, General Counsel, State of California Fair Political Practices Commission, dated June 27, 2025). |
| **20.**    At the February 25, 2025 hearing— which lasted approximately seven hours— the voting members of the Board of | Undisputed. |

| | |
|---|---|
| Supervisors split 2-to-2 on the appeals, resulting in "no action" by the Board.<br><br>*Evidence:*<br><br>Dkt. 13-21, 10-11 (Board Minute Order); Dkt. 13-21, 398-400 (Board Hearing Transcript); Dkt. 33-1, 6-8 (March 3, 2025 Board Action Letter). | |
| **21.** On February 26, 2025, Sable sent the Director a letter requesting that the County promptly transfer the FDPs by issuing corrected FDPs that replace the names of the prior owners, operators, and guarantors. On April 11, 2025, Sable sent the Director another letter again requesting that the County transfer the FDPs forthwith, and noting that it might need to seek writ relief if the County failed to act.<br><br>*Evidence:*<br><br>Dkt. 13-21, 27-29 (Feb. 26, 2025, letter from Sable to Director requesting FDP transfer); Dkt. 13-21, 24-26 (April 11, 2025, letter from Sable to Director requesting FDP transfer). | Undisputed, with the exception that Sable did not request "corrected" FDPs. This statement is not established by the cited evidence and assumes the legal effect of the County's tie vote, which is at issue in this case.<br><br>*Evidence*:<br><br>Dkt. 31-21, AR006773. |
| **22.** At its April 16, 2025 meeting, the Board went into closed session to discuss Sable's threat of litigation regarding the Transfers. At the conclusion of the closed | Undisputed. |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| session, the Board noted that no reportable action was taken.<br><br>*Evidence:*<br>Dkt. 13-21, 39 (minutes from Board closed session on April 16, 2025). | |
| **23.**    The County has since refused to process the Planning Commission's permit transfers approval or respond to Sable's letters, except to acknowledge receipt.<br><br>*Evidence:*<br>Dkt. 13-21, 27-29 (Feb. 26, 2025, letter from Sable to Director requesting FDP transfer); Dkt. 13-21, 24-26 (April 11, 2025, letter from Sable to Director requesting FDP transfer). | Undisputed that the County has not transferred the permits; however, this statement requires a legal determination regarding the County's obligations upon de novo review of the Planning Commission's action. |
| **Ministerial Duties to Deny Appeals Based on Chapter 25B Compliance** | |
| **24.**    County staff has repeatedly confirmed that the County's role in FDP transfers under Chapter 25B is limited to ensuring compliance with specific, enumerated requirements.<br><br>*Evidence:*<br>County Code § 25B-1; Dkt. 13-1, 25 (Staff Report); Dkt. 13-11, 813-826 (Board Letter); Dkt. 13-21, 60, 142, 153, 191 (Planning Commission Transcript); Dkt. | The reference to "Ministerial Duties" in the header requires a legal determination.<br><br>This statement regarding County staff's interpretation of the County's role in FDP transfers under Chapter 25B is a legal conclusion and is directly at issue in this case.<br><br>*Evidence*: |

| | |
|---|---|
| 13-21, 235-236 (Board Hearing Transcript); Dkt 13-10, 228-234 (Staff Presentation I); Dkt 31-20, 11 (Staff Presentation II). | Dkt. 13-11, AR002958 (Planning and Development staff response to appellant's assertion); Dkt 13-21, AR006979 (Chair Capps summarizing "staff's interpretation"). |
| **25.** County staff has repeatedly confirmed that Pipeline safety and restart are subject to the exclusive jurisdiction of state and federal authorities, not the County of Santa Barbara. For example, County staff stated that "[t]he County has no role or responsibility in overseeing or determining pipeline safety restart requirements." <br> *Evidence:* <br> Dkt. 13-21, 49, 52, 67, 70 (Planning Commission Transcript); Dkt. 13-11, 823 (Board Letter); Dkt. 13-21, 222, 229, 230 (Board Hearing Transcript); Dkt 13-10, 228 (Staff Presentation I); Dkt 31-20, 11 (Staff Presentation II). | This statement requires a legal determination. |
| **26.** A settlement agreement, entered into on February 8, 1988, between the County of Santa Barbara and Celeron Pipeline Company, the predecessor of the current owner confirmed the County's lack of jurisdiction over pipeline restart. The | This statement requires a legal determination. <br><br> Further, the evidence cited by Petitioners does not establish that the County lacks jurisdiction. |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| settlement agreement explained that "[t]he County and Celeron agree that the jurisdiction of the County over an interstate pipeline is limited and partially preempted by the provisions of the federal Hazardous Liquids Pipeline Safety Act and 49 CFR Part 195." <br><br>*Evidence:* <br><br>Dkt. 13-14, 635 (Settlement Agreement between Celeron Pipeline Company of California and the County of Santa Barbara, Feb. 8, 1988); Dkt. 13-11, 823 (Board Letter). | *Evidence*: <br><br>Dkt. 13-14, COSB AR005380 (1988 Settlement Agreement) ("The County and Celeron agree that the jurisdiction of the County over an *interstate* pipeline is *limited* and *partially preempted . . . .*") (emphasis added). |
| County's Historical Practice and County Staff Report Confirm Ministerial Nature of Chapter 25B. | |
| **27.**    On September 21, 2023, the County Planning Commission approved a transfer of FDPs for owner, operator, and guarantor for the Las Flores Pipeline from Plains Pipeline L.P. to PPC (then owned by MPPC), ExxonMobil, and EMPCo, respectively pursuant to Chapter 25B. <br><br>*Evidence:* <br><br>Dkt. 13-14, 514-515 (September 21, 2023, Board Action letter). | The reference in the header to the "Ministerial Nature" of Chapter 25B requires a legal determination. <br><br>Statement no. 27 is undisputed. |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| **28.**    Interested parties appealed the Planning Commission's 2023 decision to grant the permits to the Board. *Evidence:* Dkt. 13-14, 514-515 (September 21, 2023, Board Action letter). | Undisputed, with the exception that the "Appellant" was "A. Barry Cappello." *Evidence:* Dkt 13-14, COSB AR005259. |
| **29.**    On September 19, 2023, the Board denied the appeal and affirmed the Planning Commission's determination approving the requested change of owner, guarantor, and operator for the Pipeline. *Evidence:* Dkt. 13-14, 514-515 (September 21, 2023, Board Action letter). | Undisputed. |
| **30.**    Appellants in the 2023 appeal argued that permit transfers were a project under CEQA; however, the Board determined that "the proposed action [transfer of Pipeline FDPs] is not subject to CEQA, as it does not constitute a 'project', as defined by CEQA Guidelines Section 15378(a)." Similarly, appellants in the 2023 appeal argued that prior owner was not in compliance with existing permit conditions, including with respect to cathodic protection, and that the FDP should be revised to impose conditions for | This statement requires a legal determination and refers to a separate action that has no legal bearing on the case herein. Petitioners also misquote Dkt. 13-14, COSB AR005261, by omitting "the requirements of the California Environmental Quality Act" from the sentence. |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| purposes other than "to maintain existing insurance or financial guarantees." However, the Board found that the prior owner was "in compliance with all requirements of the FDP Permit." *Evidence:* Dkt. 13-14, 516, 518 (September 21, 2023, Board Action letter – Attachment A: Findings); Request for Judicial Notice, Exh. 1 (Hearing Transcript excerpt of the Santa Barbara County Board of Supervisors Hearing, September 19, 2023 Meeting), pp. 9-11, 13-14, 31; Dkt. 1-4, 123 (Board Agenda Letter for a Change of Owner, Operator, and Guarantor for the Las Flores Pipeline System, dated Sept. 19, 2023); see also Request for Judicial Notice, Exh. 2 (Agenda Letter), p. 85. | |
| **31.**    At the September 19, 2023 hearing before the Board, Supervisor (now Chair) Laura Capps noted that the requested "change of ownership is an administrative action" and that in approving the transfer would ensure that the "county permit actually matches the company that owns the pipeline." She also noted that change of | This statement requires a legal determination and refers to a separate action that has no legal bearing on the case herein. |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| ownership "doesn't have any impacts on our environment" and is "not a step towards the restart" of the pipeline. *Evidence:* Dkt. 1-7, 143 (Hearing Transcript excerpt of the Santa Barbara County Board of Supervisors Hearing, September 19, 2023 Meeting); see also Request for Judicial Notice, Exh. 1, p. 56. | |

| Planning Commission Confirmation of Ministerial Requirements Met | |
|---|---|
| **32.** Prior to the Planning Commission approval, County staff conducted a review of Sable's application and confirmed that all Chapter 25B findings were satisfied. *Evidence:* Dkt. 13-1, 27-58 (Staff Report); Dkt. 13-10, 222-234 (Staff Presentation I); Dkt. 13-21, 48-58, (Planning Commission Transcript). | The reference to "Ministerial Requirements" in the heading requires a legal determination.<br><br>This statement is undisputed, with the clarification that County staff "recommended a finding" that all Chapter 25B findings were satisfied. *Evidence*: Dkt. 13-21, AR006801 (Transcript) ("So staff recommends that the Planning Commission, (1) make the required findings for approval . . . ."). |
| **33.** After this review and confirmation, County staff recommended approval of the FDP transfers pursuant to Chapter 25B. | Undisputed, with the clarification that County staff's role is to make recommendations, not "confirmations." |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| *Evidence:*<br><br>Dkt. 13-1, 27-58 (Staff Report); Dkt. 13-10, 222-234 (Staff Presentation I); Dkt. 13-21, 48-58, (Planning Commission Transcript). | *Evidence*:<br><br>Dkt. 13-21, COSB AR006801 (Transcript) ("So staff recommends that the Planning Commission, (1) make the required findings for approval . . . .") |
| **34.**   At a properly noticed public hearing on October 30, 2024, the Planning Commission approved the transfer of the FDPs to Sable, issuing findings confirming that all requirements for each of the owner, operator, and guarantor transfer application were met.<br><br>*Evidence:*<br><br>Dkt. 13-1, 10-19 (Planning Commission Noticing Documents); Dkt. 13-10, 256-258 (Planning Commission Minutes); Dkt. 13-11, 28-29 (Planning Commission Action Letter); Dkt. 13-11, 30-42 (Planning Commission Findings attached to November 4, 2024 Planning Commission Action Letter ("Planning Commission Findings")); Dkt. 13-21, 194 (Planning Commission Transcript). | Undisputed, with the clarification that the Planning Commission "found" (rather than "confirmed") that all requirements were met.<br><br>*Evidence*:<br><br>Dkt. 13-11, AR002170 ("At the Planning Commission hearing of October 30, 2024, Commissioner Reed moved . . . to: 1. [m]ake the required findings for approval . . . .").<br><br>"Properly noticed" is a legal conclusion. Notice of the October 30, 2024 hearing was published in the Santa Barbara Independent on October 17, 2024.<br><br>*Evidence:* Dkt. 13-1, COSB AR000006. |
| **Fees and Exactions Paid (Chapter 25B §§ 9(a)(1) [owner]; 10(a)(1) [operator])** | |
| **35.**   For a change of owner, Chapter 25B requires that "[a]ll outstanding county | Undisputed. |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| required fees and exactions due for the facility have been paid." (County Code § 25B-9(a)(1)).<br><br>*Evidence:*<br>County Code § 25B-9(a)(1). | |
| **36.** For a change of operator, Chapter 25B requires that "[a]ll outstanding county required fees and exactions due for the facility have been paid" (County Code § 25B-10(a)(1)).<br><br>*Evidence:*<br>County Code § 25B-10(a)(1). | Undisputed. |
| **37.** County staff confirmed, based on the record reviewed, that this requirement of fees and exactions paid was met for the SYU change of owner and operator:<br><br>• For SYU, pursuant to Chapter 25B section 9(a)(1), County staff confirmed that Sable's application met this requirement for owner transfer. Staff "verified with the [Planning and Development] Accounting Department that no outstanding payments are due for the facility, or for any related planning and compliance cases."<br><br>• For SYU, pursuant to Chapter 25B section 10(a)(1), the Planning | Undisputed, with the clarification that County staff "recommended" that the Planning Commission make a finding of compliance.<br><br>*Evidence*:<br>Dkt. 13-1, AR000022–39 (Staff Report) (Table 1 discussion of "findings");<br>Dkt. 13-10, AR001985 (Staff Presentation I) ("Staff Recommendation" to "[m]ake the required [f]indings"). |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| Commission confirmed that Sable's application to change operator met this requirement, incorporating the finding for Chapter 25B section 9(a)(1) by reference.<br><br>*Evidence:*<br><br>Dkt. 13-1, 27, 34 (Staff Report); Dkt. 13-10, 229 (Staff Presentation I);<br><br>Dkt. 13-21, 52-55, 57-58, 60 (Planning Commission Transcript); Dkt. 13-10, 246-247 (Sable's presentation at the October 30, 2024 Planning Commission hearing ("Applicant Presentation I")); Dkt. 13-1, 247 (SYU Application, March 14, 2024); Dkt. 13-1, 290 (First Response to Notice of Incompleteness). | |
| **38.**    The Planning Commission confirmed this requirement of fees and exactions paid was met for the SYU change of owner and operator:<br><br>• For SYU, pursuant to Chapter 25B section 9(a)(1), the Planning Commission found that Sable's application to change owner met this requirement. The Planning Commission "verified with Accounting staff that no outstanding payments are due for the | Undisputed, with the clarification that the Planning Commission "found" this requirement was met.<br><br>*Evidence*:<br><br>Dkt. 13-11, AR002172 ("Findings of Approval"); Dkt. 13-31, COSB AR006933 (Planning Commission Transcript) (Commissioner Reed discussing "findings" under Chapter 25B). |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

facility, or related planning and compliance cases."

- For SYU, pursuant to Chapter 25B section 10(a)(1), the Planning Commission confirmed that Sable's application to change operator met this requirement, incorporating the finding for Chapter 25B section 9(a)(1) by reference.

*Evidence:*

Dkt. 13-11, 30, 32 (Planning Commission Findings); Dkt. 13-10, 256-258 (Planning Commission Minutes); Dkt. 13-21, 58, 186-194 (Planning Commission Transcript); *see also* Dkt. 13-10, 246-247 (Applicant Presentation I); Dkt. 13-9, 529-530 (Sable October 28, 2024 Letter to Planning Commission "(Applicant Written Submission I")); evidence cited above at ¶ 37 supporting staff determination.

| | |
|---|---|
| **39.** County staff confirmed, based on the record reviewed, that this requirement of fees and exactions paid was met for the POPCO change of operator:<br><br>For the POPCO Facilities, pursuant to Chapter 25B section 10(a)(1), County staff confirmed that Sable's application met this | Undisputed, with the clarification that County staff "recommended" that the Planning Commission make a finding of compliance.<br><br>*Evidence*:<br><br>Dkt. 13-10, AR001985 (Staff |

| | |
|---|---|
| requirement for operator transfer, as staff "verified with the [Planning and Development] Accounting Department that no outstanding payments are due for the facility, or for any related planning and compliance cases."<br><br>*Evidence:*<br>Dkt. 13-1, 45 (Staff Report); Dkt. 13-10, 231 (Staff Presentation I); Dkt. 13-21, 53, 55, 57-58, 60 (Planning Commission Transcript); Dkt. 13-10, 246-247 (Applicant Presentation I); Dkt. 13-1, 261 (POPCO Application, March 14, 2024); Dkt. 13-1, 290 (First Response to Notice of Incompleteness). | Presentation I) ("Staff Recommendation" to "[m]ake the required [f]indings"). |
| **40.**   The Planning Commission confirmed this requirement of fees and exactions paid was met for the POPCO change of operator:<br>• For the POPCO Facilities, pursuant to Chapter 25B section 10(a)(1), the Planning Commission found that "Planning and Development has verified with Accounting staff that no outstanding payments are due for the facility, or related planning and compliance cases." | Undisputed, with the clarification that the Planning Commission "found" that the requirement was met.<br>*Evidence*:<br>Dkt. 13-11, AR002178 ("The requirements of this finding are satisfied.") |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| *Evidence:* Dkt. 13-11, 36 (Planning Commission Findings); Dkt. 13-10, 256-258 (Planning Commission Minutes); Dkt. 13-21, 58, 186-194 (Planning Commission Transcript); *see also* Dkt. 13-10, 246-247 (Applicant Presentation I); Dkt. 13-9, 529-530 (Applicant Written Submission I); evidence cited above at ¶ 39 supporting staff determination. | |
| **41.** County staff confirmed, based on the record reviewed, that this requirement of fees and exactions paid was met for the Pipeline change of operator: For the Pipeline, pursuant to Chapter 25B section 10(a)(1), County staff confirmed that Sable's application met this requirement for operator transfer, as staff "verified with the [Planning and Development] Accounting Department that no outstanding payments are due for the pipeline system, or for any related planning and compliance cases." *Evidence:* Dkt. 13-1, 51 (Staff Report); Dkt. 13-10, 232 (Staff Presentation I); | Undisputed, with the clarification that County staff "recommended" that the Planning Commission make a finding of compliance. *Evidence*: Dkt. 13-10, AR001985 (Staff Presentation I) ("Staff Recommendation" to "[m]ake the required [f]indings"). |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| Dkt. 13-21, 55-58, 60 (Planning Commission Transcript); Dkt. 13-10, 246-247 (Applicant Presentation I); Dkt. 13-1, 276 (Pipeline Application, March 14, 2024); Dkt. 13-1, 290 (First Response to Notice of Incompleteness). | |
| 42.    The Planning Commission confirmed this requirement of fees and exactions paid was met for the Pipeline change of operator:<br><br>• For the Pipeline, pursuant to Chapter 25B sections 10(a)(1), The Planning Commission confirmed that Sable's application to change operator met this requirement, explaining that "Planning and Development has verified with Accounting staff that no outstanding payments are due for the pipeline system, or related planning and compliance cases."<br><br>*Evidence:*<br>Dkt. 13-11, 39 (Planning Commission Findings); Dkt. 13-10, 256-258 (Planning Commission Minutes); Dkt. 13-21, 58, 186-194 (Planning Commission Transcript); *see also* Dkt. 13-10, 246-247 (Applicant Presentation I); Dkt. 13-9, 529- | Undisputed, with the clarification that the Planning Commission "found" this requirement was met.<br><br>*Evidence*:<br>Dkt. 13-11, AR002181 ("The requirements of this finding are satisfied."). |

| 530 (Applicant Written Submission I); evidence cited above at ¶ 41 supporting staff determination. | |
|---|---|
| **Financial Instruments Updated (Chapter 25B §§ 9(a)(2) [owner]; 9(e)(1) [guarantor]; 10(a)(2) [operator])** | |
| **43.** For a change in owner, Chapter 25B requires that "[a]ll necessary insurance, bonds or other instruments or methods of financial responsibility approved by the county and necessary to comply with the permit and any county ordinance have been updated, if necessary, to reflect the new owner(s) and will remain in full effect following the ownership change." (County Code § 25B-9(a)(2)). *Evidence:* County Code § 25B-9(a)(2). | Undisputed. |
| **44.** For a change in guarantor, Chapter 25B requires that "[t]he proposed guarantor has provided all necessary instruments or methods of financial responsibility approved by the county and necessary to comply with the permit and any county ordinance." (County Code § 25B-9(e)(1)). *Evidence:* County Code § 25B-9(e)(1). | Undisputed. |

| | |
|---|---|
| **45.** For a change in operator, Chapter 25B requires that "[a]ll necessary insurance, bonds or other instruments or methods of financial responsibility approved by the county and necessary to comply with the permit and any county ordinance have been updated, if necessary, to reflect the new operator and will remain in full effect following the operator change." (County Code § 25B-10(a)(2)). *Evidence:* County Code § 25B-10(a)(2). | Undisputed. |
| **46.** County staff confirmed, based on the record reviewed, these requirements to update financial instruments and ensure the required instruments remained in place were met for the SYU change of owner, operator, and guarantor:<br>• For SYU, pursuant to Chapter 25B section 9(a)(2), County staff issued findings analyzing the permit requirements and determined this finding had been met, as "[n]o current County-required bonds are in place for the SYU." County staff also confirmed Sable's ability to pay property taxes, noting that "Sable has $112.1 million | Undisputed, with the clarification that County staff "recommended" that the Planning Commission make a finding of compliance, and that the scope of what is required under this finding is a legal conclusion at issue in this case. *Evidence*: Dkt. 13-10, AR001985 (Staff Presentation I) ("Staff Recommendation" to "[m]ake the required [f]indings"). |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

dollars in cash and cash equivalents, is valued over $1.35 billion dollars, including debts and equities." Moreover, Sable's Certificate of Liability Insurance "demonstrates $401 million dollars in liability insurance for all of Sable's assets . . . to cover oil spills, seepage, and pollution, as well as general liability coverage, auto liability, and workers compensation coverage."

- For SYU, pursuant to Chapter 25B section 9(e)(1), County staff found that found that Sable's application to change guarantor met this requirement, incorporating the finding for Chapter 25B section 9(a)(2) by reference.

- For SYU, pursuant to Chapter 25B section 10(a)(2), County staff found that Sable's application to change operator met this requirement, incorporating the finding for Chapter 25B section 9(a)(2) by reference.

*Evidence:*

Dkt. 13-1, 27-31, 33-34, 38-44 (Staff Report); Dkt. 13-10, 230 (Staff Presentation I); Dkt. 13-21, 53, 59-60, 152-153, 184-185 (Planning Commission

| | |
|---|---|
| Transcript); Dkt. 13-10, 246-247 (Applicant Presentation I); Dkt. 13-1, 245-250 (SYU Application, March 14, 2024); Dkt. 13-1, 289-298 (First Response to Notice of Incompleteness, May 22, 2024); Dkt. 13-1, 165-166 (SYU Expansion Project Conditions of Approval - FDP Permit Condition No. XIX-1, Abandonment Procedures); Dkt. 13-1, 136-137 (SYU Expansion Project Conditions of Approval - FDP Permit Condition No. XI-2.w., Responsibility for Oil Spill Clean-Up and Resource Restoration); Dkt. 13-9, 519-520 (Evidence of Property Insurance); Dkt. 13-9, 521-522 (Evidence of Liability Insurance); Dkt. 13-9, 523-525 (Certificates of Financial Responsibility [October 2024]). | |
| **47.** The Planning Commission confirmed these requirements to update financial instruments and ensure the required instruments remained in place were met for the SYU change of owner, operator, and guarantor:<br><br>• For SYU, pursuant to Chapter 25B section 9(a)(2), the Planning Commission found that Sable's | Undisputed, with the clarification that the Planning Commission "found" this requirement was met, , and that the scope of what is required under this finding is a legal conclusion at issue in this case.<br><br>*Evidence*:<br>Dkt. 13-11, AR002175 (discussing "finding" requirements). |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

application to change owner met this requirement. The Planning Commission found that "[p]reviously required bonds and endowments under the FDP Permit have been satisfied and none remain outstanding. The FDP Permit Condition No. X[I]X-1 requires the permittee to be responsible for the proper abandonment of the facility, and that a performance bond be in place, or that the permittee continue to pay property taxes until abandonment is complete. As no bond is in place, the permittee will continue to pay property taxes until site restoration is complete."

- For SYU, pursuant to Chapter 25B section 9(e)(1), the Planning Commission found that Sable's application to change guarantor met this requirement, incorporating the finding for Chapter 25B section 9(a)(2) by reference.

- For SYU, the Planning Commission found that Sable's application to change operator met this requirement pursuant to Chapter 25B section 10(a)(2), incorporating the finding for Chapter

25B section 9(a)(2) by reference.

*Evidence:*

Dkt. 13-11, 30-33 (Planning Commission Findings); Dkt. 13-10, 256-258 (Planning Commission Minutes); Dkt. 13-21, 59-60, 151-152, 185-194 (Planning Commission Transcript); *see also* Dkt. 13-10, 246-247 (Applicant Presentation I); Dkt. 13-9, 530-31 (Applicant Written Submission I); evidence cited above at ¶ 46 supporting staff determination.

| | |
|---|---|
| 48.    County staff confirmed, based on the record reviewed, these requirements to update financial instruments and ensure the required instruments remained in place were met for the POPCO Facilities change of operator and guarantor:<br><br>• For the POPCO Facilities, pursuant to Chapter 25B section 9(e)(1), County staff issued findings analyzing the permit requirements and determined this finding had been met, as "[n]o current County-required bonds are in place for the POPCO Gas Plant," and "no current financial guarantee is needed."<br><br>• For the POPCO Facilities, pursuant to | Undisputed, with the clarification that County staff "recommended" that the Planning Commission make a finding of compliance, and that the scope of what is required under this finding is a legal conclusion at issue in this case..<br><br>*Evidence*:<br><br>Dkt. 13-10, AR001985 (Staff Presentation I) ("Staff Recommendation" to "[m]ake the required [f]indings"). |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| Chapter 25B section 10(a)(2), County staff found that Sable's application to change operator met this requirement, incorporating the finding for Chapter 25B section 9(e)(1) by reference.<br><br>*Evidence:*<br><br>Dkt. 13-1, 44-46 (Staff Report); Dkt. 13-10, 231 (Staff Presentation I); Dkt. 13-21, 53, 55, 59-61, 152-153, 184-185 (Planning Commission Transcript); Dkt. 13-1, 259-273 (POPCO Application, March 14, 2024); Dkt. 13-1, 289-298 (First Response to Notice of Incompleteness, May 22, 2024); Dkt. 13-1, 192 (POPCO Expansion Project Conditions of Approval - FDP Permit Condition No. Q-2, Abandonment Procedures); Dkt. 13-10, 246-247 (Applicant Presentation I); Dkt. 13-9, 530-531 (Applicant Written Submission I). | |
| **49.** The Planning Commission confirmed these requirements to update financial instruments and ensure the required instruments remained in place were met for the POPCO Facilities change of operator and guarantor:<br><br>• For the POPCO Facilities, pursuant to | Undisputed, with the clarification that the Planning Commission "found" this requirement was met, and that the scope of what is required under this finding is a legal conclusion at issue in this case.. |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| Chapter 25B section 9(e)(1), the Planning Commission found that Sable's application to change guarantor met this requirement. Specifically, the Planning Commission found that "[n]o bonds are in place for the POPCO Gas Plant." The Planning Commission also found that "FDP Permit Condition Q-2 requires the permittee to be responsible for the proper abandonment of the facility, and that a performance bond or other security device be in place immediately following the permanent shutdown of the facility. A performance bond, or other security device shall be posted by POPCO following permanent shut down of the facilities in accordance with an approved abandonment and restoration plan in effect at that time." <br> • For the POPCO Facilities, pursuant to Chapter 25B section 10(a)(2), the Planning Commission found that Sable's application to change operator met this requirement, incorporating the finding for Chapter 25B section 9(e)(1) by reference. | *Evidence*: <br> Dkt. 13-11, AR0022177 (Planning Commission Findings). |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| *Evidence:*<br><br>Dkt. 13-11, 35-36 (Planning Commission Findings); Dkt. 13-10, 256-258 (Planning Commission Minutes); Dkt. 13-21, 152, 184-186, 189, 194 (Planning Commission Transcript); *see also* Dkt. 13-10, 246-247 (Applicant Presentation I); Dkt. 13-9, 530-31 (Applicant Written Submission I); evidence cited above at ¶ 48 supporting staff determination. | |
| **50.**    County staff confirmed, based on the record reviewed, these requirements to update financial instruments and ensure the required instruments remained in place were met for the Pipeline change of operator and guarantor:<br><br>• For the Pipeline, pursuant to Chapter 25B section 9(e)(1), County staff issued findings analyzing the permit requirements and determined this finding had been met, as "[n]o current County-required bonds are in place for the Las Flores Pipeline System," and "[n]either the FDP Permit, Chapter 25B, or other County ordinance requires the permittee to carry insurance or surety bonds to cover oil spills or other | Undisputed, with the clarification that County staff "recommended" that the Planning Commission make a finding of compliance, and that the scope of what is required under this finding is a legal conclusion at issue in this case..<br><br>*Evidence*:<br>Dkt. 13-10, AR001985 (Staff Presentation I) ("Staff Recommendation" to "[m]ake the required [f]indings"). |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

damages for the pipeline system."

- For the Pipeline, pursuant to Chapter 25B section 10(a)(2), County staff found that Sable's application to change operator met this requirement, incorporating the finding for Chapter 25B section 9(e)(1) by reference.

*Evidence:*

Dkt. 13-1, 50-51 (Staff Report); Dkt. 13-10, 232 (Staff Presentation I); Dkt. 13-21, 55-58, 60, 144, 152, 184 (Planning Commission Transcript); Dkt. 13-1, 274-288 (Pipeline Application, March 14, 2024); Dkt. 13-1, 289-298 (First Response to Notice of Incompleteness, May 22, 2024); Dkt. 13-1, 192 (Pipeline Conditions of Approval - FDP Permit Condition No. O-1, Abandonment - Removal of Pipeline and Pump Stations Upon Permanent Shut Down); Dkt. 13-9, 523-525 (Certificates of Financial Responsibility [October 2024]); Dkt. 13-10, 246-247 (Applicant Presentation I).

| | |
|---|---|
| **51.** The Planning Commission confirmed these requirements to update financial instruments and ensure the required instruments remained in place were met for | Undisputed, with the clarification that the Planning Commission "found" this requirement was met, and that the scope of |

the POPCO Facilities change of operator and guarantor:

- For the Pipeline, pursuant to Chapter 25B section 9(e)(1), the Planning Commission found that Sable's application to change guarantor met this requirement. Specifically, the Planning Commission found that "[p]reviously required bonds and endowments under the FDP Permit have been satisfied and none remain outstanding. The FDP Permit does not require the permittee to carry insurance or other financial responsibility (e.g. surety bond) to cover oil spills or other damages, or for the final abandonment of the pipelines. After final abandonment, the permittee will continue to pay property taxes until site restoration is complete in accordance with FDP Permit Condition O-1."

- For the Pipeline, pursuant to Chapter 25B section 10(a)(2), the Planning Commission found that Sable's application to change operator met this requirement, incorporating the finding

what is required under this finding is a legal conclusion at issue in this case..

*Evidence*:

Dkt. 13-11, AR002180; Dkt. 13-21, COSB AR006928, AR006938 (Planning Commission Transcript) (discussing required "findings" under 25B).

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| for Chapter 25B section 9(e)(1) by reference<br>*Evidence:*<br>Dkt. 13-11, 38-39 (Planning Commission Findings); Dkt. 13-10, 256-258 (Planning Commission Minutes); Dkt. 13-21, 184, 190, 194 (Planning Commission Transcript); *see also* Dkt. 13-10, 246-247 (Applicant Presentation I); Dkt. 13-9, 530-31 (Applicant Written Submission I); evidence cited above at ¶ 50 supporting staff determination. | |
| Acceptance of Permit Obligations (Chapter 25B §§ 9(a)(3) [owner]; 10(a)(3) [operator]) | |
| **52.**   For a change in owner, Chapter 25B requires that "[t]he proposed owner has provided a letter from a responsible official representing the proposed owner formally accepting all, conditions and requirements of the permit." (County Code § 25B-9(a)(3)).<br>*Evidence:*<br>County Code § 25B-9(a)(3). | Undisputed. |
| **53.**   For a change in operator, Chapter 25B requires that "[t]he proposed operator has provided a letter from a responsible official representing the proposed operator | Undisputed. |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| formally accepting all conditions and requirements of the permit." (County Code § 25B-10(a)(3)).<br><br>*Evidence:*<br>County Code § 25B-10(a)(3). | |
| **54.** County staff confirmed, based on the record reviewed, that this requirement of the acceptance of permit obligations was met for the SYU change of owner and operator:<br><br>• For SYU, pursuant to Chapter 25B section 9(a)(3), County staff found that Sable was consistent with this requirement, as "Sable provided a signed Agreement to Comply with Conditions of Approval of the FDP Permits . . . The Agreement outlines Sable's acceptance of all conditions and requirements of the permit. The Agreement was recorded with the County Clerk-Recorder's Office as an official document on September 13, 2024 to establish the permanent record of the transaction."<br><br>• For SYU, pursuant to Chapter 25B section 10(a)(3), County staff found that Sable's application to change operator | Undisputed, with the clarification that County staff "recommended" that the Planning Commission make a finding of compliance.<br><br>*Evidence*:<br>Dkt. 13-10, AR001985 (Staff Presentation I) ("Staff Recommendation" to "[m]ake the required [f]indings"). |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| met this requirement, incorporating the finding for Chapter 25B section 9(a)(3) by reference.<br><br>*Evidence:*<br><br>Dkt. 13-1, 31, 34 (Staff Report); Dkt. 13-10, 229 (Staff Presentation I);<br><br>Dkt. 13-21, 52-55, 57-58, 60, 185 (Planning Commission Transcript); Dkt. 13-1, 257-258 (SYU Application, March 14, 2024 – Acceptance of Permit Conditions). | |
| **55.** The Planning Commission confirmed this requirement of acceptance of permit obligations was met for the SYU change of owner and operator:<br><br>• For SYU, pursuant to Chapter 25B section 9(a)(3), the Planning Commission found that Sable's application to change owner met this requirement. Specifically, the Planning Commission found that "Sable provided a signed Agreement to Comply with Conditions of Approval dated March 14, 2024 accepting all conditions and requirements of the permit."<br><br>• For SYU, pursuant to Chapter 25B section 10(a)(3), the Planning | Undisputed, with the clarification that the Planning Commission "found" this requirement was met.<br><br>*Evidence*:<br><br>Dkt. 13-11, AR002173, AR002175 (Planning Commission Findings). |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| Commission found that Sable's application to change operator met this requirement, incorporating the finding for Chapter 25B section 9(a)(3) by reference.<br><br>*Evidence:*<br>Dkt. 13-11, 31, 33 (Planning Commission Findings); Dkt. 13-10, 256-258 (Planning Commission Minutes); Dkt. 13-21, 58, 186-194 (Planning Commission Transcript); *see also* Dkt. 13-9, 531 (Applicant Written Submission I); evidence cited above at ¶ 54 supporting staff determination. | |
| **56.**    County staff confirmed, based on the record reviewed, that this requirement of the acceptance of permit obligations was met for the POPCO Facilities change of operator:<br><br>• For the POPCO Facilities, pursuant to Chapter 25B section 10(a)(3), County staff found that Sable's application to change operator met this requirement, as "Sable provided a signed Agreement to Comply with Conditions of Approval of the FDP Permits as part of their application materials . . . The | Undisputed, with the clarification that County staff "recommended" that the Planning Commission make a finding of compliance.<br><br>*Evidence*:<br>Dkt. 13-10, AR001985 (Staff Presentation I) ("Staff Recommendation" to "[m]ake the required [f]indings"). |

| | |
|---|---|
| Agreement outlines Sable's acceptance of all conditions and requirements of the permit. The Agreement was recorded with the County Clerk-Recorder's Office in September 2024 as an official record to establish the permanent record of the transaction." *Evidence:* Dkt. 13-1, 46 (Staff Report); Dkt. 13-10, 231 (Staff Presentation I); Dkt. 13-21, 53, 55, 57-58, 60 (Planning Commission Transcript); Dkt. 13-1, 272-273 (POPCO Application, March 14, 2024 – Acceptance of Permit Conditions). | |
| **57.**   The Planning Commission confirmed this requirement of the acceptance of permit obligations was met for the POPCO Facilities change of operator:<br>• For the POPCO Facilities, pursuant to Chapter 25B section 10(a)(3), the Planning Commission found that Sable's application to change operator met this requirement. Specifically, the Planning Commission found that "Sable provided a signed Agreement to Comply with Conditions of Approval dated March 14, 2024 accepting all | Undisputed, with the clarification that the Planning Commission "found" this requirement was met. *Evidence:* Dkt. 13-11, AR002178 (Planning Commission Findings). |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

conditions and requirements of the permit. The Agreement was recorded by the County Clerk-Recorder's office on September 13, 2024 as an official record."

*Evidence:*

Dkt. 13-11, 36 (Planning Commission Findings); Dkt. 13-10, 256-258 (Planning Commission Minutes); Dkt. 13-21, 58, 186-194 (Planning Commission Transcript); *see also* Dkt. 13-9, 531 (Applicant Written Submission I); evidence cited above at ¶ 56 supporting staff determination.

| | |
|---|---|
| **58.** County staff confirmed, based on the record reviewed, that this requirement of the acceptance of permit obligations was met for the Pipeline change of operator: <br><br> • For the Pipeline, pursuant to Chapter 25B section 10(a)(3), County staff found that Sable's application to change operator met this requirement, as "Sable provided a signed Agreement to Comply with Conditions of Approval of the FDP Permit as part of their application materials. The Agreement outlines Sable's acceptance of all | Undisputed, with the clarification that County staff "recommended" that the Planning Commission make a finding of compliance. <br><br> *Evidence*: <br> Dkt. 13-10, AR001985 (Staff Presentation I) ("Staff Recommendation" to "[m]ake the required [f]indings"). |

| | |
|---|---|
| conditions and requirements of the permit. The Agreement was recorded by County Clerk-Recorder's Office on September 13, 2024 as an official record." <br><br> *Evidence:* <br> Dkt. 13-1, 52 (Staff Report); Dkt. 13-10, 232 (Staff Presentation I); <br> Dkt. 13-21, 55-58, 60 (Planning Commission Transcript); Dkt. 13-1, 287-288 (Pipeline Application, March 14, 2024 – Acceptance of Permit Conditions). | |
| 59.    The Planning Commission confirmed this requirement of the acceptance of permit obligations was met for the Pipeline change of operator: <br><br> • For the Pipeline, pursuant to Chapter 25B section 10(a)(3), the Planning Commission found that Sable's application to change operator met this requirement, finding that "Sable provided a signed Agreement to Comply with Conditions of Approval dated March 14, 2024 accepting all conditions and requirements of the permit." | Undisputed, with the clarification that the Planning Commission "found" this requirement was met. <br><br> *Evidence*: <br> Dkt. 13-11, AR002181 (Planning Commission Findings). |

| | |
|---|---|
| *Evidence:* Dkt. 13-11, 39 (Planning Commission Findings); Dkt. 13-10, 256-258 (Planning Commission Minutes); Dkt. 13-21, 58, 186-194 (Planning Commission Transcript); *see also* Dkt. 13-9, 531 (Applicant Written Submission I); evidence cited above at ¶ 58 supporting staff determination. | |
| **Facility Safety Audit (Chapter 25B §§ 9(a)(4) [owner]; 10(a)(4) [operator])** | |
| **60.**    For a change in owner, Chapter 25B requires that "[t]he current owner or operator has provided a copy of the most recent county-conducted comprehensive safety audit of the physical facility, along with a description of the status of implementing its recommendations, to the new or proposed new owner(s). A safety inspection maintenance and quality assurance program (SIMQAP) audit approved by the appropriate county official shall satisfy this requirement." (County Code § 25B-9(a)(4)). *Evidence:* County Code § 25B-9(a)(4). | Undisputed. |

| | |
|---|---|
| **61.** For a change in operator, Chapter 25B requires that "[t]he current owner or operator has provided a copy of the most recent county-conducted comprehensive safety audit of the physical facility, along with a description of the status of implementing its recommendations, to the proposed new operator. A safety inspection maintenance and quality assurance plan [SIMQAP] audit approved by the appropriate county official shall satisfy this requirement." (County Code § 25B-10(a)(4).<br>*Evidence:*<br>County Code § 25B-10(a)(4). | Undisputed. |
| **62.** County staff confirmed, based on the record reviewed, that this requirement of a facility safety audit was met for the SYU change of owner and operator:<br>• For SYU, pursuant to Chapter 25B section 9(a)(4), County staff issued findings analyzing the permit requirements and determined this finding had been met. Staff analyzed the findings from "[t]he most recent County-conducted safety audit of the Las Flores Canyon Facilities," | Undisputed, with the clarification that County staff "recommended" that the Planning Commission make a finding of compliance.<br>*Evidence*:<br>Dkt. 13-10, AR001985 (Staff Presentation I) ("Staff Recommendation" to "[m]ake the required [f]indings"). |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| conducted on July 16 -17, 2014, which consisted of a "facility walk-through, records review, equipment inspections, alarm checks, procedure and training updates, and maintenance activities among other tasks." <br>• For SYU, pursuant to Chapter 25B section 10(a)(4), County staff found that Sable's application to change operator met this requirement, incorporating the finding for Chapter 25B section 9(a)(4) by reference. <br>*Evidence:* <br>Dkt. 13-1, 31-35 (Staff Report); Dkt. 13-10, 229 (Staff Presentation I); <br>Dkt. 13-21, 52-53, 57-58, 61-62 (Planning Commission Transcript); Dkt. 13-1, 245-250 (SYU Application, March 14, 2024); <br>Dkt. 13-6, 49-123 (Las Flores Pipeline Safety Inspection Maintenance and Quality Assurance Program ["SIMQAP"]). | |
| **63.** The Planning Commission confirmed this requirement of a facility safety audit was met for the SYU change of owner and operator: <br>• For SYU, pursuant to Chapter 25B section 9(a)(4), the Planning | Undisputed, with the clarification that the Planning Commission "found" this requirement was met. <br>*Evidence*: <br>Dkt. 13-11, AR002173, AR002175 (Planning Commission Findings). |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

Commission issued findings analyzing the permit requirements and determined this finding had been met, explaining that "[t]he most recent County-conducted safety audit of the Las Flores Canyon Facilities (SYU and POPCO Gas Plant) was conducted on July 16 - 17, 2014 by the County's Systems Safety & Reliability Review Committee (SSRRC). The 2014 audit observed 62 items that needed to be addressed from minor housekeeping items, to items that would cause a low potential for serious personal injury, negative environmental impact, property damage, or hazardous material release. All items were addressed by September 11, 2015, except for minor repairs required on an evaporative cooler and a crude oil emulsion heater. Following the 2014 SIMQAP audit, the Las Flores Canyon Facilities were placed into a preserved state due to the 2015 Plains pipeline oil spill, which is the only permitted transportation method to transport crude oil from the SYU. On July 9, 2015, the SSRRC approved the deferral of annual

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| SIMQAP audits until the Las Flores Canyon Facilities resume production. Sable has a copy of the 2014 audit and its recommendations, and continues to provide maintenance reports on the Las Flores Canyon Facilities to the SSRRC monthly."<br><br>• For SYU, pursuant to Chapter 25B section 10(a)(4), the Planning Commission found that Sable's application to change operator met this requirement, incorporating the finding for Chapter 25B section 9(a)(4) by reference.<br><br>*Evidence:*<br>Dkt. 13-11, 31, 33 (Planning Commission Findings); Dkt. 13-10, 256-258 (Planning Commission Minutes); Dkt. 13-21, 61-62, 186-194 (Planning Commission Transcript); *see also* Dkt. 13-9, 531 (Applicant Written Submission I); evidence cited above at ¶ 62 supporting staff determination. | |
| **64.**    County staff confirmed, based on the record reviewed, that this requirement of a facility safety audit was met for the POPCO Facilities change of operator: | Undisputed, with the clarification that County staff "recommended" that the Planning Commission make a finding of compliance. |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| • For the POPCO Facilities, pursuant to Chapter 25B section 10(a)(4), County staff found that Sable's application to change operator met this requirement, finding that "[t]he POPCO Gas Plant is subject to County SSRRC audits through its approved SIMQAP. The SIMQAP covers the SYU and the POPCO Gas Plant." Staff referenced the findings for SYU under Chapter 25B section25B-9(a)(4).<br><br>*Evidence:*<br>Dkt. 13-1, 46 (Staff Report); Dkt. 13-10, 231 (Staff Presentation I);<br>Dkt. 13-21, 53, 57-58 (Planning Commission Transcript)<br>Dkt. 13-1, 259-273 (POPCO Application, March 14, 2024); Dkt. 13-6, 49-123 (Las Flores Pipeline Safety Inspection Maintenance and Quality Assurance Program ["SIMQAP"]). | *Evidence*:<br>Dkt. 13-10, AR001985 (Staff Presentation I) ("Staff Recommendation" to "[m]ake the required [f]indings"). |
| 65.    The Planning Commission confirmed this requirement of a facility safety audit was met for the POPCO Facilities change of operator:<br><br>• For the POPCO Facilities, pursuant to Chapter 25B section 10(a)(4), the | Undisputed, with the clarification that the Planning Commission "found" this requirement was met.<br>*Evidence*:<br>Dkt. 13-11, AR002178–79  (Planning Commission Findings) (stating the |

| | |
|---|---|
| Planning Commission found that Sable's application to change operator met this requirement. The Planning Commission referenced the findings for SYU under Chapter 25B section25B-9(a)(4) and explained that "[t]he POPCO Gas Plant is subject to County SSRRC [Systems Safety & Reliability Review Committee] audits through its approved SIMQAP [safety inspection maintenance and quality assurance program]. The SIMQAP covers the SYU and the POPCO Gas Plant." *Evidence:* Dkt. 13-11, 36-37 (Planning Commission Findings); Dkt. 13-10, 256-258 (Planning Commission Minutes); Dkt. 13-21, 58, 61-62, 186-194 (Planning Commission Transcript); *see also* Dkt. 13-9, 531 (Applicant Written Submission I); evidence cited above at ¶ 64 supporting staff determination. | requirements of certain "findings" were satisfied). |
| **66.** County staff confirmed, based on the record reviewed, that this requirement of a facility safety audit was met for the Pipeline change of operator: <br> • For the Pipeline, pursuant to | Undisputed, with the clarification that County staff "recommended" that the Planning Commission make a finding of compliance. |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| Chapter 25B section 10(a)(4), County staff issued findings analyzing the permit requirements and determined this finding had been met and/or preempted by the County's settlement and federal law: | *Evidence*: Dkt. 13-10, AR001985 (Staff Presentation I) ("Staff Recommendation" to "[m]ake the required [f]indings"). |

- Specifically, County staff explained that "[d]ue to the 1988 Settlement Agreement between the County and Celeron/All American, there is no County-conducted audit available for the Las Flores Pipeline System. The Settlement Agreement determined that the County does not have the jurisdiction to regulate any aspect of the design, construction, or operation of the pipeline that is already covered under [federal law]."
- The staff further determined that federal law "require[s] that pipeline operators implement both internal (operator-conducted) and external (agency-conducted) audits. Therefore, because PHMSA and now OSFM conduct audits of the pipeline system, it is not subject to County-conducted audits."
- Staff also found that "PPC has satisfied

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| the County's requirement to provide audit information to Sable."<br><br>*Evidence:*<br>Dkt. 13-1, 52-53 (Staff Report); Dkt. 13-10, 232 (Staff Presentation I);<br>Dkt. 13-21, 56-58, 61-62 (Planning Commission Transcript); Dkt. 13-1, 274-288 (Pipeline Application, March 14, 2024); Dkt. 13-14, 635 (Settlement Agreement between Celeron Pipeline Company of California and the County of Santa Barbara, Feb. 8, 1988). | |
| 67.    The Planning Commission confirmed this requirement of a facility safety audit was met for the Pipeline change of operator:<br><br>• For the Pipeline, pursuant to Chapter 25B section 10(a)(4), the Planning Commission found that Sable's application to change operator met this requirement.<br><br>• The Planning Commission explained that "[t]he requirements of this finding are satisfied. The 1988 settlement agreement between the County and Celeron Pipeline Company/Getty Trading and Transportation Company | Undisputed, with the clarification that the Planning Commission "found" this requirement was met.<br><br>*Evidence*:<br>Dkt. 13-11, AR002181–82 (Planning Commission Findings). |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

determined that the County does not have the jurisdiction to regulate any aspect of the design, construction, or operation of the pipeline which was already covered under 49 C.F.R. Part 195 (*Transportation of Hazardous Liquids by Pipeline*). The settlement agreement determined that this authority rests exclusively with PHMSA and now, the CAL FIRE Office of the State Fire Marshal (OSFM). Title 49 §§ 195.450 and §§ 195.452 require that pipeline operators implement both internal (operator-conducted) and external (agency-conducted) audits. As PHMSA and now OSFM conduct audits of the pipeline system, it is not subject to County-conducted safety audits. Consequently, there is no County-conducted audit available. PPC has satisfied the County's requirement to provide audit information to Sable."

*Evidence:*

Dkt. 13-11, 39-40 (Planning Commission Findings); Dkt. 13-10, 256-258 (Planning Commission Minutes); Dkt. 13-21, 61-62,

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| 186-194 (Planning Commission Transcript); *see also* Dkt. 13-9, 531 (Applicant Written Submission I); evidence cited above at ¶ 66 supporting staff determination. | |

| Compliance with Existing Requirements as of Application Completion Date (Chapter 25B §§ 9(a)(5) [owner]; 10(a)(5) [operator]) | |
|---|---|
| **68.** For a change in owner, Chapter 25B requires that "[a]s of the date that the application is deemed complete, the current owner(s) are in compliance with all requirements of the permit, including any requirement of a county-required safety audit, any notice of violation, and any county ordinance, or the current and proposed owner(s) have entered into a written agreement with the Director that specifies an enforceable schedule to come into compliance with such requirements." (County Code § 25B-9(a)(5)). *Evidence:* County Code § 25B-9(a)(5). | Undisputed. |
| **69.** For a change in operator, Chapter 25B requires that, "[a]s of the date that the application is deemed complete, the current operator is in compliance with all | Undisputed. |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| requirements of the permit, including any requirements of a county-required safety audit, any notice of violation, and any county ordinance, or the owner and proposed operator have entered into a written agreement with the director that specifies an enforceable schedule to come into compliance with such requirements." (County Code § 25B-10(a)(5)).<br><br>*Evidence:*<br>County Code § 25B-10(a)(5). | |
| 70.    County staff confirmed, based on the record reviewed, that this requirement of compliance with existing requirements as of the application completeness date was met for the SYU change of owner and operator:<br><br>• For SYU, pursuant to Chapter 25B section 9(a)(5), County staff found that Sable's application to change owner met this requirement, as it found that "[a]t the date of application completeness (July 30, 2024), ExxonMobil was in compliance with all requirements of the FDP Permit. No notice of violations have been issued to any permittee regarding the facility." | Undisputed, with the clarification that County staff "recommended" that the Planning Commission make a finding of compliance.<br><br>*Evidence*:<br>Dkt. 13-10, AR001985 (Staff Presentation I) ("Staff Recommendation" to "[m]ake the required [f]indings"). |

| | |
|---|---|
| • For SYU, pursuant to Chapter 25B section 10(a)(5), County staff found that Sable's application to change operator met this requirement, incorporating the finding for Chapter 25B section 9(a)(5) by reference.<br><br>*Evidence:*<br>Dkt. 13-1, 33, 35 (Staff Report); Dkt. 13-10, 229 (Staff Presentation I); Dkt. 13-21, 53-55, 57-58, 185 (Planning Commission Transcript); Dkt. 13-1, 245-250 (SYU Application, March 14, 2024); Dkt. 13-1, 295-296 (First Response to Notice of Incompleteness, May 22, 2024); Dkt. 13-10, 250 (Applicant Presentation I) | |
| **71.**   The Planning Commission confirmed this requirement of compliance with existing requirements as of the application completeness date was met for the SYU change of owner and operator:<br><br>• For SYU, pursuant to Chapter 25B section 9(a)(5), the Planning Commission found Sable's application to change owner met this requirement, as "[t]he permittee is in compliance with all requirements of the FDP Permit. No notice of violations have | Undisputed, with the clarification that the Planning Commission "found" this requirement was met.<br><br>*Evidence*:<br>Dkt. 13-11, AR002174–75 (Planning Commission Findings) (discussing "findings" required for change of operator). |

been issued for the facility."
- For SYU, pursuant to Chapter 25B section 10(a)(5), the Planning Commission found that Sable's application to change operator met this requirement, incorporating the finding for Chapter 25B section 9(a)(5) by reference.

*Evidence:*

Dkt. 13-11, 32-33 (Planning Commission Findings); Dkt. 13-10, 256-258 (Planning Commission Minutes); Dkt. 13-21, 58, 186-194 (Planning Commission Transcript); *see also* Dkt. 13-9, 531-32 (Applicant Written Submission I); evidence cited above at ¶ 70 supporting staff determination.

| | |
|---|---|
| **72.** County staff confirmed, based on the record reviewed, that this requirement of compliance with existing requirements as of the application completeness date was met for the POPCO Facilities change of operator:<br><br>• For the POPCO Facilities, pursuant to Chapter 25B section 10(a)(5), County staff found that Sable's application to change operator met this requirement, | Undisputed, with the clarification that County staff "recommended" that the Planning Commission make a finding of compliance.<br><br>*Evidence*:<br>Dkt. 13-10, AR001985 (Staff Presentation I) ("Staff Recommendation" to "[m]ake the required [f]indings"). |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| finding that "[a]t the date of application completeness, ExxonMobil Corporation was in compliance with all requirements of the FDP Permit" and that "[n]o notice of violations have been issued to any permittee regarding the facility."<br><br>*Evidence:*<br><br>Dkt. 13-1, 47 (Staff Report); Dkt. 13-10, 231 (Staff Presentation I);<br><br>Dkt. 13-21, 55, 57-58, 185 (Planning Commission Transcript); Dkt. 13-1, 259-273 (POPCO Application, March 14, 2024); Dkt. 13-1, 295-296 (First Response to Notice of Incompleteness, May 22, 2024); Dkt. 13-10, 250 (Applicant Presentation I). | |
| **73.**    The Planning Commission confirmed this requirement of compliance with existing requirements as of the application completeness date was met for the POPCO Facilities change of operator:<br><br>• For the POPCO Facilities, pursuant to Chapter 25B section 10(a)(5), the Planning Commission found that Sable's application to change operator met this requirement, as "[t]he current | Undisputed, with the clarification that the Planning Commission "found" this requirement was met.<br><br>*Evidence*:<br><br>Dkt. 13-11, AR002179 (Planning Commission Findings) (discussing "findings" required for change of operator) |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| operator is in compliance with all requirements of the FDP Permit. No notice of violations have been issued for the facility." *Evidence:* Dkt. 13-11, 37 (Planning Commission Findings); Dkt. 13-10, 256-258 (Planning Commission Minutes); Dkt. 13-21, 58, 186-194 (Planning Commission Transcript); *see also* Dkt. 13-9, 531-32 (Applicant Written Submission I); evidence cited above at ¶ 72 supporting staff determination. | |
| **74.**    County staff confirmed, based on the record reviewed, that this requirement of compliance with existing requirements as of the application completeness date was met for the Pipeline change of operator:<br><br>• For the Pipeline, pursuant to Chapter 25B section 10(a)(5), County staff found that Sable's application to change operator met this requirement, finding that "[a]t the date of application completeness, EMPCo and PPC were in compliance with all requirements of the FDP Permit. No notice of violations | Undisputed, with the clarification that County staff "recommended" that the Planning Commission make a finding of compliance. *Evidence*: Dkt. 13-10, AR001985 (Staff Presentation I) ("Staff Recommendation" to "[m]ake the required [f]indings") |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| have been issued to any permittee regarding the pipeline system." <br><br> *Evidence:* <br><br> Dkt. 13-1, 54 (Staff Report); Dkt. 13-10, 232 (Staff Presentation I); <br><br> Dkt. 13-21, 55-58, 185 (Planning Commission Transcript); Dkt. 13-1, 274-288 (Pipeline Application, March 14, 2024); Dkt. 13-1, 295-296 (First Response to Notice of Incompleteness, May 22, 2024); Dkt. 13-10, 250 (Applicant Presentation I). | |
| **75.**   The Planning Commission confirmed this requirement of compliance with existing requirements as of the application completeness date was met for the Pipeline change of operator: <br><br> • For the Pipeline, pursuant to Chapter 25B section 10(a)(5), the Planning Commission found that Sable's application to change operator met this requirement, finding that "[t]he current operator is in compliance with all requirements of the FDP Permit" and "[n]o notice of violations have been issued for the pipeline system." | Undisputed, with the clarification that the Planning Commission "found" this requirement was met. <br><br> *Evidence*: <br><br> Dkt. 13-11, AR002182 (Planning Commission Findings) (discussing "findings" required for change of operator) |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| *Evidence:* Dkt. 13-11, 40 (Planning Commission Findings); Dkt. 13-10, 256-258 (Planning Commission Minutes); Dkt. 13-21, 58, 186-194 (Planning Commission Transcript); *see also* Dkt. 13-9, 531-32 (Applicant Written Submission I); evidence cited above at ¶ 74 supporting staff determination. | |
| **Compliance Plans (Chapter 25B § 10(a)(6) [operator])** | |
| **76.** For a change in operator, Chapter 25B requires that "[t]he current owner and proposed operator have updated, where applicable, any existing, approved safety inspection maintenance and quality assurance program, emergency response plan, fire protection plan, and oil spill contingency plan, or equivalent approved plans, with current emergency contact information pertaining to the new operator." (County Code § 25B-10(a)(6)). Chapter 25B also requires that "[t]he current owner and proposed operator have agreed in writing to revise all other plans required by the permit or any county ordinance, as necessary to reflect the change of operator, and to do so with | Undisputed. |

| | |
|---|---|
| sufficient diligence to obtain approval of the revised plans by the appropriate county official within six months after assuming operations." (County Code § 25B-10(a)(6).<br><br>*Evidence:*<br><br>County Code § 25B-10(a)(6). | |
| **77.**    County staff confirmed, based on the record reviewed, that this requirement of compliance plans being updated with the new owner's information and accepted was met for the SYU change of operator:<br><br>• For SYU, pursuant to Chapter 25B section 10(a)(6), County staff, based on the record reviewed, determined this finding had been met. These included determining the following:<br><br>• "Sable submitted all major Compliance Plans (e.g. Fire Protection Plan, Emergency Response Plan) with the current emergency contact information pertaining to the new operator by July 30, 2024 (the date of application completeness determination)."<br><br>• Sable "submitted all other updated compliance plans by August 14, 2024 (within six months of assuming | Undisputed, with the clarification that County staff "recommended" that the Planning Commission make a finding of compliance.<br><br>*Evidence*:<br><br>Dkt. 13-10, AR001985 (Staff Presentation I) ("Staff Recommendation" to "[m]ake the required [f]indings") |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

operations)."

*Evidence:*

Dkt. 13-1, 35-36 (Staff Report); Dkt. 13-10, 230 (Staff Presentation I); Dkt. 13-21, 52, 54, 57-58 (Planning Commission Transcript); Dkt. 13-1, 245-250 (SYU Application, March 14, 2024); Dkt. 13-1, 299-311 (Second Response to Notice of Incompleteness, July 1, 2024); Dkt. 13-6, 128-153 (Santa Barbara Harbor Use Plan); Dkt. 13-7, 52 – 13-9, 104 (SYU/POPCO Emergency Response Plan); Dkt. 13-9, 105-340 (SYU/POPCO Fire Protection Plan); Dkt. 13-6,154-177 (SYU/POPCO Groundwater Management Plan); Dkt. 13-6, 178 – Dkt. 13-7, 51 (SYU/POPCO Integrated Noise Monitoring Plan); Dkt. 13-9, 341-342 (SYU/POPCO Natural Gas Liquids Inventory Management Plan); Dkt. 13-9, 343-350 (SYU/POPCO Preservation Plan); Dkt. 13-9, 395-505 (SYU/POPCO Security Control Plan); Dkt. 13-9, 351-394 (SYU/POPCO SIMQAP); Dkt. 13-9, 506-518 (SYU/POPCO Transportation Risk Management and Prevention Program ("SYU/POPCO TRMPP")); *see also,*

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| Dkt. 13-1, 70 (Attachment F – link to Compliance Plans). | |
| **78.**   The Planning Commission confirmed this requirement of compliance plans being updated with the new owner's information and accepted was met for the SYU change of operator:<br><br>• For SYU, pursuant to Chapter 25B section 10(a)(6), the Planning Commission found that Sable's application to change operator met this requirement. Specifically, the Planning Commission found that "County staff confirmed that all relevant compliance plans have been updated with the current emergency contact information pertaining to Sable."<br><br>*Evidence:*<br>Dkt. 13-11, 33-34 (Planning Commission Findings); Dkt. 13-10, 256-258 (Planning Commission Minutes); Dkt. 13-21, 58, 163-164, 186-194 (Planning Commission Transcript); *see also* evidence cited above at ¶ 77 supporting staff determination. | Undisputed, with the clarification that the Planning Commission "found" this requirement was met.<br>*Evidence*:<br>Dkt. 13-11, AR002175–76 (Planning Commission Findings) (discussing "findings" required for change of operator) |
| **79.**   County staff confirmed, based on the record reviewed, that this requirement of compliance plans being updated with the | Undisputed, with the clarification that County staff "recommended" that the |

| | |
|---|---|
| new owner's information and accepted was met for the POPCO Facilities change of operator:<br><br>• For the POPCO Facilities, pursuant to Chapter 25B section 10(a)(6), County staff found that Sable's application to change operator met this requirement, finding that "POPCO and Sable submitted all major Compliance Plans to [Planning and Development] with updated emergency contact information by July 30, 2024 (the date of application completeness determination), and submitted all other compliance plans by August 14, 2024 (within six months of assuming operations). All POPCO Compliance Plans are integrated with the SYU Compliance Plans." Staff referenced the findings for SYU under Chapter 25B section 10(a)(6). | Planning Commission make a finding of compliance.<br><br>*Evidence*:<br>Dkt. 13-10, AR001985 (Staff Presentation I) ("Staff Recommendation" to "[m]ake the required [f]indings"). |
| *Evidence:*<br>Dkt. 13-1, 47 (Staff Report); Dkt. 13-10, 231 (Staff Presentation I);<br>Dkt. 13-21, 52, 54, 57-58 (Planning Commission Transcript); Dkt. 13-1, 259-273 (POPCO Application, March 14, 2024); Dkt. 13-1, 299-311 (Second | |

| | |
|---|---|
| Response to Notice of Incompleteness, July 1, 2024); Dkt. 13-6, 128-153 (Santa Barbara Harbor Use Plan); Dkt. 13-7, 52 – 13-9, 104 (SYU/POPCO Emergency Response Plan); Dkt. 13-9, 105-340 (SYU/POPCO Fire Protection Plan); Dkt. 13-6,154-177 (SYU/POPCO Groundwater Management Plan); Dkt. 13-6, 178 – Dkt. 13-7, 51 (SYU/POPCO Integrated Noise Monitoring Plan); Dkt. 13-9, 341-342 (SYU/POPCO Natural Gas Liquids Inventory Management Plan); Dkt. 13-9, 343-350 (SYU/POPCO Preservation Plan); Dkt. 13-9, 395-505 (SYU/POPCO Security Control Plan); Dkt. 13-9, 351-394 (SYU/POPCO SIMQAP); Dkt. 13-9, 506-518 (SYU/POPCO TRMPP); *see also*, Dkt. 13-1, 70 (Attachment F – link to Compliance Plans). | |
| **80.**    The Planning Commission confirmed this requirement of compliance plans being updated with the new owner's information and accepted was met for the POPCO Facilities change of operator:<br>• For the POPCO Facilities, pursuant to Chapter 25B section 10(a)(6), the Planning Commission found that | Undisputed, with the clarification that the Planning Commission "found" this requirement was met.<br>*Evidence*:<br>Dkt. 13-11, AR002179 (Planning Commission Findings) (discussing "findings" required for change of operator). |

| | |
|---|---|
| Sable's application to change operator met this requirement. The Planning Commission referenced the findings for SYU under Chapter 25B-10(a)(6) and explained that "[a]ll POPCO Compliance Plans are integrated with the SYU Compliance Plans." *Evidence:* Dkt. 13-11, 37 (Planning Commission Findings); Dkt. 13-10, 256-258 (Planning Commission Minutes); Dkt. 13-21, 58, 163-164, 186-194 (Planning Commission Transcript); *see also* Dkt. 13-9, 532 (Applicant Written Submission I); evidence cited above at ¶ 79 supporting staff determination. | |
| **81.** County staff confirmed, based on the record reviewed, that this requirement of compliance plans being updated with the new owner's information and accepted was met for the Pipeline change of operator: <br> • For the Pipeline, pursuant to Chapter 25B section 10(a)(6), County staff found that Sable's application to change operator met this requirement. County staff explained that "PPC and Sable submitted all major Compliance Plans | Undisputed, with the clarification that County staff "recommended" that the Planning Commission make a finding of compliance. *Evidence*: Dkt. 13-10, AR001985 (Staff Presentation I) ("Staff Recommendation" to "[m]ake the required [f]indings"). |

with updated emergency contact information by July 30, 2024 (the date of application completeness determination), and submitted all other compliance plans by August 14, 2024 (within six months of assuming operations)." Staff also explained that "[a]ll plans were reviewed for updated information and approved by the [Planning and Development] planner."

- Moreover, staff explained that although not required, "plans were also reviewed for technical accuracy by the SSRRC, OEM, and EMC's petroleum engineering consultant where appropriate."

*Evidence:*

Dkt. 13-1, 54-55 (Staff Report); Dkt. 13-10, 233 (Staff Presentation I);

Dkt. 13-21, 52, 57-58 (Planning Commission Transcript); Dkt. 13-1, 274-288 (Pipeline Application, March 14, 2024); Dkt. 13-1, 289-298 (First Response to Notice of Incompleteness, May 22, 2024); Dkt. 13-1, 299-311 (Second Response to Notice of Incompleteness, July 1, 2024); Dkt. 13-1, 350 – 13-6, 11

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| (Las Flores Pipelines Integrated Contingency Plan); Dkt. 13-6, 12-18 (Las Flores Pipelines Noise Monitoring and Control Plan); Dkt. 13-6, 19-48 (Las Flores Pipelines Pump Station Fire Protection Plan); Dkt. 13-6, 49-123 (Las Flores Pipelines SIMQAP); Dkt. 13-6, 124-127 (Las Flores Pipelines Site Security Plan); *see also*, Dkt. 13-1, 70 (Attachment F – link to Compliance Plans). | |
| **82.**    The Planning Commission confirmed this requirement of compliance plans being updated with the new owner's information and accepted was met for the Pipeline change of operator:<br>• For the Pipeline, pursuant to Chapter 25B section 10(a)(6), the Planning Commission found that Sable's application to change operator met this requirement, finding that "County staff confirmed that all relevant compliance plans have been updated with the current emergency contact information pertaining to PPC and Sable."<br>*Evidence:*<br>Dkt. 13-11, 40 (Planning Commission Findings); Dkt. 13-10, 256-258 (Planning | Undisputed, with the clarification that the Planning Commission "found" this requirement was met.<br>*Evidence*:<br>Dkt. 13-11, AR002182 (Planning Commission Findings) (discussing "findings" required for change of operator). |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| Commission Minutes); Dkt. 13-21, 58, 163-164, 186-194 (Planning Commission Transcript); *see also* Dkt. 13-9, 532 (Applicant Written Submission I); evidence cited above at ¶ 81 supporting staff determination. | |
| **Transitional Plan (Chapter 25B § 10(a)(7) [operator])** | |
| **83.** For a change in operator, Chapter 25B requires that "[t]he current owner or operator and proposed operator have submitted a transitional plan that will demonstrate the proposed operator shall receive adequate training, including by means of cross training by the current operator, where feasible, and shall have a good working knowledge of the crucial compliance plans listed in Sec. 25B-10.1.f before assuming control of operations. The plan has been approved by the director. The planning commission may exempt the current owner and proposed operator from this requirement, or portions thereof, for good cause." (County Code § 25B-10(a)(7)). *Evidence:* County Code § 25B-10(a)(7). | Undisputed. |

| | |
|---|---|
| 84.    County staff confirmed, based on the record reviewed, that this requirement of a transition plan was met for the SYU change of operator:<br><br>• For SYU, pursuant to Chapter 25B section 10(a)(7), County staff, based on the record reviewed, including the comprehensive Transition Plan for the Las Flores Canyon Facilities that Sable submitted in July 2024, and determined this finding had been met.<br><br>*Evidence:*<br>Dkt. 13-1, 37 (Staff Report); Dkt. 13-10, 230 (Staff Presentation I); Dkt. 13-21, 54, 57-58 (Planning Commission Transcript); Dkt. 13-1, 245-250 (SYU Application, March 14, 2024); Dkt. 13-1, 299-311 (Second Response to Notice of Incompleteness, July 1, 2024); Dkt. 13-1, 312-349 (Third Response to Notice of Incompleteness, July 23, 2024). | Undisputed, with the clarification that County staff "recommended" that the Planning Commission make a finding of compliance.<br><br>*Evidence*:<br>Dkt. 13-10, AR001985 (Staff Presentation I) ("Staff Recommendation" to "[m]ake the required [f]indings"). |
| 85.    The Planning Commission confirmed this requirement of a transition plan was met for the SYU change of operator:<br><br>• For SYU, pursuant to Chapter 25B section 10(a)(7), the Planning Commission found that "[t]he | Undisputed, with the clarification that the Planning Commission "found" this requirement was met.<br><br>*Evidence*:<br>Dkt. 13-11, AR002176 (Planning Commission Findings) (discussing |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| requirements of this finding are satisfied. Sable submitted a comprehensive Transition Plan describing the general strategy taken for the transition from ExxonMobil Corporation to Sable, a description of the facilities and general operating procedures, details on the staffing and support employees, and asset-specific training and general training conducted." | "findings" required for change of operator). |
| *Evidence:* | |
| Dkt. 13-11, 34 (Planning Commission Findings); Dkt. 13-10, 256-258 (Planning Commission Minutes); Dkt. 13-21, 58, 159, 186-194 (Planning Commission Transcript); *see also* Dkt. 13-9, 532-33 (Applicant Written Submission I); evidence cited above at ¶ 84 supporting staff determination. | |
| **86.** County staff confirmed, based on the record reviewed, that this requirement of a transition plan was met for the POPCO Facility change of operator:<br><br>• For the POPCO Facilities, pursuant to Chapter 25B section 10(a)(7), County staff found that Sable's application to | Undisputed, with the clarification that County staff "recommended" that the Planning Commission make a finding of compliance. |

| | |
|---|---|
| change operator met this requirement, finding that "Sable submitted a comprehensive Transition Plan for the SYU and POPCO Gas Plant as part of their application materials." Staff referenced the findings for SYU under Chapter 25B section 10(a)(7).<br><br>*Evidence:*<br>Dkt. 13-1, 48 (Staff Report); Dkt. 13-10, 231 (Staff Presentation I);<br>Dkt. 13-21, 54, 57-58 (Planning Commission Transcript); Dkt. 13-1, 259-273 (POPCO Application, March 14, 2024); Dkt. 13-1, 299-311 (Second Response to Notice of Incompleteness, July 1, 2024); Dkt. 13-1, 312-349 (Third Response to Notice of Incompleteness, July 23, 2024); Dkt. 13-1, 318-333 (SYU-POPCO Transition Plan). | *Evidence*:<br>Dkt. 13-10, AR001985 (Staff Presentation I) ("Staff Recommendation" to "[m]ake the required [f]indings"). |
| **87.**    The Planning Commission confirmed this requirement of a transition plan was met for the POCP Facilities change of operator:<br><br>• For the POPCO Facilities, pursuant to Chapter 25B section 10(a)(7), the Planning Commission found that Sable's application to change operator | Undisputed, with the clarification that the Planning Commission "found" this requirement was met.<br>*Evidence*:<br>Dkt. 13-11, AR002179 (Planning Commission Findings) (discussing "findings" required for change of operator). |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| met this requirement, incorporating by reference the findings for SYU under Chapter 25B-10(a)(7) and explaining that "[t]he Transition Plan for the SYU also incorporates the POPCO Gas Plant."<br><br>*Evidence:*<br>Dkt. 13-11, 37 (Planning Commission Findings); Dkt. 13-10, 256-258 (Planning Commission Minutes); Dkt. 13-21, 58, 159, 186-194 (Planning Commission Transcript); *see also* Dkt. 13-9, 532-33 (Applicant Written Submission I); evidence cited above at ¶ 86 supporting staff determination. | |
| **88.**    County staff confirmed, based on the record reviewed, that this requirement of a transition plan was met for the Pipeline change of operator:<br><br>• For the Pipeline, pursuant to Chapter 25B section 10(a)(7), County staff found that Sable's application to change operator met this requirement, finding that "Sable submitted a comprehensive Transition Plan for the SYU and POPCO Gas Plant as part of their application materials." | Undisputed, with the clarification that County staff "recommended" that the Planning Commission make a finding of compliance.<br><br>*Evidence*:<br>Dkt. 13-10, AR001985 (Staff Presentation I) ("Staff Recommendation" to "[m]ake the required [f]indings"). |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

- Staff explained that the Plan "describes the background of the pipeline system, the general approach to the transition (PPC remains the legal Owner of the pipeline with Sable as Operator), details on staffing, and asset-specific training and general training conducted. The plan outlines that there are five full-time employees managing the pipeline operations in addition to contracted field personnel. Though the Operations Middle Management Team is new (e.g. not former Plains employees), each leadership role, including the Director of Pipeline Operations, the Marketing and Scheduling Manager, the Pipeline Operations Manager, and the Facilities, ROW & Projects Manager have extensive experience in upstream and midstream pipeline operations for both onshore and offshore pipelines with reputable companies such as Phillips 66. The average years' experience of the pipeline operating team is 23 years. These combined years of similar experience demonstrate the ability to continue operations with

| | |
|---|---|
| limited staffing and training disruptions, and with a qualified new team not previously responsible for operations when the 2015 Refugio Incident occurred." <br><br> • Moreover, staff explained that the Plan "was reviewed and approved by [Planning and Development] as part of the application completeness determination process." <br><br> *Evidence:* <br><br> Dkt. 13-1, 55-56 (Staff Report); Dkt. 13-10, 233 (Staff Presentation I); <br> Dkt. 13-21, 54, 57-58 (Planning Commission Transcript); Dkt. 13-1, 274-288 (Pipeline Application, March 14, 2024); Dkt. 13-1, 299-311 (Second Response to Notice of Incompleteness, July 1, 2024); Dkt. 13-1, 312-349 (Third Response to Notice of Incompleteness), July 23, 2024); Dkt. 13-1, 334-348 (Pipeline Transition Plan). | |
| **89.** The Planning Commission confirmed this requirement of a transition plan was met for the Pipeline change of operator: <br><br> • For the Pipeline, pursuant to Chapter 25B section 10(a)(7), the Planning | Undisputed, with the clarification that the Planning Commission "found" this requirement was met. |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| Commission found that Sable's application to change operator met this requirement, finding that "Sable submitted a comprehensive Transition Plan describing the background of the pipeline system, the general approach to the transition . . . details on staffing, and asset-specific training and general training conducted." *Evidence:* Dkt. 13-11, 41 (Planning Commission Findings); Dkt. 13-10, 256-258 (Planning Commission Minutes); Dkt. 13-21, 58, 159, 186-194 (Planning Commission Transcript); *see also* Dkt. 13-9, 532-33 (Applicant Written Submission I); evidence cited above at ¶ 88 supporting staff determination. | *Evidence*: Dkt. 13-11, AR002183 (Planning Commission Findings) (discussing "findings" required for change of operator). |

| Emergency Response Plan Drills (Chapter 25B § 10(a)(8) [operator]) | |
|---|---|
| **90.**    For a change in operator, Chapter 25B requires that "[t]he proposed operator has adequately performed one or more county approved emergency response plan drills necessary to respond to emergency episodes that may occur at the facility." (County Code § 25B-10(a)(8)). | Undisputed. |

| | |
|---|---|
| *Evidence:*<br><br>County Code § 25B-10(a)(8). | |
| **91.**    County staff confirmed, based on the record reviewed, that this requirement of emergency response plan drills was met for the SYU change of operator:<br><br>• For SYU, pursuant to Chapter 25B section 10(a)(8), County staff issued findings and determined this finding had been met. Specifically, staff determined that in February 2024, Sable submitted "an updated Emergency Response Plan and staffing details for their Incident Management Team (IMT) who run the response." County staff found that "[d]ocuments demonstrate that the IMP has maintained consistent personnel with very limited changes from Exxon to Sable. Almost all of the IMT members who participated in previous emergency response drills under Exxon (last conducted in 2023), continue to serve in the same or similar roles with Sable. The IMT under Sable held a comprehensive emergency response drill on September 19, 2024. [Planning and Development] confirmed | Undisputed, with the clarification that County staff "recommended" that the Planning Commission make a finding of compliance.<br><br>*Evidence*:<br>Dkt. 13-10, AR001985 (Staff Presentation I) ("Staff Recommendation" to "[m]ake the required [f]indings"). |

with OEM Captain . . . that the 2024 emergency response drill was completed in accordance with County requirements, and that no outstanding issues were identified."

*Evidence:*

Dkt. 13-1, 38 (Staff Report); Dkt. 13-6, 128 – 13-9, 518 (SYU Compliance Plans); Dkt. 13-10, 230 (Staff Presentation I); Dkt. 13-21, 54-55, 57-58 (Planning Commission Transcript); Dkt. 13-1, 245-250 (SYU Application, March 14, 2024); Dkt. 13-1, 299-311 (Second Response to Notice of Incompleteness, July 1, 2024); Dkt. 13-7, 52-168 (SYU-POPCO Emergency Response Plan); Dkt. 13-1, 306-311 (Incident Management Team Overview).

| | |
|---|---|
| **92.** The Planning Commission confirmed this requirement of emergency response plan drills was met for the SYU change of operator:<br><br>• For SYU, pursuant to Chapter 25B section 10(a)(8), the Planning Commission found that Sable's application to change operator met this requirement, as "Sable submitted an updated Emergency Response Plan and | Undisputed, with the clarification that the Planning Commission "found" this requirement was met.<br><br>*Evidence*:<br>Dkt. 13-11, AR002176 (Planning Commission Findings) (discussing "findings" required for change of operator). |

staffing details for their Incident Management Team who run the response drills. Sable held a comprehensive emergency response drill on September 19, 2024 in coordination with the County Fire Department's Office of Emergency Services and other regulatory agencies. Planning and Development confirmed with the County Fire Department in attendance that the emergency response drill was completed in accordance with County requirements, and that no outstanding issues were identified."

*Evidence:*

Dkt. 13-11, 34 (Planning Commission Findings); Dkt. 13-10, 256-258 (Planning Commission Minutes); Dkt. 13-21, 58, 171, 186-194 (Planning Commission Transcript); *see also* Dkt. 13-9, 532-33 (Applicant Written Submission I); evidence cited above at ¶ 91 supporting staff determination.

| | |
|---|---|
| **93.** County staff confirmed, based on the record reviewed, that this requirement of emergency response plan drills was met for the POPCO Facilities change of operator: | Undisputed, with the clarification that County staff "recommended" that the Planning Commission make a finding of compliance. |

| | |
|---|---|
| • For the POPCO Facilities, pursuant to Chapter 25B section 10(a)(8), County staff found that Sable's application to change operator met this requirement, finding that "[t]he Emergency Response Plan Drill for the POPCO Gas Plan was integrated into the emergency response drill conducted for the SYU on September 19, 2024." Staff referenced the findings for SYU under Chapter 25B-10(a)(8).<br><br>*Evidence:*<br>Dkt. 13-1, 48 (Staff Report); Dkt. 13-10, 231 (Staff Presentation I); Dkt. 13-21, 54-55, 57-58 (Planning Commission Transcript); Dkt. 13-1, 259-273 (POPCO Application, March 14, 2024); Dkt. 13-1, 299-311 (Second Response to Notice of Incompleteness, July 1, 2024); Dkt. 13-7, 52-168 (SYU-POPCO Emergency Response Plan); Dkt. 13-1, 306-311 (Incident Management Team Overview). | *Evidence*:<br>Dkt. 13-10, AR001985 (Staff Presentation I) ("Staff Recommendation" to "[m]ake the required [f]indings"). |
| **94.**    The Planning Commission confirmed this requirement of emergency response plan drills was met for the POPCO Facilities change of operator: | Undisputed, with the clarification that the Planning Commission "found" this requirement was met. |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| • For the POPCO Facilities, pursuant to Chapter 25B section 10(a)(8), the Planning Commission found that Sable's application to change operator met this requirement, incorporating by reference the findings for SYU under Chapter 25B-10(a)(8) and explaining that "[t]he Emergency Response Plan drill for the POPCO Gas Plant is incorporated into the emergency drill for the SYU."<br><br>*Evidence:*<br>Dkt. 13-11, 38 (Planning Commission Findings); Dkt. 13-10, 256-258 (Planning Commission Minutes); Dkt. 13-21, 58, 171, 186-194 (Planning Commission Transcript); *see also* Dkt. 13-9, 532-33 (Applicant Written Submission I); evidence cited above at ¶ 93 supporting staff determination. | *Evidence*:<br>Dkt. 13-11, AR002180 (Planning Commission Findings) (discussing "findings" required for change of operator). |
| **95.**   County staff confirmed, based on the record reviewed, that this requirement of emergency response plan drills was met for the Pipeline change of operator:<br><br>• For the Pipeline, pursuant to Chapter 25B section 10(a)(8), County staff found that Sable's application to change | Undisputed, with the clarification that County staff "recommended" that the Planning Commission make a finding of compliance. |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

operator met this requirement, finding that "PPC and Sable submitted an updated Incident Contingency Plan (ICP) as part of their application materials. The ICP combines the previously separate Emergency Response, Fire Protection, and Oil Spill Contingency Plans . . . Sable held a comprehensive ICP training exercise and emergency response drill on July 25, 2024."

- Staff explained that Planning and Development "confirmed with OEM Captain . . ., that the 2024 emergency response drill was completed in accordance with County requirements, and that no outstanding issues were identified."

*Evidence:*

Dkt. 13-1, 56-57 (Staff Report); Dkt. 13-10, 233 (Staff Presentation I); Dkt. 13-21, 57-58 (Planning Commission Transcript); Dkt. 13-1, 274-288 (Pipeline Application, March 14, 2024); Dkt. 13-1, 299-311 (Second Response to Notice of Incompleteness, July 1, 2024);

*Evidence*:

Dkt. 13-10, AR001985 (Staff Presentation I) ("Staff Recommendation" to "[m]ake the required [f]indings").

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| Dkt. 13-1, 349 – 13-6, 11 (Integrated Contingency Plan). | |
| **96.** The Planning Commission confirmed this requirement of emergency response plan drills was met for the Pipeline change of operator:<br><br>• For the Pipeline, pursuant to Chapter 25B section 10(a)(8), the Planning Commission found that Sable's application to change operator met this requirement, finding that "PPC and Sable submitted an updated Incident Contingency Plan (ICP) as part of their application materials. The ICP combines the previously separate Emergency Response, Fire Protection, and Oil Spill Contingency Plans. Sable held a comprehensive ICP training exercise and emergency response drill on July 25, 2024. [Planning and Development] confirmed with OEM Captain . . . that the 2024 emergency response drill was completed in accordance with County requirements, and that no outstanding issues were identified." | Undisputed, with the clarification that the Planning Commission "found" this requirement was met.<br><br>*Evidence*:<br>Dkt. 13-11, AR002183 (Planning Commission Findings) (discussing "findings" required for change of operator). |

| | |
|---|---|
| *Evidence:* Dkt. 13-11, 41 (Planning Commission Findings); Dkt. 13-10, 256-258 (Planning Commission Minutes); Dkt. 13-21, 58, 171, 186-194 (Planning Commission Transcript); *see also* Dkt. 13-9, 532-33 (Applicant Written Submission I); evidence cited above at ¶ 95 supporting staff determination. | |

**Operator Compliance History and Capability (Chapter 25B § 10(a)(9) [operator])**

| | |
|---|---|
| **97.** For a change in operator, Chapter 25B requires that "[t]he proposed operator has the skills, training, and resources necessary to operate the permitted facility in compliance with the permit and all applicable county codes and has demonstrated the ability to comply with compliance plans listed in section 25B-10.1.f. The director shall require relevant records of compliance, and corrective actions taken subsequent to any major incidents for facilities, if any, that are similar in nature to those that are the subject of the permit, as may be necessary to make findings. These records shall be used to provide sufficient assurance that the proposed operator does not reflect a | Undisputed. |

88

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| record of non-compliant or unsafe operations systemic in nature for similar facilities to those being considered for operatorship." (County Code § 25B-10(a)(9).<br><br>*Evidence:*<br>County Code § 25B-10(a)(9). | |
| **98.** County staff confirmed, based on the record reviewed, that this requirement of demonstrating operator capability was met for the SYU change of operator:<br><br>• For SYU, pursuant to Chapter 25B section 10(a)(9), County staff, based on the record reviewed, determined this finding had been met.<br><br>• Specifically, County staff found that Sable's executive management team has over three decades of experience managing oil and gas operations in the Pacific Ocean, Gulf of Mexico, and onshore California, including in the County. Its upper management and onsite middle management teams have decades of experience with Santa Barbara County-specific oil and gas facilities. Nearly two-thirds of the Facilities' existing employees | Undisputed, with the clarification that County staff "recommended" that the Planning Commission make a finding of compliance, and that County staff's notes about Sable's management team, copied largely from Sable's website, were not "findings."<br><br>*Evidence*:<br>Dkt. 13-10, AR001985 (Staff Presentation I) ("Staff Recommendation" to "[m]ake the required [f]indings"). |

| | |
|---|---|
| transferred from ExxonMobil in the same or similar roles, and there were no prior major incidents or unsafe operations.<br><br>*Evidence:*<br>Dkt. 13-1, 38-44 (Staff Report); Dkt. 13-10, 230 (Staff Presentation I);<br>Dkt. 13-21, 54-55, 57-58 (Planning Commission Transcript); Dkt. 13-1, 245-250 (SYU Application, March 14, 2024);<br>Dkt. 13-1, 252-254 (Sable Offshore Corp. Investor Presentation [December 2023]);<br>Dkt. 13-1, 289-298 (First Response to Notice of Incompleteness, May 22, 2024);<br>Dkt. 13-1, 299-311 (Second Response to Notice of Incompleteness, July 1, 2024);<br>Dkt. 13-1, 318-333 (SYU-POPCO Transition Plan). | |
| **99.**   The Planning Commission confirmed this requirement of demonstrating operator capability was met for the SYU change of operator:<br><br>• For SYU, pursuant to Chapter 25B section 10(a)(9), the Planning Commission found that Sable's application to change operator met this requirement. | Undisputed, with the clarification that the Planning Commission "found" this requirement was met.<br><br>*Evidence*:<br>Dkt. 13-11, AR002176 (Planning Commission Findings) (discussing "findings" required for change of operator). |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

- The Planning Commission explained that "Sable was formed in October 2020 as an independent oil and gas company headquartered in Houston Texas as a special purpose acquisition company. Sable's Executive Management Team have managed oil and gas exploration and production businesses in the Pacific Ocean, the Gulf of Mexico, and onshore California for more than 30 years. Specific to Santa Barbara County, the Executive Management Team has successfully operated Platform Irene and the associated Lompoc Oil & Gas Plant and Point Pedernales Pipelines, and Platforms Harvest, Hidalgo, Hermosa and the associated Gaviota Oil & Gas Plant and Point Arguello Pipelines under former management of Plains Exploration and Production Company (PXP) and Freeport-McMoRan, Inc (FMOG). Sable's Upper Management Team have carried over from similar leadership roles at PXP and FMOG, with an average of 31 years of experience operating oil and gas facilities within the County. Sable's

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

Onsite Middle Management Team have all transferred over from similar roles at the Las Flores Canyon Facilities under Exxon, with an average of 21 years of experience working at the facilities. Approximately 64 percent of the onsite facility employees have also transferred over in their same or similar capacity from Exxon. All employees and management have been trained on the facility-specific Compliance Plans. Sable has had zero major incidents involving crude oil and gas facilities within the U.S. while managing Sable Permian Resources from 2017 – 2021, FMOG from 2013 – 2017, and PXP from 2009 – 2013."

*Evidence:*

Dkt. 13-11, 34-35 (Planning Commission Findings); Dkt. 13-10, 256-258 (Planning Commission Minutes); Dkt. 13-21, 58, 186-194 (Planning Commission Transcript); *see also* Dkt. 13-10, 241-244 (Applicant Presentation I); Dkt. 13-9, 533-34 (Applicant Written Submission I); evidence cited above at ¶ 98 supporting staff determination.

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

**100.** County staff confirmed, based on the record reviewed, that this requirement of demonstrating operator capability was met for the POPCO Facilities change of operator:

- For the POPCO Facilities, pursuant to Chapter 25B section 10(a)(9), County staff found that Sable's application to change operator met this requirement, finding that "[t]he skills, training, and resources necessary to operate the POPCO Gas Plant are integrated into the skills, training, and resources necessary to operate the SYU." Staff referenced the findings for SYU under Chapter 25B section 10(a)(9).

*Evidence:*

Dkt. 13-1, 48-49 (Staff Report); Dkt. 13-10, 231 (Staff Presentation I); Dkt. 13-21, 54-55, 57-58 (Planning Commission Transcript); Dkt. 13-1, 259-273 (POPCO Application, March 14, 2024); Dkt. 13-1, 267-269 (Sable Offshore Corp. Investor Presentation [December 2023]); Dkt. 13-1, 289-298 (First Response to Notice of Incompleteness, May 22, 2024); Dkt. 13-1, 299-311 (Second

Undisputed, with the clarification that County staff "recommended" that the Planning Commission make a finding of compliance.

*Evidence*:

Dkt. 13-10, AR001985 (Staff Presentation I) ("Staff Recommendation" to "[m]ake the required [f]indings").

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| Response to Notice of Incompleteness, July 1, 2024); Dkt. 13-1, 318-333 (SYU-POPCO Transition Plan). | |
| **101.** The Planning Commission confirmed this requirement of demonstrating operator capability was met for the POPCO Facilities change of operator:<br><br>• For the POPCO Facilities, pursuant to Chapter 25B section 10(a)(9), the Planning Commission found that Sable's application to change operator met this requirement, incorporating by reference the findings for SYU under Chapter 25B-10(a)(9) and explaining that "[o]perator capabilities for the POPCO Gas Plant are the same as for the SYU."<br><br>*Evidence:*<br>Dkt. 13-11, 38 (Planning Commission Findings); Dkt. 13-10, 256-258 (Planning Commission Minutes); Dkt. 13-21, 58, 186-194 (Planning Commission Transcript); *see also* Dkt. 13-10, 241-244 (Applicant Presentation I); Dkt. 13-9, 533-34 (Applicant Written Submission I); evidence cited above at ¶ 100 supporting staff determination. | Undisputed, with the clarification that the Planning Commission "found" this requirement was met.<br>*Evidence*:<br>Dkt. 13-11, AR002176 (Planning Commission Findings) (discussing "findings" required for change of operator). |

| 102. County staff confirmed, based on the record reviewed, that this requirement of demonstrating operator capability was met for the Pipeline change of operator:<br><br>For the Pipeline, pursuant to Chapter 25B section 10(a)(9), County staff found that Sable's application to change operator met this requirement. Staff referred to findings for the Pipeline under Chapter 25B section 10(a)(7) and the findings for SYU under Chapter 25B section 10(a)(9).<br><br>*Evidence:*<br><br>Dkt. 13-1, 57-58 (Staff Report); Dkt. 13-10, 233 (Staff Presentation I);<br><br>Dkt. 13-21, 57-58 (Planning Commission Transcript); Dkt. 13-1, 274-288 (Pipeline Application, March 14, 2024); Dkt. 13-1, 282-284 (Sable Offshore Corp. Investor Presentation [December 2023]); Dkt. 13-1, 289-298 (First Response to Notice of Incompleteness, May 22, 2024); Dkt. 13-1, 299-311 (Second Response to Notice of Incompleteness, July 1, 2024); Dkt. 13-1, 334-348 (Pipeline Transition Plan). | Undisputed, with the clarification that County staff "recommended" that the Planning Commission make a finding of compliance.<br><br>*Evidence*:<br><br>Dkt. 13-10, AR001985 (Staff Presentation I) ("Staff Recommendation" to "[m]ake the required [f]indings"). |
| 103. The Planning Commission confirmed this requirement of demonstrating operator capability was met for the Pipeline change | Undisputed, with the clarification that the Planning Commission "found" this requirement was met. |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| of operator: | *Evidence*: |
| • For the Pipeline, pursuant to Chapter 25B section 10(a)(9), the Planning Commission found that Sable's application to change operator met this requirement. | Dkt. 13-11, AR002183–84 (Planning Commission Findings) (discussing "findings" required for change of operator). |
| • The Planning Commission explained that "Sable was formed in October 2020 as an independent oil and gas company headquartered in Houston Texas as a special purpose acquisition company. Sable's Executive Management Team have managed oil and gas exploration and production businesses in the Pacific Ocean, the Gulf of Mexico, and onshore California for more than 30 years. Specific to Santa Barbara County, the Executive Management Team has successfully operated Platform Irene and the associated Lompoc Oil & Gas Plant and Point Pedernales Pipelines, and Platforms Harvest, Hidalgo, Hermosa and the associated Gaviota Oil & Gas Plant and Point Arguello Pipelines under former management of Plains Exploration and Production Company (PXP) and Freeport- | |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

McMoRan, Inc (FMOG). Sable's Upper Management Team have carried over from similar leadership roles at PXP and FMOG, with an average of 31 years of experience operating oil and gas facilities within the County. Sable's Onsite Middle Management Team have all transferred over from similar roles at the Las Flores Canyon Facilities under Exxon, with an average of 21 years of experience working at the facilities. Approximately 64 percent of the onsite facility employees have also transferred over in their same or similar capacity from Exxon. All employees and management have been trained on the facility-specific Compliance Plans. Sable has had zero major incidents involving crude oil and gas facilities within the U.S. while managing Sable Permian Resources from 2017 – 2021, FMOG from 2013 – 2017, and PXP from 2009 – 2013."

*Evidence:*

Dkt. 13-11, 41-42 (Planning Commission Findings); Dkt. 13-10, 256-258 (Planning Commission Minutes);

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| Dkt. 13-21, 58, 186-194 (Planning Commission Transcript); *see also* Dkt. 13-10, 241-244 (Applicant Presentation I); Dkt. 13-9, 533-34 (Applicant Written Submission I); evidence cited above at ¶ 102 supporting staff determination. | |

**Appeals Sought to Exceed Ministerial Review Authorized by Chapter 25B**

| | |
|---|---|
| **104.** The CBD and EDC appeals argued, inter alia, that:<br><br>a) Sable was not issued "final" certificates of financial responsibility ("COFR"s).<br><br>b) Sable had not submitted "approved" Oil Spill Contingency Plans from the California Department of Fish and Wildlife's Office of Spill Prevention and Response ("OSPR").<br><br>c) Sable should be required to post additional decommissioning bonds not required by the FDPs.<br><br>d) Environmental review should be conducted for the FDP transfers.<br><br>e) Pipeline restart, if subsequently authorized by state and federal authorities, created risks for the County.<br><br>f) Sable lacked resources to fully fund | The reference to "Ministerial Review" in the heading requires a legal determination.<br><br>This statement is undisputed, with the clarification that the EDC appeal alleged that:<br><br>• The Planning Commission's approval was inconsistent with the provisions and purpose of Chapter 25B of the County Code;<br><br>• The decision was made in error;<br><br>• The decision constituted an abuse of discretion; and<br><br>• The decision and findings were not supported by sufficient evidence.<br><br>Specific grounds were:<br><br>With respect to the SYU Permit:<br><br>• Sable has not obtained a final Certificate of Financial Responsibility |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

a worst-case oil spill from the Pipeline and should be required to post additional insurance.

g) Sable was not in compliance with Condition A-7 of the Pipeline Facility FDP requiring effective cathodic protection due to corrosion under insulation.

h) Coastal Commission Notice of Violation issued on September 27, 2024, after the application completion date, meant that Sable was unable to comply with state permits and regulations.

*Evidence:*

Dkt. 13-10, 299-306 (CBD appeal); Dkt. 13-20, 30-42 (CBD Hearing Presentation); Dkt. 13-10, 307-312 (EDC appeal); Dkt. 13-20, 43-61 (EDC Hearing Presentation); *see also* Dkt. 13-9, 534-536 (Applicant Written Submission I).

("CFR") for its facilities, as required by Condition XI-2.w.

- Sable has not posted a performance bond for the abandonment of these facilities, which can — and should — be required under Condition XIX-1.

- Sable has not submitted an adequate or approved Oil Spill Contingency Plan for these facilities.

- Sable has not demonstrated that it has the resources necessary to operate these facilities, as it may run out of capital prior to restart.

- Sable has not demonstrated that it has the financial capacity to remediate a worst-case spill from these facilities, as required by Condition XI-2.w.

- Sable has not demonstrated that it can comply with an Oil Spill Contingency Plan, as it failed to submit an adequate or approved plan, and it lacks the financial resources to comply with such a plan.

- Sable has not shown that it can be trusted to reliably operate these facilities.

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

With respect to the POPCO Permit:

- Sable has not posted a performance bond for the abandonment of this facility, as required by Condition Q-2.

- Sable has not demonstrated that it has the resources necessary to operate this facility, as it may run out of capital prior to restart.

- Sable has not shown that it can be trusted to reliably operate this facility.

With respect to the Las Flores Pipeline System Permit:

- Sable has not obtained final CFRs for the Las Flores Pipeline System, which the County can — and should — require pursuant to Section 25B-10(b).

- Sable has not posted a performance bond for the abandonment of these facilities, which can — and should — be required under Condition O-1.

- The current owner/operator is not in compliance with Condition A-7, as the Las Flores Pipeline System lacks effective cathodic protection.

- Sable has not submitted an adequate or approved Oil Spill Contingency Plan for the Las Flores Pipeline System.

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| | • Sable has not demonstrated that it has the resources necessary to operate the facilities, as it may run out of capital prior to restart. |
| | • Sable has not demonstrated that it can comply with an Oil Spill Contingency Plan, as it failed to submit an approved or adequate plan for these facilities, and it lacks the financial resources to comply with such a plan. |
| | • Sable has not shown that it can be trusted to reliably operate these facilities. |
| | *Evidence:* |
| | Dkt. 13-10, AR002058– 63 (EDC appeal); Dkt. 13-20, AR006629–67 (EDC Hearing Presentation). |
| **105.** The Board's letter and staff presentation provided an analysis and rejection of each of appellants' arguments, finding none of the points raised in the appeals altered their recommendation or impacted Sable's established compliance with Chapter 25B's requirements.<br><br>Specifically, staff found:<br>a) With respect to COFRs, Chapter 25B is "limited to ensuring facility fees | Undisputed, with the clarification that County staff "recommended" that the Board make certain findings. The propriety of the recommendations requires a legal determination.<br>*Evidence*:<br>Dkt. 13-11, AR002953 (Board Letter) ("Recommended Actions"); Dkt. 13-20, AR006614 (Staff Presentation) ("Staff Recommendation"). |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

are paid, and insurance, bonds, and financial guarantees reflect [the] new permittee" and that these findings were met through Sable's submittal of the SYU COFR; that the SYU was required to have a COFR, that OSPR had confirmed the COFR was proper, and that the County "cannot require financial documents where not already required."

b) With respect to oil spill contingency plans, all compliance plans required by Chapter 25B had been submitted and Chapter 25B does not require plans approved by non-County regulators to be submitted (noting applicable contingency plans required by state and federal law were under review by OSPR, a state agency, and Sable is required to follow the most current version of the plans in the event of an oil spill). Staff confirmed that County safety oversight is confined to annual audits and monthly reviews of the onshore Facilities (SYU and POPCO), enforcement of the FDP

conditions, and oversight by the "County Fire Department, Environmental Health, and Air Pollution Control district."

c) With respect to bonds, the Chapter 25B procedure only required updating contact information on bonds, "[d]ecommissioning bonds were not required to be posted as part of the original project approvals, and no decommissioning bonds have been required to date." However, while not required by the FDPs, Sable in fact would post a decommissioning bond with ExxonMobil.

d) With respect to environmental review, because "[n]o physical changes to the facilities, or modifications to facility operations would occur under" the FDP transfer process, and because "[r]estart of the facilities is not a part of the Chapter 25B Permit Amendment process," the County's action to transfer the permits is exempt from CEQA under the CEQA Guidelines

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

section 15378(b)(5) exemption for administrative activities of governments that do not result in physical changes to the environment.

e) With respect to restart, staff noted that in making this argument appellants relied on spill data from an incomplete draft EIR/EIS for a different project, that Sable is required by state and federal agencies to meet all safety conditions prior to restart, and the "County has no authority to oversee [such] state and federal safety and restart requirements." that is outside the County's jurisdiction.

f) With respect to general resources and insurance, of the three FDPs, only the SYU required specific financial responsibility documents, and Sable had met those requirements; further noting that Sable "has cash balance of ~$363M, remaining startup costs of $125M [and] [m]argins will increase from production sales," and there was no basis to find Sable lacked resources,

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

skill, or training to safely operate the Facilities.

g) With respect to alleged non-compliance with FDP Condition A-7 in relation to cathodic protection, the Condition had no such requirement "related to cathodic protection" and that the Pipeline Facility met all actual requirements of A-7.

h) With respect to the Coastal Commission issues, staff explained that Chapter 25B finding which requires "no record of *systemic* non-compliance or unsafe operations related to *major incidents* for similar facilities." Staff confirmed that "Chapter 25B does not require that the permittee be in compliance with non-County permits and regulations to approve the permit transfers." It further explained that the activities cited in the state agency letters citing unpermitted development "did not reflect systemically unsafe operations related to major incidents" And were "[o]utside of the Chapter 25B Permit Amendment

process."

*Evidence:*

Dkt. 13-11, 811-827 (Board Letter); Dkt. 13-20, 15-28 (Staff Presentation); *see also* Dkt. 13-10, 248-252 (Applicant Presentation I); Dkt. 13-9, 534-36 (Applicant Written Submission I); Dkt. 13-20, 62-81 (Sable's presentation at the February 25, 2025 Board of Supervisors hearing ("Applicant Presentation II")); Dkt. 13-14, 495-512 (Sable February 21, 2025 Letter to the Board of Supervisors ("Applicant Written Submission II")).

| | |
|---|---|
| **106.** Appellants also argued the hearing before the Planning Commission was not fair and impartial because, they claimed, staff did not provide the entirety of the record such as original development permits, insurance policies, financial audits, and state findings. Staff rejected this argument as well, finding that "all relevant documents to make the necessary findings required by Chapter 25B" were provided for the Planning Commission decision regarding compliance with Chapter 25B. | Undisputed, with the clarifications that (1) the EDC Appellants argued that additional information was necessary to inform the County's determination of compliance with Chapter 25B, and (2) County staff does not make findings, but rather makes recommendations to the Planning Commission. *Evidence*: Dkt. 13-10, AR002060–62 (EDC Appeal); Dkt. 13-11, AR002953 (letter from County staff to the Board of Supervisors) (providing a list of "Recommended Actions" to the Board of Supervisors, |

| | |
|---|---|
| *Evidence:* Dkt. 13-20, 27; Dkt. 13-11, 825-26. | including the recommendation that the Board make certain "finding[s]"). |
| **107.** Appellants and others also broadly raised concerns with oil spills and environmental issues unrelated to the Chapter 25B process. Staff rejected this assertion as well, explaining that "[r]estart of the facilities is not a part of the Chapter 25B Permit Amendment process, nor would the transfer of permits facilitate restart," and "no physical changes to the facilities, or modifications to the facility operations" are proposed. *Evidence:* Dkt. 13-15, 469 – Dkt. 13-19, 37 (written public comment); Dkt. 13-21, 242-267 (oral comments from appellants); Dkt. 13-21, 287-378 (oral public comment); Dkt. 13-11, 822-825 (Board Letter); Dkt. 13-20, 11, 23-24 (Staff Presentation); *see also* Dkt. 13-10, 238 (Applicant Presentation I) Dkt. 13-9, 534-36 (Applicant Written Submission I); Dkt. 13-20, 62-81 (Applicant Presentation II); Dkt. 13-14, 495-512 (Applicant Written Submission II). | Undisputed, with the clarifications that (1) County staff acknowledged that "[t]he final development plan permit . . . requires that [Sable] be responsible for any cleanup and restoration of an oil or gas leak"; (2) the risk of oil spills and other environmental harm is within the scope of Chapter 25B; (3) Movants' interpretation on the scope of Chapter 25B is a legal conclusion;  and (4) County staff's explanation is not legally binding and requires a legal determination. *Evidence:* Dkt. 13-21, AR006797, lines 6-9 (Board of Supervisors Public Hearing Transcript); Exhibit 2 of Intervenors' RJN in Support of Intervenors' Opposition to Motion for Summary Judgment (County Code of Ordinances, Chapter 25B). |

| 108. Staff recommended the Board deny the appeals in their entirety.  *Evidence:*  Dkt. 13-11, 811-827 (Board letter); Dkt. 13-20, 9-28 (Staff Presentation). | Undisputed, with the clarification that Staff recommended also that the Board grant de novo approval of Sable's applications.  *Evidence:*  Dkt. 13-11, 811-827 (Board letter) |
|---|---|

### On Appeal, Some Board Members Considered Factors Outside the Scope of Chapter 25B

| 109. At the hearing on the Appeals, Supervisor Joan Hartmann recused herself from the proceedings, which left only four of the five supervisors present to consider and act on them.  *Evidence:*  Dkt. 13-21, 10 (Board Minute Order); Dkt. 13-21, 213, 397-400 (Board Hearing Transcript). | The header's statement that some Board members considered factors outside the scope of Chapter 25B requires a legal determination.  Statement of fact no. 109 is undisputed. |
|---|---|
| 110. After an approximately seven-hour hearing and deliberation, the remaining four supervisors split the vote on a motion to deny the appeals, 2 votes to 2 votes. Supervisors Steve Lavagnino and Bob Nelson voted in favor of denying the appeals, and Chair Laura Capps and Supervisor Roy Lee voted against the denial motion. | Undisputed. |

| | |
|---|---|
| *Evidence:*<br><br>Dkt. 13-21, 398-399 (Board Hearing Transcript). | |
| **111.** During deliberations, the Board members did not specifically discuss or contravene the Planning Commission's findings under Chapter 25B.<br><br>*Evidence:*<br><br>Dkt. 13-21, 391-401. (Board Hearing Transcript). | This statement requires a legal determination regarding the obligations of the Board; because the appeals were considered "de novo," the Board members were not required to discuss the validity of the Planning Commission's findings. |
| **112.** At the Board appeal hearing, Supervisor Lee expressed concerns about restarting oil operations in the County, calling it an "insane idea."<br><br>*Evidence:*<br><br>Dkt. 13-21, 393 (Board Hearing Transcript). | Undisputed, with the clarification that Supervisor Lee was likely speaking to restarting the defective Las Flores Pipeline System. |
| **113.** Chair Capps stated that Pipeline restart was "not what we're doing here," but nevertheless expressed skepticism about the sale of the Facilities to Sable, saying it didn't pass her "smell test."<br><br>*Evidence:*<br><br>Dkt. 13-21, 397 (Board Hearing Transcript). | Undisputed, with the clarification that Chair Capps also stated that "there are too many red flags . . . this is about fiscal oversight;" that Sable should provide its insurance policy to show adequate assurances; and that she could not say that the transfer gives her reassurance of fiscal stability. |

| | |
|---|---|
| | *Evidence:* <br> Dkt. 13-21, AR007141 (lines 8–9, 18–22); AR007142 (lines 5–7) (Board Hearing Transcript). |
| **114.**  Chair Capps criticized Sable for not providing insurance policy copies. Chair Capps also stated that Sable "met the requirements of this sort of checklist" but did not go "above and beyond the checklist." <br> *Evidence:* <br> Dkt. 13-21, 238-239, 397 (Board Hearing Transcript). | The first sentence is undisputed. <br> The second statement is undisputed, with the clarification that Chair Capps also cited evidence that the County "created an ordinance so that it gave us an actual role, not a toothless role, not a checklist role, but an actual role for the people." <br> *Evidence:* <br> Dkt. 13-21, AR007002 (lines 17–21) (Board Hearing Transcript). |
| **115.**  Chair Capps also expressed concern with the fact that Sable purchased the Facilities with a loan, which she characterized as "fishy." <br> *Evidence:* <br> Dkt. 13-21, 258 397 (Board Hearing Transcript). | Undisputed, with the clarification that Chair Capps also stated that "there are too many red flags . . . this is about fiscal oversight;" that Sable should provide its insurance policy to show adequate assurances; and that she could not say that the transfer gives her reassurance of fiscal stability. <br> *Evidence:* <br> Dkt. 13-21, AR007141 (lines 8–9, 18–22); AR007142 (lines 5–7) (Board Hearing Transcript). |

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | |
|---|---|
| **116.** Chair Capps also criticized Sable for its dispute with the Coastal Commission regarding state requirements.<br>*Evidence:*<br>Dkt. 13-21, 397 (Board Hearing Transcript); Dkt. 13-11, 821-822 (Board letter). | Undisputed, with the clarification that Chair Capps cited the Coastal Commission cease and desist order.<br>*Evidence:*<br>Dkt. 13-21, AR007141 (lines 22–24) (Board Hearing Transcript). |
| **117.** The remaining two Supervisors, Supervisor Nelson and Supervisor Lavagnino, voted to follow staff's recommendation and deny the appeals.<br>*Evidence:*<br>Dkt. 13-21, 398-399 (Transcript of Feb. 24, 2025, Board hearing). | Undisputed. |

Respectfully submitted this 4th day of August, 2025.

*/s/ Linda Krop*

LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
TARA C. RENGIFO (Bar No. 307670)
trengifo@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Tel.: (805) 963-1622 / Fax: (805) 962-3152

*Attorneys for Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper*

INTERVENORS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT