1    LATHAM & WATKINS LLP
      Jessica Stebbins Bina (Bar No. 248485)
2     *jessica.stebbinsbina@lw.com*
      10250 Constellation Blvd. Suite 1100
3     Los Angeles, CA 90067
      Telephone: +1 424.653.5500
4     Facsimile: +1 424.653.5501

5     Attorneys for Petitioners Sable Offshore
      Corp., Pacific Pipeline Company, and Pacific
6     Offshore Pipeline Company

7     O'MELVENY & MYERS LLP
      Dawn Sestito (Bar No. 214011)
8       *dsestito@omm.com*
      Lauren Kaplan (Bar No. 294703)
9       *lkaplan@omm.com*
      400 South Hope Street, 19th Floor
10    Los Angeles, California 90071
      Telephone: +1 213.430.6000
11    Facsimile: +1 213.430.6407

12    Attorneys for Petitioners and Plaintiffs Exxon
      Mobil Corporation, Mobil Pacific Pipeline
13    Company, and ExxonMobil Pipeline
      Company

14

15                    **UNITED STATES DISTRICT COURT**

16                   **CENTRAL DISTRICT OF CALIFORNIA**

17    SABLE OFFSHORE CORP. et al.,          CASE NO. 2:25-cv-04165-DMG-AGR

18                                          **PETITIONERS' OPPOSITION TO
             Petitioners/Plaintiffs,        INTERVENORS' CROSS-MOTION
19                                          FOR SUMMARY JUDGMENT AND
             v.                             REPLY IN SUPPORT OF
20                                          PETITIONERS' MOTION FOR
      COUNTY OF SANTA BARBARA et            SUMMARY JUDGMENT**
21    al.,

22           Respondents/Defendants.        Complaint Filed: May 8, 2025

23                                          Date:    September 12, 2025
                                            Time:    2:00 p.m.
24                                          Ctrm.:   8C
                                            Judge:   Dolly M. Gee
25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:25-cv-04165-DMG-AGR
OPP. TO CROSS-MSJ AND REPLY ISO
PETITIONERS' MSJ

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................ 1

II. ARGUMENT ............................................................................ 1

   A.   The Tie Vote Affirmed The Planning Commission ........................... 1

   B.   The County Had a Mandatory Duty to Act ................................... 4

   C.   The Board Had No Discretion To Reverse The Commission's Decision. ....................................................... 5

      1.   Standard of Review ................................................... 5

      2.   Preemption, Constitutionality, and Plain Language Mandate a Narrow Construction of Chapter 25B ................... 7

         a.   Preemption of County Authority ............................... 8

         b.   A Broader Interpretation of Chapter 25B Would Be Unconstitutional ..................................... 11

         c.   The Language of Chapter 25B Mandates Narrow Construction ............................................. 13

      3.   Financial Guarantees Findings ...................................... 15

         a.   The Findings Are Ministerial ................................. 15

         b.   Sable Met The Requirements ................................. 16

      4.   Operator Capability Finding ........................................ 18

         a.   The Finding is Ministerial .................................... 18

         b.   Any Discretion Is Limited and Narrow ....................... 20

         c.   Sable Met The Requirements. ................................. 21

      5.   Non-Findings are Irrelevant ......................................... 22

III. CONCLUSION ....................................................................... 23

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

i

CASE NO. 2:25-cv-04165-DMG-AGR
OPP. TO CROSS-MSJ AND REPLY ISO
PETITIONERS' MSJ

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AIDS Healthcare Found. v. Los Angeles Dep't of Public Health*,
  197 Cal.App.4th 693 (2011) ................................................................... 5

*Am. Fin. Servs. Assn. v. City of Oakland*,
  34 Cal.4th 1239 (2005) .......................................................................... 8

*Anderson v. County of Santa Barbara*,
  94 Cal.App.5th 554 (2023) ............................................................... 6, 21

*Anderson v. Pittenger*,
  197 Cal.App.2d 188 (1961) ................................................................ 2, 3

*BedRoc Ltd., LLC v. United States*,
  541 U.S. 176 (2004) ............................................................................... 6

*Bell v. City of Mountain View*,
  66 Cal.App.3d 332 (1977) ..................................................................... 12

*Buchwald v. Katz*,
  8 Cal.3d 493 (1972) ............................................................................... 3

*Chevron U.S.A. Inc. v. County of Monterey*,
  15 Cal.5th 135 (2023) .................................................................. 5, 8, 10

*Clark v. City of Hermosa Beach*,
  48 Cal.App.4th 1152 (1996) ............................................................. 2, 3, 5

*Collier & Wallis v. Astor*,
  9 Cal.2d 202 (1937) ............................................................................... 3

*CV Amalgamated LLC v. City of Chula Vista*,
  82 Cal.App.5th 265 (2022) ..................................................................... 5

*Fang Lin Ai v. United States*,
  809 F.3d 503 (9th Cir. 2015) ................................................................. 12

*Gregory v. City of San Juan Capistrano*,
  142 Cal.App.3d 72 (1983) ...................................................................... 13

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
CENTURY CITY

ii

CASE NO. 2:25-cv-04165-DMG-AGR
OPP. TO CROSS-MSJ AND REPLY ISO
PETITIONERS' MSJ

*Grist Creek Aggregates, LLC v. Super. Ct.*,
   12 Cal.App.5th 979 (2017) ............................................................ 2, 5

*Hamdan v. Rumsfeld*,
   548 U.S. 557 (2006) ........................................................... 4, 18, 19

*Harrison v. PPG Industries, Inc.*,
   446 U.S. 578 (1980) ..................................................................... 20

*Health First v. March Joint Powers Auth.*,
   174 Cal.App.4th 1135 (2009) ........................................................... 7

*Herrera v. Zumiez, Inc.*,
   953 F.3d 1063 (9th Cir. 2020) ......................................................... 13

*Jennings v. Rodriguez*,
   583 U.S. 281 (2018) ..................................................................... 11

*Kerman Tel. Co. v. Pub. Utils. Comm'n*,
   94 Cal.App.5th 920 (2023) ......................................................... 12, 20

*Khademi v. S. Orange Cnty. Cmty. College Dist.*,
   194 F.Supp.2d 1011 (2022) ......................................................... 6, 11

*Lopez v. Imperial Cnty. Sheriff's Off.*,
   165 Cal.App.4th 1 (2008) ............................................................ 2, 3

*McMillan v. City of Palm Springs*,
   2003 WL 1521908 (Cal. Ct. App. Mar. 25, 2003) ........................................ 2

*Nollan v. California Coastal Comm'n*,
   483 U.S. 825 (1987) ..................................................................... 13

*Olympic Pipe Line Co. v. City of Seattle*,
   437 F.3d 872 (9th Cir. 2006) ............................................................ 9

*REA Enters. v. Cal. Coastal Zone Conservation Comm'n*,
   52 Cal.App.3d 596 (1975) ............................................................ 2, 4

*San Diego Gas & Elec. Co. v. City of Carlsbad*,
   64 Cal.App.4th 785 (1998) .............................................................. 10

*Serv. Emps. Int'l Union Local v. County of Mendocino*,
   2021 WL 3471176 (N.D. Cal. Aug. 6, 2021) ............................................. 2

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
CENTURY CITY

iii

CASE NO. 2:25-cv-04165-DMG-AGR
OPP. TO CROSS-MSJ AND REPLY ISO
PETITIONERS' MSJ

*Sheetz v. County of El Dorado*,
    601 U.S. 267 (2025) ............................................................................. 13

*Sherwin-Williams Co. v. City of Los Angeles*,
    4 Cal.4th 893 (1993) ............................................................................. 8

*Sneddon v. Torch Energy Servs.*,
    102 Cal.App.4th 181 (2002) ............................................................. 9, 10

*Subriar v. City of Bakersfield*,
    59 Cal.App.3d 175 (1976) ..................................................................... 12

*U.S. v. Gilbert*,
    813 F.2d 1523 (9th Cir. 1987) ............................................................... 12

*Vedanta Soc'y of So. Cal. v. Cal. Quartet, Ltd.*,
    84 Cal.App.4th 517 (2000) ...................................................................... 3

*Witt Home Ranch, Inc. v. County of Sonoma*,
    165 Cal.App.4th 543 (2008) ............................................................ 16, 19

**STATUTES AND ORDINANCES**

49 U.S.C. §§ 60101-60143 ........................................................................ 8

Cal. Civ. Proc. Code § 1094.5(c) .............................................................. 6

Cal. Gov't Code
    § 8670.37.51 ........................................................................................ 9
    § 8670.37.53 ........................................................................................ 9
    § 8670.37.54 ........................................................................................ 9
    § 51010 .......................................................................................... 9, 11
    §§ 51010-51019.1 ................................................................................ 9
    § 51013.1(c) ....................................................................................... 11

Santa Barbara County Code
    Chapter 25B .................................................................................. *passim*
    § 35-57B ............................................................................................ 4

**REGULATIONS**

49 C.F.R. § 195 Appendix A (2024) .......................................................... 9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

iv

CASE NO. 2:25-cv-04165-DMG-AGR
OPP. TO CROSS-MSJ AND REPLY ISO
PETITIONERS' MSJ

## I.    INTRODUCTION

The County and Intervenors ("Defendants") devote scores of pages to arguments that either rewrite Chapter 25B or ignore it altogether, but they never overcome three dispositive facts:  (1) the Planning Commission found—based on an undisputed administrative record—that Sable satisfied every one of Chapter 25B's nine objective criteria; (2) the Board of Supervisors, sitting only as a reviewing body, failed to muster the majority vote necessary to disturb that ministerial approval; and (3) nothing in Chapter 25B authorizes the County to inject new policy preferences, impose novel financial conditions, or relitigate pipeline-safety questions that federal and state regulators exclusively control.  Under settled California law, the Board's tie vote left the Planning Commission's decision intact, and the County now has a mandatory duty to transfer the Permits.

Unable to contest the record evidence—or the plain text of Chapter 25B—Defendants ask the Court to infer boundless discretion from isolated phrases, draft ordinance language the Board never adopted, and generalized concerns about oil-and-gas development that the ordinance does not address.  Their approach violates basic principles of statutory construction, flouts federal and state preemption of pipeline safety and financial-assurance regulation, and raises grave constitutional concerns by converting a routine, ministerial paperwork change into an arbitrary and capricious review of undeterminable metrics subject to political whims.  The Court should grant summary judgment, issue a writ compelling the County to transfer the permits, and put an end to the regulatory limbo that Chapter 25B was designed to prevent.

## II.    ARGUMENT

### A.    The Tie Vote Affirmed The Planning Commission

Under California law, a tie vote by a reviewing agency affirms the lower decision unless the statute requires the reviewing board to act directly.  Chapter 25B

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

1

CASE NO. 2:25-cv-04165-DMG-AGR
OPP. TO CROSS-MSJ AND REPLY ISO
PETITIONERS' MSJ

1  has no such requirement, and thus the Board's tie vote affirmed the Planning

2  Commission's decision.

3      As the County acknowledges, there are two lines of cases:  one in which a tie

4  vote affirms and one in which a tie vote does not affirm.  The distinction between

5  those cases is not the standard of review (de novo or otherwise); but rather whether

6  the reviewing body is itself required to take direct action on the underlying issue.

7  Where the reviewing body is not required to take separate action, a tie vote affirms.

8  *Grist Creek Aggregates, LLC v. Super. Ct.*, 12 Cal.App.5th 979, 983 (2017)

9  ("*Grist*"), *Lopez v. Imperial Cnty. Sheriff's Off.*, 165 Cal.App.4th 1 (2008)

10  ("*Lopez*"), *Serv. Emps. Int'l Union Local v. County of Mendocino*, 2021 WL

11  3471176 (N.D. Cal. Aug. 6, 2021), *McMillan v. City of Palm Springs*, 2003 WL

12  1521908 (Cal. Ct. App. Mar. 25, 2003).  Where the reviewing body is required to

13  take separate action, it does not.  *Clark v. City of Hermosa Beach*, 48 Cal.App.4th

14  1152 (1996) ("*Clark*"), *Anderson v. Pittenger*, 197 Cal.App.2d 188 (1961)

15  ("*Anderson*"), *REA Enters. v. Cal. Coastal Zone Conservation Comm'n*, 52

16  Cal.App.3d 596 (1975) ("*REA*").

17      Chapter 25B is squarely in the former category.  It provides that the ***Planning***

18  ***Commission***, not the Board, makes the required findings and approve or deny

19  transfer applications.  §§ 25B-8(b)(1); 25B-9(a); 25B-10.  On appeal to the Board,

20  appellants must state "how the ***planning commission's decision*** is inconsistent with

21  the provisions or purposes of this chapter," or "how there was an error or abuse of

22  discretion ***by the planning commission***."  § 25B-12(b)(2).[1]  The Planning

23  Commission transfers the record, as well as "a statement of findings setting forth the

24  reasons for the ***planning commission's decision***."  § 25B-12(b)(3).  The Board is

25  ***not*** required to make new findings, re-do the entire approval process, or issue the

26  transfer itself.  § 25B-12(b)(3), (4).  While the Board's review is "de novo," the

27  ordinance does not require it to "make[] de novo findings," as the County claims.

28

---

[1] Emphases added throughout.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

2

CASE NO. 2:25-cv-04165-DMG-AGR
OPP. TO CROSS-MSJ AND REPLY ISO
PETITIONERS' MSJ

1   Rather, the Board's duty is to "affirm, reverse, or modify **the planning**
2   **commission's decision** at a public hearing." § 25B-12(b)(4).

3        Defendants argue the words "de novo" mean the entire permitting process is
4   done "anew" and the Planning Commission's decision is rendered permanently
5   ineffective. Dkt. 40, 16:20; Dkt. 43-1, 12:27, 13:5-8. The cases Intervenors cite for
6   this proposition—*Collier* and *Buchwald*—are wholly inapposite, addressing entirely
7   different ordinances with different language. None of them address whether an
8   appellate tie vote affirms a lower decision, nor are they contrary to the undisputed
9   notion that "[t]ie votes mean different things in different contexts." *Vedanta Soc'y*
10  *of So. Cal. v. Cal. Quartet, Ltd.*, 84 Cal.App.4th 517, 521 (2000) ("*Vedanta*"). The
11  review in *Lopez* was de novo—the board was required to independently review and
12  redetermine the facts and law—and yet the ordinary rule applied. 165 Cal.App.4th
13  at 4-5.

14       Defendants also rely on *Anderson*, *Clark*, *Vedanta*, and *REA*, but each of those
15  cases involved distinct statutory obligations on the reviewing body that are absent
16  from Chapter 25B. In *Anderson*, unlike here, "the function of the council was not
17  merely to review the proceedings before the commission and affirm, reverse, or
18  modify the order of the commission." *Id.* at 195. Rather, the council "was required
19  by the ordinance" to "order[] that *the variance* be granted or denied or modified."
20  *Id.* at 194. The same is true in *Clark*, 48 Cal.App.4th 1152, at 1775-76. There, the
21  court distinguished the effect of a tie vote on two different lower body decisions—
22  the appeal of a parcel map approval, on which a tie vote could have affirmed the
23  earlier decision, and the appeal of a conditional use permit, where the City Council
24  on appeal had to specifically "order that the conditional use permit be *granted,*
25  *denied, or modified*" and thus a tie vote could not affirm. 48 Cal.App.4th at 1775-
26  76. These inapposite cases demonstrate that the ordinary rule applies here.

27       *Vedanta* and *REA* are even further afield, as each involved separate, complex
28  bodies of law (the California Environmental Quality Act ("CEQA") and the Coastal

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

3

CASE NO. 2:25-cv-04165-DMG-AGR
OPP. TO CROSS-MSJ AND REPLY ISO
PETITIONERS' MSJ

1  Act) with affirmative statutory obligations on reviewing bodies.  In *Vedanta*, CEQA

2  required a board to issue independent findings in response to an appeal of an

3  environmental impact report.  84 Cal.App.4th at 522, 529.  And in *REA*, the court

4  construed two separate provisions of the Coastal Act, a statutory scheme governed

5  by a separate body of administrative law.  One Act provision stated that "no permit

6  shall be issued without the affirmative vote of a majority" of the Coastal

7  Commission, and a second "provide[d] that appeals 'shall …be decided *in the same*

8  *manner and by the same vote* as provided for decisions by the regional

9  commissions.'" 52 Cal.App.3d. at 606, 613.   The court explained that the

10 Commission thus did not serve as a reviewing body but instead had to directly issue

11 the permit itself by re-deciding the issue "in the same manner and by the same vote"

12 as it was done originally.  *Id.*  There is no similar language in Chapter 25B; the Board

13 has no statutory obligation to issue independent findings or grant, deny, or modify

14 the transfers.  § 25B-12(b)(4).

15      Further, Chapter 25B, unlike other sections of the County Code, lacks any

16 language suggesting that the Planning Commission's decision does not remain valid

17 in the event of a tie vote on appeal.  This contrasts with, for example, Coastal Zoning

18 Ordinance section 35-57B, which provides that if a coastal planning permit is

19 appealed, it "shall not be deemed effective *until final action by the final decision*

20 *maker on the appeal* including the California Coastal Commission." § 35-57B.2(c).

21 Courts will generally read as meaningful "the exclusion of language from one

22 statutory provision that is included in other provisions of the same statute." *Hamdan*

23 *v. Rumsfeld*, 548 U.S. 557, 578 (2006).  Chapter 25B does not include any language

24 stating that a permit transfer only becomes effective upon "final action" by the

25 Board.  § 25B-12(b)(4).  The ordinary rule applies here, and the tie vote affirms.

26     **B.     The County Had a Mandatory Duty to Act**

27      There is likewise no merit to Defendants' arguments that the County was free

28 to leave Petitioners in limbo.  Section 25B-12(b)(4) states the board "***shall*** affirm,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

4

CASE NO. 2:25-cv-04165-DMG-AGR
OPP. TO CROSS-MSJ AND REPLY ISO
PETITIONERS' MSJ

reverse, or modify the planning commission's decision" with "shall" defined as "mandatory" in the County Code. §§ 25B-12(b)(4); 1-2. The Board must act. *Clark*, 48 Cal.App.4th at 1175 (city required to act). Relying on *AIDS Healthcare Found. v. Los Angeles Dep't of Public Health*, 197 Cal.App.4th 693, 701 (2011), Defendants claim the Board can both fail to act on an appeal altogether *and* fail to honor the Planning Commission's underlying decision in the absence of a Board reversal. Dkt. 40, 18:12-17; Dkt. 43-1, 24:4-13. This is wrong; *AIDS Healthcare* did not involve similar language to Chapter 25B and instead interpreted language requiring measures only "*as may be necessary*" and "*reasonably necessary*." 197 Cal.App.4th at 702. Section 25B-12(b)(4) does not give the Board discretion to take no action.

The County's claim that the Code does not provide any "mandatory duty the County must take in the event of a tie vote" is likewise wrong. Dkt. 40, 18:24-25. As explained above, the lack of specific instruction in the Code as to the effect of a tie vote means the Planning Commission decision stands. *Grist*, 12 Cal.App.5th at 990-991. The County has a mandatory duty to transfer the permits in response to the Planning Commission's approval. *CV Amalgamated LLC v. City of Chula Vista*, 82 Cal.App.5th 265, 279-81 (2022).

## C.   The Board Had No Discretion To Reverse The Commission's Decision.

Even if the effect of the tie vote were ambiguous (it is not), mandate is appropriate here, because Chapter 25B is ministerial and the record gave the Board no basis to do anything other than affirm the Planning Commission's decision. § 25B-12(b)(4).

### 1.   Standard of Review

The parties agree that the Court's review of Chapter 25B's legal requirements is de novo. However, the Court must interpret Chapter 25B narrowly to avoid preemption by the comprehensive federal and state regulation of pipeline safety and spill-related financial responsibility (*Chevron U.S.A. Inc. v. County of Monterey*, 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

5

CASE NO. 2:25-cv-04165-DMG-AGR
OPP. TO CROSS-MSJ AND REPLY ISO
PETITIONERS' MSJ

Cal.5th 135, 143–46 (2023)) and constitutional doubts. *Khademi v. S. Orange Cnty. Cmty. College Dist.*, 194 F.Supp.2d 1011, 1021 (2022). The Court must follow rules of statutory interpretation and, because the language is clear and unambiguous, it should not broaden Chapter 25B's interpretation using legislative history or other extrinsic evidence. *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004).

Contrary to Defendants' argument, the burden is on Defendants to show the Planning Commission's decision either was inconsistent with Chapter 25B's provisions or purposes, or constituted an abuse of discretion. § 25B-12(b)(2). Intervenors attempt to turn the burden around on Petitioners, arguing the substantial evidence standard of review applies to the Board's "decision." Dkt. 43-1, 25:5-12. They claim this alleged "decision" through the tie vote was "effectively…a denial" and the burden is thus on Petitioners to show no substantial evidence supports this purported "decision." Dkt. 43-1, 22:20-24, 23:25-26, 25:5-12. This is illogical. This standard of review does not apply because the Board made no decision; even if it did, Intervenors bear the burden as they challenge the Planning Commission's findings as lacking substantial evidence. [2]

Under the substantial evidence standard, abuse of discretion is established if the court determines that a decisionmaking body's findings are not supported by substantial evidence in light of the whole record. Civ. Proc. Code § 1094.5(c). Substantial evidence includes "facts, reasonable assumptions predicated upon facts, and expert opinion supported by facts," but excludes "argument, speculation, unsubstantiated opinion or narrative, [or] evidence which is clearly inaccurate or erroneous." *Anderson v. County of Santa Barbara*, 94 Cal.App.5th 554, 576 (2023).

---

[2] Because the substantial evidence standard is stricter than the abuse of discretion in section 25B-12(b)(2), the analysis *infra* demonstrating that substantial evidence supports the Planning Commission's findings necessarily also demonstrates there was no abuse of discretion.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
CENTURY CITY

6

CASE NO. 2:25-cv-04165-DMG-AGR
OPP. TO CROSS-MSJ AND REPLY ISO
PETITIONERS' MSJ

## 2.    Preemption, Constitutionality, and Plain Language Mandate a Narrow Construction of Chapter 25B

In their opening brief, Petitioners demonstrated that Chapter 25B is ministerial and mandatory, requiring the Planning Commission to apply "fixed standards" to determine objective facts. *Health First v. March Joint Powers Auth.*, 174 Cal.App.4th 1135, 1143 (2009). Defendants concede that the majority of the Chapter 25B findings are ministerial and have been met,[3] leaving only two—the Financial Guarantees findings (§§ 25B-9(a)(2) and (e)(1), and 25B-10(a)(2)) and the Operator Capability finding (§ 25B-10(a)(9))—as disputed. Dkt. 40, 21:9-22; Dkt. 43-1, 18.

For the Financial Guarantees, the Planning Commission must find:

> For owner and operator transfers, §25B-9(a)(2) and §25B-10(a)(2): All necessary insurance, bonds or other instruments or methods of financial responsibility approved by the county and necessary to comply with the permit and any county ordinance have been updated, if necessary, to reflect the new [owner(s)/operator] and will remain in full effect following the [ownership/operator] change.

> For guarantor transfers, § 25B-9(e)(1): The proposed guarantor has provided all necessary instruments or methods of financial responsibility approved by the county and necessary to comply with the permit and any county ordinance.

For Operator Capability, the Commission must find:

> The proposed operator has the skills, training, and resources necessary to operate the permitted facility in compliance with the permit and all applicable county codes and has demonstrated the ability to comply with compliance plans listed in section 25B-10.1.f. The director shall require relevant records of compliance, and

---

[3] Defendants do not dispute that the findings in the following sections of Chapter 25B are ministerial and have been satisfied by Sable, and thus have conceded they are so: §§ 25B-9(a)(1), 10(a)(1) (fees and exactions); §§ 25B-9(a)(3), 10(a)(3) (permit obligations acceptance); §§ 25B-10(a)(4), 9(a)(4) (copy of safety audit); §§ 25B-10(a)(5), 9(a)(5) (compliance with permit requirements as of application date); § 25B-10(a)(6) (updated contact information on safety plans); § 25B-10(a)(7) (approved transitional plan); § 25B-10(a)(8) (County-approved emergency response drill). *See generally* Dkt. 40, Dkt. 43-1.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

7

CASE NO. 2:25-cv-04165-DMG-AGR
OPP. TO CROSS-MSJ AND REPLY ISO
PETITIONERS' MSJ

> corrective actions taken subsequent to any major incidents for facilities, if any, that are similar in nature to those that are the subject of the permit, as may be necessary to make findings.  These records shall be used to provide sufficient assurance that the proposed operator does not reflect a record of non-compliant or unsafe operations systemic in nature for similar facilities to those being considered for operatorship.  §25B-10(a)(9).

The Operator Capability finding does not apply to guarantor or owner transfers and is not a basis to deny such transfers.

When examined in full, giving weight to each word in each finding and applying appropriate principles of statutory construction and constitutional limits, both findings are ministerial; neither is discretionary, and neither permits the expansive construction asserted by Defendants.

### a.    Preemption of County Authority

Before delving into the specifics of how Defendants' construction of these findings is insupportable under the statutory language, it is worth reiterating *why* Chapter 25B cannot be the broad mechanism Defendants propose to second-guess the safety and financial qualifications of Sable to operate the Facilities.  Under well-established preemption principles, a local enactment is void if it duplicates, contradicts, or invades a field fully occupied by general law.  *Chevron*, 15 Cal.5th at 143–46.  That is precisely the case here:  exclusive federal and state jurisdiction over pipeline safety and spill-related financial assurances preempt the County's authority to evaluate whether Sable can safely operate the Facilities and whether Sable is financially qualified.  *See* Dkt. 40, 11; Dkt. 43-1, 8, 20.

Preemption is a question of law for the Court and is appropriately resolved on summary judgment.  *Am. Fin. Servs. Assn. v. City of Oakland*, 34 Cal.4th 1239, 1251–52 (2005); *Sherwin-Williams Co. v. City of Los Angeles*, 4 Cal.4th 893, 897 (1993).  Federal law, through the Hazardous Liquid Pipeline Safety Act ("HLPSA"), 49 U.S.C. §§ 60101–60143, vests exclusive authority over pipeline safety in the Pipeline and Hazardous Materials Safety Administration ("PHMSA").  The HLPSA

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

8

CASE NO. 2:25-cv-04165-DMG-AGR
OPP. TO CROSS-MSJ AND REPLY ISO
PETITIONERS' MSJ

expressly preempts any state or local attempt to impose additional or different safety standards on interstate pipelines, and permits regulation of intrastate pipelines only by a single state agency certified by PHMSA. 49 C.F.R. § 195 app. A (2024). Courts have consistently rejected local efforts to impose their own safety requirements in this area. *See Sneddon v. Torch Energy Servs.*, 102 Cal.App.4th 181, 187 (2002) (HLPSA preempts local regulation of pipeline safety); *Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d 872, 880 (9th Cir. 2006) (invalidating local safety conditions as preempted).

California has accepted PHMSA's delegation of authority for intrastate pipelines through the Elder California Pipeline Safety Act. Gov't Code §§ 51010-51019.1. The Office of the State Fire Marshal ("OSFM") "shall exercise exclusive safety regulatory and enforcement authority over intrastate hazardous liquid pipelines." Gov. Code § 51010. The Act further directs OSFM to adopt procedures for maintaining, testing, and inspecting pipelines and mainline valves. *Id.* § 51015.4(c). Because OSFM's jurisdiction is exclusive, counties are precluded from imposing their own safety or design requirements. *Sneddon*, 102 Cal.App.4th at 187.

With respect to financial responsibility for spill response, the California Department of Fish and Wildlife's Office of Spill Prevention and Response ("OSPR") is vested with exclusive authority to set and enforce evidence-of-financial-responsibility requirements for operators of oil pipelines. *See* Gov't Code §§ 8670.37.51, 8670.37.53, 8670.37.54. These statutes establish a comprehensive regime for Certificates of Financial Responsibility ("COFRs"), leaving no room for local governments to impose additional or different requirements. While there is no published case law expressly holding that OSPR's jurisdiction over financial responsibility for oil pipelines is exclusive, the statutory scheme is comprehensive and mandatory. Government Code sections 8670.37.51, 8670.37.53, and 8670.37.54 provide that OSPR "shall" set and enforce evidence-of-financial-responsibility requirements and prescribe the amount, form, and oversight of

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

9

CASE NO. 2:25-cv-04165-DMG-AGR
OPP. TO CROSS-MSJ AND REPLY ISO
PETITIONERS' MSJ

COFRs.  The Legislature's mandatory language and the statute's detailed scheme confirm that the field is fully occupied, leaving no room for local regulation. *Chevron*, at 143–46 (2023) (preemption found where state law created a comprehensive, mandatory scheme); *San Diego Gas & Elec. Co. v. City of Carlsbad*, 64 Cal.App.4th 785, 804 (1998) (preemption where local regulation would add another layer to a comprehensive state scheme).

Intervenors urge the Court to adopt an interpretation of sections 25B-9(a)(2), 25B-9(e)(1), and 25B-10(a)(2) of Chapter 25B to require new bonding and insurance instruments to protect against spills beyond those required by OSPR or the existing permits. Dkt. 43-1, 22–23. Such a construction would be preempted, as it is directly at odds with the exclusive authority of OSPR to set and enforce financial responsibility requirements for oil pipelines.  *San Diego Gas*, 64 Cal.App.4th at 804.

Defendants also argue that Section 25B-10(a)(9) should be construed to authorize the County to independently assess Sable's skills, training, and resources to operate the Pipeline safely.  *See* Dkt. 40 at 19–23; Dkt. 43-1, 20-22.  However, the text of the provision and the County's prior decisions make clear that the County's review is limited to confirming there is no record of systemic non-compliance or unsafe operations for similar facilities.  Any broader reading would improperly turn Chapter 25B into a local safety regulation preempted by the HLPSA and the Elder Act.  Even absent direct conflict, the Elder Act expressly occupies the field of intrastate pipeline safety by granting OSFM exclusive authority.  Any argument that Chapter 25B operates within the County's residual police power fails where the Legislature has spoken in exclusive terms.  *Sneddon*, 102 Cal.App.4th at 187.

Similarly, Defendants' assertion that the County may deny permit transfers based on concerns about Pipeline restart timing or conditions also runs afoul of preemption.  The Elder Act assigns to OSFM exclusive authority to approve restart

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
CENTURY CITY

10

CASE NO. 2:25-cv-04165-DMG-AGR
OPP. TO CROSS-MSJ AND REPLY ISO
PETITIONERS' MSJ

1  after reviewing a Risk-Based Inspection Plan.  Gov't Code §§ 51010, 51013.1(c).

2  Local officials may not condition permit transfers on their own restart criteria.

3      The narrow construction of Chapter 25B affirmed by County staff and the

4  Planning Commission (acknowledged by the Board in 2023) acknowledges these

5  preemption principles.  Dkt. 13-1, 73-85; Dkt. 13-11, 813-826; see Dkt. 13-14, 515.

6  Indeed, in the 1988 Celeron settlement, the County expressly acknowledged that it

7  lacks jurisdiction over matters of pipeline design, construction, or operation

8  governed by PHMSA.  *See* Dkt. 13-11, 231, 250.  The Court should construe Chapter

9  25B narrowly to avoid preemption and reject Defendants' expansive interpretation.

10  Alternatively, if the Court adopts a broad reading, it should find Chapter 25B

11  preempted, as it would intrude on matters reserved to PHMSA, OSFM, and OSPR.

12  This Court need not reach preemption, however, if it follows the plain narrow

13  language of Chapter 25B itself.

### b.    A Broader Interpretation of Chapter 25B Would Be Unconstitutional

16      Not only must the Court construe Chapter 25B narrowly to avoid preemption,

17  the Court must construe Chapter 25B narrowly to avoid serious constitutional issues.

18  If a law is capable of multiple interpretations where one is constitutional and the

19  other is not, a court must adhere to the interpretation that is constitutional.  *Khademi*,

20  194 F.Supp.2d at 1021.  While a court may not "rewrite" a statute, it may adopt a

21  plausible interpretation that avoids "serious constitutional doubts."  *Jennings v.*

22  *Rodriguez*, 583 U.S. 281, 286 (2018).

23      As discussed in Section II.C.2.c, Chapter 25B requires an applicant to meet

24  unambiguous criteria expressly set forth in the ordinance.  Defendants' proposed

25  broad construction, on the other hand, would grant the County unbridled discretion

26  to reject permit transfers based on arbitrary and random criteria.  Intervenors argue,

27  for example, that the County must conduct "a searching inquiry into a proposed

28  owner/operators' finances and capacity to ensure that the entity can safely operate

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

11

CASE NO. 2:25-cv-04165-DMG-AGR
OPP. TO CROSS-MSJ AND REPLY ISO
PETITIONERS' MSJ

1   major oil and gas facilities, remediate a spill (or any other type of accident), and

2   abandon the facilities at issue." Dkt. 43-1, 18:19-26. Intervenors further argue that

3   Chapter 25B's purpose is to prevent large oil companies from selling to smaller, less

4   experienced ones, and thus the Board is permitted to do essentially anything to

5   prevent this from happening, regardless of the ordinance's text or whether it impairs

6   a company's ability to sell its assets. Dkt. 40, 11:5-9; Dkt. 43-1, 5: 2-6.[4]

7       Nothing in the text of Chapter 25B requires this broad interpretation, which

8   would violate procedural due process because an applicant would have no way to

9   understand the true requirements it must satisfy to secure a permit transfer. *U.S. v.*

10  *Gilbert*, 813 F.2d 1523, 1530 (9th Cir. 1987). A statute is void for vagueness when

11  it is "'so vague and indefinite as really to be no rule or standard at all,' or whether a

12  person of ordinary intelligence could [not] understand" what the law requires. *Fang*

13  *Lin Ai v. United States*, 809 F.3d 503, 514 (9th Cir. 2015). Accepting Defendants'

14  broad interpretation would render the Chapter 25B findings impermissibly vague,

15  making compliance unclear and inviting arbitrary or discriminatory enforcement.

16  *Kerman Tel. Co. v. Pub. Utils. Comm'n*, 94 Cal.App.5th 920, 925, 932-33 (2023).

17      There is no need for the Court to so construe Chapter 25B. Petitioners' narrow

18  interpretation—as well as the narrow interpretation urged by County staff and

19  adopted by the Planning Commission, and followed by the Board in the past

20  (SUF ¶ 31)—avoids a construction that is void for vagueness, ensuring the County

21  cannot shift the goalposts after an application is submitted. *Subriar v. City of*

22  *Bakersfield*, 59 Cal.App.3d 175, 205-206 (1976) (ordinance not impermissibly

23  vague when it included specific factors for consideration, ensuring clarity, and

24  limiting discretion); *Bell v. City of Mountain View*, 66 Cal.App.3d 332, 340-41

25  (1977) (same).

26

27  _____

28  [4] Such a construction would make asset transfers by companies like ExxonMobil—
one of the world's largest oil companies—virtually impossible.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

12

CASE NO. 2:25-cv-04165-DMG-AGR
OPP. TO CROSS-MSJ AND REPLY ISO
PETITIONERS' MSJ

1      A narrow construction of Chapter 25B also avoids infringing on
2   constitutionally-protected property rights, including Sable's vested rights in the
3   FDPs and the ExxonMobil affiliates' property rights and ability to sell their property,
4   in violation of due process and raising Takings Clause concerns.[5]  *Gregory v. City*
5   *of San Juan Capistrano*, 142 Cal.App.3d 72, 88 (1983) (property rights protected by
6   due process include ability to sell and transfer property); *Nollan v. California*
7   *Coastal Comm'n*, 483 U.S. 825, 837 (1987) (permit conditions not tethered to stated
8   public purpose constitute unconstitutional taking); *Sheetz v. County of El Dorado*,
9   601 U.S. 267, 274 (2025).

10              **c.      The Language of Chapter 25B Mandates Narrow**
11                                        **Construction**

12      Not only is Defendants' broad construction barred by principles of preemption
13   and constitutionality, it is also inconsistent with the plain language of the Financial
14   Guarantees and Operator Capability findings and Chapter 25B as a whole, which are
15   unambiguous.  Defendants ask the Court to consider legislative history and apply an
16   expansive construction of these two findings.  But these findings are unambiguous
17   and not subject to construction through legislative history.  *Herrera v. Zumiez, Inc.*,
18   953 F.3d 1063, 1071 (9th Cir. 2020) (when statutory "language is clear and
19   unambiguous [the] inquiry ends").

20      Defendants' reliance on unadopted draft language and staff reports is
21   misplaced; ***only the adopted ordinance is relevant***.  This Court should disregard the
22   unadopted draft and related unverified staff statements.  The unadopted draft differed
23   significantly from the final ordinance and exceeded the County's jurisdiction,
24   risking preemption.  Dkt. 13-21, 392-93 (Supervisor Lavagnino stating "I would
25   assume then county counsel reviewed [the draft]…and realized maybe there were

26

27   _____
[5] Intervenors incorrectly claim Sable lacks a vested right to operate the Facilities;
28   the Celeron Agreement confirms that Pacific Pipeline Company (now owned by
     Sable), as Celeron's successor, holds a vested right to operate the Las Flores Pipeline
     System under the County's Development Plan. Dkt. 13-14, 649; SUF ¶ 7.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
CENTURY CITY
13
CASE NO. 2:25-cv-04165-DMG-AGR
OPP. TO CROSS-MSJ AND REPLY ISO
PETITIONERS' MSJ

1  parts of it that possibly were illegal"). Moreover, the earlier draft's legislative

2  history affirms Petitioners', not Defendants', interpretation of the as-adopted

3  ordinance. In fact, the broader requirements now urged by Intervenors were

4  *specifically removed* prior to adoption.

| DRAFT Language[6] | Adopted Chapter 25B |
|---|---|
| DRAFT Sec. 25B-9(1). c) Abandonment. The proposed owner, operator, or other guarantor has demonstrated **the financial capability through financial guarantees** to comply with all federal, state and local law and permits regarding **abandonment of the facility and remediation** of contamination. | Sec. 25B-9(a)(2). **Removed**; abandonment addressed by predecessor liability provision instead, *see* Sec. 25B-4(i). |
| DRAFT Sec. 25B-9(5). The Director may impose additional conditions on the permit, except for applications approved under Section 25B-9(4), in order to ensure that the new owner, operator, temporary operator, or other guarantor **maintains adequate financial guarantees for operations and abandonment.** | Sec. 25B-9(g). The director may impose additional conditions on the permit, except for applications approved under Sec. 25B-9.4, in order to ensure that any **insurance or other financial guarantees that were submitted to and relied on by the director as a basis to make any finding required by this chapter are maintained.** |
| Section 25B-10(2)(j) Operation Record. …. [Operation R]ecords demonstrate the proposed operator has the **skills and training necessary to operate the permitted facility in compliance with all** | Section. 25B-10(a)(9). Operator Capability. The proposed operator has the **skills, training, and resources necessary to operate the permitted facility in compliance with the permit** |

---

[6] Dkt. 28-1, 116-120.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

14

CASE NO. 2:25-cv-04165-DMG-AGR
OPP. TO CROSS-MSJ AND REPLY ISO
PETITIONERS' MSJ

| | |
|---|---|
| **applicable law**.  The accident and compliance records shall be obtained from the agencies listed in Appendix A.  If the proposed operator is a new company or lacks a seven year operational record, the operator has demonstrated to the County that key personnel have sufficient experience and expertise to operate the facility safely. | **and all applicable county codes** and has demonstrated the ability to comply with compliance plans listed in section 25B-10.1.f. … [R]ecords shall be used to provide sufficient assurance that **the proposed operator does not reflect a record of non-compliant or unsafe operations systemic in nature for similar facilities to those being considered for operatorship**. |

These changes show the County *specifically intended not* to include broad financial guarantees, bonding, abandonment assurances, or compliance with "all applicable law," but instead to require only narrow findings and to address abandonment in a different way.

Turning to the two specific provisions at issue, Defendants' contentions regarding their construction cannot stand.

### 3.    Financial Guarantees Findings

#### a.    The Findings Are Ministerial

Chapter 25B is unambiguous and requires only that the specific financial instruments "approved by the County and necessary to comply with the permit and any county ordinance" are provided (with respect to the guarantor) or updated with new contact information (with respect to owner and operator).  §§ 25B-9(a)(2), (e)(1), 25B-10(a)(2).  The "necessary insurance, bonds, or other instruments or methods of financial responsibility" are cabined to those "necessary to comply with the permit and any county ordinance."  *Id*.  This is an objective inquiry, and there is no ambiguity: if the instrument is required by the FDPs or the Code, the County must confirm that Sable has provided or updated it; if it is not, the County cannot require

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

15

CASE NO. 2:25-cv-04165-DMG-AGR
OPP. TO CROSS-MSJ AND REPLY ISO
PETITIONERS' MSJ

1   it. *Witt Home Ranch, Inc. v. County of Sonoma*, 165 Cal.App.4th 543, 565-566
2   (2008).

3          Intervenors, relying on the unadopted draft, argue these limited findings allow
4   the Board to impose new financial obligations, such as abandonment bonds or
5   additional insurance or bonds for worst-case spill scenarios.  Dkt. 43-1, 23:1-4.
6   Neither the language nor legislative history permits such a construction: to the
7   contrary, while the *draft* Chapter 25B included both provisions for abandonment
8   bonds and discretion to impose new safety-related financial burdens, ***those
9   provisions were specifically removed***.  They cannot be implicitly read into the
10  adopted ordinance that does not contain them.  Further, the ordinance itself describes
11  the ***only*** additional conditions that may be imposed after the findings are met.
12  §§ 25B-9(g), 25B-10(b).  Moreover, as discussed above, the County is preempted
13  from imposing financial requirements that exceed those required by OSPR and
14  limited to considering only the express criteria in the ordinance to avoid due process
15  concerns.   There is no lawful way to expand this provision to include the
16  requirements Intervenors argue for.

17                  **b.    Sable Met The Requirements**

18          Neither the County nor Intervenors meaningfully dispute that Sable provided
19  the financial guarantees required by Chapter 25B's express provisions.  As the staff
20  report confirms, all required County bonds and endowments were satisfied and the
21  SYU Facility abandonment obligation was met through property tax payments until
22  site restoration.  SUF ¶¶ 46-51.  This is all that is required, and there is no evidence
23  whatsoever from which the Board or Court could determine these requirements were
24  not met.

25          Intervenors argue not that Sable did not meet the express findings,[7] but that
26  the Financial Guarantee provisions can be expanded to require that Sable

27  ─────────────────────
28  [7] Intervenors argued below and mention in their response to Petitioners' separate
    statement, Dkt. 43-3, P 104, that the FDPs required bonding at the time of

1  demonstrate the financial ability to cover the cost of abandonment and remediation,

2  and ensure operator financial capacity. Dkt. 43-1, 23; *see also* Dkt. 43-3 ¶ 104. This

3  argument fails because these exact requirements—"demonstrat[ing] the financial

4  capability through financial guarantees to comply with all federal, state and local

5  law and permits regarding abandonment of the facility and remediation of

6  contamination"—were ***specifically removed*** from the draft ordinance, and

7  abandonment was addressed in an entirely different way, by providing for

8  predecessor liability. Dkt. 28-1, 115, 117-18; § 25B-4(i). The Court cannot read in

9  an implied finding that was specifically excluded.

10     Intervenors' arguments also grossly misstate Sable's financial condition.

11  Though not part of the required findings, Sable submitted evidence showing ample

12  resources to cover a worst-case spill, including its cash balance, liability insurance

13  exceeding $400 million for all Facilities (far-exceeding the state statutory

14  requirement of $101 million), an additional $35 million Oil Spill Financial

15  Responsibility policy that will significantly increase at restart, $2.5 billion in

16  property insurance covering the Facilities, and a binding commitment to post a $350

17  to $500 million bond with ExxonMobil for abandonment. Dkt. 13-1, 27-30; Dkt.

18  13-9, 523-525; Dkt. 13-20, 17-18, 68. Even if financial operational capacity were

19  required—which it is not—no reasonable factfinder could conclude that Sable's

20  extensive property insurance, liability coverage, and abandonment bonds are

21  insufficient to operate these Facilities.[8]

22

23  abandonment. That argument was rejected by staff based on the language of the
   FDPs, as well as their history, as no such bond was ever required over the past 40

24  years. Dkt. 13-21, 276. No genuine dispute of fact is raised. Similarly, Intervenors
   argued that Sable was required to obtain "final" COFRs for all Facilities. Dkt. 43-

25  3, ¶ 104. This does not raise a genuine dispute of fact, as staff properly concluded
   that Sable obtained all necessary COFRs, including final COFRs for the SYU and

26  Pipeline (which does not require COFRs under the FDP) (Dkt. 13-20, 15).

27  [8] Intervenors cite a Q3 2024 SEC Form 10-Q (Dkt. 43-1, 21:21-24, citing Dkt. 13-
   11, 1074) out of context as evidence Sable doubts its "ability to continue," but the

28  filing merely notes regulatory approvals needed for restart and a "going concern"
   risk only if the Pipeline remains inactive; this concern is solely due to halted
   operations, which pose no spill risk.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

17

CASE NO. 2:25-cv-04165-DMG-AGR
OPP. TO CROSS-MSJ AND REPLY ISO
PETITIONERS' MSJ

#### 4.  Operator Capability Finding

Defendants wrongly argue that the phrase "skills, training, and resources" grants the County broad discretion to conduct a "searching inquiry" into the applicant's "finances and capacity;" demand information not required by Chapter 25B's express conditions, the County Code, or the FDPs; and deny a transfer based on those unstated and unlimited criteria.  Dkt. 43-1, 18; *id.*, 20-22; Dkt. 40, 19:18-22.  Properly construed, the Operator Capability finding is ministerial and does not permit such expansive review.

#### a.  The Finding is Ministerial

First, and contrary to Defendants' primary argument, the term "resources" cannot reasonably be read to refer to "financial resources" or "insurance" sufficient to remediate a spill, *see* Dkt. 43-1, 21:14-20, because a different section of the same "operator" section, "Financial Guarantees," already states exactly what "insurance, bonds, or other instruments or methods of financial responsibility" are required to become an operator.  §25B-10(b)(2); *see supra*, Section II.D.1; *see also* Dkt. 13-11, 820 (staff confirming same).  There is similarly a separate section, "Fees and Exactions" denoting exactly what the County can require be charged.  §25B-10(b)(1).  There would be no rational basis for these specific findings if the County were simply permitted to demand any financial resources whatsoever. *Hamdan*, 548 U.S. at 578.  Such a construction would also be void for vagueness and preempted. *Supra*, Section II.C.2.b.

Similarly, the phrase "skills, training, and resources" cannot be read to require some global examination of permit compliance, because a different part of the same section, "Compliance with Existing Requirements," specifically denotes the required permit compliance record:  it is limited to confirming compliance or a plan of compliance with "a county-required safety audit, any notice of violation, and any county ordinance," and is limited to review "[a]s of the date that the application is deemed complete."  §25B-10(b)(5).  The more specific controls the general: if the

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

18

CASE NO. 2:25-cv-04165-DMG-AGR
OPP. TO CROSS-MSJ AND REPLY ISO
PETITIONERS' MSJ

1  County's goal was to provide the Planning Commission with unlimited discretion to

2  consider any and all permit compliance history, there would be no need for the

3  specific, constrained provision actually contained in the Code. *Hamdan*, 548 U.S.

4  at 578. Further, this provision was again narrowed between the unadopted draft

5  ordinance and the final: while the draft permitted the County to assess compliance

6  with "all applicable law," Chapter 25B considers only "compliance with the permit

7  and all applicable county codes." *Supra*, Section II.C.2.c.

8      What, then, does the Operator Capability finding actually address? The

9  second sentence of section 25B-10(a)(9) defines exactly what the Planning

10  Commission is to consider. It must review "relevant records of compliance and

11  documentation of corrective actions taken subsequent to any major incidents for

12  facilities, if any, that are similar in nature to those that are the subject of the permit."

13  The Commission is thus limited to assessing these capabilities based on "relevant

14  records of compliance," and any "corrective actions taken" for major incidents at

15  other, similar facilities (defined as accidents resulting in "an oil spill of fifty barrels

16  of oil or more," "fatalities or serious injuries," "evacuation of people" from the

17  facility, or a "fire offsite or that spread offsite." § 25B-3). And the Planning

18  Commission's review is further cabined by the final sentence of the section, "[t]hese

19  records shall be used to provide sufficient assurance that the proposed operator does

20  not reflect a record of non-compliant or unsafe operations systemic in nature for

21  similar facilities to those being considered for operatorship."

22      Taken together, this is a ministerial finding: the Commission takes the records,

23  looks at corrective actions for major incidents at similar facilities, and determines

24  whether or not there is a record of non-compliant or unsafe operations systemic in

25  nature. *Witt Home Ranch*, 165 Cal.App.4th at 565-566; *see also* Dkt. 13-11, 820.

26  Intervenors' attempt to expand this finding to include matters outside this limited

27  inquiry fails as a matter of law. Dkt. 43-1, 21:14-20.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

19

CASE NO. 2:25-cv-04165-DMG-AGR
OPP. TO CROSS-MSJ AND REPLY ISO
PETITIONERS' MSJ

**b.    Any Discretion Is Limited and Narrow**

Even if the Operator Capability finding permitted some discretion (and it does not), that discretion should be narrow, not the boundless discretion claimed by Defendants.  The second sentence of section 25B-10(a)(9) limits the scope of what can be considered in evaluating an operator's "skills, training, and resources" by specifically listing what the decisionmaker may consider: relevant records of compliance with respect to major incidents and systemic unsafe operations.  As explained above, other provisions of Chapter 25B's operator section specifically denote exactly what financial assurances, bonds, fees, permit compliance, safety plans, audits, response drills, transitional plans, and compliance plans are required. *See generally* § 25B-10.  Erasing those specific requirements into a broad catch-all permitting the Commission to consider factors specifically *not* included in any of the specific, required findings would be inconsistent with principles of statutory construction (*Harrison v. PPG Industries, Inc.*, 446 U.S. 578, 588 (1980)) and would render the ordinance unconstitutionally vague.  *Kerman Tel. Co.*, 94 Cal.App.5th at 925, 932-33.

Intervenors also argue the phrase "as may be necessary to make findings" renders the second sentence illustrative rather than limiting.  Dkt. 43-1, 22:1-4.  Not so.  The remainder of the sentence supports Petitioners' position that the Planning Commission is limited to considering, "relevant records of compliance, and corrective actions taken subsequent to any major incidents ... ***as may be necessary to make findings***" in determining the "skills, training, and resources" of the operator as required by the first sentence of section 25B-10(a)(9).

Finally, the County's argument about considering years of experience (Dkt. 40, 22:6-13) is irrelevant because, regardless of past practice, there is no evidence the Board could have found Sable lacked appropriate experience.  *See infra*, Section II.C.2.e.3.  Moreover, the County points to only one prior transfer, so its record of past practice is limited.  Dkt. 40, 22:6-13 (citing Dkt. 36-6, 9).

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
CENTURY CITY

20

CASE NO. 2:25-cv-04165-DMG-AGR
OPP. TO CROSS-MSJ AND REPLY ISO
PETITIONERS' MSJ

1

### c.    Sable Met The Requirements.

2      The undisputed evidence demonstrates that Sable met the Operator Capability

3  requirements, and there is no lawful basis for the Board to reverse the Planning

4  Commission's decision.  Sable's executive and management teams have decades of

5  relevant experience, nearly two-thirds of the employees transferred from

6  ExxonMobil, and there is no record of major incidents or unsafe operations.  SUF

7  ¶¶ 98-103.  That is all the finding requires, and there is no contrary evidence in the

8  record to discredit this evidence.

9      Setting aside Intervenors' arguments about Sable's finances, which fail for the

10  reasons discussed above, Intervenors' sole contrary "evidence" regarding Sable's

11  qualifications is a speculative, unsupported email from a former staffer uninvolved

12  in the application (Dkt. 43-1, 21:1-12), which does not refute the Planning

13  Commission's finding of Sable's safe operational record.  *Anderson v. County of*

14  *Santa Barbara*, 94 Cal.App.5th 554, 576 (2023) (substantial evidence excludes

15  "argument, speculation, unsubstantiated opinion or narrative, [or] evidence which is

16  clearly inaccurate or erroneous.").

17      Defendants also argue that notices of violation ("NOVs") issued by non-

18  County agencies ***after*** the application completion date for Sable's Pipeline repair

19  activities is evidence that would have served as a basis to reverse the Planning

20  Commission's Operator Capability finding.  Dkt. 43-1, 22:20-24, citing Dkt. 28-1[9]

21  161-237; *see also* Dkt. 40, 22:23-23:4.  This is wrong; the NOVs are outside Chapter

22  25B's scope, which is limited to County permit compliance "[a]s of the date that the

23  application is deemed complete" (*supra*, Section II.C.e.1), and, in any event, they

24  concern unrelated repair permitting issues, not facility safety or operations, and

25  cannot undermine the Planning Commission's finding.   §§ 25B-9(a)(5), 25B-

26  10(a)(5); Dkt. 13-14, 509-512.  The NOVs are also subject to dispute.  For instance,

27  with respect to the Coastal Commission, the County itself authorized the relevant

28

[9] Intervenors repeatedly cite Dkt. 28-12, which does not exist.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

21

CASE NO. 2:25-cv-04165-DMG-AGR
OPP. TO CROSS-MSJ AND REPLY ISO
PETITIONERS' MSJ

OSFM-required repairs, agreeing that Sable's existing Coastal Development Permit covered the work. Dkt. 13-14, 511-512; Dkt. 13-15, 409-410. The County cannot reasonably find Sable to be an improper operator for **acting in accordance with County guidance**.

### 5.    Non-Findings are Irrelevant

Finally, Intervenors incorrectly cite sections 25B-1, 25B-10(b) and 25B-6—which are not part of the findings—as grounds to deny a permit transfer.

Section 25B-1 is a general purpose statement that does not provide any guidance to decisionmakers about the scope of their decision under the chapter, and cannot contravene the express requirements of the findings themselves. Dkt. 43-1, 19:1-5.

Section 25B-10(b) allows the Planning Commission to impose additional conditions "to ensure that . . . financial guarantees that were submitted to and relied on by the planning commission as a basis to make any finding required by this chapter are maintained." This provision simply allows the Planning Commission to require operators to maintain existing compliance instruments; it does not create a new finding, justify denying a permit transfer, or reopen the FDPs as Intervenors claim. Dkt. 13-21, 276.

Intervenors also mischaracterize section 25B-6(f)(2)(f) as demonstrating that decisionmakers have "discretion" to make the Chapter 25B findings based on a wide range of criteria. Dkt. 43-1, 19:15-19. This provision merely sets forth the information that may be requested in a permit transfer application; it does not grant the decisionmakers discretion to demand documents not already included in a complete application or to determine the findings based on anything other than their express language.[10]

---

[10] Intervenors' claim that Chair Capps could use this provision to demand Sable's insurance policies during the Board hearing is thus unavailing. Dkt. 43-1, 19:17, n.4; *see also* Dkt. 43-3, ¶ 114.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

22

CASE NO. 2:25-cv-04165-DMG-AGR
OPP. TO CROSS-MSJ AND REPLY ISO
PETITIONERS' MSJ

III.    **CONCLUSION**

The Court should issue the requested writ of mandate.  The tie vote affirmed the Planning Commission's decision, and the County has a mandatory duty to transfer the permits.  § 25B-10(b).[11]  Even if that were not the case, mandate is warranted because Sable met all ministerial and mandatory requirements under Chapter 25B, so the Court should issue a writ ordering the permits transferred.

Dated:  August 25, 2025                         Respectfully submitted,

                                                LATHAM & WATKINS LLP

                                                By: /s/ *Jessica Stebbins Bina*
                                                    Jessica Stebbins Bina
                                                    *Jessica.stebbinsbina@lw.com*
                                                    10250 Constellation Blvd., Suite 1100
                                                    Los Angeles, CA 90067
                                                    Tel.:  (424) 653-5500
                                                    Fax:  (424) 653-5501

                                                    Attorneys for Plaintiffs and
                                                    Petitioners Sable Offshore Corp.,
                                                    Pacific Pipeline Company, and Pacific
                                                    Offshore Pipeline Company

                                                O'MELVENY & MYERS LLP

                                                By: /s/ *Lauren Kaplan*
                                                    Lauren Kaplan (Bar No. 294703)
                                                    *lkaplan@omm.com*
                                                    Dawn Sestito (Bar No. 214011)
                                                    *dsestito@omm.com*
                                                    400 South Hope Street, 19th Floor
                                                    Los Angeles, California 90071
                                                    Telephone:  +1 213.430.6000
                                                    Facsimile:  +1 213.430.6407

                                                    Attorneys for Petitioners and
                                                    Plaintiffs Exxon Mobil Corporation,
                                                    Mobil Pacific Pipeline Company, and
                                                    ExxonMobil Pipeline Company

---

[11] The County states remand may be appropriate given the Board's failure to act on the appeals. Dkt. 40, 25:19-26.  But remand is not necessary.  Similarly, Intervenors' speculation that the Board might reach a different outcome on remand is irrelevant, as no other lawful outcome is possible.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

23

CASE NO. 2:25-cv-04165-DMG-AGR
OPP. TO CROSS-MSJ AND REPLY ISO
PETITIONERS' MSJ

## **ATTESTATION STATEMENT**

I, Jessica Stebbins Bina, am the ECF User whose identification and password are being used to file this Opposition to Intervenors' Cross-Motion for Summary Judgment and Reply in Support of Petitioners' Motion for Summary Judgment. Pursuant to Local Rule 5-4.3.4(a)(2)(i), I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.


/s/*Jessica Stebbins Bina*
Jessica Stebbins Bina

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
CENTURY CITY

24

CASE NO. 2:25-cv-04165-DMG-AGR
OPP. TO CROSS-MSJ AND REPLY ISO
PETITIONERS' MSJ

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2      The undersigned, counsel of record for Petitioners Sable Offshore Corp,

3  Pacific Pipeline Company, and Pacific Offshore Pipeline Company, certifies that

4  this brief contains 6,992 words, which complies with the word limit of Local Rule

5  11-6.1.

6

7     Dated: August 25, 2025 /s/*Jessica Stebbins Bina*

8                                Jessica Stebbins Bina

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

25

CASE NO. 2:25-cv-04165-DMG-AGR
OPP. TO CROSS-MSJ AND REPLY ISO
PETITIONERS' MSJ