SANTA BARBARA COUNTY COUNSEL
RACHEL VAN MULLEM, County Counsel
CALLIE KIM, Deputy County Counsel (SBN 257213)
105 East Anapamu Street, Suite 201
Santa Barbara, California 93101
Telephone (805) 568-2950 / Fax (805) 568-2982
E-mail: ckim@countyofsb.org

Attorneys for Respondents and Defendants
COUNTY OF SANTA BARBARA and
SANTA BARBARA COUNTY
BOARD OF SUPERVISORS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABLE OFFSHORE CORP., *et al.*,<br><br>Plaintiffs/Plaintiffs,<br><br>v.<br><br>COUNTY OF SANTA BARBARA, *et al.*,<br><br>Respondents/Defendants,<br><br>and<br><br>ENVIRONMENTAL DEFENSE CENTER, *et al.*,<br><br>Intervenors. | Case No: 2:25-CV-4165-DMG (AGRx)<br><br>**COUNTY DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT IN PART**<br><br>Judge:        Hon. Dolly M. Gee<br>Courtroom:    8C, First St. Courthouse<br><br>Hearing:  July 10, 2026<br><br>Time: 9:30 a.m.<br><br>Complaint Filed:  May 8, 2025 |

- 1 -

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................2

TABLE OF AUTHORITIES ..........................................................................4

I.      INTRODUCTION ................................................................................7

II.     STATEMENT OF FACTS....................................................................9

III.    LEGAL STANDARDS .......................................................................11

IV.     ARGUMENT.......................................................................................12

        A.    PLAINTIFFS FAIL TO STATE A TAKINGS CLAIM ..............12

              1.    Plaintiffs Do Not Have Vested Property Interests in the
                    Transfers Because Chapter 25B is Discretionary................12

              2.    Plaintiffs Do Not Plausibly Allege a Compensable
                    Taking .................................................................................14

                    a.    Denial of the Transfers Did Not Deny Plaintiffs of
                          All Economic Use of the Facilities or Diminish the
                          Value of the Facilities ..............................................15

                    b.    The Denial of the Transfers Did Not Interfere with
                          Reasonable Investment-Backed Expectations ..........17

                    c.    The Character of the Government Action Weighs
                          Against Finding a Takings ........................................18

        B.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE
              SUPREMACY CLAUSES OF THE STATE AND FEDERAL
              CONSTITUTIONS ........................................................................19

              1.    The Pipeline Safety Act ....................................................19

              2.    The DPA Order ..................................................................20

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

- 2 -

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

        3.      The Office of Spill Prevention and Response ....................22

    C.      PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF
            CONTRACT .................................................................................23

V.      CONCLUSION..................................................................................25

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

- 3 -

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

## TABLE OF AUTHORITIES

**Federal Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................... 11, 12, 13

*Bad River Band of Lake Superior Tribe of Chippewa Indians of Bad River Rsrv. v. Enbridge Energy Co., Inc.,*
  626 F. Supp. 3d 1030 (W.D. Wis. 2022) ................................................. 20

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................... 11

*Bennett v. City of Kingman,*
  543 F. Supp. 3d 794 (D. Ariz. 2021) ....................................................... 14

*Botefur v. City of Eagle Point, Or.,*
  7 F.3d 152 (9th Cir. 1993) ........................................................................ 24

*Bowers v. Whitman,*
  671 F.3d 905 (9th Cir. 2012) .................................................................... 12

*Bridge Aina Leʻa, LLC v. Land Use Comm'n,*
  950 F.3d 610 (9th Cir. 2020) .............................................................. 15, 17

*Cedar Point Nursery v. Hassid,*
  594 U.S. 139 (2021) ................................................................................... 14

*Discovery Builders, Inc. v. City of Oakland,*
  92 Cal. App. 5th 799 (2023) ..................................................................... 24

*Engquist v. Or. Dep't of Agric.,*
  478 F.3d 985 (9th Cir. 2007) .................................................................... 13

*Esplanade Props., LLC v. City of Seattle,*
  307 F.3d 978 (9th Cir. 2002) .................................................................... 17

*Evans Creek, LLC v. City of Reno,*
  2022 WL 14955145 (9th Cir. Oct. 26, 2022) ..................................... 15, 17

*Hercules Inc. v. U.S.,*
  24 F.3d 188 (1994) ............................................................................... 21, 22

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

*Honchariw v. Cnty. of Stanislaus,*
  2023 WL 2938404 (E.D. Cal. Apr. 13, 2023)................................................16, 18

*In re Century Aluminum Co. Sec. Litig.,*
  729 F.3d 1104 (9th Cir. 2013)................................................................12

*John Ketch LLC v. San Juan Cnty.,*
  759 F. Supp. 3d 1121 (W.D. Wash. 2024)................................................15

*Lucas v. S.C. Coastal Council,*
  505 U.S. 1003 (1992) ............................................................................14

*Montana Med. Ass'n v. Knudsen,*
  119 F.4th 618 (9th Cir. 2024)................................................................21

*Murr v. Wisconsin,*
  582 U.S. 383 (2017) ............................................................................12

*Pakdel v. City & Cnty. of San Francisco,*
  636 F. Supp. 3d 1065 (N.D. Cal. 2022) ................................11, 15, 18

*Penn Central Transportation Co. v. City of New York,*
  438 U.S. 104 (1978) ........................................................................14, 18

*Portland Pipe Line Corp. v. City of S. Portland,*
  288 F. Supp. 3d 321 (D. Me. 2017)........................................................20

*S. Cal. Rental Hous. Ass'n v. Cty. of San Diego,*
  550 F. Supp. 3d 853 (S.D. Cal. 2021) ................................................16

*Sprewell v. Golden State Warriors,*
  266 F.3d 979 (9th Cir. 2001)................................................................11

*Texas Midstream Gas Services, LLC v. City of Grand Prairie,*
  608 F.3d 200 (5th Cir. 2010)................................................................20

*Washington Gas Light Co. v. Prince George's County Council,*
  711 F.3d 412 (4th Cir. 2013)................................................................20

**State Cases**

*AIDS Healthcare Found. v. Los Angeles Cnty. Dep't of Pub. Health,*
  197 Cal. App. 4th 693 (2011)................................................................13

*SANTA BARBARA*
*COUNTY COUNSEL*
*105 E. Anapamu Street, #201*
*Santa Barbara, CA 93101*
*(805) 568-2950*

- 5 -

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

*Alameda County Land Use Assn. v. City of Hayward*,
   38 Cal. App. 4th 1716 (1995)................................................................24

*Avco Community Developers, Inc. v. South Coast Regional Com.*,
   17 Cal.3d 785 (1976).........................................................................24

*Delucchi v. Cnty. of Santa Cruz*,
   179 Cal. App. 3d 814 (1986)................................................................24

**State Constitution**

Cal. Const., art. XI, § 7 ..........................................................................19

**Federal Statutes**

49 U.S.C.A. § 60102 ...............................................................................19

49 U.S.C.A. § 60104(c) ..........................................................................19

50 U.S.C. § 4511 ....................................................................................21

50 U.S.C. § 4511(a) ...............................................................................21

50 U.S.C. § 4557 ....................................................................................21

50 U.S.C. § 4558(j) ................................................................................21

**State Statutes**

Cal. Civ. Code, § 1643 ..........................................................................24

**Federal Rules**

F.R.C.P. 8 .........................................................................................11, 15

F.R.C.P. 8(a)(2).....................................................................................12

F.R.C.P. 12(b)(6) ...............................................................................6, 11

**State Regulations**

14 Cal. Code Regs. tit. 14 § 791.6(b) ....................................................23

**Other Authorities**

SB 237...................................................................................................16

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

- 6 -

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

## I.    INTRODUCTION

This lawsuit challenges an administrative decision by the County of Santa Barbara under Chapter 25B of the County Code.  Chapter 25B requires the County to make discretionary findings to approve requests to transfer local permits for oil and gas facilities from one owner, operator, and guarantor to another.  In December 2025, the County Board of Supervisors lawfully denied a request to transfer local permits from Exxon to Sable after determining that Sable's extensive history of noncompliance with various regulatory requirements precluded a finding that it is capable of operating the facilities in compliance with County permits and the County Code.

In their Complaint, Plaintiffs challenge this denial directly via four administrative writ causes of action and allege four additional causes of action related to the denial. The writ causes of action will be addressed through briefing based on the administrative record. The instant motion seeks dismissal of the four other causes of action because Plaintiffs fail to allege sufficient facts to support the claims, regardless of the Court's determination on the lawfulness of the denial itself. The causes of action that are inadequately pled include: (1) violation of the Takings Clause of the United States and California constitutions (Fifth and Sixth Causes of Action); (2) violation of the Supremacy Clause of the United States and California constitutions (Seventh Cause of Action); and (3) breach of a settlement agreement with a predecessor owner of the facilities (Eighth Cause of Action).

Plaintiffs claim the denial of the transfers resulted in a takings of vested property rights without just compensation.  Yet, an owner does not vest to an interest that is contingent upon a future discretionary decision and this Court has previously determined the County's transfer process pursuant to Chapter 25B of the County Code is discretionary.  Moreover, even if Plaintiffs had vested property interests that include approval of the transfers, they fail to allege sufficient facts supporting a compensable taking.  Plaintiffs have not alleged facts to show they

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

have been deprived of all economic use of the property, which is necessary for a *per se* takings claim. And the three factors a court considers when evaluating general takings claims all weigh against finding a takings under the facts alleged by Plaintiffs.

Plaintiffs also claim the County's denial of the transfers is preempted by the federal Pipeline Safety Act, a recent order issued by the Secretary of Energy under the Defense Production Act, and by regulations or authority of the California Department of Fish and Wildlife's Office of Spill Prevention and Response. None of these authorities, however, conflict with Chapter 25B or preclude the County from exercising its traditional police powers to make and enforce local ordinances. Plaintiffs allege isolated statements made by individual supervisors about pipeline safety and Sable's finances mean the denial of the transfers violates the Supremacy Clause of the state or federal constitutions. But the statements on which Plaintiffs rely were not incorporated into the written findings adopted by the majority of the Board and these allegations alone are insufficient to show any conflict exists between Chapter 25B and state or federal law.

Finally, Plaintiffs claim the County breached a settlement agreement between the County and a predecessor owner of the facilities. Yet, the Complaint lacks any allegations that the County took action in violation of any of the provisions of the agreement. The agreement does not preclude the County from exercising discretion in making the findings necessary to approve a transfer of local permits, nor could it as the County cannot contract away its police powers. Plaintiffs' interpretation to the contrary would render any such provisions of the Agreement invalid and unenforceable as contrary to law. Accordingly, the County respectfully requests that the Court grant its motion to dismiss the Sixth through Eighth Causes of Action in Plaintiffs' Complaint.

///

///

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

- 8 -

## II.   STATEMENT OF FACTS

This case concerns three oil and gas facilities in the County of Santa Barbara—the Santa Ynez Unit ("SYU"), POPCO Gas Plant ("POPCO Facilities"), and Las Flores Pipeline System ("Pipeline") (together the "Facilities"). (Dkt. 64,) ¶ 1.) In the 1980s and 90s, the County issued Final Development Permits ("Permits") for the Facilities, which authorized the construction and ongoing operation and maintenance of the Facilities. (Dkt. 64, ¶¶ 1, 47.) The Permits include conditions regulating the construction, operation, and eventual abandonment of the Facilities and include compliance obligations, penalties for non-compliance, and review procedures for requested changes to the authorized uses. (Dkt. 64, ¶ 47.)

In 2001, the County adopted Chapter 25B of the County Code, which created a process for transferring permits for existing oil and gas facilities to new owners, operators, and guarantors. (Dkt. 64, ¶ 50.) Chapter 25B includes findings that must be made to approve permit transfers. (Dkt. 64, ¶ 52.) It also includes an appeals process, which requires the County Board of Supervisors to hold a *de novo* hearing and to "affirm, reverse, or modify the planning commission's decision at a public hearing." County Code § 25B-12(b)(2).

On June 14, 2023, the Planning Commission approved transfers of the permits at issue in this litigation from then-owner, guarantor, and operator Plains Pipeline L.P. to Exxon. (Dkt. 64, ¶ 59.) In February 2024, Sable acquired the Facilities from Exxon. (Dkt. 64, ¶ 66.) Sable applied for transfers of the permits from Exxon to Sable ("Transfers"), and the County Planning Commission approved the Transfers 3-to-1. (Dkt. 64, ¶¶ 67, 70.)

After two groups appealed the Planning Commission's decision, the Board of Supervisors held a hearing and voted 2-to-2 on a motion to deny the appeals, which resulted in no action. (Dkt. 64, ¶¶ 81, 73-74.) The fifth Supervisor, Joan Hartmann, recused herself from the proceedings. (Dkt. 64, ¶ 81.)

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

Following the tie vote, Petitioners filed this case alleging, among other claims, that the County failed to comply with Chapter 25B by failing to act on the appeals and abused its discretion by considering information outside the scope of Chapter 25B.  (Dkt. 64, ¶ 87.)  On September 12, 2025, the Court issued a peremptory writ of mandate ordering the Board to hold a new hearing to affirm, reverse, or modify the Planning Commission's decision in compliance with Chapter 25B, and noting the Board's decision must be "tethered to the factual findings under Chapter 25B-8, 9, and 10." (Dkt. 64, ¶ 88.)

The Board held another hearing on the Appeals on December 16, 2025. (Dkt. 64, ¶ 96.)  The Board voted 3-to-1 to deny the Transfers and adopted written findings for denial.  (Dkt. 64, ¶ 98.)  The denial was based on the operator capability finding and information that Sable engaged in activities without required prior clearance from the County, failed to notify the County prior to moving oil, failed to submit Zoning Clearance applications prior to initiating anomaly repair work on the Pipeline, and events that transpired after the County deemed the Transfer applications complete.  (Dkt. 64, ¶¶ 107-08.)

Thereafter, on March 13, 2026, at the request of Sable's counsel, the Secretary of Energy issued an order directed to Sable under the Defense Production Act (DPA Order).  (Dkt. 64, ¶ 115.)  Sable's counsel requested the order because various state agencies had "deployed an array of state measures . . . to block pipeline operations."  (Dkt. 64-11, p. 358.)  The DPA Order directs Sable to prioritize and allocate pipeline transportation services and contracts.  (Dkt. 64-11, p. 359.)  Sable has announced it resumed transporting oil through the Pipeline the following day, on March 14, 2026. (County's Request for Judicial Notice (RJN), Exh. 1.)

On March 16, 2026, Plaintiffs filed the amended Complaint challenging the Board's decision to deny the Transfers by alleging writ causes of action for abuse of discretion, failure to provide a fair hearing, and failure to comply with Chapter

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

25B. These claims will be addressed through briefing based on the administrative record. The instant motion seeks dismissal of the other claims alleged in the Complaint.

### III. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) allows litigants to seek the dismissal of an action when the allegations in the complaint fail to state a claim upon which relief may be granted. Federal Rule of Civil Procedure 8's pleading standard requires a plaintiff to provide more than labels and conclusions; neither a formulaic recitation of the elements of a cause of action, nor "naked assertion[s]" unsupported by facts, will suffice. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557 (2007)). The "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp.,* 550 U.S. at 555. A pleading must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

The plausibility analysis requires a two-pronged approach. *Iqbal*, 556 U.S. at 678-79. First, the court must recognize the elements a plaintiff must plead to state a claim. *Id.* at 675. Then the court identifies which statements in the complaint are factual allegations and which are legal conclusions. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678. The court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001).

Finally, drawing "on its judicial experience and common sense," the court must decide in the context of the specific case, whether the factual allegations, assuming they are true, allege a plausible claim. *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

alleged." *Id.* at 678; *see also In re Century Aluminum Co. Sec. Litig.,* 729 F.3d 1104, 1107 (9th Cir. 2013).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting Federal Rule of Civil Procedure 8(a)(2)).

**IV.   ARGUMENT**

**A.  PLAINTIFFS FAIL TO STATE A TAKINGS CLAIM.**

The Takings Clause of the Fifth Amendment of the United States Constitution, prohibits the taking of private property "for public use, without just compensation." *Murr v. Wisconsin*, 582 U.S. 383, 392 (2017).  Courts in the Ninth Circuit use a two-part test to determine whether a constitutional takings has occurred. *Bowers v. Whitman*, 671 F.3d 905, 912 (9th Cir. 2012).  First, plaintiff must show "the subject matter is 'property' within the meaning of the Fifth Amendment[.]" *Id.*  Second, plaintiff must show "there has been a taking of that property, for which compensation is due." *Id.*  Although these determinations are fact-specific, "federal courts often examine these factors at the motion to dismiss stage to assure plaintiffs have satisfied their burden to establish the plausibility of their claims." *Pakdel v. City & Cnty. of San Francisco*, 636 F. Supp. 3d 1065, 1074–75 (N.D. Cal. 2022).  As discussed below, Plaintiffs have not satisfied their burden to establish the plausibility of their takings claims under either part of the test.

**1.   Plaintiffs Do Not Have Vested Property Interests in the Transfers Because Chapter 25B is Discretionary.**

"To be cognizable under the Takings Clause, a constitutionally protected property right must be vested." *Bowers v. Whitman*, 671 F.3d 905, 912 (9th Cir. 2012).  "If the property interest is 'contingent and uncertain' or the receipt of the interest is 'speculative' or 'discretionary,' then the government's modification or removal of the interest will not constitute a constitutional taking." *Id.* at 913

SANTA BARBARA COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

(quoting *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 1002 (9th Cir. 2007), *aff'd*, 553 U.S. 591 (2008)).

Plaintiffs allege they have vested property interests in the Transfers. (Dkt. 64, ¶¶ 162, 171.) But Sable acquired the Facilities in 2024, twenty-three years after the County adopted Chapter 25B, which created a discretionary process for the approval of permit transfers. (Dkt. 64, ¶¶ 2, 50.) Thus, any property interests Plaintiffs have in the Transfers did not vest because the Transfers were contingent upon the Board of Supervisors making a discretionary decision.

Plaintiffs assert Chapter 25B "creates a ministerial review process." (Dkt. 64, ¶ 52.) This a legal conclusion, which the Court is not required to accept as true. *See Iqbal,* 556 U.S. at 678. A ministerial duty is one "that a public officer is required to perform in a prescribed manner . . . without regard to his [or her] own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists." *AIDS Healthcare Found. v. Los Angeles Cnty. Dep't of Pub. Health*, 197 Cal. App. 4th 693, 700 (2011) (citations omitted). Discretion "is the power conferred on public functionaries to act officially according to the dictates of their own judgment." *Id.*

This Court has already concluded that "the Board's *de novo* review of the Planning Commission's decision [under Chapter 25B] is discretionary rather than purely appellate in nature[.]" (Dkt. 52, p. 23.) For that reason, when ruling on the cross-motions for summary judgment, this Court did not direct the Board to exercise its discretion in a particular manner, only to exercise its discretion in some manner. (*Id.*)

This Court's conclusion that Chapter 25B is discretionary is well founded. Chapter 25B requires the decision-maker to determine whether "[t]he proposed operator has the skills, training, and resources necessary to operate the permitted facility in compliance with the permit and all applicable county codes." County Code § 25B-10(a)(9). Chapter 25B does not restrict what the decision-maker may

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

- 13 -

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

consider when evaluating a proposed operator's skills, training, and resources and does not provide objective requirements that must be met such as a minimum number of years of experience. *Id.* Instead, Chapter 25B requires the decision-maker to consider all the evidence presented and exercise judgment to determine whether the finding can be made. Chapter 25B also allows for a *de novo* appeal to determine whether the lower body's decision is "inconsistent with the provisions or *purposes*" of Chapter 25B or whether "there was an error or *abuse of discretion*[.]" County Code § 25B-12(b) (emphasis added).

Because Chapter 25B is discretionary, plaintiffs did not vest to the Transfers. "Protected property interests do not arise from mere desires or unilateral expectations: there must be a legitimate claim of entitlement." *Bennett v. City of Kingman*, 543 F. Supp. 3d 794, 807 (D. Ariz. 2021), *aff'd,* 2023 WL 118740 (9th Cir. Jan. 6, 2023). For this reason alone, the Fifth and Sixth Causes of Action should be dismissed.

### 2.    Plaintiffs Do Not Plausibly Allege a Compensable Taking.

Even if Plaintiffs could show they have vested property interests in the Transfers, they fail to show the County committed a takings for which compensation is due. There are two variations of regulatory takings that Plaintiffs invoke in this case. A regulation that "denies all economically beneficial or productive use of land" is considered a *per se* taking and will generally require compensation under the Takings Clause. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992). When a regulation impedes the use of property but does not deprive the owner of all economically beneficial use, a taking still may be found based on a three-part balancing test prescribed by *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978). The three factors courts consider are "the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 140 (2021) (citing *Penn Central*, 438 U.S. at 124). As discussed below,

SANTA BARBARA COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

Plaintiffs fail to plausibly allege a compensable taking under either theory and all three *Penn Central* factors weigh against finding a takings in this case.

> ### a. Denial of the Transfers Did Not Deny Plaintiffs of All Economic Use of the Facilities or Diminish the Value of the Facilities.

Plaintiffs have failed to allege facts to support their *Lucas per se* takings claim and fail to allege facts that would support finding a significant economic impact. Thus, the first and most important factor in the *Penn Central* balancing test weighs against finding a takings claim. Sable alleges only that the County's denial of the Transfers has deprived it "of all economically beneficial use of its property" and "seriously imperils Sable's significant investment in the Facilities[.]" (Dkt. 64, ¶¶ 163, 171.) And Exxon alleges that the denial of the Transfers subjects it to "potential legal and financial exposure" and that it has suffered "substantial damages." (Dkt. 64, ¶¶ 171, 174.) These vague and conclusory statements are not sufficient to meet Rule 8's pleading standard for a *Lucas per se* takings claim or a *Penn Central* takings. *John Ketch LLC v. San Juan Cnty.*, 759 F. Supp. 3d 1121, 1132 (W.D. Wash. 2024) (dismissing takings claim because complaint included only conclusions of law and unwarranted inferences).

The Complaint does not allege facts that would support finding the denial of the Transfers rendered the Facilities valueless. Nor does the Complaint include allegations that would allow the Court to "compare the value that has been taken from the property with the value that remains in the property." *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 630-31 (9th Cir. 2020) (internal quotation marks omitted); *see also Pakdel*, 636 F. Supp. 3d at 1076 (noting "the FAC does not include any facts to establish the basis for th[e] averred diminution in value" and to "the extent factors beyond sale value can be included in the diminution analysis, . . . Plaintiffs have not averred any exist here."); *Evans*

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

*Creek, LLC v. City of Reno*, 2022 WL 14955145, at *1 (9th Cir. Oct. 26, 2022) (noting it was not possible for the court to evaluate economic impact because the complaint lacked any information about the value of the property before and after the application was denied); *Honchariw v. Cnty. of Stanislaus*, 2023 WL 2938404, at *5–6 (E.D. Cal. Apr. 13, 2023) (holding conclusory allegations that Defendant's actions caused expenses and delay in developing property are insufficient to state a takings claim and noting the FAC lacked complete information about the value of the property before and after an application was denied); *S. Cal. Rental Hous. Ass'n v. Cty. of San Diego*, 550 F. Supp. 3d 853, 866 (S.D. Cal. 2021) ("It is difficult to calculate the impact that the Ordinance has on the value of Plaintiff's members' property interests, particularly because Plaintiff has not included any facts related to a diminution of the value of their property.").

The only information related to the value of the Facilities in the Complaint is the allegation that Sable paid $600 million to acquire the Facilities from Exxon. (Dkt. 64, ¶ 162.)  All this allegation demonstrates is that Exxon does *not* have a takings claim—Exxon received substantial compensation for the sale of the Facilities regardless of subsequent County action on the Transfers.

With respect to Sable, its own statements undermine its assertion that the denial of the Transfers has deprived it of all economic use of its property. According to a recent Securities and Exchange Commission filing, Sable announced it restarted the Pipeline on March 14, 2026. (RJN, Exh. 1.)  And prior to that, according to Sable's own statements, it was *state agencies*, not the County, that impeded Sable from restarting the Facilities. (Dkt. 64-11, p. 358 ("California agencies have deployed an array of state measures—including SB 237, the state waiver process, novel interpretations of state agency jurisdiction and authority, excessive delay in granting a long-term easement through a state park for an existing pipeline, and the Restart Plan requirements under [a] Consent Decree—to block pipeline operations.").  Thus, Sable has not and cannot allege facts to show

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

- 16 -

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

the County deprived it of all economic use of the Facilities or that the County was a proximate cause of any delay in restarting the Facilities. *See Esplanade Props., LLC v. City of Seattle*, 307 F.3d 978, 984 (9th Cir. 2002) (noting that a plaintiff must make a showing of causation between the government action and the alleged deprivation to succeed in making a takings claim).

### b.    The Denial of the Transfers Did Not Interfere with Reasonable Investment-Backed Expectations.

Plaintiffs fail to allege any reasonable investment-backed expectations. The second *Penn Central* factor therefore also weighs against finding a takings. Courts use an "objective analysis to determine the reasonable investment-backed expectations" of a property owner. *Bridge Aina Le'a, LLC*, 950 F.3d at 633. "'[U]nilateral expectation[s]' or 'abstract need[s]' cannot form the basis of a claim that the government has interfered with property rights." *Id.* at 633–34. "[W]hat is relevant and important in judging reasonable expectations is the regulatory environment at the time of the acquisition of the property." *Id.* at 634 (internal quotation marks omitted).

As discussed in Section IV.A.1, *supra*, Chapter 25B existed long before Sable purchased the Facilities and it requires the exercise of discretion. In other words, when Sable purchased the Facilities, there was no guarantee the County would grant the Transfers. *See Evans Creek, LLC*, 2022 WL 14955145, at *1-2 (holding plaintiff lacked a reasonable investment-backed expectation because the decision to annex property is subject to the City's discretion). Plaintiffs suggest that because the County granted transfers from a prior owner to Exxon in 2023, Plaintiffs reasonably expected the County would likewise grant transfers from Exxon to Sable. (Dkt. 64, ¶ 65.) But the Complaint lacks any allegations that Exxon and Sable are similarly situated in terms of operator capability or any other Chapter 25B findings. As the Complaint makes clear, the denial of the Transfers was based on Sable's alleged noncompliance with state and local requirements,

and the Complaint includes no allegations that Exxon has engaged in similar violations.  (Dkt. 64, ¶ 18.)  An objectively reasonable person would expect that a significant history of regulatory violations could make a difference when applying for a discretionary permit transfer based on operator capability.

### c.    The Character of the Government Action Weighs Against Finding a Takings.

The third *Penn Central* factor also weighs against finding a takings.  "A 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government  . . . than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good."  *Penn Cent. Transp. Co.*, 438 U.S. at 124. According to the allegations in the Complaint, Chapter 25B is the latter type of government action.  The Complaint does not allege that Chapter 25B allows for a physical invasion by the County, and it acknowledges that the stated purpose of Chapter 25B is to "ensur[e] that safe operation, adequate financial responsibility, and compliance with all applicable county laws and permits are maintained during and after all changes of owner, operator or guarantor of certain oil and gas facilities."  (Dkt. 64, ¶ 50.)  Thus, according to the allegations in the Complaint, Chapter 25B was adopted to promote the common good and is therefore not the type of government action that typically results in a takings.

Because all three *Penn Central* factors weigh against finding a regulatory takings has occurred, this Court should conclude that Plaintiffs' fail to state a cognizable claim.  *See Pakdel*, 636 F. Supp. 3d at 1076 ("[G]iven that each factor weighs against the Plaintiffs, and especially given the lack of a plausible showing of diminution in value, there is no other conclusion than that Plaintiffs have not plausibly averred a regulatory taking."); *Honchariw*, 2023 WL 2938404, at *8 (granting motion to dismiss when two of the three factors weighed against finding a taking).

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

## B.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE SUPREMACY CLAUSE OF THE STATE AND FEDERAL CONSTITUTIONS.

In their Seventh Cause of Action, Plaintiffs' allege the County's denial of the Transfers is preempted by the federal Pipeline Safety Act (PSA), the Secretary of Energy's Order under the Defense Production Act (DPA Order), and by regulations or authority of the California Department of Fish and Wildlife's Office of Spill Prevention and Response (OSPR).  (Dkt. 64, ¶¶ 175-189.)  Plaintiffs' do not facially challenge Chapter 25B, nor could they—none of these authorities preclude the County from exercising its traditional police powers to make and enforce within its limits ordinances and regulations that do not conflict with general laws.  (Cal. Const., art. XI, § 7.)  Plaintiffs allege only that some supervisors considered criteria they believe to be beyond the scope of Chapter 25B. These allegations are insufficient to show that Chapter 25B, or the County's application of Chapter 25B in this case, conflicts with the PSA, DPA Order, or OSPR regulations.

### 1.  The Pipeline Safety Act

The PSA requires the Secretary of Transportation to prescribe minimum safety standards for pipeline transportation and pipeline facilities.  49 U.S.C.A. § 60102.  The PSA preempts a state authority from adopting or enforcing safety standards for interstate pipeline facilities unless the state authority has a state pipeline safety program certification.  49 U.S.C.A. § 60104(c).

Petitioners argue the PSA preempts the County from denying the Transfers "on the basis of safety concerns."  (Dkt. 64, ¶ 180.)  Plaintiffs do not allege, however, that Chapter 25B imposes safety standards on pipeline operations or that the Board of Supervisors imposed any particular safety standards on the operation of the Pipeline in this case.  Instead, Plaintiffs' allege only that statements made by individual supervisors about generalized safety concerns transformed Chapter 25B into a preempted "safety standard."  Yet courts have rejected similar arguments by oil and gas companies in other cases.  *See Washington Gas Light Co. v. Prince*

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

- 19 -

*George's County Council*, 711 F.3d 412, 421 (4th Cir. 2013) (holding zoning scheme was primarily a local land use regulation, not a "safety regulation in disguise."); *Texas Midstream Gas Services, LLC v. City of Grand Prairie*, 608 F.3d 200, 212 (5th Cir. 2010) (holding a setback requirement was not a "safety standard" preempted by the PSA because, although it incidentally affects fire safety, it primarily ensures that compressor stations do not "mar neighborhood aesthetics."); *Portland Pipe Line Corp. v. City of S. Portland*, 288 F. Supp. 3d 321, 440 (D. Me. 2017) ("Any general overlapping concerns about 'safety' or 'the environment' that the City Council may have had when it enacted the Ordinance is not sufficient to preempt a ban on loading oil and facilities for loading oil[.]"); *cf. Bad River Band of Lake Superior Tribe of Chippewa Indians of Bad River Rsrv. v. Enbridge Energy Co., Inc.*, 626 F. Supp. 3d 1030, 1049 (W.D. Wis. 2022) (rejecting argument that trespass claim is barred by the PSA because "while the Band's refusal to consent to easements may be based in part on safety concerns (at least environmental in nature), it is not based on any imposition of safety standards."). Because the Complaint lacks any allegations that the County actually imposed safety standards on the operation of the Pipeline in this case, Plaintiffs have failed to state a claim for preemption by the PSA.

### 2.    The DPA Order

Plaintiffs allege the County's attempted use of Chapter 25B as a "tool" to frustrate Sable's compliance with the DPA Order stands as an obstacle to the accomplishment and execution of the DPA's purpose. (Dkt. 64, ¶ 183.) As an initial matter, according to the Complaint, the DPA Order was issued nearly three months *after* the Board denied the Transfers. (Dkt. 64, ¶¶ 37, 98.) Plaintiffs claim that the Board used Chapter 25B as a tool to frustrate compliance with an order that did not exist—and that the Board had no way of knowing would be issued—is baseless. Moreover, Plaintiffs fail to allege facts to support that the County's application of Chapter 25B in this case obstructs Sable's compliance with the DPA

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

or DPA Order.

Under the doctrine of obstacle preemption, a state or local law is preempted if it "undermines the intended purpose and natural effect of the federal law." *Montana Med. Ass'n v. Knudsen*, 119 F.4th 618, 623 (9th Cir. 2024) (quotation marks omitted). Courts examine the federal law as a whole in determining its purpose and intended effects. *Id.*

The DPA's purpose is to give the Executive Branch power to compel private parties to prioritize and allocate government contracts over other contracts when necessary or appropriate to promote the national defense. 50 U.S.C. § 4511; *see also Hercules Inc. v. U.S.*, 24 F.3d 188 (1994) ("The language of section 101(a) [now, 50 U.S.C. § 4511(a)] makes it clear that the purpose of the statute is to authorize the President to dictate that preference be given to government contracts which are necessary to promote the national defense."). The DPA immunizes those complying with a DPA order from claims for breach of existing contracts and violations of anti-trust laws. 50 U.S.C. §§ 4557, 4558(j).

The denial of the Transfers under Chapter 25B does not undermine the purpose or effect of the DPA. Chapter 25B regulates the transfer of local permits for certain oil and gas facilities from one owner, operator, and guarantor to another. Plaintiffs do not allege Chapter 25B dictates which contracts an operator prioritizes. And Plaintiffs do not allege Chapter 25B creates liability for breach of contract or enforce anti-trust laws.

Nor does the denial of the Transfers under Chapter 25B frustrate Sable's compliance with the DPA Order. The DPA Order directs Sable to prioritize and allocate pipeline transportation services and contracts. (Dkt. 64, ¶ 116 & Exh. 11.) The DPA Order does not, and could not, direct Sable to ignore Chapter 25B. The DPA gives the Executive Branch the power to compel private parties to prioritize government contracts, not to disregard state and local laws regulating the goods, services, materials and equipment that are the subject of such contracts. *See*

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

*Hercules Inc.*, 24 F.3d at 203 (holding the DPA does not dictate the "specific nature of performance under a DPA contract, or the subsequent use of goods produced under such a contract" and does not provide immunity for the violation of laws other than breach of contract and antitrust).

### 3.    The Office of Spill Prevention and Response

Plaintiffs allege some supervisors voted to deny the Transfers in part due to Sable's finances and that they were preempted from doing so because OSPR "has the exclusive authority to require that owners and operators have the financial wherewithal to cover costs associated with a worst-case-scenario incident, and sets specific requirements." (Dkt. 64, ¶ 186.)  Plaintiffs fail to allege, however, that financial concerns were included in the Board's final action on the Transfers.

The written findings adopted by the majority of the Board focus on operator capability, not financial guarantees or other criteria.  (Dkt. 64, ¶ 102.)  Plaintiffs rely on statements made by individual supervisors at hearings reflecting generalized concerns about Sable's finances.  (Dkt. 64, ¶ 187.)  Most of these statements should be disregarded because they were made before the December 16 hearing where the Board made its final decision based on the criteria in Chapter 25B.  (*See* Dkt. 64, ¶ 187.)  The only statement regarding finances made at the December 16 hearing was that Sable had "unresolved financial concerns."  (Dkt. 64, ¶ 187.) This single statement by one Supervisor does not conflict with OSPR regulations and is insufficient to establish a violation of the Supremacy Clause.

Furthermore, even if the County considered the finances of Sable in its final decision, Plaintiffs do not identify any preemption clauses in OSPR's regulations prohibiting cities and counties from considering finances as part of a local permitting process.  OSPR regulations provide a process for obtaining a certificate of financial responsibility, which is required for certain facilities to operate in California.  (14 Cal. Code Regs. tit. 14 § 791.6(b).)  The regulations provide that a certificate of financial responsibility serves as "conclusive evidence that the

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

- 22 -

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

person or entity holding the certificate is the party responsible for the specified vessel, facility, or oil for purposes of determining liability for an oil spill[.]" (14 Cal. Code Regs. tit. 14 § 791.6(e).)  The regulations lack any general preemption provision.

## C.  PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT.

In their Eighth Cause of Action, Plaintiffs claim the denial of the Transfers is a breach of the February 8, 1988 Celeron Agreement ("Agreement") between the County and a prior Pipeline owner.  (Dkt. 64, ¶ 191.)  Plaintiffs do not identify any provision in the Agreement that precludes the County from regulating local permit transfers or following the discretionary process set forth in Chapter 25B.

Plaintiffs allege the Agreement prohibits the County from withholding ministerial permits for the Facilities.  (Dkt. 64, ¶ 192.)  But the County did not withhold a ministerial permit.  As addressed in Section IV.A.1, *supra*, permit transfers under Chapter 25B are discretionary.

Plaintiffs also argue more generally that under the Agreement the County has no authority over the operation of the Pipeline and that the operator capability finding in Chapter 25B is an impermissible attempt to regulate the operation of the Pipeline.  (Dkt. 64, ¶¶ 192-93.)  Yet Chapter 25B was enacted over a decade after the Agreement was executed and there are no allegations that Celeron or any other successors challenged Chapter 25B as exceeding the scope of the County's authority under the Agreement.  Indeed, Exxon applied for transfers under Chapter 25B when it purchased the Facilities in 2023.  (Dkt. 64, ¶ 59.)  Exxon did not argue at that time that Chapter 25B violates the Agreement even though the Planning Commission made the same finding about operator capability Exxon now alleges improperly exceeds the County's authority.  (Dkt. 64, ¶ 193.)

Even now, Plaintiffs do not challenge the County's jurisdiction to issue local permits and regulate the transfer of permits through Chapter 25B.  Rather,

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

Plaintiffs challenge only the County's exercise of its discretion to deny the Transfers.   But Plaintiffs' interpretation of the Agreement as requiring the County to approve a discretionary permit is inconsistent with the rules of contract interpretation and would render the Agreement invalid.

"The interpretation of a settlement agreement is governed by principles of state contract law." *Botefur v. City of Eagle Point, Or.*, 7 F.3d 152, 156 (9th Cir. 1993).   Under California law, a contract must, if possible, be interpreted to make it "lawful, operative, definite, reasonable, and capable of being carried into effect." (Cal. Civ. Code, § 1643.)   Plaintiffs' interpretation of the agreement as divesting the County of its ability to exercise its police power by enacting and enforcing local ordinances would render the Agreement invalid and unenforceable.   *See Discovery Builders, Inc. v. City of Oakland*, 92 Cal. App. 5th 799, 12 (2023) (holding any provision that infringes upon the exercise of the City's police power to enact or enforce land use ordinances cannot be enforced); *see also Alameda County Land Use Assn. v. City of Hayward*, 38 Cal. App. 4th 1716, 45 (1995) (holding agreement between government entities invalid because it constituted an impermissible divestment of their power and obligation to enact legislation); *Delucchi v. Cnty. of Santa Cruz*, 179 Cal. App. 3d 814, 823 (1986) ("the police power that the sovereign always reserves to itself for the protection of peace, safety, health and morals ... cannot be nullified in advance by making contracts"); *Avco Community Developers, Inc. v. South Coast Regional Com.*, 17 Cal.3d 785 (1976) (holding the state's police power "over[rode] any obligation of the state to perform" a contract to sell property).

The Celeron Agreement does not, and could not, bar the County from exercising its police power to make discretionary findings under Chapter 25B. Accordingly, even taking the allegations in the Complaint as true, the County did not breach the Agreement when it denied Sable's requests for Transfers after finding it could not make the operator capability finding for approval.

*SANTA BARBARA*
*COUNTY COUNSEL*
*105 E. Anapamu Street, #201*
*Santa Barbara, CA 93101*
*(805) 568-2950*

- 24 -

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

## V.   CONCLUSION

For all the foregoing reasons, Defendant County of Santa Barbara respectfully requests that this Court dismiss the Fifth, Sixth, Seventh, and Eighth claims in the Complaint.

Dated: April 29, 2026                    Respectfully submitted,

RACHEL VAN MULLEM
COUNTY COUNSEL

By: /S/ - Callie Patton Kim
     Callie Patton Kim
     Senior Deputy County Counsel
     Attorneys for Defendants COUNTY OF
     SANTA BARBARA and SANTA
     BARBARA COUNTY BOARD OF
     SUPERVISORS

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

- 25 -

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

# CERTIFICATE OF COMPLIANCE

"The undersigned, counsel of record for Defendant County of Santa Barbara, certifies that this brief contains 6,019 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 29, 2026

By: /S/ - Callie Patton Kim
Callie Patton Kim
Senior Deputy County Counsel
Attorneys for Defendants COUNTY OF SANTA BARBARA and SANTA BARBARA COUNTY BOARD OF SUPERVISORS

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

- 26 -
DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS