LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
TARA C. RENGIFO (Bar No. 307670)
trengifo@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622
Fax: (805) 962-3152

*Attorneys for Environmental Defense Center,
Get Oil Out!, Santa Barbara County Action
Network, Sierra Club, and Santa Barbara
Channelkeeper*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| SABLE OFFSHORE CORP., et al.<br><br>Petitioners/Plaintiffs,<br><br>v.<br><br>COUNTY OF SANTA BARBARA, et al.<br><br>Respondents/Defendants,<br><br>and<br><br>ENVIRONMENTAL DEFENSE CENTER, et al.<br><br>Intervenors. | Case No.: 2:25-cv-04165-DMG-(AGRx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF INTERVENORS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Hon. Dolly M. Gee<br><br>Date: July 10, 2026<br>Time: 9:30 a.m.<br>Place: Courtroom 8C |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................3

I.       INTRODUCTION ................................................................5

II.      FACTUAL AND PROCEDURAL BACKGROUND .......................................6

III.     LEGAL STANDARD .........................................................8

IV.      ARGUMENT................................................................8

   A. Petitioners Fail to State a Claim that the Board's Decision Pursuant to Chapter 25B is Preempted by the PSA.........................................................10

     1.  Petitioners Cannot Show That Events Occurring After the Board's Decision Have Any Preemptive Effect at the Time of That Decision...................................11

     2.  The Allegations are Insufficient to Show that PHMSA Has Exclusive Jurisdiction to Support a Claim for Federal PSA Preemption. ...........................12

     3.  Petitioners Fail to State a Claim for PSA Preemption Because They Have Not Shown that Chapter 25B, as Applied, Regulates Pipeline Safety Standards. .........14

   B. Petitioners Fail to State a Claim that the Board's Decision is Preempted by the DPA Order. ......................................................................16

     1.  It is Impossible for the Board to Have Used Chapter 25B to "Frustrate" Sable's Compliance with the DPA Order Because the DPA Order was Issued after the Board's Decision. ..........................................................17

     2.  Petitioners Fail to State a Claim that Chapter 25B, as Applied, is Preempted by the DPA Order. ..........................................................17

       a.  Petitioners' Allegations Do Not Meet the High Threshold for Obstacle Preemption.........................................................18

       b.  It is Possible for Sable to Comply with the DPA Order and Chapter 25B. .......20

       c.  The DPA Order Does Not Expressly Preempt the County's Jurisdiction..........20

   C. Petitioners Fail to State a Claim that the Board's Decision is Preempted by State Law. ......................................................................22

V.       CONCLUSION................................................................23

CERTIFICATE OF COMPLIANCE..................................................24

Memorandum of Points and Authorities ISO Intervenors' Motion to Dismiss Pursuant to Rule 12(b)(6)

# TABLE OF AUTHORITIES

## Cases

*Altria Grp., Inc. v. Good*, 555 U.S. 70 (2008) ................................................................16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..............................................................8

*Chamber of Com. v. Whiting*, 563 U.S. 582 (2011) ............................................10, 18, 20

*English v. General Elec. Co.*, 496 U.S. 72 (1990) ......................................................11, 18

*Flores v. Rosen*, 984 F.3d 720 (9th Cir. 2020) ..................................................................13

*Hercules Inc. v. United States*, 24 F.3d 188 (Fed. Cir. 1994) ......................................19, 22

*Hercules Inc. v. United States*, 516 U.S. 417 (1996) .........................................................19

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 959 F.3d 1201 (9th Cir. 2020) ............................................................passim

*Los Angeles Waterkeeper v. SSA Terminals, LLC*, 702 F. Supp. 3d 903 (C.D. Cal. 2023) .................................................................................8

*Nw. Cent. Pipeline Corp. v. State Corp. Comm'n of Kansas,* 489 U.S. 493 (1989) ..................................................................................................18

*Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022) .......................................................11, 18

*Portland Pipe Line Corp. v. City of S. Portland*, 288 F. Supp. 3d 321 (D. Me. 2017) .....................................................................................................15

*Shelby Cnty. v. Couser,* 223 L. Ed. 2d 509 (2026) .............................................................15

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir.) .......................................10, 12

*Texas Midstream Gas Services, LLC v. City of Grand Prairie*, 608 F.3d 200 (5th Cir. 2010) .......................................................................................15

*U.S. v. Vertac Chemical Corp.*, 46 F.3d 803 (8th Cir. 1995) ............................................22

*Virginia Uranium, Inc. v. Warren*, 139 U.S. 1894 (2019) ..........................................18, 19

*W. Min. Council v. Watt*, 643 F.2d 618 (9th Cir. 1981) .................................................8, 13

*Washington Gas Light Co. v. Prince George's County Council*, 711 F.3d 412 (4th Cir. 2013) .....................................................................................15

*Zapon v. United States*, 53 F.3d 283 (9th Cir. 1995) .........................................................14

Memorandum of Points and Authorities ISO Intervenors' Motion to Dismiss Pursuant to Rule 12(b)(6)

## Rules & Regulations

49 U.S.C. § 60102(a)(2)................................................................................................11

49 U.S.C. § 60104(c) ...................................................................................................11

49 U.S.C. § 60105(a) ...................................................................................................13

50 U.S.C. § 4511(a) .....................................................................................................19

50 U.S.C. § 4557 ..........................................................................................................21

50 U.S.C. at § 4511(c) .................................................................................................20

Cal. Gov. Code § 8670.37.52.......................................................................................23

Cal. Gov't Code § 51010 .......................................................................................... 7, 13

Fed. R. Civ. P. 12(b)(6)............................................................................................ 8, 12

S.B. Cnty Code, Chapter 25B ................................................................................passim

## Constitutional Provisions

Cal. Const. art. XI, § 7 ................................................................................................23

U.S. Const., Art. VI, cl. 2............................................................................................. 9

Memorandum of Points and Authorities ISO Intervenors' Motion to Dismiss Pursuant to Rule 12(b)(6)

## I.    INTRODUCTION

In their Amended and Supplemental Verified Petition for Writ of Mandate and Complaint for Declaratory Relief and Damages ("Amended Complaint"), Petitioners and Plaintiffs Sable Offshore Corp. ("Sable Offshore"), Pacific Pipeline Company ("PPC"), and Pacific Offshore Pipeline Company ("POPCO") (collectively, "Sable") and Petitioners and Plaintiffs Exxon Mobil Corporation ("ExxonMobil"), Mobil Pacific Pipeline Company ("MPPC"), and ExxonMobil Pipeline Company ("EMPCo") (collectively, "ExxonMobil affiliates") (together with Sable, "Petitioners") challenge a December 16, 2025 decision by the County of Santa Barbara ("County") Board of Supervisors ("Board") to deny Sable's request to transfer County permits from ExxonMobil affiliates to Sable pursuant to Chapter 25B in the County Code of Ordinances ("County Code").

Intervenors Environmental Defense Center ("EDC"), Get Oil Out! ("GOO!"), Santa Barbara County Action Network ("SBCAN"), Sierra Club, and Santa Barbara Channelkeeper ("SBCK") (collectively, "Intervenors") bring this motion to dismiss Petitioners' Seventh Cause of Action ("COA") for failure to allege sufficient facts to support claims for a declaratory judgment that Chapter 25B, as applied, is preempted by federal and state law, and for injunctive relief from further enforcement of Chapter 25B against Petitioners. The Seventh COA, while vague and conclusory, appears to claim that the Board's application of Chapter 25B here is preempted under three theories: (1) the federal Hazardous Liquid Pipeline Safety Act of 1979 (PSA), 49 U.S.C. §§ 60101, *et seq.*, expressly preempts state and local authorities from imposing safety *standards*, (2) the Board's denial conflicts with the March 13, 2026 order issued by the Secretary of Energy pursuant to the Defense Production Act (DPA) (hereinafter, "DPA Order"), and (3) the basis for the Board's denial was in part financial concerns that are preempted by state law requiring proof of financial responsibility for a "worst-case scenario" spill. The bar for preemption is high, and Petitioners fail to meet it.

First, Petitioners fail to state a claim that the December Findings were based on

Memorandum of Points and Authorities ISO Intervenors' Motion to Dismiss Pursuant to Rule 12(b)(6)

pipeline safety *standards* (as compared to incidental safety *concerns*) preempted by the PSA. Second, the allegations also fail to state a claim for express or conflict preemption as to the DPA Order. No allegations are offered to show the statute itself intends for the prioritization and allocation powers to have a sweeping preemptive effect. Moreover, since the DPA Order does not direct oil *production*, Petitioners fail to demonstrate how compliance with Chapter 25B is an obstacle to the purposes and objectives of the DPA. Finally, Petitioners' allegations that state law preempts the Board's decision fail to state a claim. No allegations are set forth showing that the Board made financial considerations in the December Findings and even if so, Petitioners general allegations do not cite state law that allegedly preempts the Board's decision.

For these reasons, this Court should dismiss the Seventh COA in full for failure to state a claim.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The Las Flores Pipeline System (comprised of CA-324 and 325, collectively referred to as "the Pipelines"), the POPCO Gas Plant ("POPCO Facilities"), and the Santa Ynez Unit ("SYU") (collectively, "Facilities") are "County-permitted facilities located within unincorporated Santa Barbara County that process and treat crude oil and natural gas from offshore platforms." Dkt. No. 64 at ¶ 38. Operation of the Facilities is authorized by discretionary County approvals known as Final Development Plans ("FDPs"). *Id.* at ¶ 39-41; County Code at §§ 35-174.1, *et seq.,* and 35.82.080. In February 2024, Sable acquired the Facilities, including the Pipelines, which were classified as "intrastate pipelines" and regulated for pipeline safety by the California Office of the State Fire Marshal ("OSFM") pursuant to the Elder California Pipeline Safety Act ("CPSA"). Dkt. No. 64 at ¶¶ 2, 42; *see* Cal. Gov't Code § 51010.

Shortly thereafter, Sable applied, under Chapter 25B in the County Code, to transfer the Facilities' FDPs from the existing operator, owner, and guarantor (i.e., ExxonMobil affiliates) to a proposed new operator, owner, and guarantor (i.e., Sable). Dkt. No. 64 at § 98. Chapter 25B was adopted by the County in 2001, *id.* at ¶ 50, and

Memorandum of Points and Authorities ISO Intervenors' Motion to Dismiss Pursuant to Rule 12(b)(6)

governs permit transfers for new owners, operators, and guarantors. *Id.* at ¶ 52. In accordance with Chapter 25B-4(c), County permits are not transferable without approval of a permit amendment. County Code § 25B-4(c). In recent years, Chapter 25B has been invoked twice with regards to the Pipelines. First, starting in 2022, PPC and EMPCo submitted applications pursuant to Chapter 25B for a change of owner, guarantor, and operator to the County for the Pipelines. Dkt. No. 64-5 at 2. The Board determined that the required findings had been satisfied and approved the transfer. *Id.* at ¶ 63.

Second, Sable applied to the County to transfer the Facilities' FDPs in 2024. *Id.* at ¶ 67. The Planning Commission approval was appealed to the Board by two groups of environmental appellants, including Intervenors, in November 2024. *Id.* at ¶¶ 70, 73-74. The Board's tie vote at the February 25, 2025 appeal hearing lead to the present litigation. *Id.* at ¶¶ 79, 84. On September 12, 2025, following a hearing on cross-motions for summary judgment, this Court issued a peremptory writ of mandate ordering the Board to hold a new appeal hearing, which the Board did on November 4, 2025. *Id.* at ¶¶ 88-89. At the conclusion of the November 4 hearing, the Board voted to continue the hearing with direction to County staff to prepare written findings to support denying the transfer of the permits. *Id.* at ¶ 94.

At the continued December 16, 2025 hearing, County staff presented findings for denial ("December Findings") for the Board's consideration and adoption. *Id.* at ¶ 95. During the December 2025 hearing, "several supervisors" identified their respective bases for denial. *Id.* at ¶ 99. The Board ultimately voted to approve the Appeals, deny the requests for the Change of Owner, Operator, and Guarantor for the Facilities' FDPs, and adopt County staff's proposed December Findings. *Id.* at ¶ 98.

Several developments related to the Facilities occurred *after* the Board's decision on December 16 and were therefore not part of the record before the Board. For purposes of this Motion, two are relevant here. First, the Pipeline and Hazardous Materials Safety Administration (PHMSA) sent Sable Offshore a letter dated December 17, 2025 that asserts that the Pipelines are interstate pipelines and regulated by PHMSA. Dkt. No. 64-3

Memorandum of Points and Authorities ISO Intervenors' Motion to Dismiss Pursuant to Rule 12(b)(6)

at 2-3. Second, on March 13, 2026, the Secretary of Energy issued an order pursuant to the DPA, Executive Order 13603, and Executive Order 14156. *Id.* at ¶ 115. That DPA Order directs Sable "to immediately prioritize and allocate pipeline transportation services for hydrocarbons," and "to immediately commence performance under contracts or orders for services,…for hydrocarbon transportation capacity," and states that such contracts for hydrocarbon transportation services "shall take priority over other non-SYPS hydrocarbon transportation contracts or orders…." Dkt. No. 64-11 at 3.

## III.  LEGAL STANDARD

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) dismissal may be warranted based on the lack of a cognizable legal theory or sufficient facts alleged under a cognizable legal theory. *Los Angeles Waterkeeper v. SSA Terminals, LLC*, 702 F. Supp. 3d 903, 917 (C.D. Cal. 2023). To withstand a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action" such that the factual allegations "raise a right to relief above the speculative level." *Id*. at 555 (citations and internal quotation marks omitted). A court must not give deference to legal conclusions in a complaint in deciding a motion to dismiss; only factual allegations are entitled to such deference. *See Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## IV.  ARGUMENT

There are two basic principles of preemption jurisprudence under the Supremacy Clause. First, "'the purpose of Congress is the ultimate touchstone in every pre-emption case,'" which must be based on the text and structure of the statute itself. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 959 F.3d 1201, 1211 (9th Cir. 2020) (*quoting Wyeth v. Levine*, 555 U.S. 555, 565 (2009)). "'Second, in

Memorandum of Points and Authorities ISO Intervenors' Motion to Dismiss Pursuant to Rule 12(b)(6)

all pre-emption cases,…[a court will] start with the assumption that the historic police powers of the States' are *not* preempted 'unless that was the clear and manifest purpose of Congress.'" *Id.* at 1212 (*quoting Wyeth v. Levine*, 555 U.S. 555, 565 (2009)) (emphasis added).

State law[1] may be preempted under the Supremacy Clause, U.S. Const., Art. VI, cl. 2, in three circumstances: express preemption, conflict preemption, and field preemption. *Id.* Allegations in the Seventh COA (albeit vague and conclusory) appear to fall under the first two categories. The PSA expressly preempts state and local law from imposing safety *standards* (versus safety *concerns*). 49 U.S.C. § 60104(c). While nothing in the DPA or DPA Order expressly authorizes a blanket preemption of local regulatory authority, Petitioners allege conflict preemption with regards to the DPA Order. Dkt. No. 64 at ¶ 183.

Before even considering Petitioners' preemption arguments, there are two threshold issues that render the Seventh COA defective. First, at the time of the Board's decision, PHMSA had not asserted control over the Pipelines and the DPA Order had not been issued. *Id.* at ¶¶ 42, 98, 115. Thus, these legal developments were post-decisional and not part of the record before the Board.

Second, as threshold issues for their PSA preemption argument, Petitioners allege that the Pipelines are *inter*state facilities, as defined by the PSA, and thus subject to PHMSA's *exclusive* jurisdiction. *Id.* at ¶ 42. However, the Consent Decree from 2020 that remains binding on PHMSA, OSFM, and subsequent owners of the Pipelines unequivocally establishes *OSFM's* jurisdiction over the Pipelines pertaining to restart. Request for Judicial Notice (RJN), Exh. 1[2] at 63, 96.

---

[1] The Supreme Court has declared that "for the purposes of the Supremacy Clause, the constitutionality of local ordinances is analyzed in the same way as that of statewide laws." *Hillsborough Cnty., Fla. v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 713 (1985).

[2] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) ("…court need not [] accept as true allegations that contradict matters properly subject to judicial notice….").

Memorandum of Points and Authorities ISO Intervenors' Motion to Dismiss Pursuant to Rule 12(b)(6)

The Seventh COA must also be dismissed because Petitioners fail to state a cognizable theory of federal preemption under either the PSA or the DPA Order. The express preemption clause in the PSA is limited to safety *standards*, and nowhere in the December Findings does the Board purport to regulate pipeline safety in a manner preempted by the PSA. Also, the text of the DPA does not confer the power to preempt local and state law as Petitioners allege and Petitioners' claim for conflict preemption related to the DPA Order faces a very "high threshold," which they fail to satisfy. *Chamber of Com. v. Whiting*, 563 U.S. 582, 607 (2011). Critically, Petitioners have not alleged how the Board's denial of the permit transfers frustrates the DPA's prioritization and allocation purposes. They also do not allege any actual conflict between the objective of enabling Sable to prioritize/allocate one set of contractual obligations over another, on the one hand, and requiring it to comply with the ordinary operation of local land use authority on the other. *See, e.g.,* Dkt. No. 64 at ¶ 184.

Finally, Petitioners allege that state law requiring proof of financial responsibility for a "worst-case scenario" spill preempts the Board from considering financial concerns. *Id.* at 186-87. Petitioners' allegations must be dismissed because the Board's December Findings do not cite financial considerations as a basis for the decision and nothing in the language of the State statutes expressly declares, or even suggests, that authority over financial responsibility is reserved to the State.

For these reasons, and as discussed below, the Seventh COA must be dismissed.

**A.      Petitioners Fail to State a Claim that the Board's Decision Pursuant to Chapter 25B is Preempted by the PSA.**

"Pre-emption fundamentally is a question of congressional intent…." *English v. General Elec. Co.*, 496 U.S. 72, 78-79 (1990) (citing Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 299 (1988)). To determine if the PSA preempts Chapter 25B, as applied by the County to the Facilities, one must begin with the statutory text of the Act. *See Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022) ("…[T]he text of a law controls over purported legislative intentions unmoored from any statutory text.").

Memorandum of Points and Authorities ISO Intervenors' Motion to Dismiss Pursuant to Rule 12(b)(6)

The purpose of the PSA "is to provide adequate protection against risks to life and property posed by" interstate "pipeline transportation and pipeline facilities…." 49 U.S.C. § 60102(a)(2). To achieve these goals, the PSA requires the Secretary of Transportation to "prescribe minimum safety standards for" interstate "pipeline transportation and for pipeline facilities." Id. at § 60102(a)(2). The PSA prohibits a State from adopting "safety standards for interstate pipeline facilities or interstate pipeline transportation." Id. at § 60104(c) (emphasis added).

Petitioners' PSA preemption argument must be dismissed for three reasons. First, Petitioners cannot plausibly allege that PHMSA's assertion of jurisdiction to regulate the Pipelines as interstate was part of the record before the Board. Second, Petitioners have not offered sufficient allegations to support their claim that PHMSA has exclusive jurisdiction given the binding Consent Decree. Finally, Petitioners allege insufficient facts to show that Chapter 25B, as applied, is preempted by the PSA because Chapter 25B does not regulate pipeline safety standards and accordingly, the Board did not adopt any pipeline safety standards in its December Findings.

### 1. Petitioners Cannot Show That Events Occurring After the Board's Decision Have Any Preemptive Effect at the Time of That Decision.

To the extent that Petitioners' allegations in the Seventh COA assert that federal preemption issues arose under the PSA at the time of the Board's December 16 decision, these allegations are facially implausible and cannot survive this Motion under Rule 12(b)(6). *See Sprewell*, 266 F.3d at 988 (a court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or *unreasonable inferences*") (emphasis added). Sable cannot dispute that at the time of the Board's decision, the Pipelines were regulated as *intra*state pipelines.

The Amended Complaint sets forth a timeline of the Board's hearings and decision, as well as the *subsequent* actions by the federal government. These subsequent actions could not, and did not, preempt the Board's action on December 16. *See* Dkt. No. 64 at ¶¶ 89, 94, 98, 115; Dkt. No. 64-3. Yet Petitioners make factually impossible

Memorandum of Points and Authorities ISO Intervenors' Motion to Dismiss Pursuant to Rule 12(b)(6)

allegations to support the Seventh COA, e.g., "[t]he County's reliance on the safety concerns it claims are embodied in Chapter 25B *as a reason to vote 'no'* is federally preempted under the PSA with respect to the Facilities," "[c]onsideration of these factors by Chair Capps and Supervisor Lee *as part of the basis for voting* against the denial of the Appeals under Chapter 25B violated the Supremacy Clause…and state law." Dkt. No. 64 at ¶¶ 182, 188 (emphasis added). It is undeniable that neither PHMSA's jurisdiction under the PSA nor the DPA Order were part of the record before the Board at the November or December 2025 hearings and were certainly not considered by the Board in making its decision. Actions that post-date a challenged decision cannot be capable of preempting it at the time. To the extent Petitioners attempt to allege otherwise, the Seventh COA is unsupported and must be dismissed.

        2.      <u>The Allegations are Insufficient to Show that PHMSA Has Exclusive Jurisdiction to Support a Claim for Federal PSA Preemption.</u>

The Seventh COA suffers from another threshold defect: the Federal Consent Decree is legally binding and vests jurisdiction over the Pipelines with OSFM—not PHMSA. RJN, Exh. 1. Despite this fact, Petitioners' federal preemption claim alleges that PHMSA has *exclusive* authority to regulate pipeline safety for all of the Facilities.[3] Dkt. No. 64 at ¶¶ 42, 180. This is a legal conclusion that this Court is not required to accept as true. *See W. Min. Council v. Watt*, 643 F.2d at 624. Petitioners acknowledge that OSFM previously regulated the Pipelines as *intra*state but references a letter from PHMSA to Sable Offshore dated December 17, 2026, in which PHMSA adopted *Sable's* determination that the Pipelines are *inter*state and declared the Pipelines under federal regulatory authority. *Id.* at ¶ 42, Dkt. No. 64-3. Petitioners' assertion of federal jurisdiction under PHMSA, however, is precluded by the express terms of the Consent

---

[3] Petitioners allege that "[t]he Pipeline, SYU, and the POPCO Facilities are all subject to regulation by PHMSA as pipeline facilities within the meaning of the PSA." Dkt. No. 64 at ¶ 180. The December 17 PHMSA letter to Sable Offshore is limited to the Pipelines, however. Dkt. No. 64-3. Petitioners do not make sufficient allegations to demonstrate that their claim for federal preemption under the PSA applies to *all* of the Facilities.

Memorandum of Points and Authorities ISO Intervenors' Motion to Dismiss Pursuant to Rule 12(b)(6)

Decree (to which PHMSA is a signatory). RJN, Exh. 1 at 63.

Under the PSA, authority to regulate intrastate pipelines may transfer from PHMSA to a state if (1) the state obtains a certification from the Department of Transportation; and (2) the state standards are compatible with minimum federal standards. 49 U.S.C. § 60104(c). In fact, under the PSA, PHMSA is expressly *prohibited* from "prescrib[ing] or enforc[ing] safety standards and practices for an intrastate pipeline facility or intrastate pipeline transportation to the extent that the safety standards and practices are regulated by a State authority." 49 U.S.C. § 60105(a). Congress thus preserved state jurisdiction over intrastate pipelines in the PSA.

In this case, PHMSA previously transferred authority of the Pipelines to OSFM, which was certified to oversee intrastate pipelines. RJN, Exh. 2 at 1; *see also* Cal. Gov't Code § 51010. The 2020 Consent Decree specifies that the Pipelines are "subject to the sole regulatory oversight of the OSFM." RJN, Exh. 1 at 96. The Consent Decree is the final order of a court and cannot be modified except through a motion made to this Court.[4] *Flores v. Rosen*, 984 F.3d 720, 740–41 (9th Cir. 2020) (*citing Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 393 (1992); *Zapon v. United States*, 53 F.3d 283, 285 (9th Cir. 1995). So long as the court-approved Consent Decree remains valid and effective, its terms control and are dispositive here: OSFM retains sole authority to regulate the Pipelines.[5] Yet the Amended Complaint is silent as to OSFM's continuing

---

[4] Recent determinations and approvals by PHMSA—all of which post-date the Board's December 16 decision—are the subject of proceedings in the Ninth Circuit Court of Appeals. *State of Calif. v. PHMSA, et al.,* No 25-508, consolidated with *Env'tl Def. Ctr. v. PHMSA,* No. 25-8059 (9th Cir.) (challenging PHMSA's assertion of jurisdiction and approval of an Emergency Special Permit and Restart). Additionally, in *United States of America and the People of the State of California, et al., v. Plains All American Pipeline, L.P., et al.* (Case No. 2:20-cv-02415-SVQ-SSCx), the California Plaintiffs seek an order vacating the DPA Order. Cal. Pl. Ex Parte Emergency Motion to Enforce Consent Decree, Dkt. No. 43.

[5] OSFM's existing authority over the Pipelines was recently the subject of two State Court orders in *Center for Biological Diversity, et al., v. California Dept. of Forestry and Fire Protection, et al.* (Case No. 25CV02244). On February 27, 2026, Santa Barbara

---

Memorandum of Points and Authorities ISO Intervenors' Motion to Dismiss Pursuant to Rule 12(b)(6)

jurisdiction over the Pipelines and importantly, how OSFM's jurisdiction over the Pipelines (rather than PHMSA) affects Petitioners' federal preemption claim. Instead, the grounds for declaratory and injunctive relief related to the PSA preemption claim in the Seventh COA hinge upon the threshold allegation that the Facilities are subject to PHMSA's *exclusive* authority, as delegated by the PSA. Dkt. No. 64 at § 180. These allegations are legal conclusions that are refuted by the binding terms of the Consent Decree. Accordingly, Petitioners fail to state a cognizable legal theory of federal preemption under the PSA, and the Seventh COA should be dismissed.

> 3.  Petitioners Fail to State a Claim for PSA Preemption Because They Have Not Shown that Chapter 25B, as Applied, Regulates Pipeline Safety Standards.

As a threshold matter, as noted above, PHMSA had not even asserted control over the Pipelines at the time of the Board's decision, and even afterwards, the Consent Decree confirmed that the Pipelines are regulated by State law and OSFM has authority. However, even if the express federal preemption clause in the PSA applies, the effect of that provision only goes as far as to preempt state or local pipeline safety *standards*; incidental safety concerns and local land use standards are not preempted by the PSA. *See, e.g., Washington Gas Light Co. v. Prince George's County Council*, 711 F.3d 412, 421-22 (4th Cir. 2013) (held the zoning scheme was primarily local land use regulation and not "safety regulations in disguise," because any safety considerations were "incidental" to the overall purpose of the zoning restrictions); *Texas Midstream Gas*

---

Superior Court Judge Donna D. Geck declined to dissolve a preliminary injunction enjoining Sable Offshore and PPC from restarting the Pipelines until certain conditions are satisfied. RJN, Exh. 3 at 8-9.  The court rejected Sable Offshore and PPC's argument that PHMSA has *exclusive* jurisdiction over the Pipelines that preempted the injunction. *Id*. The court was "not persuaded…that administrative actions taken by PHMSA necessarily eliminates OSFM participation in the restart process." *Id.* at 9. Also, on April 17, 2026, the court in that case denied Sable Offshore and PPC's request to vacate the preliminary injunction and rejected their preemption theory based on PHMSA's actions and the DPA Order. RJN, Exh. 4 at 6-11. The court determined that the Consent Decree is binding on the parties and OSFM has jurisdiction over the Pipeline. *Id.* at 7, 9.

Memorandum of Points and Authorities ISO Intervenors' Motion to Dismiss Pursuant to Rule 12(b)(6)

*Services, LLC v. City of Grand Prairie*, 608 F.3d 200. 211 (5th Cir. 2010) (held a setback requirement was not a safety standard because the city's "motivation…was to preserve neighborhood visual cohesion, avoiding eyesores or diminished property values," and "[a] local rule may incidentally affect safety, so long as the effect is not 'direct and substantial.'"); *Portland Pipe Line Corp. v. City of S. Portland*, 288 F. Supp. 3d 321, 429 (D. Me. 2017) (held city ordinance, which prohibited loading oil onto tanker vessels in city harbor and building new structures for that purpose, was not a "safety standard" preempted by the PSA).

Recently, the Eighth Circuit in *Couser v. Shelby Cnty., Iowa* held in part that setback requirements in pipeline ordinances had a direct and substantial effect on safety that would undermine Congress' express intent to preempt the states from regulating pipeline safety. 139 F.4th 664, 671 (8th Cir. 2025), *cert. denied sub nom. Shelby Cnty. v. Couser,* 223 L. Ed. 2d 509 (2026). However, it made clear that its holding would "not prohibit local governments from considering safety, nor prevent them from enacting all zoning ordinances,…." *Id.* at 671. The court also affirmed "the distinction between safety *standards*—which the PSA preempts—and safety *considerations*—which the PSA does not preempt." *Id.*

Petitioners allege that "Chapter 25B, as applied by the County to the Facilities, is preempted by" the PSA. Dkt. No. 64 at ¶ 189. The issue is thus whether Chapter 25B is a "safety standard[] for interstate pipeline facilities or interstate pipeline transportation" (which it is not). 49 U.S.C. § 60104(c). To prevail on a theory that federal law displaces state or local enactments, it is never enough to simply point to an express preemption clause. *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008). Petitioners must identify "the substance and scope" of the clause to show why Congress intended to displace state or local enactments like those at issue here. *Id.* They have not done so.

Chapter 25B regulates the transfer of certain permits from an existing owner, operator, and/or guarantor to a new owner, operator, and/or guarantor for a limited subset of oil and gas facilities. *Id.* at 25B-2(1)-(3), 25B-4(c). The focus is not on pipeline safety

Memorandum of Points and Authorities ISO Intervenors' Motion to Dismiss Pursuant to Rule 12(b)(6)

(e.g., design, construction, operation, maintenance, and spill response planning), but rather on the new owner, operator, and/or guarantor in terms of compliance and capacity to responsibly operate oil and gas facilities.

Trying to escape the problem that Chapter 25B does not have a "direct and substantial effect" on pipeline safety, Petitioners make the conclusory assertion that two of the five Supervisors "cited safety concerns as reasons for denying the Transfers." Dkt. No. 64 at 181-82, 188. A few scattered Supervisor remarks do not change the conclusion that Chapter 25B does not regulate the kind of pipeline safety standards preempted by the PSA. The December Findings confirm as much. Dkt. No. 64 at 105. Petitioners barely reference the December Findings in their PSA preemption allegations—only citing to part of one sentence that is entirely insufficient to show that the permit transfer denial has a direct and substantial effect on pipeline safety standards. *Id.* ("The Operator Capability finding is wholly preempted at all three Facilities…the December Findings assert that Sable 'reflects a record of *non-compliant or unsafe operations* systemic in nature for the Facilities.'").[6] For these reasons, Petitioners fail to allege sufficient facts to support a PSA preemption claim and the Seventh COA must be dismissed.

**B.      Petitioners Fail to State a Claim that the Board's Decision is Preempted by the DPA Order.**

Petitioners fail to plead sufficient facts to make the requisite showing to support the Seventh COA as it pertains to the DPA Order for two reasons. First, the DPA Order was issued three months after the Board made its December 16 decision and therefore was not part of the record before the Board at the time of its decision. Second,

---

[6] In fact, the Amended Complaint does not even call the ordinance's requirements "safety standards," but rather "safety concerns." See, e.g., Dkt. No. 64 at ¶¶ 180-182 (emphasis added); *see Washington Gas Light Co.*, 711 F.3d at 421–22 ("Even assuming safety concerns played some part in the enactment of the County Zoning Plans, those concerns would have been merely incidental to the overall purpose of the County Zoning Plans. This is insufficient to justify a finding that the County Zoning Plans were, in fact, safety regulations.").

Memorandum of Points and Authorities ISO Intervenors' Motion to Dismiss Pursuant to Rule 12(b)(6)

Petitioners' allegations are woefully insufficient to satisfy the high bar for conflict preemption related to the DPA Order.

      1.    <u>It is Impossible for the Board to Have Used Chapter 25B to "Frustrate" Sable's Compliance with the DPA Order Because the DPA Order was Issued after the Board's Decision.</u>

Petitioners claim that the Board "attempted" to "use Chapter 25B as a tool to frustrate Sable's compliance with the DPA order." Dkt. No. 64 at ¶ 183. But Petitioners' own pleadings refute that theory: the DPA Order was issued three months after the Board reached its decision. *Id.* at ¶¶ 98, 115. Since the DPA Order did not exist at the time of the Board's decision, it is entirely implausible that during the December 16 hearing, the Board took any action in furtherance of or contrary to the DPA Order to support a claim for preemption. This defect cannot be cured based on any set of factual allegations given the timeline of relevant events.

      2.    <u>Petitioners Fail to State a Claim that Chapter 25B, as Applied, is Preempted by the DPA Order.</u>

In the absence of express preemption, Congress may also preempt state law implicitly. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 959 F.3d at 1211. State law may be impliedly preempted "to the extent that it actually conflicts with federal law," either because it is impossible to comply with[7] or because the state law stands as an obstacle to the accomplishment and execution of congressional intent. *English*, 496 U.S. at 79; *see also Nw. Cent. Pipeline Corp. v. State Corp. Comm'n of Kansas,* 489 U.S. 493, 493 (1989). To the extent Petitioners allege both express and implied preemption related to the DPA Order, none of these legal theories survive the Rule 12(b)(6) standard for the reasons set forth below.

//

//

---

[7] Petitioners do not allege that it is impossible to comply with both Chapter 25B and the DPA Order.

Memorandum of Points and Authorities ISO Intervenors' Motion to Dismiss Pursuant to Rule 12(b)(6)

        a.      *Petitioners' Allegations Do Not Meet the High Threshold for Obstacle Preemption.*

The preemption theory known as "obstacle preemption" turns on a court's conclusion that a state law "stands as an obstacle to the accomplishment" of the goals the court believes the law was pursuing and faces a very "high threshold." *Chamber of Com.*, 563 U.S. at 607; *see also Virginia Uranium, Inc. v. Warren*, 139 U.S. 1894, 1901 (2019) [lead opinion] ("Invoking some brooding federal interest or appealing to a judicial policy preference should never be enough to win preemption of a state law."); *Oklahoma*, 597 U.S. at 642; *accord Chamber of Com.*, 563 U.S. at 607 ("Implied preemption analysis does not justify a freewheeling judicial inquiry into whether a state statute is in tension with federal objectives; such an endeavor would undercut the principle that it is Congress rather than the courts that preempts state law." (citation modified)). For this reason, "[t]he Supreme Court has found obstacle preemption in only a small number of cases." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 959 F.3d at 1212.

To evaluate a claim based on "obstacle preemption," "a court must identify the 'full purposes and objectives' of the federal law from 'the text and structure of the statute at issue.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 959 F.3d at 1212 (*citing Kansas v. Garcia*, 589 U.S. 191, 207, 140 S. Ct. 791, 804, 206 L. Ed. 2d 146 (2020)). The Ninth Circuit has established that "'[t]he Supremacy Clause gives priority to 'the Laws of the United States,'' not the priorities and preferences of federal officers, (citation omitted) or the 'unenacted approvals, beliefs, and desires' of Congress,…." *Id.* (*citing Kansas*, 589 U.S. at 207 and *P.R. Dep't of Consumer Affairs v. Isla Petroleum Corp.*, 485 U.S. 495, 501 (1988)). Petitioners cannot deduce whatever federal objective they want from the DPA to support their allegations. Dkt. No. at ¶ 183; *see Virginia Uranium, Inc.*, 587 U.S. at 762 (*citing CSX Transp., Inc. v. Easterwood*, 507 U. S. 658, 664 (1993) ("any '[e]vidence of pre-emptive purpose,' whether express or implied, must be 'sought in the [statute's] text and structure.'")).

Memorandum of Points and Authorities ISO Intervenors' Motion to Dismiss Pursuant to Rule 12(b)(6)

Petitioners assert that "[t]he County's attempted use of Chapter 25B as a tool to frustrate Sable's compliance with the DPA Order stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress and the Executive Branch, and is therefore preempted under the Supremacy Clause." Dkt. No. 64 at 183. Petitioners' allegations are inadequate to support their theory of obstacle preemption.

In evaluating this claim, the Court must begin with the text and structure of the statute. Here, the Secretary issued the DPA Order pursuant to the prioritization and allocation authority in Section 101(a) and (c) of the DPA. *See* Dkt. No. 64-11 at 2. The purpose of this authority is to provide the President with the power to "prioritize" one set of contracts over another and the power to "allocate" resources under those contracts. 50 U.S.C. § 4511(a). As observed by the Federal Circuit Court of Appeals in *Hercules Inc. v. United States*, "…section 101(a) does not mention either the specific nature of performance under a DPA contract, or the subsequent use of goods produced under such a contract." 24 F.3d 188, 203 (Fed. Cir. 1994), *aff'd*, 516 U.S. 417 (1996). The objective of Section 101(c) is to empower the President to "require the allocation of, or the priority performance under contracts or orders (other than contracts of employment) relating to, materials, equipment, and services in order to maximize domestic energy supplies" (and, for that matter, only if certain specified findings are made). 50 U.S.C. at § 4511(c).

Petitioners fail to state a claim for obstacle preemption because no allegations are set forth to show the purposes embodied in the DPA Order flow from the purposes and objectives of the statute itself. As a result, Petitioners' allegations do not reflect that the Board's decision to deny the permit transfers frustrates the purpose and objectives of the *DPA*. Nor could they because the Board's decision about whether to transfer County permits to a new owner, operator, and/or guarantor is not in tension with the DPA's objective to allocate or require priority performance under contracts or orders.

Petitioners present their obstacle preemption argument by asserting that the Board's purpose in denying the permit transfers was to "obstruct[] the operation of the

Memorandum of Points and Authorities ISO Intervenors' Motion to Dismiss Pursuant to Rule 12(b)(6)

Facilities" and that purpose "directly conflicts with the federal objectives embodied in the DPA Order." Dkt. No. 64 at 183. Even if this Court were to assume that the Board decision was intended to interfere with "*operation* of the Facilities" (which Intervenors wholly dispute), neither the DPA nor the DPA Order authorizes compelling a new resource into existence (i.e., the flow of oil).

Again, obstacle preemption is a high threshold, and courts must avoid "a 'freewheeling judicial inquiry into whether a state statute is in tension with federal objectives,'" which "'would undercut the principle that it is Congress rather than the courts that pre-empts state law.'" *Chamber of Com. of U.S.*, 563 U.S. at 607 (*quoting Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 110–11 (1992) (Kennedy, J., concurring in part and concurring in judgment)). Here, Petitioners fail to state a claim that Chapter 25B, as applied, presents an obstacle to the DPA.

> b.    It is Possible for Sable to Comply with the DPA Order and Chapter 25B.

To the extent Petitioners intend to invoke impossibility preemption, their theory is likewise flawed. Petitioners fail to allege an actual conflict between the objective of enabling Sable to prioritize/allocate one set of contractual obligations over another, on the one hand, and the ordinary operation of local regulatory authority on the other. Petitioners leave it to the other parties and this Court to speculate as to "*the extent* that [Chapter 25B, as applied] conflicts with…the DPA Order." Dkt. No. 64 at ¶ 184 (emphasis added). No allegations are made to show that Petitioners cannot comply with both Chapter 25B and the DPA Order. Sable has not pled facts showing how the County's requirements prevent it from prioritizing and allocating services and contracts. The Seventh COA thus fails to support a theory of impossibility preemption.

> c.    The DPA Order Does Not Expressly Preempt the County's Jurisdiction.

As discussed above in relation to the PSA, Congress may expressly preempt state law by enacting a clear statement to that effect. *In re Volkswagen "Clean Diesel" Mktg.,*

Memorandum of Points and Authorities ISO Intervenors' Motion to Dismiss Pursuant to Rule 12(b)(6)

*Sales Pracs., & Prods. Liab. Litig.*, 959 F.3d at 1211. To discern Congressional preemptive intent in an express pre-emption clause, the court's inquiry will focus on the plain language. *Id.* Nothing in the DPA Order expressly authorizes sweeping preemption of local regulatory authority (nor could it when the text of the DPA does not empower the Secretary to do so). It should be noted that even Petitioners do not assert that the DPA Order expressly preempts Chapter 25B.

Instead, Petitioners cite the DPA's liability shield, which provides that no person may be "held liable for damages or penalties for any act or failure to act resulting directly or indirectly from compliance with a rule, regulation, or order issued pursuant to this chapter." 50 U.S.C. § 4557. Petitioners reference this provision in relation to their allegation that the Board's decision to deny the Permit Transfers is "preempted to the extent that it conflicts with Sable's federal obligation to comply with the DPA Order." Dkt. No. 64 at ¶ 184.

Petitioners' theory is legally incorrect. Nothing in the DPA or DPA Order demonstrates that Congress intended every prioritization and allocation order to confer immunity for *any* actions a recipient might take thereunder. To the contrary, courts have consistently held that while the priority provision in the DPA may provide immunity if a party must break existing *contracts*, it does not absolve the party from complying with safety or *environmental protection laws*. *See Hercules Inc. v. United States,* 24 F.3d at 203-04; *U.S. v. Vertac Chemical Corp.*, 46 F.3d 803, 811-12 (8th Cir. 1995).[8] Congress knows how to draft expansive preemption clauses if it wishes. When it focuses a liability

---

[8] This discussion is also consistent with the order in *Center for Biological Diversity, et al., v. California Dept. of Forestry and Fire Protection, et al.* (Case No. 25CV02244). RJN, Exh. 4. The State Court was the first to evaluate Sable Offshore and PPC's preemption argument pertaining to the DPA Order. In dicta, the court reasoned that "Nothing in section 4551 or, by implication, in section 4557, permits a party subject to a DPA Order to violate other laws, especially including applicable other federal law. Moreover, the reasoning of *Hercules* [*Inc. v. U.S.*, 24 F.3d 188 (Fed. Cir. 1994)] and [*U.S. v. Vertac Chemical Corp.*, 46 F.3d 803 (8th Cir. 1995)] strongly implies that the DPA order, by itself, does not permit the violation of applicable state regulatory law…." RJN, Exh. 4 at 11.

Memorandum of Points and Authorities ISO Intervenors' Motion to Dismiss Pursuant to Rule 12(b)(6)

shield on a much narrower field, the inference is that Congress extended that shield only as far as it intended.

For the foregoing reasons, the Seventh COA must be dismissed.

**C.      Petitioners Fail to State a Claim that the Board's Decision is Preempted by State Law.**

Finally, Petitioners contend that the California Department of Fish and Wildlife, Office of Spill Prevention and Response ("OSPR") "has the exclusive authority to require that owners and operators have the financial wherewithal to cover costs associate with a worst-case-scenario incident, and sets specific requirements." Dkt. No. 64 at ¶ 186. Petitioners' allegations are general, vague, and fail to specify what State requirements allegedly preempt the County's authority.

Both the general authorization for a local entity's policy power and State law preemption emanates from Article XI, Section 7, of the California Constitution: "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." Cal. Const. art. XI, § 7. Thus, the County may enact and enforce policies and ordinances, such as Chapter 25B, related to its police power so long as they do not conflict with state laws.

Petitioners allege that the County is preempted from requiring additional financial assurances for a spill not authorized by OSPR or the FDPs.[9]  Dkt. No. 64 at ¶ 186. But the Financial Guarantees finding (County Code § 25B-10(a)(2)) was not even a basis for the Board's December Findings. Since Petitioners have not made any showing that the Board required financial assurances in its December Findings, the facts do not support a cognizable legal theory of preemption by state law. Dkt. No. 64 at ¶ 102.

Furthermore, no legal authority is cited to support Petitioners' allegations. California Government Code sections 8670.37.51, *et seq.*, generally govern OSPR's Certificates of Financial Responsibility ("COFRs"). Nothing in the language of these

---

[9] Notably, this argument only applies to financial assurances for an oil spill or accident; it does not encompass the other requirements in Chapter 25B to provide adequate assurances (e.g., for proper abandonment).

Memorandum of Points and Authorities ISO Intervenors' Motion to Dismiss Pursuant to Rule 12(b)(6)

statutes expressly states, or even suggests, that authority over financial responsibility is reserved to OSPR, exclusive of local governments.

Moreover, the purpose of Chapter 25B's financial assurance requirements and OSPR's COFRs scheme differ in purpose; while the former is primarily intended to assure an entity is capable of complying with all permit conditions and County ordinances, the latter is focusing on liability for oil spill response See County Code §§ 25B-9(a)(2),10(a)(2) (requiring a finding that a proposed operator demonstrate the financial responsibility "to comply with the permit and any county ordinance"); Cal. Gov. Code § 8670.37.52 (the effect of a certificate is to provide "conclusive evidence that the person or entity holding the certificate is the party responsible…for purposes of determining liability pursuant to this chapter.").

Thus, Petitioners fail to state a cognizable legal theory of preemption by state law, warranting dismissal.

## V.     **CONCLUSION**

For these reasons, this Court should dismiss the Seventh COA.

Dated: April 30, 2026                        */s/ Linda Krop*

LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
TARA C. RENGIFO (Bar No. 307670)
trengifo@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Tel.: (805) 963-1622 / Fax: (805) 962-3152

*Attorneys for Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper, certifies that this brief contains 6,714 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 30, 2026                    _/s/ Linda Krop_

LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
TARA C. RENGIFO (Bar No. 307670)
trengifo@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Tel.: (805) 963-1622 / Fax: (805) 962-3152

_Attorneys for Environmental Defense
Center, Get Oil Out!, Santa Barbara County
Action Network, Sierra Club, and Santa Barbara
Channelkeeper_

Memorandum of Points and Authorities ISO Intervenors' Motion to Dismiss Pursuant to Rule 12(b)(6)