SANTA BARBARA COUNTY COUNSEL
RACHEL VAN MULLEM, County Counsel
CALLIE KIM, Deputy County Counsel (SBN 257213)
105 East Anapamu Street, Suite 201
Santa Barbara, California 93101
Telephone (805) 568-2950 / Fax (805) 568-2982
E-mail: ckim@countyofsb.org

Attorneys for Respondents and Defendants
COUNTY OF SANTA BARBARA and
SANTA BARBARA COUNTY
BOARD OF SUPERVISORS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABLE OFFSHORE CORP., *et al.*,<br><br>Plaintiffs/Plaintiffs,<br><br>v.<br><br>COUNTY OF SANTA BARBARA, *et al.*,<br><br>Respondents/Defendants,<br><br>and<br><br>ENVIRONMENTAL DEFENSE CENTER, *et al.*,<br><br>Intervenors. | Case No: 2:25-CV-4165-DGM (AGRx)<br><br>**COUNTY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT IN PART**<br><br>Judge:          Hon. Dolly M. Gee<br>Courtroom:     8C, First St. Courthouse<br><br>Hearing:  July 10, 2026<br><br>Time: 9:30 a.m.<br><br>Complaint Filed:  May 8, 2025 |

*SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950*

- 1 -

## TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................................2

TABLE OF AUTHORITIES ....................................................................................3

I.      INTRODUCTION ..........................................................................................5

II.     ARGUMENT...................................................................................................6

      A.      CHAPTER 25B REQUIRES THE EXERCISE OF DISCRETION ....................................................................................6

      B.      PLAINTIFFS FAIL TO ALLEGE SUFFICIENT FACTS TO SHOW THEY HAVE VESTED PROPERTY INTERESTS THAT HAVE BEEN TAKEN WITHOUT JUST COMPENSATION ...............................................11

            1.      The Property Interests Are Not Vested Because Approval of the Transfers Was Uncertain .........................11

            2.      Plaintiffs Do Not Plausibly Allege a Taking Under *Penn Central* ..................................................................13

                 a.      Plaintiffs Fail to Adequately Allege Economic Impact .................................................................13

                 b.      Plaintiffs Fail to Adequately Allege Reasonable Investment-Backed Expectations ..............16

                 c.      The Nature of Government Action Weighs in Favor of the County ....................................................17

      C.      PLAINTIFFS FAIL TO ALLEGE SUFFICIENT FACTS TO STATE A CLAIM UNDER THE SUPREMACY CLAUSE ...............................................................................................17

      D.      PLAINTIFFS FAIL TO ALLEGE SUFFICIENT FACTS TO SHOW THE COUNTY BREACHED THE CELERON AGREEMENT ........................................................................21

III.    CONCLUSION................................................................................................23

CERTIFICATE OF COMPLIANCE .........................................................................24

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

- 2 -

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

# TABLE OF AUTHORITIES

## Cases

*Adeeb v. City of Marina,*
2026 WL 18786 (N.D. Cal. Jan. 2, 2026) ..........................................................14

*AIDS Healthcare Found. v. Los Angeles Cnty. Dep't of Pub. Health,*
197 Cal. App. 4th 693 (2011)..................................................................7, 10

*Avco Cmty. Devs., Inc. v. S. Coast Reg'l Com.,*
17 Cal. 3d 785 (1976)..........................................................................11, 23

*Cedar Point Nursery v. Hassid,*
594 U.S. 139 (2021) .......................................................................................13

*Couser v. Shelby Cnty., Iowa,*
139 F.4th 664 (8th Cir. 2025)........................................................................20

*Cf. Share Our Selves Corp. v. City of Santa Ana,*
2025 WL 1723147, at *7 (C.D. Cal. Mar. 24, 2025) ........................................16

*CV Amalgamated LLC v. City of Chula Vista,*
82 Cal. App. 5th 265 (2022).......................................................................6, 7

*Discovery Builders, Inc. v. City of Oakland,*
92 Cal. App. 5th 799 (2023)...........................................................................22

*DoorDash, Inc. v. City & Cnty. of San Francisco,*
2022 WL 867254 (N.D. Cal. 2022)...........................................................14, 17

*Enbridge Energy, Ltd. P'ship v. Whitmer,*
813 F. Supp. 3d 777, (W.D. Mich. 2025)........................................................20

*Engquist v. Or. Dep't of Agric.,*
478 F.3d 985 (9th Cir. 2007) .........................................................................11

*Evans Creek, LLC v. City of Reno,*
2022 WL 14955145 (9th Cir. Oct. 26, 2022) .................................................15

*FFV Coyote LLC v. City of San Jose,*
637 F. Supp. 3d 761 (N.D. Cal. 2022) .............................................................13

*Hawai'i Legal Short-Term Rental All. v. City & Cnty. of Honolulu,*
2022 WL 7471692 (D. Haw. Oct. 13, 2022)...............................................11, 12

*SANTA BARBARA*
*COUNTY COUNSEL*
*105 E. Anapamu Street, #201*
*Santa Barbara, CA 93101*
*(805) 568-2950*

- 3 -

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

*Lucas v. S.C. Coastal Council,*
   505 U.S. 1003 (1992) ............................................................................................13

*Olympic Pipe Line Co. v. City of Seattle,*
   437 F.3d 872 (9th Cir. 2006) .........................................................................18, 19

*Pakdel v. City & Cnty. of San Francisco,*
   636 F. Supp. 3d 1065 (N.D. Cal. 2022) .................................................................15

*Penn Central Transportation Co. v. City of New York,*
   438 U.S. 104 (1978) ...........................................................................13, 14, 15, 17

*Rodriguez v. Solis,*
   1 Cal. App. 4th 495 (1991) ......................................................................................7

*RUI One Corp. v. City of Berkeley,*
   371 F.3d 1137 (9th Cir. 2004) .........................................................................19, 20

*Share Our Selves Corp. v. City of Santa Ana,*
   2025 WL 1723147 (C.D. Cal. Mar. 24, 2025) .......................................................16

*United States v. Jingles,*
   702 F.3d 494 (9th Cir. 2012) ...................................................................................9

*United States v. O'Brien,*
   391 U.S. 367 (1968) ...............................................................................................19

*United States v. Phillips,*
   367 F.3d 846 (9th Cir. 2004) ..............................................................................9, 10

*United States Postal Serv. v. City of Berkeley,*
   228 F. Supp. 3d 963 (N.D. Cal. 2017) .......................................................18, 19, 20

**Statutes**

Cal. Gov't Code § 54953(a)..........................................................................................21

Cal. Gov't Code § 54954.3(a)(1) ..................................................................................21

**Rules**

Federal Rule of Civil Procedure 12(b)(6)........................................................................6

**Other Authorities**

County Code § 25B-10(a)(9) ...........................................................................................9

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

## I.    INTRODUCTION

In an attempt to avoid dismissal of their claims, Plaintiffs portray legal arguments as allegations of fact and ask this Court to disregard its prior decision that Chapter 25B's *de novo* review process is discretionary.  But nothing in their opposition to Defendants' motion to dismiss rectifies Plaintiffs' failure to plead plausible claims for a violation of the Takings Clause, a violation of the Supremacy Clause, and breach of contract.  Accordingly, Defendants County of Santa Barbara and Santa Barbara County Board of Supervisors ("Board" or "County") respectfully ask this Court to dismiss the fifth, sixth, seventh, and eighth claims in the Amended and Supplemental Verified Petition for Writ of Mandate and Complaint for Declaratory Relief and Damages ("Complaint").

Plaintiffs' failure to state a takings claim begins with their alleged property interests.  Plaintiffs' purported interests in a transfer of the permits pursuant to Chapter 25B did not vest because—as this Court has already correctly determined—Chapter 25B involves the exercise of discretion.  In their opposition to the County's motion to dismiss, Plaintiffs assert they also have vested interests in the underlying permits.  But even if rights under the permits can be divorced from the mandatory Chapter 25B process, Plaintiffs fail to allege a compensable taking of the permits.  The Complaint lacks information about the value of the permits before and after the County denied the application to transfer the permits ("Transfers"), and it is therefore not possible for this Court to assess the economic impact of the County's actions.  Plaintiffs point to their allegations about the amount of money Sable Offshore Corp. ("Sable") spent acquiring and improving the Santa Ynez Unit, POPCO Gas Plant, and Las Flores Pipeline System ("Pipeline") (together the "Facilities") and the potential for administrative fines under Chapter 25B.  But these numbers do not demonstrate the current value of the alleged property interests and how and to what degree that value has been diminished by the County's actions.

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Plaintiffs likewise fail to state a claim for violation of the Supremacy Clause. Plaintiffs fixate on statements made by individual Supervisors at various hearings rather than articulate how the effect of the County's final action imposed a preempted safety standard or financial requirement on the operation of the Pipeline. A handful of statements made by individual Supervisors, one of whom did not even vote on the final action, are not sufficient to find the County's application of Chapter 25B violated the state and federal constitutions. Nor do Plaintiffs articulate how the County's actions have prevented them from complying with the Defense Production Act Order.

The breach of contract claim is also deficient. Plaintiffs accept that the County's enactment of Chapter 25B was a valid exercise of its police powers, but assert a settlement agreement with a prior Pipeline owner precludes the County from applying Chapter 25B to the Facilities. This Court's determination in the first phase of this case that Chapter 25B is discretionary defeats this claim because the County cannot contract away its ability to deny a discretionary application if it is unable to make the required findings for approval.

For all the foregoing reasons, the fifth, sixth, seventh, and eighth causes of action fail to state a claim upon which relief can be granted, and should therefore be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    ARGUMENT

## A.  CHAPTER 25B REQUIRES THE EXERCISE OF DISCRETION.

The question of whether Chapter 25B requires the Board to exercise its discretion or is purely ministerial permeates this case and is disputed by the parties. (Docket Number ("Dkt. No.") 73, p. 25.) Plaintiffs assert this "is a disputed question of fact" that cannot be resolved on a motion to dismiss. (Dkt. No. 73, p. 25.) Plaintiffs are mistaken. As this Court has already ruled: "Whether a duty is ministerial is generally a question of law, namely statutory interpretation." (Dkt. No. 52, p. 20 (citing *CV Amalgamated LLC v. City of Chula*

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

- 6 -

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

*Vista*, 82 Cal. App. 5th 265, 279 (2022) and *Rodriguez v. Solis*, 1 Cal. App. 4th 495, 502 (1991).) *See also AIDS Healthcare Found. v. Los Angeles Cnty. Dep't of Pub. Health*, 197 Cal. App. 4th 693, 701 (2011) (noting that whether code sections "impose a ministerial duty, for which mandamus will lie, or a mere obligation to perform a discretionary function is a question of statutory interpretation.").

Not only is this a question of law, it is a question this Court has already answered. In their motion for summary judgment, Plaintiffs argued, "The Board had two ministerial duties." (Dkt. No. 36-1, p. 18.) First, it had to act on the appeals by affirming, reversing, or modifying the planning commission's decision. (*Id.*) "Second, it had to deny the appeals because Chapter 25B is ministerial and the Board did not identify any lawful basis to reverse the Planning Commission's decision." (*Id.*) As to the second issue, Plaintiffs argued, "[e]ach of Chapter 25B's findings requires the Planning Commission to apply 'fixed standards' to determine 'objective' objective [sic] facts, such as whether fees have been paid or documents provided." (Dkt. No. 36-1, p. 19.)

The County responded that Chapter 25B includes a mix of ministerial and discretionary elements and that at least the operator capability finding clearly calls for the exercise of discretion. (Dkt. No. 40, p. 19 (citing §25B-10(a)(9).) The County pointed out that one of the cases on which Plaintiffs relied, *CV Amalgamated LLC v. City of Chula Vista*, distinguished between ministerial procedures for processing an application on the one hand and the ultimate discretionary decision-making process on the other. (Dkt. No. 40, p. 17.)

In its ruling on the cross-motions for summary judgment, this Court wrote: "[The Board] has discretion to decide which action of the three to take, <u>and discretion within its *de novo* review process</u> . . . , but these discretionary actions are separate from the mandatory and ministerial process of hearing and affirmatively acting on the appeal. *See, e.g., CVG Amalgamated LLC*, 82 Cal. App. 5th at 221 (separating the ministerial procedural requirements of the

SANTA BARBARA COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

- 7 -

ordinance from the discretionary merit-based scoring portion of the ordinance)." (Dkt. No. 52, p. 23 [emphasis added].) The Court went on, "having concluded that the Board's *de novo* review of the Planning Commission's decision is discretionary rather than purely appellate in nature, the Court may not compel the Board to affirm or reverse the Planning Commission's decision before the Board has made any decision at all." (Dkt. No. 52, p. 23.)

Despite this clear language in the Court's order, Plaintiffs assert this Court has not yet decided whether Chapter 25B is discretionary or ministerial. (Dkt. No. 73, p. 25.) Plaintiffs also assert—notwithstanding their briefing about two alleged ministerial duties—that "the only question before this Court" was whether the Board's duty to affirm, reverse, or modify the planning commission's decision was mandatory and ministerial. (*Id.* [emphasis added].) In support of their position that the second issue they presented to the Court was not actually before the Court or decided by the Court, Plaintiffs point to the transcript of the hearing on the cross-motions for summary judgment. (Dkt. No. 73, p. 25.) There, counsel for Sable asserted: "anything about the capabilities of the pipeline operator is preempted by federal and state law." (Dkt. No. 55, p. 15.) The Court stopped counsel before she could get into preemption. (Dkt. No. 55, p. 15 ("Before you get into those arguments, which I've specifically declined to address, …").) Plaintiffs had extensively briefed preemption, but the Court did not rule on that issue in the first phase of this case. (Dkt. No. 46, p. 8-18.) The Court did, however, rule on Plaintiffs' argument that the Chapter 25B findings are all ministerial because such a ruling was necessary to resolve the writ claims Plaintiffs presented to the Court. (Dkt. No. 52, p. 23.)

Having elected to ask the Court to rule on whether Chapter 25B is purely ministerial in the first phase of the case, Plaintiffs must now accept the Court's ruling. "The law of the case doctrine precludes a court from reconsidering an issue that it has already resolved. Issues that a district court determines during pretrial

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

- 8 -

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

motions become law of the case." *United States v. Phillips*, 367 F.3d 846, 856 (9th Cir. 2004). A court has discretion to depart from the law of the case under certain narrow circumstances, but none of those circumstances exist here. *See United States v. Jingles*, 702 F.3d 494, 502–03 (9th Cir. 2012) (noting that a court may decline to apply law of the case if " '(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial.'")

Plaintiffs do not advance any grounds for this Court to reconsider its prior ruling. Nor is there any basis for this Court to *sua sponte* conclude its prior decision was clearly erroneous. Both the plain language of the code and Plaintiffs' factual allegations confirm that Chapter 25B is not purely ministerial. Chapter 25B requires the decision-maker to determine whether "[t]he proposed operator has the skills, training, and resources necessary to operate the permitted facility in compliance with the permit and all applicable county codes." County Code § 25B-10(a)(9). The code does not define what skills, training, and resources are necessary and consequently the decision-maker must exercise judgment in determining whether the evidence presented is sufficient to make the finding.

For example, Exhibit 4 to the Complaint includes the findings adopted by the Board when it approved permit transfers from Plains Pipeline L.P. to Exxon. (Dkt. No. 64-4.) The finding for operator capability states that the applicant, EMPCo (an affiliate of Exxon), had been in operation since 1941, operates similar pipelines and facilities in other states, operates over 1,000 miles of crude oil pipelines, had not had major incidents involving crude oil pipelines and facilities in the five years preceding date of the transfer applications, and employed long-term employees with extensive training in addition to contracted personnel and specialists. (Dkt. No. 64-4, p. 9.) This was not a "check-the-box" finding—it
///

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

- 9 -

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

required an examination of various factors and a discretionary determination that those factors were sufficient to make the finding.

Similarly, Exhibit 1 to the Complaint is the staff report prepared for the Planning Commission on Sable's transfer applications. The discussion about why staff believed the operator capability finding could be made addressed factors such as the number of years the executive team has worked in the industry and the fact that the executive team has worked on similar facilities. (Dkt. No. 64-1, p. 20-26.) Determining whether these factors are sufficient to find Sable had the skills, training, and resources necessary to operate the Facilities in compliance with the permit and all applicable county codes requires the decision-maker to exercise judgment and is therefore discretionary. *AIDS Healthcare Found*, 197 Cal. App. 4th at 700 (citations omitted).

Whether the evidence in the record was sufficient to deny the Transfers is not before the Court at this time—that issue will be resolved when the Court rules on Plaintiffs' writ of mandate claims. But the already-decided legal question of whether Chapter 25B is purely ministerial or discretionary is relevant to the County's motion to dismiss. As discussed later in this brief, the discretionary nature of Chapter 25B contravenes Plaintiffs' allegations that they have vested property interests in the Transfers or had a reasonable expectation that the Transfers would be granted, which are essential to their takings claims. The discretionary nature of Chapter 25B also contravenes Plaintiffs' allegation that the County withheld a ministerial permit, which is a component of their breach of contract claim. Plaintiffs have failed to give this Court a reason to reverse its prior ruling that Chapter 25B gives the Board discretion in its *de novo* review process. Accordingly, it would be an abuse of discretion for this Court to depart from its prior ruling. *See Phillips*, 367 F.3d at 856.

/ / /

/ / /

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

- 10 -

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

## B. PLAINTIFFS FAIL TO ALLEGE SUFFICIENT FACTS TO SHOW THEY HAVE VESTED PROPERTY INTERESTS THAT HAVE BEEN TAKEN WITHOUT JUST COMPENSATION.

### 1.    The Property Interests Are Not Vested Because Approval of the Transfers Was Uncertain.

The County has asserted that any property interests Plaintiffs have in the approval of the Transfers did not vest because the approval of the Transfers was contingent on the Board making a discretionary decision.  Plaintiffs respond that they do not seek to protect "the transfer paperwork[,]" but rather Exxon's right to sell and "exit" the permits and Sable's right to "operate the Facilities consistent with" the permits.

Plaintiffs' mischaracterization of Chapter 25B as involving mere "paperwork," rather than a discretionary administrative process, does not remedy the deficiency in the Complaint.  Regardless of the particular words they use, the alleged property interests Plaintiffs describe is the interest in the approval of the Transfers.  Indeed, Plaintiffs seem to acknowledge as much, asserting later in their opposition: "Plaintiffs have sufficiently alleged that they have a vested interest in … a transfer of the FDPs pursuant to Chapter 25B." (Dkt. No. 73, p. 25.)  And because Chapter 25B requires the decision-maker to exercise its discretion, any property interests in the Transfers did not vest.  *See Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 1002 (9th Cir. 2007), *aff'd*, 553 U.S. 591 (2008) ("[A] property interest that is "'contingent and uncertain' or the receipt of the interest is 'speculative,' or 'discretionary,' then the government's modification or removal of the interest will not constitute a constitutional taking."); *see also Avco Cmty. Devs., Inc. v. S. Coast Reg'l Com.*, 17 Cal. 3d 785, 797 (1976) (holding plan to construct buildings did not vest prior to approval by the county).

Plaintiffs rely on *Hawai'i Legal Short-Term Rental All. v. City & Cnty. of Honolulu*, 2022 WL 7471692 (D. Haw. Oct. 13, 2022) for the proposition that they have sufficiently alleged a vested interest in the Transfers.  (Dkt. No. 73, p. 25.)

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

There, the court acknowledged that "[t]o determine whether a property interest has vested for Takings Clause purposes, 'the relevant inquiry is the certainty of one's expectation in the property interest at issue.' " *Hawai'i Legal Short-Term Rental All.*, 2022 WL 7471692 at *10.  The residential property owners represented by Plaintiff had been able to lawfully rent their properties to tenants for 30-89 days until an ordinance passed rendering it unlawful to rent residential properties for a period less than 90 days. *Id.* at *4.  The Court held Plaintiff had articulated a vested property right based on equitable reliance on the plain language of a statute, which stated no ordinances may prohibit the continued use of any premises if the use was lawful when the ordinance took effect. *Id.* at 10.  The Court noted there was "nothing 'contingent,' 'uncertain,' 'speculative' or 'discretionary' in the long-standing use of private property for the rental purposes identified[.]" *Id.*

In contrast, Plaintiffs' expectation that the County would approve the Transfers was uncertain and speculative.  Plaintiffs have identified no ordinance on which they reasonably relied giving them the unfettered right to transfer the permits.  Instead, the ordinance at issue in this case, which was adopted before Sable acquired the Facilities and before Exxon acquired the Pipeline, creates a discretionary process for permit transfers.[1]  Therefore, Plaintiffs have failed to allege a vested property interest in the Transfers.

Plaintiffs also allege that in addition to the approval of the Transfers, they have vested rights in the underlying permits. (Dkt. No. 73, p. 22.)  But, as discussed in the following section, the Complaint is devoid of allegations that the County has revoked the permits or taken any other action that constitutes an unconstitutional taking of the underlying permits.

---

[1] Plaintiffs allege Exxon acquired two of the Facilities before Chapter 25B was adopted, but the Complaint does not distinguish between the different Facilities, it alleges the Planning Commission "approved a transfer of *the same FDPs at issue in this litigation* from then-owner, guarantor, and operation Plains Pipeline L.P to PPC (then owned by MPPC), ExxonMobil, and EMPCO, respectively." (Dkt. No. 64, ¶ 59 [emphasis added].)

SANTA BARBARA COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

## 2. Plaintiffs Do Not Plausibly Allege a Taking Under *Penn Central*.

Plaintiffs abandon any claim to a *per se* takings under *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992).  (*See* Dkt. No. 73, p. 26.)  And Plaintiffs' alleged facts are insufficient to plead a compensable taking under the factors discussed in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978).

### a. Plaintiffs Fail to Adequately Allege Economic Impact.

The first of the three *Penn Central* factors is "the economic impact of the regulation."  *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 140 (2021).  Plaintiffs argue this factor weighs in their favor because they have alleged "severe" economic impact caused by the County's application of Chapter 25B.  (Dkt. No. 73, p. 27.)  Yet the only specific allegations Plaintiffs point to are those concerning the cost of acquisition and additional investment in the Facilities and the potential for financial penalties.  (Dkt. No. 73, p. 27 [citing Complaint at ¶¶ 53, 162].)  According to Plaintiffs, these allegations are "precisely the type of allegations courts have found sufficient to survive a motion to dismiss."  (Dkt. No. 73, p. 19.)  But the cases on which Plaintiffs rely are readily distinguishable.

For instance, in *FFV Coyote LLC v. City of San Jose*, plaintiffs alleged the City's redesignation of land from "Industrial Park" to "Agricultural" was "directly responsible for termination of the $44.1 million purchase agreement plaintiffs had with third party developers."  *FFV Coyote LLC v. City of San Jose*, 637 F. Supp. 3d 761, 770 (N.D. Cal. 2022).  Plaintiffs also alleged an expert report demonstrated that agriculture is not an economically viable use of the properties and that all of the most recent uses of the property were not permitted under the new land use designation.  *Id.*  These factual allegations show how the regulatory change directly diminished the plaintiffs' ability to earn income from the property.  In contrast, Plaintiffs here do not allege that the sales agreement between Exxon and

///

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Sable fell through because of the denial of the Transfers. Nor do they allege that the County has changed the available uses of the Facilities.

Plaintiffs also rely on *DoorDash, Inc. v. City & Cnty. of San Francisco*. (Dkt. No. 73, p. 19.) There, Plaintiffs alleged an ordinance that capped the commissions third-party platforms can charge restaurants at 15% constituted a takings. *DoorDash, Inc. v. City & Cnty. of San Francisco,* 2022 WL 867254, at *1 (N.D. Cal. 2022). With respect to economic impact, Plaintiffs alleged the vast majority of its existing contracts provided for 25% and 30% commission rates and therefore the regulation diminished the value of existing contracts. *Id.* at *18. Plaintiffs also alleged the ordinance would force them to (i) "renegotiate contracts with many restaurants because Plaintiffs cannot cover the cost of providing existing services at a 15% commission rate, (ii) scale back certain marketing and promotional services in the City, thus harming Plaintiffs' reputation and goodwill, (iii) terminate contracts ... and/or decline to enter into new contracts, and (iv) potentially raise consumer prices, further harming their goodwill." *Id.* (internal quotation marks omitted).

In contrast, the Complaint here includes no allegations about what Plaintiffs must do as a result of the denial of the Transfers or how the denial of the Transfers affects the business of operating the Facilities. Plaintiffs have alleged there is a potential for administrative fines, but they have not alleged that the County has actually imposed any administrative fines. And because Plaintiffs have failed to include any allegations about the value of the Facilities after the denial of the Transfers, the Court has no way of assessing whether the amount of administrative fines, even if they were imposed, is "severe" relative to the value of the Facilities. *See Adeeb v. City of Marina*, 2026 WL 18786, at *7 (N.D. Cal. Jan. 2, 2026) (noting that the first *Penn Central* factor requires comparing the value that has been taken from the property with the value that remains in the property and that if

///

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

- 14 -

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

the plaintiff's "property values remain high, then the City's fines may not be large relative to those values.").

The allegations in this case are more akin to the County's cases. In *Pakdel v. City & Cnty. of San Francisco*, 636 F. Supp. 3d 1065 (N.D. Cal. 2022), Plaintiffs alleged the property's value had been diminished by "more than $500,000" but failed to "include any facts to establish the basis for this averred diminution in value," which fell "far short of the typical diminution threshold for a regulatory taking under Ninth Circuit precedent." *Id.* at 1075. Plaintiffs also failed to allege any factors beyond sale value could be included in the diminution analysis. *Id.* In *Evans Creek, LLC v. City of Reno*, 2022 WL 14955145 (9th Cir. Oct. 26, 2022), the 9th Circuit upheld the district court's decision that the complaint failed to sufficiently plead the first *Penn Central* factor. *Id.* at *1. The Court wrote: "As pleaded, the complaint lacks any information about the value of the property when the 2020 Application was submitted or its value after the 2020 Application was denied" and therefore "it is not possible for this Court to determine what the economic impact to the property is, even taking the allegations in the complaint as true." *Id.*

The same is true here. Plaintiffs not only fail to provide facts that would allow the Court to assess the alleged diminution in value of the property interests and any other factors beyond sale value, they also do not even provide an estimate of the amount the property's value has been diminished. Allegations about the amount of money Sable has spent on the Facilities and the potential for administrative fines are not sufficient. Attempting to fill the gap, Plaintiffs argue in their opposition that the Facilities have no value if the County has "unlimited discretion to grant or deny" transfers. (Dkt. No. 73, p. 28.) But the County does not have "unlimited" discretion under Chapter 25B—its discretion is plainly circumscribed by the required findings. Moreover, Sable's judicially-noticeable

///

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

- 15 -

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

statement that it has restarted the Facilities renders their claim that the Facilities lack any value implausible.

### b. Plaintiffs Fail to Adequately Allege Reasonable Investment-Backed Expectations.

Nor does the Complaint allege sufficient facts to show Plaintiffs' expectation that the Transfers would be approved was reasonable.  Plaintiffs assert the "regulatory environment" when Sable purchased the Facilities from Exxon was "marked by the County's consistent, ministerial application of Chapter 25B." (Dkt. No. 73, p. 24.)  But they point only to the County's approval of one permit transfer to Exxon.  (*Id.* [citing Dkt. No. 64, p. 19-21].)  One prior transfer can hardly be considered a "regulatory environment."  As the County has pointed out, the Complaint lacks any allegations that Exxon and Sable are similarly situated in terms of the operator capability finding.  Indeed, the allegations in the Complaint and the documents attached to the Complaint demonstrate they were not.  The transfers to Exxon were based on the discretionary decision that Exxon's seven decades in business and its extensive experience and track record as a company were sufficient to make the operator capability finding.  (Dkt. No. 64-4, p. 9.) Whereas Sable's transfers were denied based on the record of violations and noncompliance with state and local requirements Sable racked up in its short existence.  (Dkt. 64, ¶ 18.)

Plaintiffs assert their expectation that the Transfers would be granted was reasonable because staff recommended the decision-makers approve the Transfers on three occasions.  (Dkt. No. 73, p. 31.)  But statements by staff do not override the Board's authority under Chapter 25B to make the final determination about whether the findings can be made.  *Cf. Share Our Selves Corp. v. City of Santa Ana*, 2025 WL 1723147, at *7 (C.D. Cal. Mar. 24, 2025) (holding "Plaintiff's reliance on informal assurances and preliminary plans, without more, does not meet the plausibility threshold to establish a protectable property interest in the

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

- 16 -

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

zoning regulations that existed prior to the adoption of the Emergency Interim Ordinance."). The County does not dispute that staff recommend approval of the Transfers and is not asking this Court to decide at this time whether the Board's denial was "justified" as Plaintiffs allege. The County is asserting that, even accepting the allegations in the Complaint as true, it was not reasonable to expect Sable's Transfers would be approved just because Exxon's transfer application was approved.

### c. The Nature of the Government Action Weighs in Favor of the County.

With respect to the nature of the government action, Plaintiffs' own case supports the County's position. Plaintiffs rely on *Door Dash* but there the Court found the third *Penn Central* factor weighed in the City's favor. The Court described the final factor as: "whether the Ordinance is more akin to an interference arising from some public program adjusting the benefits and burdens of economic life to promote the common good than a physical invasion by government, by which a taking may more readily be found." *DoorDash, Inc.*, 2022 WL 867254, at *19 [cleaned up]. The Court noted that the Takings Clause is not violated whenever "legislation requires one person to use his or her assets for the benefit of another." *Id.* The Court concluded this factor weighed in favor of the City because the City did not appropriate anything for its own but merely "adjust[ed] the benefits and burdens of economic life to promote the common good." So too here, the County did not appropriate anything for its own by denying the Transfers. Nor can the County's actions be characterized as a "physical invasion by government." *Id.* Thus, this factor weighs against Plaintiffs.

### C. PLAINTIFFS FAIL TO ALLEGE SUFFICIENT FACTS TO STATE A CLAIM UNDER THE SUPREMACY CLAUSE.

Plaintiffs assert the denial of the Transfers violated the federal Pipeline Hazardous Materials Safety Administration's ("PHMSA") exclusive jurisdiction

over pipeline safety and the state Department of Fish and Wildlife's Office of Spill Prevention and Response's ("OSPR") exclusive standards for financial capability to respond to a spill.  (Dkt. No. 64, ¶¶176, 181, 187-88; Dkt. No. 73, p. 33.)  In both the Complaint and the opposition to the motions to dismiss, Plaintiffs focus not on the effect of the denial of the Transfers, but on the motivations of individual members of the Board of Supervisors who allegedly cited safety concerns and financial concerns as reasons to deny the Transfers under Chapter 25B.  (Dkt. No. 64, ¶¶ 181-82, 187-88; Dkt. No. 73, pp. 35, 44.)  Allegations of what some Supervisors said at hearings, however, is not sufficient to state a claim for preemption, as discussed in the County's brief at pages 19-20.  (Dkt. No. 69-1, p. 20.)

Plaintiffs heavily rely on *Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d 872, 875 (9th Cir. 2006).  There, Seattle required a pipeline company to conduct a hydrostatic test and comply with other safety requirements before it would renew a franchise agreement.  *Id.* at 876.  The court held the Pipeline Safety Act ("PSA") expressly preempted Seattle's attempted safety regulation of the pipeline.  *Id.* at 880.  And the court held Seattle's actions did not fall within the market proprietor exception to preemption because Seattle imposed the safety standards to prevent a pipeline accident and it repeatedly invoked its police powers.  *Id.* at 882.

Unlike Seattle, the County has not required Plaintiffs to undertake hydrostatic testing or comply with any similar safety standards or requirements.  Nor is there any question in this case about whether the market participant exception to preemption applies to the County's actions.  According to the allegations in the Complaint, the County only indirectly regulated safety by exercising its police power to deny local permit transfers from one company to another for an allegedly improper purpose.

Plaintiffs also cite *United States Postal Service v. City of Berkeley* for the proposition that a preemption claim survives a motion to dismiss where the plaintiff

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

- 18 -

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

alleges interference by the local government that is effectively equivalent to a total frustration of the ability to dispose of property. (Dkt. No. 73, p. 33.) But that case concerned the United States Postal Service's ("USPS") statutory right to dispose of its property, which preempted a local ordinance that prevented the sale of the USPS's property. *United States Postal Serv. v. City of Berkeley*, 228 F. Supp. 3d 963, 971 (N.D. Cal. 2017). In other words, the effect of the ordinance interfered with the USPS's right under federal law.

Here, Plaintiffs cite no federal statutory authority to dispose of property like that belonging to the USPS. And unlike the USPS, their preemption claims are not based on the *effect* of the denial of the Transfers, but on the alleged subjective *intent* of individual Board members. (Dkt. No. 64, ¶ 188 ["Consideration of these factors [*i.e.* pipeline safety and finances] by Chair Capps and Supervisor Lee as part of the basis for voting against the denial of the Appeals under Chapter 25B violated the Supremacy Clause of the United States Constitution and state law."].) Plaintiffs do not allege facts to show the denial of the Transfers had the effect of imposing a preempted safety standard on the operation of the pipeline like the government action in *Olympic Pipe Line Co.*; they allege that the Board of Supervisors "cited safety concerns as reasons for denying the Transfers under Chapter 25B." (Dkt. No. 64, ¶¶ 181-82.) Similarly, Plaintiffs do not allege facts to show the denial of the Transfers had the effect of imposing a preempted financial requirement on the operation of the pipeline; they allege that individual Supervisors stated that Sable's finances were a reason for denying the Transfers. (Dkt. No. 64, ¶ 187.)

The *United States Postal Service* Court addressed this type of claim in its discussion of a claim that the ordinance violated the Supremacy Clause because it discriminated against the Federal Government. The Court discussed caselaw holding a statute will not be found unconstitutional on the basis of an alleged illicit or nefarious legislative motive. *United States Postal Serv.*, 228 F. Supp. 3d at 969

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

- 19 -

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

(discussing *United States v. O'Brien*, 391 U.S. 367, 383 (1968) and *RUI One Corp. v. City of Berkeley* 371 F.3d 1137, 1146 n.7 (9th Cir. 2004)).  The Court concluded such decisions indicate that allegations of legislative motive behind the ordinance's passage would not suffice to establish unconstitutionality.  *Id.*  But there, the USPS's theory that the ordinance discriminated against the government did not "rest on allegations that some City officials made statements to that effect[,] the USPS also alleges such discrimination is evidenced by the practical effects of the [ordinance] itself."  *Id.*

Plaintiffs' other cases likewise do not rely on statements made by individuals to find a statute or ordinance unconstitutional.  When the motivation for an ordinance is relevant, courts look to the context for the passage of the ordinance and the effect of the ordinance, not isolated statements by individuals.  For instance, in *Enbridge Energy, Ltd. P'ship v. Whitmer*, 813 F. Supp. 3d 777, (W.D. Mich. 2025) officials ordered an energy company to shut down and permanently decommission a pipeline.  *Id.* at 798.  In concluding that officials were motivated by safety, the court focused on the language and reasoning provided in the shutdown order itself, which emphasized safety concerns as the basis for the decision.  *Id.* at 799.  In *Couser v. Shelby Cnty., Iowa*, 139 F.4th 664 (8th Cir. 2025), the court held that setbacks were safety standards because "the effect on safety is not incidental, but rather the 'primary motivation.'"  *Id.* at 671.  The court determined that safety was the motivation for the setbacks by examining the text and context of the ordinances and the implications of their application, not any statements made by individual decision-makers regarding their subjective intent.  *Id.*

To the extent the thought process of individual Supervisors has any bearing on Plaintiffs' preemption claim, Plaintiffs overreach when they rely on statements made by a Supervisor who did not vote on the final actions, statements made in hearings before this Court directed the Board to reconsider the matter, and

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

submissions by the public and appellants. The County is not asserting that the record is limited for purposes of the writ claims—but for Plaintiffs' claims that the County violated the Supremacy Clause because some Supervisors expressed concerns about safety and Sable's finances, the "hundreds of pages of material submitted by the Intervenors" is not relevant. The County has no way of "exclud[ing]" the evidence presented by appellants or any other members of the public at a public hearing as Plaintiffs posit. (Dkt. No. 73, p. 35.) *See* Cal. Gov't Code §§ 54953(a), 54954.3(a)(1) (requiring "[a]ll meetings of the legislative body of a local agency" to "be open and public," and that meeting agendas "provide an opportunity for members of the public to directly address the legislative body" on items of consideration). Nor are statements made by Supervisor Hartmann relevant because she recused herself before the Board took final action. (Dkt. No. 64, ¶ 96.)

With respect to the DPA Order, Sable asserts "the mere fact that production has restarted pursuant to federal compulsion does not moot Sable's pleaded claim[]" of a conflict between the DPA Order and the Board's actions. (Dkt. No. 73, p. 19.) The County's motion is focused on the inadequacy of the allegations in the Complaint—the judicially noticeably fact that Sable has restarted the Pipeline merely underlines the deficiency in the Complaint. The Complaint is deficient because Plaintiffs fail to allege what the County has actually done, as opposed to what it could do, that prevents Sable from complying with the DPA Order.

## D. PLAINTIFFS FAIL TO ALLEGE SUFFICIENT FACTS TO SHOW THE COUNTY BREACHED THE CELERON AGREEMENT.

Plaintiffs assert they do not challenge the enactment of Chapter 25B; they challenge only the decision to deny the Transfers, which they characterize as an attempt to use Chapter 25B to exercise authority over the operation of the Pipeline. (Dkt. No. 73, p. 45.) But as a matter of law, Chapter 25B is discretionary and the

///

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

- 21 -

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Celeron Agreement, just like any contract, cannot require the County to approve a discretionary permit application.

Plaintiffs assert "that the County could lawfully enact Chapter 25B does not mean that the Celeron Agreement did not limit Chapter 25B's application to the Pipeline." (Dkt. No. 73, p. 46.)  But this is precisely what it means.  Plaintiffs are making a similar argument to the one rejected in *Discovery Builders, Inc. v. City of Oakland.*  There, developers entered into an agreement with the City of Oakland to pay fees to cover the costs of the City's Project oversight.  *Discovery Builders, Inc. v. City of Oakland*, 92 Cal. App. 5th 799, 803 (2023).  When the City later adopted new impact fee ordinances, the developers sued arguing that the imposition of the impact fees violated the agreement.  *Id.*  On appeal, the court concluded that the City's impact fee ordinances arose from the City's police powers and therefore "any provision in or construction of the Agreement that prevents the City from imposing those impact fees on Respondents' development infringes on the City's police power and simply cannot be enforced."  *Id.* at 812.  The Court rejected the developers' argument that there was no surrender of police powers because the City maintained the power to make and enforce ordinances on other developers.  The Court noted the developers provided "no authority that allows for the selective enforcement or application of land use regulations by contract" and that "courts have invalidated agreements exempting a small subset of parties from laws and ordinances."  *Id.* at 813.

Here, there is no dispute that the County has authority under its police powers to issue land use permits for oil and gas facilities and to regulate the transfer of such permits from one owner, operator, and guarantor to another under Chapter 25B.  (*See* Dkt. No. 73, p. 46 (acknowledging "that the County could lawfully enact Chapter 25B").)  Plaintiffs' argument that the Celeron Agreement should be construed to prevent the County from applying Chapter 25B to the Pipeline would render the Agreement invalid as an improper infringement on the

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

- 22 -

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

County's police power.  In other words, the County's police power overrides any obligation of the County to approve a discretionary permit under the Celeron Agreement.  *See Avco Community Developers, Inc. v. South Coast Regional Com.*, 17 Cal.3d 785 (1976) (holding the state's police power "over[rode] any obligation of the state to perform" a contract to sell property).

Plaintiffs' assertion that the County violated the Celeron Agreement by withholding a ministerial permit is also easily disposed of.  This Court has already determined that Chapter 25B is not purely ministerial, and therefore Plaintiffs fail to state a claim for breach of the Celeron Agreement as a matter of law.  The Celeron Agreement does not and could not preclude the County from withholding discretionary permits.  Thus, even taking the allegations in the Complaint as true, the County did not breach the Agreement when it denied Sable's requests for Transfers after concluding it could not make the operator capability finding for approval.

### III.   CONCLUSION

For all the foregoing reasons and the reasons stated in the County's motion, Defendants County of Santa Barbara and Santa Barbara County Board of Supervisors respectfully request that this Court dismiss the Fifth, Sixth, Seventh, and Eighth claims in the Complaint.

Dated: June 16, 2026

Respectfully submitted,

RACHEL VAN MULLEM
COUNTY COUNSEL

By: /S/ - Callie Patton Kim
    Callie Patton Kim
    Senior Deputy County Counsel
    Attorneys for Defendants COUNTY OF SANTA BARBARA and SANTA BARBARA COUNTY BOARD OF SUPERVISORS

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

- 23 -

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants County of Santa Barbara and Santa Barbara County Board of Supervisors, certifies that this brief contains 6,296 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 16, 2026

By: /S/ - Callie Patton Kim
Callie Patton Kim
Senior Deputy County Counsel
Attorneys for Defendants COUNTY OF SANTA BARBARA and SANTA BARBARA COUNTY BOARD OF SUPERVISORS