LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
TARA C. RENGIFO (Bar No. 307670)
trengifo@environmentaldefensecenter.org
JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Phone: (805) 963-1622
Fax: (805) 962-3152

*Attorneys for Environmental Defense Center,
Get Oil Out!, Santa Barbara County Action
Network, Sierra Club, and Santa Barbara
Channelkeeper*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| SABLE OFFSHORE CORP., et al.<br><br>        Petitioners/Plaintiffs,<br><br>  v.<br><br>COUNTY OF SANTA BARBARA, et al.<br><br>        Respondents/Defendants,<br><br>  and<br><br>ENVIRONMENTAL DEFENSE CENTER, et al.<br><br>        Intervenors. | Case No.: 2:25−cv−04165−DMG−CTSx<br><br>**INTERVENORS' REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Hon. Dolly M. Gee<br><br>Date: July 10, 2026<br>Time: 9:30 a.m.<br>Place: Courtroom 8C |

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ............................................................................................3

I.      INTRODUCTION ...........................................................................................5

II.     ARGUMENT ...................................................................................................6

  A.      Petitioners Fail to State a Claim for Preemption under the PSA. .........................6

     1.      The Standard for Preemption under the PSA Set by the Ninth Circuit in *Olympic Pipe Line Co.* is Not Met Here. ........................................8

     2.      Inquiring into the Subjective Intent of Individual Supervisors Contravenes Guidance from the Supreme Court and is Insufficient to Support a Claim for Preemption under the PSA. .................10

     3.      Petitioners' PSA Preemption Claim is a Moving Target and the FAC Does Not Support a Claim for Retroactive Preemption. ....................12

  B.      Petitioners Fail to State a Claim for Preemption under the DPA Order. ............14

     1.      The FAC Fails to Properly State a Claim for Preemption under the DPA Order Based on the Standard Articulated by the Ninth Circuit in *ConocoPhillips Alaska, Inc*. .........................................................15

     2.      Petitioners Fail to State a Claim that Chapter 25B, as Applied, is Preempted by the DPA Order under Conflict Preemption. .......................18

     3.      Petitioners Impermissibly Allege Retroactive Preemption that Does Not Support Their Claim for Preemption Under the DPA Order. ..........................................................................................20

  C.      Petitioners Fail to State a Claim for Preemption under State Law. ...................21

III.    CONCLUSION.............................................................................................22

CERTIFICATE OF COMPLIANCE ..........................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Airlines for Am. v. City & Cnty. of San Francisco*,
598 F. Supp. 3d 748 (N.D. Cal. 2022) ...................................................................11

*Airlines for Am. v. City & Cnty. of San Francisco*,
78 F.4th 1146 (9th Cir. 2023) ...............................................................................11

*Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) ........................................ 7

*Cohen v. Apple Inc.*, 46 F.4th 1012 (9th Cir. 2022) ............................................ 16

*ConocoPhillips Alaska, Inc. v. Alaska Oil & Gas Conservation Comm'n*, No. 23-35512, 2026 WL 1477823 (9th Cir. May 27, 2026) .............................................................................................6, 15, 16, 18

*Couser v. Shelby Cnty., Iowa* , 223 L. Ed. 2d 509 (Jan. 12, 2026) ..................... 12

*Couser v. Shelby Cnty., Iowa*, 139 F.4th 664 (8th Cir. 2025) ............................ 12

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) ........................... 19

*Enbridge Energy, Ltd. P'ship. v. Whitmer*, 813 F. Supp. 3d 777 (W.D. Mich. 2025) ..............................................................................................12

*Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132 (1963) ................... 18

*In re Baker & Drake, Inc.*, 35 F.3d 1348 (9th Cir. 1994) ..................................... 5

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 959 F.3d 1201 (9th Cir. 2020) ....................................................... 15, 18

*Johnson v. Tyson Foods, Inc.*, 580 F. Supp. 3d 382 (N.D. Tex. 2022) ................................................................................................20

*Landgraf v. USI Film Prods.*, 511 U.S. 244, 273, 280 (1994) ........................... 13

*Oklahoma v. Castro-Huerta,* 597 U.S. 629 (2022) ............................................. 11

*Olympic Pipe Line Co. v. City of Seattle*, 316 F. Supp. 2d 900 (W.D. Wash. 2004) ...........................................................................................8, 9

*Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d 872 (9th Cir. 2006) ................................................................................................5, 8, 10, 11

*Portland Pipe Line Corp. v. City of S. Portland*, 288 F. Supp. 3d 321 (D. Me. 2017) ...................................................................................................... 7

*Reed v. Tyson Foods, Inc.*, No. 21-CV-01155-STA-JAY, 2021
     WL 5107725 (W.D. Tenn. Nov. 3, 2021) .......................................................................19

*Silver Dollar Grazing Ass'n v. U.S. Fish & Wildlife Serv.*,
     No. 07-35612, 2009 WL 166924 (9th Cir. Jan. 13, 2009) ..........................................17

*Texas Midstream Gas Services, LLC v. City of Grand Prairie*,
     608 F.3d 200 (5th Cir. 2010)..........................................................................................7

*Virginia Uranium, Inc. v. Warren*, 587 U.S. 761 (2019) ...............................................9, 11

*Washington Gas Light Co. v. Prince George's County Council*,
     711 F.3d 412 (4th Cir. 2013)...........................................................................................7

*Wyeth v. Levine*, 555 U.S. 555 (2009)........................................................................15, 16

**Rules & Regulations**

14 C.C.R. § 791.6(a) ...........................................................................................................21

14 C.C.R. § 791.6(d) ...........................................................................................................22

14 C.C.R. §§ 791 *et seq.*......................................................................................................21

Cal. Gov't Code § 670.37.52...............................................................................................22

Cal. Gov't Code § 8670.37.51.............................................................................................21

Cal. Gov't Code § 8670.37.51(d)(1) ...................................................................................21

Fed. R. Civ. P. 12(b)............................................................................................................10

Santa Barbara Cnty., Cal., Code § 25B ..............................................................................15

**Constitutional Provisions**

49 U.S.C. § 60104(c)........................................................................................................7, 13

49 U.S.C. § 60105(a).......................................................................................................... 14

49 U.S.C. §§ 60101 *et seq.*...................................................................................................5

50 U.S.C. § 4511(a).............................................................................................................17

50 U.S.C. § 4511 .................................................................................................................20

## I.    INTRODUCTION

Even accepting Petitioners and Plaintiffs Sable Offshore Corp. ("Sable Offshore"), Pacific Pipeline Company ("PPC"), and Pacific Offshore Pipeline Company's ("POPCO") (collectively, "Sable") and Petitioners and Plaintiffs ExxonMobil Corporation ("ExxonMobil"), Mobil Pacific Pipeline Company ("MPPC"), and ExxonMobil Pipeline Company's ("EMPCo") (collectively, "ExxonMobil affiliates") (together with Sable, "Petitioners") factual allegations as true in their Amended and Supplemental Verified Petition for Writ of Mandate and Complaint for Declaratory Relief and Damages ("FAC"), the Seventh Cause of Action ("COA") in the FAC cannot survive Intervenors Environmental Defense Center ("EDC"), Get Oil Out! ("GOO!"), Santa Barbara County Action Network ("SBCAN"), Sierra Club, and Santa Barbara Channelkeeper's ("SBCK") (collectively, "Intervenors") Motion to Dismiss Pursuant to Rule 12(b)(6) ("Motion") as to the three preemption claims.

The Opposition erroneously asserts that Intervenors' arguments present factual disputes that preclude dismissal. Preemption presents a pure question of law and here, the three preemption claims are the proper subject of a Rule 12(b)(6) motion as detailed below. *In re Baker & Drake, Inc.*, 35 F.3d 1348, 1352 (9th Cir. 1994).

*First*, Petitioners fail to state a claim for preemption under the Hazardous Liquid Pipeline Safety Act of 1979 ("PSA"), 49 U.S.C. §§ 60101, *et seq.* The Ninth Circuit decision relied upon in the Opposition actually aids Intervenors' position. *Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d 872 (9th Cir. 2006). There, the local jurisdiction imposed several conditions directly regulating pipeline safety that the Ninth Circuit held were preempted. *Id.* at 879-80. No comparable safety regulations are alleged here. Petitioners instead argue that, because a few supervisors made remarks that allegedly pertain to safety concerns, their application of Chapter 25B effectively set a safety standard. But courts do not examine a handful of decision-makers' subjective motivations to determine whether an ordinance regulates safety in a manner preempted by the PSA. They look to the express text of the enactment itself. Petitioners cannot identify any

actual safety standard imposed by the ordinance, and the statements they cite do not transform the ordinance into a pipeline safety regulation. Because Petitioners have failed to allege a safety standard subject to PSA preemption, this claim must be dismissed.

*Second*, regarding the preemption claim pursuant to the Defense Production Act (DPA) order (hereinafter, "DPA Order"), the Opposition improperly asks this Court to substitute an agency's purported view of the preemptive scope of its action for Congress' intent as expressed in the statute. As the Ninth Circuit recently reemphasized, that is not how preemption works. *ConocoPhillips Alaska, Inc. v. Alaska Oil & Gas Conservation Comm'n*, No. 23-35512, 2026 WL 1477823 (9th Cir. May 27, 2026). Every claim of preemption must be rooted in Congressional intent, and an agency order cannot preempt local law any more than the statute it implements. Petitioners' claim for conflict preemption is thus insufficiently pled.

*Finally*, the Opposition appears to assert a theory of implied field preemption based on California Government Code section 8670.37.51. Petitioners' novel interpretation of section 8670.37.51 as preempting local law is neither clearly pled nor coherently explained. Furthermore, Petitioners fail to allege how Chapter 25B, as applied, imposed financial requirements on Petitioners. They also rely on statements by individual Supervisors as evidence of preemption under state law, despite the well-established principle that the preemption analysis must turn on the substance and operation of the law, not the subjective motivations of individual decisionmakers.

For these reasons, this Court should dismiss the Seventh COA in full for failure to state a claim.

## II.    ARGUMENT

### A.    Petitioners Fail to State a Claim for Preemption under the PSA.

Dismissal of Petitioners' preemption claim under the PSA is necessary because, even if the express preemption provision applies,[1] it only preempts pipeline safety standards, leaving room for some local authority. 49 U.S.C. § 60104(c); *Cipollone v.*

---

[1] *See* Dkt. No. 70-1 at 12-14.

Intervenors' Reply ISO Motion to Dismiss Pursuant to Rule 12(b)(6)

*Liggett Group, Inc.*, 505 U.S. 504, 517 (1992) ("Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted."). Intervenors' Motion discussed cases similar to this one in which the courts established that regulatory actions that have merely incidental effects on safety and that do not themselves set safety standards are *not* preempted by the PSA. Dkt. No. 70-1 at 14-15; *see, e.g., Washington Gas Light Co. v. Prince George's County Council*, 711 F.3d 412, 421-22 (4th Cir. 2013); *Texas Midstream Gas Services, LLC v. City of Grand Prairie*, 608 F.3d 200. 211 (5th Cir. 2010); *Portland Pipe Line Corp. v. City of S. Portland*, 288 F. Supp. 3d 321, 429 (D. Me. 2017). The fundamental question when faced with an issue of PSA preemption is thus whether the local government imposed "direct and substantial" pipeline "safety standard[s]" within the meaning of section 60104(c) of the PSA. *Texas Midstream Gas Services*, 608 F.3d at 211. Here, no allegations demonstrate that the County has done so. The Opposition fails to overcome this defect in addition to other fatal flaws in Petitioners' PSA preemption claim.

First, the allegations in the FAC are insufficient to demonstrate that the County imposed any safety requirements on the Pipelines through the Chapter 25B process, as distinguishable from *Olympic Pipe Line Co.* Petitioners do not allege that the Board's decision affected operations, terminated any permits, or imposed requirements in a manner that would otherwise be exclusively governed by the PSA. Second, the Opposition incorrectly asserts that the subjective intent of decision-makers can form the basis for a claim for preemption. Finally, the Opposition admits that the Seventh COA "seeks *prospective* relief based on *current* preemption…." Dkt. No. 73 at 39. Yet, the factual allegations related to the PSA preemption claim are tethered to the time of the Board's decision—prior to the assertion of federal jurisdiction under the PSA. At the time of the Board's decision, the Pipelines were (and still are)[2] under a different statutory framework given the state's jurisdiction at the time of the decision that is not alleged in the FAC.

---

[2] *See* Dkt. No. 70-3 at 114-35.

Intervenors' Reply ISO Motion to Dismiss Pursuant to Rule 12(b)(6)

For the reasons detailed below, Petitioners fail to state a claim for preemption under the PSA and Intervenors' Motion should be granted.

1.     The Standard for Preemption under the PSA Set by the Ninth Circuit in *Olympic Pipe Line Co.* is Not Met Here.

The Opposition seeks to analogize this case to *Olympic Pipe Line Co.* Dkt. No. 73 at 34. But, as stated in the Opposition, that case involved a "list of pipeline safety demands," which Petitioners do not allege here. Dkt. No. 73 at 34. There, the court held that franchise and indemnity agreements between a city and pipeline operator contained "safety standards" that were preempted by the PSA. *Olympic Pipe Line Co.*, 437 F.3d at 879-80. A catastrophic accident previously caused a portion of a pipeline to shut down, and before the city decided whether to renew the franchise agreement with the pipeline operator, the city hired a consultant "to investigate possible pipeline integrity issues." *Id.* at 875.

The results of the investigation led the city to request that the operator "respond to thirty-three safety concerns before the [c]ity would determine whether it would agree to a new franchise agreement." *Id.* One such item was to perform a hydrostatic test, which the operator refused to do. *Id.* The city responded with two letters, one of which threatened suspension of the pipeline unless the operator "could prove the pipeline was safe…." *Id.* at 875-76. The operator then sued the city, alleging in part that the PSA preempted the city's actions. *Id.* at 876.

Importantly, the district court, in making a "narrow finding" of preemption, expressly acknowledged that its holding "did not preclude Seattle from taking other actions possibly affecting Olympic's continued operation of the pipeline." *Id.* at 876-77; *Olympic Pipe Line Co. v. City of Seattle*, 316 F. Supp. 2d 900, 907 (W.D. Wash. 2004), *aff'd*, 437 F.3d 872 (9th Cir. 2006). In its ruling, the district court explained that "[f]or example, Seattle's demand that Olympic provide liability insurance coverage for loss from the pipeline…would not likely be considered safety regulation that is preempted by federal law." *Id.*

On appeal, the Ninth Circuit agreed that the PSA expressly preempted the city's attempt to impose safety standards on the pipeline. *Id*. at 880. In reaching its conclusion, the Ninth Circuit focused on specific provisions in each agreement "that address safety concerns" governing "the pipeline system" itself. *Id*. For example, the court focused on a provision prohibiting the "construct[ion], reconstruct[ion], relocat[ion], readjust[ment] or repair [of] *the pipeline system…*" unless certain safety-related requirements were satisfied. *Id*. (emphasis added). This provision also gave the city the discretionary authority to "order such reconstruction, relocation, readjustment or repair of the pipeline system …because of the deterioration or unsafe condition of the pipeline system, … or for any other cause." *Id*. (emphasis added). The court also referenced another provision that required "weekly visual inspections [of the pipeline] and annual pressure tests…." *Id*.

Conversely, Petitioners' allegations fail to identify any "standards" set by the Board, or even any requirements or actions that could serve as standards and thereby be preempted. To try to bridge that gap, Petitioners reference an excerpt from the December 2025 Findings ("…Sable 'reflects a record of non-compliant or unsafe operations systemic in nature for the Facilities.'"), but fail to show anything equivalent to the "list of pipeline safety demands" at issue in *Olympic Pipe Line Co*. Dkt. No. 73 at 34-5. Moreover, the excerpt from the December 2025 Findings demonstrates a concern with *Sable's* record rather than the safety of the Pipelines themselves. Dkt. No. 64 at ¶ 105. Petitioners' remaining allegations pertain to statements by individual Supervisors. The Ninth Circuit in *Olympic Pipe Line Co*. did not consider the motivation of individual decision-makers in reaching its decision. Consistent with Supreme Court guidance, and discussed in detail in the following section, the subjective intent of decision-makers is generally regarded as "inappropriate" in a preemption analysis. *Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 776 (2019) (plurality opinion); *see id.* at 787-89 & n.2 (Ginsburg, J., concurring in the judgment).

Finally, the cases relied upon in Intervenors' Motion are on point and instructive to this Court's decision here. Dkt. No. 70-1 at 14-5. Those cases establish that incidental

safety concerns and local land use standards are not preempted by the PSA, which is undisputed in the Opposition. *Id.*; Dkt. No. 73 at 36. The Opposition claims here, however, that the Board directly considered pipeline safety in reaching its decision. *Id.* at 35. But the subjective intent of the regulator is not the test for preemption. Rather, as articulated by the Ninth Circuit in *Olympic Pipe Line Co.*, "[t]o determine whether the PSA preempts [the County's] action, [this Court must] begin with the statutory text." 437 F.3d at 877.

Applying this standard to the present case, the FAC does not allege that Chapter 25B directly regulates pipeline design, construction, operation, maintenance, or spill response. The FAC also does not assert that the Board made any findings, imposed any conditions, or otherwise regulated the safety of the Pipelines. Even the Opposition describes Chapter 25B as "prescrib[ing] narrow requirements for permit transfers…." Dkt. No. 73 at 15. If a permit transfer under Chapter 25B has any effect on pipeline safety, it is indisputably an incidental concern and thus not preempted by the PSA. Since there are no allegations demonstrating that the County has regulated safety in a manner preempted by the PSA, this issue presents a pure question of law and is therefore properly before this Court on a motion to dismiss pursuant to Rule 12(b)(6).

For the foregoing reasons, the standard set by the Ninth Circuit in *Olympic Pipe Line Co.* has not been met here, and Intervenors' cases are instructive. Petitioners have not sufficiently alleged a claim for federal preemption under the PSA.

2. <u>Inquiring into the Subjective Intent of Individual Supervisors Contravenes Guidance from the Supreme Court and is Insufficient to Support a Claim for Preemption under the PSA.</u>

Perhaps recognizing the gap between the Board's decision and anything resembling a safety standard, Petitioners turn, instead, to isolated remarks by individual Supervisors.[3] Petitioners suggest that if they were motivated by safety, that is enough to

---

[3] Notably, only one statement was allegedly made by a Supervisor during the December 2025 decision-making hearing; other statements were made during hearings prior to this Court's order on the writ on September 12, 2025. *See* Dkt. No. 73 at 35.

make any decision the Board reached an impermissible and preempted safety standard. Dkt. No. 73 at 34-5. But those remarks are insufficient as a matter of law to support a claim that the Board adopted a preempted safety standard.

In the preemption context, the Supreme Court "ha[s] long warned against undertaking potential misadventures into hidden state legislative intentions without a clear statutory mandate for the project." *Virginia Uranium, Inc.*, 587 U.S. at 776-77 (plurality opinion) (detailing the "well-known conceptual and practical [concerns]" underlying attempts to divine a multimember legislative body's intention); *see id.* at 787-89 & n.2 (Ginsburg, J., concurring in the judgment) (agreeing that an inquiry into a state legislature's motivation is generally inappropriate in preemption analysis); *see also Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022) ("The Supremacy Clause cannot be deployed to elevate abstract and unenacted legislative desires above state law." (Internal quotation marks and citation omitted)).

Here, there is no statutory mandate to undertake an extratextual expedition into legislative intent. Conducting such a subjective inquiry into the intent of a state or local regulator would unnecessarily introduce uncertainty into the preemption analysis. Instead, a court must look to the objective purpose on the face of the ordinance when analyzing federal preemption. *See, e.g., Olympic Pipe Line Co.,* 437 F.3d at 877-78 (not examining the government decisionmakers' subjective intent but looking to terms of proposed agreements); *see also Airlines for Am. v. City & Cnty. of San Francisco*, 598 F. Supp. 3d 748, 771 (N.D. Cal. 2022), *rev'd and remanded*, 78 F.4th 1146 (9th Cir. 2023) ("…in preemption cases, courts 'look[ ] primarily to the objective purpose clear on the face of the enactment, not to allegations about individual officials' motivations in adopting the policy.'").

Petitioners' reliance on *Couser* and *Enbridge Energy* is also misplaced. Dkt. No. 73 at 35. In *Couser*, which Intervenors also addressed in their Motion (Dkt. No. 70-1 at 15), the Eighth Circuit held that the counties' setback ordinances were preempted by the PSA, but its reasoning was rooted in the challenged ordinances' regulation of safety—not

the decision-makers' intent or offhanded statements in enforcing those setback requirements as Petitioners attempt to do here. *Couser v. Shelby Cnty., Iowa*, 139 F.4th 664, 670-71 (8th Cir. 2025), *cert. denied*, 223 L. Ed. 2d 509 (Jan. 12, 2026) ("This court looks beyond the rationale offered to evidence of the law's purpose.")

Likewise, the court in *Enbridge Energy, Ltd. P'ship. v. Whitmer*, in relevant part, concluded that the defendants invoked easement conditions in an attempt to regulate pipeline safety by issuing an order directing the shut down and permanent decommissioning of part of a pipeline. 813 F. Supp. 3d 777, 798-99 (W.D. Mich. 2025). The court found that the "primary motivation" for the conditions was to ensure pipeline safety, noting that the conditions specifically addressed structural integrity, corrosion risk, and stress on the pipeline. *Id*. at 799-800. The court determined "the *easement conditions* are exactly the kind of state-imposed safety standards that the Pipeline Safety Act intended to preempt." *Id*. at 800 (emphasis added). Again, the court did not base its decision on the intent of the regulator. Thus, Petitioners' cases do not support their proposition that statements made by individual decision-makers at a hearing are sufficient allegations to support their claim for preemption.

Since the Opposition makes clear that the PSA preemption claim is predominately based upon the alleged intent of a few Board members, Petitioners have not adequately alleged the grounds for preemption to support their claim under the PSA, warranting dismissal.

3.    Petitioners' PSA Preemption Claim is a Moving Target and the FAC Does Not Support a Claim for Retroactive Preemption.

In their Motion, Intervenors identify specific allegations in the FAC that cite events occurring *after* the Board's decision in an attempt to allege a preemptive effect of the PSA *at the time* of that decision. Dkt. No. 70-1 at 11-2; *see also* Dkt. No. 64 at ¶¶ 181-82 (*see e.g.,* "The County's reliance on the safety concerns…*as a reason to vote 'no'* is federally preempted under the PSA…." (emphasis added).). In response, the Opposition proposes amendments to the FAC to clarify that Petitioners only seek "*prospective* relief

based on *current* preemption…." Dkt. No. 73 at 39. But that is not clear on the face of the FAC. If Petitioners intend to narrow this claim as alleged in the Opposition, the FAC must be amended accordingly.

Even if Petitioners were to amend the FAC to be consistent with the Opposition's framing, Petitioners would nevertheless fail to state a claim for preemption, necessitating dismissal. The Opposition bases its "current preemption" theory on the "continue in force" language in the PSA. Dkt. No. 73 at 39; *see also* 49 U.S.C. § 60104(c) ("A State authority may not adopt or continue in force safety standards for interstate pipeline facilities…."). However, the FAC lacks any allegations about the County "continu[ing]" anything in force, much less safety standards. The Board made a one-time decision not to transfer the County permits and Petitioners are now hunting for a way to attack that decision, which predates the assertions of federal jurisdiction. The argument set forth in the Opposition is grasping at straws and wholly insufficient to state a claim for preemption under the PSA.

The Supreme Court's decision in *Landgraf v. USI Film Prods.* cited in the Opposition does not mandate a different result. 511 U.S. 244, 273, 280 (1994). There, the Court reaffirmed the presumption against statutory retroactivity and set forth a two-step test for applying a new law retroactively: first, "whether Congress expressly prescribed the statute's proper reach," and second, if not, "whether the new statute would have a retroactive effect…." *Id*. at 273, 280. The Court emphasized "the well-settled presumption against application of the class of new statutes that would have genuinely 'retroactive' effect." *Id.* at 277. The Court reasoned that "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly…." *Id.* at 265. The Opposition does not analyze the preemptive effect under the PSA pursuant to the *Landgraf* two-part test and therefore has neither demonstrated an express command of retroactivity in the PSA nor explained why the presumption against retroactivity would not apply. Furthermore, the Court's decision in *Landgraf* does not alter the fact that Petitioners have not offered any allegations in the

Intervenors' Reply ISO Motion to Dismiss Pursuant to Rule 12(b)(6)

FAC to support their claim that the County has "continue[d] in force safety standards…" in a manner preempted by the PSA.

In the alternative, if the allegations in Paragraphs 181-82 are to be taken as alleged, the Opposition fails to support the proposition that a decision pertaining to an *intra*state pipeline can somehow be preempted by subsequent federal action under the PSA. As set forth in detail in Intervenors' Motion, Congress preserved state jurisdiction over *intra*state pipelines in the PSA, expressly prohibiting PHMSA from "prescrib[ing] or enforc[ing] safety standards and practices for an intrastate pipeline facility or intrastate pipeline transportation to the extent that the safety standards and practices are regulated by a State authority." 49 U.S.C. § 60105(a). The Opposition responds that "either way, the *County* does not have jurisdiction," while still recognizing that a different statutory regime applies depending on whether a pipeline is under state or federal jurisdiction. Dkt. No. 73 at 38. As pled, Petitioners' pipeline safety preemption allegations are only rooted in the federal statutory regime.

Where Petitioners do not dispute that the assertion of federal jurisdiction under the PSA happened *after* the Board decision and the Opposition fails to cite legal authority for the proposition that an action post-dating the Board's decision could somehow preempt it at the time, Petitioners fail to support their claim for preemption under the PSA as alleged in the FAC.

**B.      Petitioners Fail to State a Claim for Preemption under the DPA Order.**

Dismissal of Petitioners' claims related to the DPA Order is also warranted. Contrary to the assertion in the Opposition that Intervenors' arguments are premised on "factual disputes" that cannot be "collaterally attack[ed]" in this proceeding, the question of the preemptive scope of the DPA Order is a pure question of law and thus the proper subject of this Motion. Moreover, Intervenors are not collaterally attacking anything. Rather it is *Petitioners* who are trying to argue that the DPA Order has preemptive effect, which tees up the legal question of whether it in fact does so. The issues before this Court are therefore appropriately raised in a Rule 12(b)(6) motion.

Regarding the claim for preemption under the DPA Order, the Seventh COA fails to state a claim upon which relief can be granted for three reasons. First, Petitioners ignore Congressional intent and limit their allegations to statements in the DPA Order without any analysis under the DPA. Their theory for establishing a claim for preemption is contrary to well-established case law, including a recent Ninth Circuit decision in *ConocoPhillips Alaska, Inc.,* 2026 WL 1477823. Second, Petitioners fail to allege sufficient facts to support their claim for conflict preemption because they have not shown an actual conflict between the DPA Order and the Board's decision to not transfer the Permits under Chapter 25B. Finally, the DPA Order was post-decisional, and the Opposition again attempts extratextual amendments to the FAC to narrow Petitioners' claim to be based on "*current* preemption." Dkt. No. 73 at 42. Yet the FAC allegations that form the basis of the obstacle preemption claim, albeit vague and conclusory, would rest upon a theory of retroactive preemption for which the Opposition provides no support.

1. The FAC Fails to Properly State a Claim for Preemption under the DPA Order Based on the Standard Articulated by the Ninth Circuit in *ConocoPhillips Alaska, Inc*.

The Opposition ignores the well-established Supreme Court precedent for evaluating a claim based on conflict preemption cited in Intervenors' Motion and maintains the meritless argument that "[t]he DPA Order, not the DPA, is the alleged source of preemption,…." Dkt. No. 73 at 41. Petitioners' argument relies on an overly broad interpretation of an agency's power to preempt local laws and ignores the long-standing principle that "'the purpose of Congress is the ultimate touchstone in every pre-emption case.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 959 F.3d 1201, 1211–12 (9th Cir. 2020) (*quoting Wyeth v. Levine*, 555 U.S. 555, 565 (2009). As noted in *ConocoPhillips Alaska, Inc*., a "regulation no more preempts state law than does the statute it implements." 2026 WL 1477823, at *4. Where, as here,

the statute does not expressly preempt state or local authority, the courts, not the agencies, must determine whether preemption exists. *Wyeth*, 555 U.S. at 576.

The same day that Petitioners filed their Opposition arguing that "[t]he DPA Order, not the DPA, is the alleged source of preemption," the Ninth Circuit issued its opinion in *ConocoPhillips Alaska, Inc.*, clarifying the limits on preemption based on agency regulation. Specifically, the court reiterated the requirement that "[f]or a federal regulation to preempt state law, 'it must fall 'within the scope of the [federal agency's] delegated authority,'' and 'the agency must have 'meant to pre-empt' state law.'" 2026 WL 1477823, at *4 (*quoting Cohen v. Apple Inc*., 46 F.4th 1012, 1028 (9th Cir. 2022)). The test articulated by the Ninth Circuit makes clear that a federal agency can only preempt state or local law when acting within its properly delegated authority. *Id.* Such an inquiry requires not only looking at the agency action, but also the Congressional intent underlying the authorizing statute.

There, ConocoPhillips sued the Alaska Oil and Gas Conservation Commission ("Commission") to prevent the Commission from publicly disclosing, pursuant to state law, well data that the company sought to keep confidential based on two theories of preemption: express and obstacle preemption. *Id.* at *1. The court disagreed with ConocoPhillips on all grounds, holding that "federal law neither expressly preempts the statute nor evinces a congressional purpose that would be obstructed by it." *Id.* In relevant part, the company asserted that Department of the Interior (DOI) regulations expressly preempted state law. *Id.* at *4. The court applied the two-part test (i.e., (1) whether the federal regulation falls within the scope of the federal agency's delegated authority, and (2) if the agency meant to preempt state law) and ultimately concluded that the federal regulation did not even apply to onshore well data and the source of DOI's authority to promulgate that regulation was based in a different statute. *Id.* at *4-5.

Here, Petitioners' claim suffers from a fatal defect: it fails to articulate any conflict with congressional intent and the scope of the DPA authority. As guided by the Ninth Circuit's decision in *ConocoPhillips Alaska, Inc.*, Petitioners' claim for federal

Intervenors' Reply ISO Motion to Dismiss Pursuant to Rule 12(b)(6)

preemption must be supported by allegations demonstrating that the Secretary intended to preempt Chapter 25B, as applied, *and* that the action is within the scope of the Secretary's delegated authority. Petitioners have made neither showing. As set forth in detail in Intervenors' Motion, the Secretary issued the DPA Order pursuant to the specific prioritization and allocation authority in Section 101(a) and (c) of the DPA. *See* Dkt. No. 70-1 at 18-22; Dkt. No. 64-11 at 2. Congress' purposes and objectives in enacting this section in the DPA were to provide the President with the power to "prioritize" one set of contracts over another and the power to "allocate" resources under those contracts. 50 U.S.C. § 4511(a). Yet Petitioners have now expressly conceded that their preemption claim is not based on Congress' purposes and objectives in enacting the DPA—just the DPA Order itself. That concession is fatal to their claim.

The Opposition offers no relevant legal authority for the proposition that the DPA Order is the sole "source of preemption;" only citing to a single slip copy of an unpublished decision. *See Silver Dollar Grazing Ass'n v. U.S. Fish & Wildlife Serv.*, No. 07-35612, 2009 WL 166924 (9th Cir. Jan. 13, 2009). This case does not support the proposition for which it was cited. It involved claims under the Administrative Procedure Act, which asserted that the U.S. Fish and Wildlife Service was arbitrary and capricious in violating the National Environmental Policy Act, an Executive Order (EO), and the Silver Dollar Habitat Management Plan. *Silver Dollar Grazing Ass'n,* 2009 WL 166924, at *1. Preemption was not at issue there and the court evaluated an entirely different statutory scheme that bears no relevance to the issues before this Court.

Because the FAC fails to allege facts demonstrating that Congress delegated authority to the Secretary to preempt Chapter 25B, Intervenors' Motion should be granted as to this claim.

//

//

//

//

Intervenors' Reply ISO Motion to Dismiss Pursuant to Rule 12(b)(6)

2.      Petitioners Fail to State a Claim that Chapter 25B, as Applied, is Preempted by the DPA Order under Conflict Preemption.

Not only have Petitioners failed to state a claim for express preemption, but they have also failed to properly plead a claim for conflict preemption—whether based on an alleged obstacle to compliance, or impossibility.

In *ConocoPhillips Alaska, Inc.,* the Ninth Circuit also rejected ConocoPhillips' claim of obstacle preemption. 2026 WL 1477823, at *5-6. The court began its analysis by evaluating whether there was an actual conflict between the state law and the purposes of the federal statute (a showing Petitioners here wholly fail to make). *Id.* at *6. The court determined that where Congress' objective was "'generalized,'" it would not "'infer that Congress made a 'deliberate choice' to preclude state regulations that overlap with federal law.'" *Id.* (*quoting In re Volkswagen*, 959 F.3d at 1221). The court further reasoned that Congress was aware of the state's role in regulating oil and gas and did not choose to displace the state's judgment about how best to promote the development of the oil and gas reserve. *Id.* Accordingly, the court found that the state regulations did not pose an obstacle to the federal law.

In *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 143 (1963), the Supreme Court rejected a claim of conflict preemption based on impossibility. This case, cited in the Opposition, supports Intervenors' argument that Petitioners have not adequately pled a claim for such preemption. In its decision, the Court held that nothing in the record demonstrated an "inevitable collision between two schemes of regulation, despite the dissimilarity of the standards," where a California statute gauged the maturity of avocados by oil content and federal marketing orders approved by the Secretary of Agriculture gauged the maturity of avocados grown in Florida by standards which attributed no significance to oil content. *Id.* at 143. Accordingly, the plaintiffs could comply with both statutory schemes. *Id.* Because the record revealed no "impossibility of dual compliance," the court declined to find conflict preemption. *Id.*

Petitioners here fail to allege a claim for conflict preemption pursuant to the DPA Order based on either a theory of obstacle preemption or impossibility preemption, and the Opposition does not demonstrate otherwise. The fatal defect in Petitioners' claim is that they do not allege how the application of Chapter 25B by the Board in fact makes it impossible to comply with the DPA Order (to the extent alleged) or "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress and the Executive Branch." Dkt. No. 64 at 53. The FAC alleges that "[t]he DPA Order requires Sable to 'immediately prioritize and allocate' and 'immediately commence performance under contracts or orders' for 'pipeline transportation services' from the offshore Santa Ynez Unit through the Pipeline system, including the Facilities at issue in this case, and 'maintain such compliance until such time as the conditions necessitating the issuance of this order abate or until Sable is directed otherwise.'" Dkt. No. 73 at 41. That being said, Petitioners have not alleged how the Board's decision on the requested permit transfer prevents them from complying with the DPA Order. Like in *Florida Lime & Avocado Growers, Inc.*, these allegations are insufficient to present an actual conflict between the two legal frameworks, as impossibility preemption requires. Petitioners' allegations, as pled, are therefore too speculative to support a claim for conflict preemption based on either theory. *See, e.g.,* Dkt. No. 64 at 53 ("The County's application of Chapter 25B to deny the Transfers is preempted *to the extent* that it conflicts with Sable's federal obligation to comply with the DPA Order." (Emphasis added).

Finally, Petitioners' cited cases do not command a different result. The *Crosby v. Nat'l Foreign Trade Council* case did not even concern the DPA. 530 U.S. 363 (2000). The Tennessee district court in *Reed*—an unpublished, out-of-district decision—denied a motion to remand in part because the court identified an actual conflict between state policy decisions for meat and poultry processor operations during the COVID-19 pandemic and the purpose of the DPA. *Reed v. Tyson Foods, Inc.*, No. 21-CV-01155-STA-JAY, 2021 WL 5107725, at *6 (W.D. Tenn. Nov. 3, 2021). As discussed above, this

fundamental requirement of an actual conflict between a state and federal law is missing from the FAC here. Finally, the *Johnson* case (also out-of-district) is distinguishable for the same reason as *Reed*, i.e., the court identified an actual conflict between the state law and the executive order because both concerned the "manner," "extent," and "conditions" of meat and poultry processors' operations. *Johnson v. Tyson Foods, Inc.*, 580 F. Supp. 3d 382, 388-89 (N.D. Tex. 2022), *aff'd,* No. 22-10171, 2023 WL 2645553 (5th Cir. Mar. 27, 2023). This case is also distinguishable because, there, the court determined that the President issued the executive order "pursuant to [] delegated DPA authority," and found that the President had made the requisite critical infrastructure determinations (*see* 50 U.S.C. § 4511). *Id.* at 389. Petitioners have not made any similar showing here.

For the foregoing reasons, the Seventh COA must be dismissed for failing to state a claim for preemption under the DPA Order.

### 3.    Petitioners Impermissibly Allege Retroactive Preemption that Does Not Support Their Claim for Preemption Under the DPA Order.

The Opposition again attempts extratextual amendments to the FAC by alleging their claim for preemption is based on "*current* preemption," citing to *Landgraf* without any analysis. Dkt. No. 73 at 42. But Petitioners miss the point. Intervenors challenge the allegation in Paragraph 183, which forms the basis of the obstacle preemption claim. The allegation claims that the Board "attempted" to "use Chapter 25B as a tool to frustrate Sable's compliance with the DPA order." Dkt. No. 64 at ¶ 183. Petitioners are trying to put a square peg in a round hole by claiming that the Board did something wrong based on facts that literally were not known at the time it reached its decision. It is not disputed that the DPA Order was issued three months after the challenged decision and was never part of the record. *Id.* at ¶¶ 98, 115. Given this timing, it is impossible for the Board to have relied on or sought to interfere with something that did not even exist at the time of the decision. To the extent Petitioners allege otherwise, neither the FAC nor their Opposition explains such a theory for how a DPA Order that the Board could not have considered can reach back in time and preempt a transfer decision. These deficiencies

further demonstrate that Petitioners' claim is illogical, unsupported by the pleaded facts, and insufficient to establish preemption.

### C.    Petitioners Fail to State a Claim for Preemption under State Law.

The Opposition claims that "OSPR 'has the exclusive authority to require that owners and operators have the financial wherewithal to cover costs associated with a worst-case scenario incident,'" citing California Government Code section 8670.37.51 (for the first time). Dkt. No. 73 at 43. This section states, in relevant part, "An owner or operator of a facility where a spill could impact waters of the state shall apply for and obtain a certificate of financial responsibility issued by the administrator for the facility or the oil to be handled, stored, or transported by the facility." Cal. Gov't Code § 8670.37.51(d)(1).

Although vague and unclear, the Opposition seems to allege a theory of implied field preemption based on section 8670.37.51, citing *O'Connell v. City of Stockton*, 41 Cal. 4th 1061, 1067 (2007). *Id. O'Connell* is fully distinguishable, however. The California Supreme Court there held that a city ordinance was impliedly preempted since the state statute occupied the whole field of penalizing crimes involving controlled substances. *Id.* at 1071. The Court reasoned that "[t]he comprehensive nature" of the state statutory scheme under the California Uniform Controlled Substances Act was "so thorough and detailed as to manifest the Legislature's intent to preclude local regulation." *Id.* at 1071. Petitioners fail to make the same requisite showing here and offer only conclusory assertions that "California has established general statewide regulations to ensure the financial responsibility of owners and operators for spills…." Dkt. No. 73 at 43. Such an assertion is neither supported by the statute itself nor its implementing regulations. Cal. Gov't Code § 8670.37.51; 14 C.C.R. §§ 791, *et seq.*

The stated purpose for the Office of Spill Prevention and Response's financial responsibility regulations "is to specify the procedures and timelines for obtaining and

//

//

renewing a certificate of financial responsibility." 14 C.C.R. § 791.6(a). However, that same regulation makes clear that:

> "[t]he required amounts of financial responsibility in no way restricts or sets financial limitations on any duty, obligation, or liability of the responsible party to the State of California or any other public or private entity. This includes civil penalties assessed pursuant to all applicable federal, state and local laws."

*Id.* at § 791.6(d). This provision suggests that the state Legislature anticipated concurrent liabilities arising under other federal, state, and local laws, thereby cutting against Petitioners' argument that the state intended to occupy the entire regulatory field.

Moreover, the effect of a certificate is described as "conclusive evidence that the person or entity holding the certificate is the party responsible for the specified vessel, facility, or oil for purposes of determining liability pursuant to this chapter." Cal. Gov't Code § 670.37.52. Thus, the express terms of the statute establish that it is intended to identify who bears responsibility under the state scheme, but it does not purport to limit the scope of that responsibility or preclude additional liability arising under local law. Petitioners' allegations are therefore entirely insufficient to state a claim for preemption.

Furthermore, like the other preemption claims in the Seventh COA, Petitioners rely on various statements by Board members during the Chapter 25B proceedings as evidence of a preemptive effect. Dkt. No. 73 at 44. As discussed in detail in the preceding sections, these allegations are likewise legally deficient to support Petitioners' state law preemption claim.

Thus, Petitioners' allegations fail to state a claim and the Seventh COA must be dismissed in full.

## III.   CONCLUSION

For these reasons, this Court should dismiss the Seventh COA.

Dated: June 17, 2026

                                */s/ Linda Krop*

LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
TARA C. RENGIFO (Bar No. 307670)
trengifo@environmentaldefensecenter.org
JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Tel.: (805) 963-1622 / Fax: (805) 962-3152

*Attorneys for Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper*

Intervenors' Reply ISO Motion to Dismiss Pursuant to Rule 12(b)(6)

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper, certifies that this brief contains 6,206 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 17, 2026              */s/ Linda Krop*

LINDA KROP (Bar No. 118773)
lkrop@environmentaldefensecenter.org
TARA C. RENGIFO (Bar No. 307670)
trengifo@environmentaldefensecenter.org
JEREMY M. FRANKEL (Bar No. 344500)
jfrankel@environmentaldefensecenter.org
ENVIRONMENTAL DEFENSE CENTER
906 Garden Street
Santa Barbara, CA 93101
Tel.: (805) 963-1622 / Fax: (805) 962-3152

*Attorneys for Environmental Defense Center, Get Oil Out!, Santa Barbara County Action Network, Sierra Club, and Santa Barbara Channelkeeper*

Intervenors' Reply ISO Motion to Dismiss Pursuant to Rule 12(b)(6)