LATHAM & WATKINS LLP
 Jessica Stebbins Bina (Bar No. 248485)
*jessica.stebbinsbina@lw.com*
10250 Constellation Blvd. Suite 1100
Los Angeles, CA 90067
Telephone:  +1 424.653.5500
Facsimile:  +1 424.653.5501

*Attorneys for Plaintiffs and Petitioners Sable*
*Offshore Corp., Pacific Pipeline Company,*
*and Pacific Offshore Pipeline Company*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABLE OFFSHORE CORP. et al., | CASE NO. 2:25-cv-04165-DMG-CTS |
| Petitioners/Plaintiffs, | **SABLE'S NOTICE OF MOTION, MOTION TO ALTER OR AMEND JUDGMENT OR ORDER, AND SUPPORTING MEMORANDUM** |
| v. | |
| COUNTY OF SANTA BARBARA et al., | Complaint Filed:  May 8, 2025 |
| Respondents/Defendants. | Date:      October 9, 2026 |
| and | Time:     9:30 a.m. |
| ENVIRONMENTAL DEFENSE CENTER, et al. | Ctrm.:    8C |
| Intervenors. | Judge:    Dolly M. Gee |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 9, 2026 at 9:30 a.m., or as soon thereafter as this matter may be heard, in the Courtroom of the Honorable Dolly M. Gee of the District Court for the Central District of California, located in Courtroom 8C of the Felicitas and Gonzalo Mendez United States Courthouse, 350 West 1st Street, Los Angeles, California, 90012-4565, Petitioners and Plaintiffs Sable Offshore Corp. ("Sable Offshore"), Pacific Pipeline Company ("PPC"), and Pacific Offshore Pipeline Company ("POPCO") (collectively, "Sable"), will and do hereby respectfully move this Court under Federal Rule of Civil Procedure 59(e) to alter or amend its July 14, 2026 Order re Defendants' Motion to Dismiss and Intervenors' Motion to Dismiss, Dkt. 83, or in the alternative for modification of the Order under Federal Rule of Civil Procedure 54(b).

This motion is supported by the accompanying Memorandum of Points and Authorities, the Court's record on this matter, including all pleadings filed to date, and any other evidence or argument that the Court may consider in deciding this motion.

This Motion is made following the Local Rule 7-3 Conference of Counsel which took place via videoconference at approximately 11:00 a.m. on August 11, 2026. *See* Decl. of Jessica Stebbins Bina ("Bina Decl.") ¶ 3. The attorneys who participated in the conference were Jessica Stebbins Bina (Lead Trial Counsel) and Lauren Kaplan, counsel for the Exxon Mobil Petitioners, Callie Patton Kim (Lead Trial Counsel), counsel for the County, and Linda Krop (Lead Trial Counsel) and Tara Rengifo, counsel for EDC Appellants. *Id.*

Dated:  August 11, 2026

LATHAM & WATKINS LLP


By /s/ *Jessica Stebbins Bina*
　Jessica Stebbins Bina

*Attorneys for Plaintiffs and
Petitioners Sable Offshore Corp.,
Pacific Pipeline Company, and
Pacific Offshore Pipeline Company*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     LEGAL FRAMEWORK ...................................................................................... 1

III.    ARGUMENT ...................................................................................................... 2

        A.      FINAL DEVELOPMENT PERMITS VEST WHEN
                INITIALLY RELIED UPON AND RUN WITH THE
                LAND. ............................................................................................... 3

        B.      CHAPTER 25B CANNOT RETROACTIVELY
                TRANSFORM VESTED RIGHTS INTO
                CONTINGENT RIGHTS. ..................................................................... 5

IV.     CONCLUSION .................................................................................................... 8

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
LOS ANGELES

i

CASE NO. 2:25-cv-04165-DMG-CTS
MOTION TO ALTER OR AMEND JUDGMENT OR
ORDER

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Allstate Ins. Co. v. Herron*,
634 F.3d 1101 (9th Cir. 2011)................................................................................2

*Anderson v. City of La Mesa*,
118 Cal. App. 3d 657 (Ct. App. 1981) ...................................................................6

*Anza Parking Corp. v. City of Burlingame*,
195 Cal. App. 3d 855 (1987)..............................................................................4, 7

*Avco Cmty. Devs., Inc. v. South Coast Reg'l Comm'n*,
17 Cal. 3d 785 (1976)............................................................................................4

*Bauer v. City of San Diego*,
75 Cal. App. 4th 1281 (1999)............................................................................3, 7

*Bautista v. Santacruz*,
813 F. Supp. 3d 1075 (C.D. Cal. 2025)..................................................................2

*Budd v. City of Santa Maria*,
266 F. App'x 661 (9th Cir. 2008)...........................................................................5

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*,
690 F.2d 1240 (9th Cir. 1982)................................................................................1

*Goat Hill Tavern v. City of Costa Mesa*,
6 Cal. App. 4th 1519 (1992)...............................................................................4, 6

*Malibu Mountains Recreation, Inc. v. Cnty. of Los Angeles*,
67 Cal. App. 4th 359 (1998)...........................................................................3, 4, 5

*Pardee Constr. Co. v. Cal. Coastal Comm'n*,
95 Cal. App. 3d 471 (1979)...............................................................................5, 6

*St. Clair v. Cnty. of Okanogan*,
154 F.4th 1154 (9th Cir. 2025)..............................................................................2

*U.S. v. Martin*,
226 F.3d 1042 (9th Cir. 2000)................................................................................2

**STATUTES**

Cal. Gov't Code § 65909 ................................................................................................ 7

**RULES**

Fed. R. Civ. P. 54(b) ............................................................................................... 1, 2

Fed. R. Civ. P. 59(e) ............................................................................................. 1, 2, 8

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

CASE NO. 2:25-cv-04165-DMG-CTS
MOTION TO ALTER OR AMEND JUDGMENT OR ORDER

## I.   INTRODUCTION

Sable respectfully moves this Court under Federal Rule of Civil Procedure 59(e), or in the alternative under Rule 54(b), to alter or amend its July 14, 2026 Order re Defendants' Motion to Dismiss and Intervenors' Motion to Dismiss, Dkt. 83 (the "Order") to the extent it dismissed Sable's claims under the Takings Clause (Claims 5 and 6 of the First Amended Complaint ("FAC")) with prejudice.  The Order contains a manifest error of law regarding when Final Development Permits ("FDPs") vest.  This Court correctly held that FDPs vest when they are granted and the applicant thereafter acts in reliance upon the grant.  But the Court erred by looking solely at Sable's actions—rather than the actions of the original permittees—to determine whether the FDPs had vested.

Under settled California law, once a permit vests through the original permittee's substantial reliance, it becomes a property right that runs with the land and passes automatically to subsequent purchasers.  Here, the FDPs were issued in the 1970s, 1980s, and 1990s, and the original permittees constructed and operated the Facilities for decades in full reliance upon them.  Those rights vested long before Chapter 25B was enacted in 2001 and long before Sable purchased the Facilities.  The County cannot, through a subsequently enacted ordinance, retroactively transform those already-vested property rights into contingent rights subject to discretionary re-approval.  The Order's contrary conclusion produces an internal inconsistency within its own legal framework: rights that concededly "run with the Facilities" cannot simultaneously be "not vested" merely because a subsequent administrative transfer was denied.  Order at 7.  Sable respectfully urges that this error of law warrants correction.

## II.   LEGAL FRAMEWORK

"Rule 59(e) provides an efficient mechanism by which a trial court judge can correct an otherwise erroneous judgment."  *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1249 (9th Cir. 1982).  "In general, there

are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011). "A court considering a Rule 59(e) motion is not limited merely to these four situations, however." *Id.* "Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion." *Id.* A Rule 59(e) motion is a proper vehicle to raise errors of law in an opinion after dismissal with prejudice. *See St. Clair v. Cnty. of Okanogan*, 154 F.4th 1154, 1158 (9th Cir. 2025). Alternatively, under Rule 54(b), any non-final order "may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also Bautista v. Santacruz*, 813 F. Supp. 3d 1075, 1083 (C.D. Cal. 2025) (same). Such modification is committed to the Court's sound discretion. *U.S. v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000) (finding motion to reconsider was proper and timely because the district court's initial order was not final).

## III.    ARGUMENT

Sable seeks relief because the Order reflects a manifest error of law as to when FDPs vest, truncating Sable's vested rights that contravenes well-established California law. The well-pleaded facts, taken as true, establish that the FDPs were vested rights at the time Sable acquired the Facilities. Under well-established California law, this means that the FDPs transferred to Sable as a matter of law when it acquired the Facilities, regardless of the existence of Chapter 25B. The Court's conclusion that the rights did not vest in Sable is mistaken.

## A.    FINAL DEVELOPMENT PERMITS VEST WHEN INITIALLY RELIED UPON AND RUN WITH THE LAND.

This Court correctly held that "[a]n FDP is akin to a Conditional Use Permit ('CUP'), which is recognized in California law as a property right that runs with the land rather than the owner."  Order at 7 (collecting cases).  And this Court also correctly held that "[l]ike a CUP, an FDP vests when it 'has been granted and the successful applicant has thereafter acted upon the grant to his or her detriment,'" *id.* (quoting *Malibu Mountains Recreation, Inc. v. Cnty. of Los Angeles*, 67 Cal. App. 4th 359, 367 (1998)).  However, the Court then held that "even if an FDP is a property right that runs with the Facilities, it is not a vested entitlement as to Sable" because "Sable's FDP applications have conclusively been denied" and thus, since "the permit or license has been denied, the right has not yet vested."  Order at 7-8 (citing *Malibu Mountains Recreation*, 67 Cal. App. 4th at 367).

The Court's conclusion was error.  As described in the First Amended Petition ("FAC"), *see* Dkt. 64, and the Second Amended Petition ("SAC"),[1] *see* Dkt. 86, the FDPs were issued in the 1970s, 1980s, and 1990s—decades before Chapter 25B— and the original permittees thereafter constructed and operated the Facilities in reliance upon them.  FAC ¶¶ 46-49; SAC ¶¶ 26-31, 149.[2]  Once the initial permit is granted and the original owner acts in reliance upon it, the permit runs with the land ***and passes to subsequent owners***, who are likewise entitled to rely upon the vested right they have purchased with the land.  *See Malibu Mountains Recreation*, 67 Cal. App. 4th at 369-70; *Bauer v. City of San Diego*, 75 Cal. App. 4th 1281, 1295 (1999)

---

[1] While the Court's order dismissed the FAC, Sable quotes the SAC to demonstrate that it could plead around any identified deficiency, further demonstrating that dismissal with prejudice was error.

[2] ExxonMobil and its affiliates were the original holders of the FDPs for the SYU and POPCO, and Celeron Pipeline Company of California was the original holder of the FDP for the Pipeline.  FAC ¶ 47; SAC ¶¶ 28-32, 58.  The SYU FDP issued in 1987, the POPCO FDPs issued in 1974 and 1993, and the Pipeline FDPs issued in 1988.  FAC ¶ 47; SAC ¶¶ 28-30.  Following the issuance of the FDPs, the original permittees constructed and operated the Facilities, investing many millions of dollars in so doing.  FAC ¶ 48; SAC ¶¶ 149-151.

("[T]he grant of a CUP with subsequent reliance by the permittee creates a fundamental vested right that subjects a revocation to judicial review[.]" (citing *Malibu Mountains Recreation*, 67 Cal. App. 4th at 368)); *Goat Hill Tavern v. City of Costa Mesa*, 6 Cal. App. 4th 1519, 1527-29 (1992) (right to continue an established business under a CUP is "sufficiently personal, vested and important to preclude its extinction by a nonjudicial body").

*Malibu Mountains Recreation* lays out the relevant law: although it is true that "until a permit or license is revoked, no right has vested[,] . . . [t]he rule is otherwise [] where a permit or license has been granted and the successful applicant has thereafter acted upon the grant to his or her detriment.  In such instance, the applicant has acquired a vested right."  67 Cal. App. 4th at 367 (citing *Avco Cmty. Devs., Inc. v. South Coast Reg'l Comm'n*, 17 Cal. 3d 785, 791 (1976)).  Because the FDPs were vested rights that run with the Facilities, Sable acquired the FDPs when it acquired the Facilities themselves.  "[T]he granting of a CUP with subsequent reliance by the permittee creates a fundamental vested right" that "is not a personal right of the permittee.  Instead, it is a property right that runs with the land, not with the owner." *Malibu Mountains Recreation*, 67 Cal. App. 4th at 369 (citing *Anza Parking Corp. v. City of Burlingame*, 195 Cal. App. 3d 855, 858 (1987)).

Where, as here, "[i]t is clear from the record that the prior owner of the property acted in reliance on the CUP for at least some period of time, . . . [t]he CUP was in force at the time [the subsequent purchaser] bought the property," and the subsequent purchaser is **"not required to obtain a new CUP,"** because that purchaser **"accede[s] to the same rights as held by the previous owner**." *Malibu Mountains Recreation*, 67 Cal. App. 4th at 370 (emphasis added).  A court engages in a "basic error" in "looking solely at [a subsequent purchaser's] actions to see if [the subsequent purchaser] acted in reliance on the CUP," because such an analysis "treat[s] the CUP as personal to" the subsequent purchaser.  *Malibu Mountains Recreation*, 67 Cal. App. 4th at 369.  A "CUP is not a personal right of the permittee"

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

CASE NO. 2:25-cv-04165-DMG-CTS
MOTION TO ALTER OR AMEND JUDGMENT OR
ORDER

but is instead "a property right that runs with the land, not with the owner." *Budd v. City of Santa Maria*, 266 F. App'x 661, 663 (9th Cir. 2008) (denying a former owner's vested-rights argument because "the CUP was transferred to the purchaser.") (internal citation omitted).

The above principles demonstrate that Sable sufficiently pleaded that the FDP rights vested before it acquired the Facilities, such that the FDPs constituted property rights that transferred ***automatically*** to it upon the Facilities' sale, and that the holding that Sable lacks a vested right to the FDPs is erroneous. "Since the [FDPs] run[] with the land, [Sable] obtained the same status as the prior owner." *Malibu Mountains Recreation*, 67 Cal. App. 4th at 370. As with the CUP in *Malibu Mountains Recreation*, "[i]t is clear from the record that the prior owner of the property acted in reliance on the [FDPs] for at least some period of time," 67 Cal. App. 4th at 370, and those original FDPs continued to govern the Facilities at the time Sable purchased them, as they remain in force in perpetuity. Nothing in the FDPs required Sable to "obtain a new [FDP]," *id.* Indeed, as alleged by Petitioners, the FDPs "do not include any requirement that subsequent owners, operators, or guarantors of the Facilities obtain additional approval from the County to take advantage of the vested rights to own and operate the Facilities[.]" FAC ¶ 49; SAC ¶ 32. Sable therefore "accede[d] to the same rights as held by the previous owner." *Malibu Mountains Recreation*, 67 Cal. App. 4th at 370.

**B.    CHAPTER 25B CANNOT RETROACTIVELY TRANSFORM VESTED RIGHTS INTO CONTINGENT RIGHTS.**

Neither the passage of Chapter 25B, nor Sable's participation in the process it outlines, voided the vested FDP rights or prevented their transfer to Sable. California law is emphatic that once a permit has vested through substantial reliance, "[t]he right possessed by [the permittee] [is] in the nature of a property right. Such a right is rooted in the Constitution." *Pardee Constr. Co. v. Cal. Coastal Comm'n*, 95 Cal. App. 3d 471, 479 (1979). "Interference with the right to continue an

established business is far more serious than the interference a property owner experiences when denied a conditional use permit in the first instance.  Certainly, this right is sufficiently personal, vested and important to preclude its extinction by a nonjudicial body." *Goat Hill Tavern*, 6 Cal. App. 4th at 1529.  A municipality may revoke such a permit only if "the permittee fails to comply with reasonable terms or conditions expressed in the permit granted" or "if there is a compelling public necessity." *Id.* at 1530; *see also id.* ("Once a use permit has been properly issued the power of a municipality to revoke it is limited.").

Courts have applied this principle to protect property owners who built in reliance on governmental permits, even where subsequent legal requirements would otherwise prevent their continued use.  The *Pardee* court went so far as to hold that where a developer's vested right was "adjudicated, approved, found to be valid," a subsequently enacted regulation could not "negate a conceded vested right," even where the developer had allowed its building permits to lapse. *Id.* at 480-81.

The same logic applies here.  As detailed above and in Petitioners' FAC and SAC, the County issued the FDPs, the original permittees constructed and operated the Facilities in full reliance upon them, and the rights vested prior to Sable's purchase.  The County could not, in a subsequently-enacted Chapter 25B, retroactively impose new conditions on those already-vested rights. [3]  Because the FDPs vested decades before Chapter 25B was enacted, the County cannot now condition the continuation of those already-vested rights upon a new layer of discretionary approval.  *See Pardee*, 95 Cal. App. 3d at 479 ("If the Legislature is without authority to retroactively deprive [a permittee] of a vested right, a fortiori [an administrative body], by its regulation, was without authority to do so."); *Anderson v. City of La Mesa*, 118 Cal. App. 3d 657, 660 (Ct. App. 1981) (city

---

[3] The SAC additionally alleges that "[t]here is no language in the text of Chapter 25B making it retroactive or expressly applying it to already-issued permits in existence at the time the ordinance was enacted." SAC ¶ 53.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

6

CASE NO. 2:25-cv-04165-DMG-CTS
MOTION TO ALTER OR AMEND JUDGMENT OR
ORDER

estopped from enforcing subsequently discovered requirement against homeowner who built in reliance on permit); *Bauer*, 75 Cal. App. 4th at 1295-96 (city could not "deem[] [owner's] grandfathered rights automatically terminated without providing [owner] with an opportunity to be heard").

Furthermore, California law expressly prohibits a local government from doing what the Court's order claims Chapter 25B does—prevent property owners from transferring their vested rights. California Government Code bars local government from conditioning a use permit "for any purpose not reasonably related to the use of the property for which the . . . use permit is requested." Cal. Gov't Code § 65909. Applying this statute, the Court of Appeal has held that a conditional use permit "may not lawfully (and perhaps may *not* constitutionally) be conditioned upon [the] permittee's having no right to transfer it with the land," and that such a condition, "if imposed, is beyond the *power* of the zoning authority, and is *void*." *Anza Parking*, 195 Cal. App. 3d at 858 (internal citation omitted) (applying § 65909 to hold nontransferability condition on CUP unlawful).

If a nontransferability condition cannot be imposed *at the time a CUP is issued*, then *a fortiori* a subsequently enacted ordinance cannot retroactively impose such a condition on permits that already issued without it. That is precisely what the Court's Order holds Chapter 25B does with respect the FDPs: it takes permits issued in the 1970s, 1980s, and 1990s—with no transfer-approval requirement, FAC ¶ 49; SAC ¶ 32—and imposes, after the fact, a discretionary transfer-approval process that functions as a *de facto* nontransferability condition on already-vested rights. This is ultra vires under § 65909 and the constitutional principles recognized in *Pardee* and *Anza Parking*.

The well-pleaded facts in the FAC established that the FDPs for the SYU and POPCO Facilities are decades-old, fully vested rights that run with the land. Those rights transferred to Sable as a matter of law when it purchased the FDPs, and they cannot be retroactively conditioned by a subsequently enacted ordinance. This

Court's Order contains an internal inconsistency within its own legal framework in concluding that rights which concededly "run with the Facilities" could simultaneously be "not vested" merely because a subsequent administrative transfer was denied. Order at 7. That internal inconsistency constitutes a manifest error of law warranting modification under Rule 59(e).

## IV.   CONCLUSION

Based on the foregoing, Sable respectfully requests that the Court amend its Order, reversing its holding that the FDPs are not vested entitlements as to Sable and reversing the order dismissing Sable's Takings Clause claims with prejudice.

Dated:  August 11, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/*Jessica Stebbins Bina*
Jessica Stebbins Bina
*Jessica.stebbinsbina@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Tel.:  (424) 653-5500
Fax:  (424) 653-5501

*Attorneys for Plaintiffs and Petitioners Sable Offshore Corp., Pacific Pipeline Company, and Pacific Offshore Pipeline Company*

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Petitioners Sable Offshore Corp., Pacific Pipeline Company, and Pacific Offshore Pipeline Company, certifies that this brief contains 2,584 words, which complies with the word limit of L.R. 11-6.1.

Dated: August 11, 2026                    /s/*Jessica Stebbins Bina*
                                          Jessica Stebbins Bina

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

9

CASE NO. 2:25-cv-04165-DMG-CTS
MOTION TO ALTER OR AMEND JUDGMENT OR
ORDER