SANTA BARBARA COUNTY COUNSEL
RACHEL VAN MULLEM, County Counsel
CALLIE KIM, Deputy County Counsel (SBN 257213)
105 East Anapamu Street, Suite 201
Santa Barbara, California 93101
Telephone (805) 568-2950 / Fax (805) 568-2982
E-mail: ckim@countyofsb.org

Attorneys for Respondents and Defendants
COUNTY OF SANTA BARBARA and
SANTA BARBARA COUNTY
BOARD OF SUPERVISORS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABLE OFFSHORE CORP., et al.,<br><br>Plaintiffs/Plaintiffs,<br><br>v.<br><br>COUNTY OF SANTA BARBARA, *et al.*,<br><br>Respondents/Defendants,<br><br>and<br><br>ENVIRONMENTAL DEFENSE CENTER, *et al.*,<br><br>Intervenors. | Case No: 2:25-CV-4165-DGM (AGRx)<br><br>**COUNTY DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED PETITION AND COMPLAINT IN PART**<br><br>Judge: Hon. Dolly M. Gee<br>Courtroom: 8C, First St. Courthouse<br><br>Hearing: October 9, 2026 at 9:30 a.m.<br><br>Complaint Filed: May 8, 2025 |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... 3

I. INTRODUCTION ..... 7

II. STATEMENT OF FACTS ..... 8

III. LEGAL STANDARDS ..... 10

IV. ARGUMENT ..... 11

A. EXXONMOBIL AFFILIATES FAIL TO STATE A TAKINGS CLAIM. ..... 11

1. ExxonMobil affiliates have not adequately alleged diminution in value that rises to the level of a compensable taking. ..... 12

2. ExxonMobil affiliates have not adequately alleged the County interfered with any objectively reasonable investment-backed expectations. ..... 14

B. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE SUPREMACY CLAUSE OF THE UNITED STATES CONSTITUTION AND PIPELINE SAFETY ACT. ..... 17

1. Chapter 25B does not conflict with the Special Permit. ..... 17

2. The Pipeline Safety Act Does Not Preempt Chapter 25B. ..... 19

C. PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT. ..... 22

1. The County did not violate section 2.5.2 of the Agreement. ..... 23

2. The County did not violate section 2.5.3 of the Agreement. ..... 23

3. The County did not violate sections 3.1.1 and 3.1.2 of the Agreement. ..... 24

4. Plaintiffs' construction would render the Agreement invalid. ..... 26

V. CONCLUSION ..... 27

CERTIFICATE OF COMPLIANCE ..... 28


SANTA BARBARA COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

# TABLE OF AUTHORITIES

Cases

*Andrus v. Allard*,
444 U.S. 51 (1979)............................................................ 13, 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................ 10, 11

*Avco Community Developers, Inc. v. South Coast Regional Com.*,
17 Cal.3d 785 (1976)............................................................26, 27

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................ 10

*Bridge Aina Le'a, LLC v. Land Use Comm'n*,
950 F.3d 610 (9th Cir. 2020)............................................................13, 14

*Cedar Point Nursery v. Hassid*,
594 U.S. 139 (2021)............................................................ 11

*Colony Cove Props., LLC v. City of Carson*,
888 F.3d 445 (9th Cir. 2018)............................................................12, 13, 14

*Concrete Pipe & Prods. of California, Inc. v. Constr. Laborers Pension Tr. for S. California*,
508 U.S. 602 (1993)............................................................ 15

*Cotta v. City & Cnty. of San Francisco*,
157 Cal. App. 4th 1550 (2007)............................................................26

*Darlington, Inc.*,
358 U.S. 84 (1958)............................................................ 15

*Deanco Healthcare, LLC v. Becerra*,
365 F. Supp. 3d 1029 (C.D. Cal. 2019)............................................................ 21

*Diaz v. Macys W. Stores, Inc.*,
101 F.4th 697 (9th Cir. 2024)............................................................25

*Discovery Builders, Inc. v. City of Oakland*,
92 Cal. App. 5th 799 (2023)............................................................26



SANTA BARBARA COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

*Draper v. Chiapuzio*,
9 F.3d 1391 (9th Cir. 1993)....................................................18

*Evans Creek, LLC v. City of Reno*,
2022 WL 14955145 (9th Cir. Oct. 26, 2022)..................................13

*Florida Lime & Avocado Growers, Inc. v. Paul*,
373 U.S. 132 (1963).............................................................18

*Guggenheim v. City of Goleta*,
638 F.3d 1111 (9th Cir. 2010)..................................................15

*Hines v. Davidowitz*,
312 U.S. 52 (1941)..............................................................18

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013)..................................................11

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
295 F. Supp. 3d 927 (N.D. Cal. 2018)........................................22

*Jones v. Google LLC*,
73 F.4th 636 (9th Cir. 2023)....................................................20

*Lingle v. Chevron U.S.A. Inc.*,
544 U.S. 528 (2005).............................................................12

*Murr v. Wisconsin*,
582 U.S. 383 (2017)........................................................11, 15

*Oregon Firearms Fed'n v. Kotek*,
682 F. Supp. 3d 874 (D. Or. 2023)............................................13

*Pakdel v. City & Cnty. of San Francisco*,
636 F. Supp. 3d 1065 (N.D. Cal. 2022).......................................17

*Pauma Band of Luiseno Mission Indians of Pauma & Yuima Rsrv. v. California*,
813 F.3d 1155 (9th Cir. 2015)..................................................25

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

*Penn Central Transportation Co. v. City of New York*,
438 U.S. 104 (1978)………………………………………………………… 11

*Pharm. Rsch. & Manufacturers of Am. v. Stolfi*,
153 F.4th 795 (9th Cir. 2025)……………………………………………..15

*Prop. Rsrv., Inc. v. Superior Ct.*,
168 Cal. Rptr. 3d 869 (2014)……………………………………………...13

*Puerto Rico v. Franklin Calif. Tax-Free Tr.*,
579 U.S. 115 (2016)………………………………………………………… 20

*Rancho de Calistoga v. City of Calistoga*,
800 F.3d 1083 (9th Cir. 2015)……………………………………………….15

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986)……………………………………………….16

*Sprewell v. Golden State Warriors,*
266 F.3d 979 (9th Cir. 2001)……………………………………………...10

*Swenson v. File*,
475 P.2d 852 (1970)……………………………………………………… 25

*U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*,
281 F.3d 929 (9th Cir.2002)…………………………………………………25

*Valle del Sol Inc. v. Whiting*,
732 F.3d 1006 (9th Cir. 2013)……………………………………………….21

**Statutes**

49 U.S.C. § 60118(c) ....................................................................................17, 19

49 U.S.C. § 60120(c) ........................................................................................22

49 U.S.C.A. § 60102.........................................................................................20

49 U.S.C.A. § 60102(a)(2)(c) .................................................................20, 25, 26

49 U.S.C.A. § 60104(c) ....................................................................................20

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

49 U.S.C.A. § 60104(e) ........................................22
49 U.S.C.A. § 60118 ........................................19
Cal. Const., art. I, § 19 ........................................11
Public Law 104-304 ........................................26
U.S. Const., 5th ........................................11

**Rules**

Federal Rule of Civil Procedure 8 ........................................11
Federal Rule of Civil Procedure 8(a)(2) ........................................12
Federal Rule of Civil Procedure 12(b)(6) ........................................11, 17

**Regulations**

49 C.F.R. § 190.341 ........................................18, 20
49 C.F.R. § 190.341(a) ........................................20
49 C.F.R. § 190.341(c) ........................................20
49 C.F.R. § 195.503 ........................................22
49 C.F.R. § 195.505 ........................................22
49 C.F.R. § 195.507 ........................................22

**Other Authorities**

64 Fed. Reg. 46853 (Aug. 27, 1999.) ........................................21
64 Fed. Reg. 46854 (Aug. 27, 1999) ........................................27
County Code § 25 B-4 (h) & (i) ........................................22
County Code § 25 B-6(a) ........................................16
County Code § 25 B-6(c)-(d) ........................................14, 18

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

## I. INTRODUCTION

At its core, this case is a classic petition for writ of mandate. Plaintiffs challenge the County's application of its code to a request to amend Final Development Permits ("FDPs") to transfer them from one owner, operator, and guarantor to another. This calls on the Court to review the administrative record to determine whether the County complied with applicable law and whether substantial evidence supports its decision. Plaintiffs, however, attempt to expand this limited action by asserting unfounded constitutional theories and a breach of contract claim based on an agreement that long predates the adoption of the governing code. Those causes of action should be dismissed because, even accepting the allegations in the Complaint as true, Plaintiffs fail to plead plausible claims for relief.

The Fifth and Sixth Causes of Action are restricted to ExxonMobil affiliates. They allege the County violated the Takings Clause of the United States and California constitutions by denying Sable's applications to transfer the FDPs. According to ExxonMobil affiliates, the denial of the applications has rendered the permitted facilities "unsaleable" and exposes them to potential future losses that are "incalculable." These allegations do not state a plausible claim for a compensable taking because ExxonMobil affiliates have already sold the facilities to Sable and speculative future losses are insufficient to support a constitutional claim. In addition, ExxonMobil affiliates knew or should have known that the transfer of the FDPs is subject to the County's discretionary approval authority.

Plaintiffs' Seventh Cause of Action alleges that Chapter 25B violates the Supremacy Clause because it is purportedly preempted by the federal Pipeline Safety Improvement Act of 2002, 49 U.S.C. § 60101 et seq. ("PSA"), and a June 25, 2026 Special Permit issued by the Pipeline and Hazardous Materials Safety Administration ("PHMSA"). But the complaint does not plead a plausible preemption claim. It is not impossible to comply with both Chapter 25B and a

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

PHMSA Special Permit and Chapter 25B does not stand as an obstacle to accomplishing the purpose of a Special Permit. Nor does the PSA reflect a clear congressional intent to displace local land-use and development permitting authority, and Chapter 25B is a reasonable extension of that authority. Thus, Plaintiffs fail to state a claim for relief under the Supremacy Clause.

Plaintiffs' Eighth Cause of Action asserts a breach of a settlement agreement entered into with a predecessor owner of the pipeline. The claim largely repackages arguments this Court has already rejected. In any event, the Complaint does not plausibly allege that the County violated any of the four provisions on which Plaintiffs rely. And to the extent Plaintiffs' theory would require reading the agreement to constrain the County's exercise of its police power, the agreement would be invalid.

Accordingly, the County respectfully requests that the Court grant its motion to dismiss the Fifth through Eighth Causes of Action with prejudice. Dismissal with prejudice is appropriate because "the pleading could not possibly be cured by the allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)).

## II. STATEMENT OF FACTS

This Court has summarized the procedural and factual background of this case in prior rulings, which the County will not repeat here. (*See* Docket Numbers "Dkt. Nos." 52 & 83.) This section primarily addresses new allegations asserted in the Complaint.

In the 1970s and 80s, the County issued FDPs for the construction and operation of two facilities owned by ExxonMobil affiliates—the Santa Ynez Unit, which receives, processes, and transmits oil from the offshore rigs (the "SYU") and the POPCO gas facilities, which are onshore gas midstream processing facilities located in the Las Flores Canyon ("POPCO"). (Dkt. No. 86, ¶¶ 1, 3, 28,

SANTA BARBARA COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

29.) In 1988, the County issued FDPs to Celeron Company of California ("Celeron") to build onshore pipeline segments that transmit oil from the SYU through Santa Barbara County (the "Pipeline") (collectively with SYU and POPCO, the "Facilities"). (*Id.* ¶¶ 4, 30.)

After the permits were issued, Celeron objected to some of the permits' conditions and to fees imposed by the County. (Dkt. No. 86-10, p. 3.) In particular, Celeron believed the County was preempted by federal law from requiring a third-party review and inspection process for the Pipeline. (Dkt. No. 86-10, p. 3-4.) To resolve this dispute, Celeron and the County entered into a settlement agreement ("Celeron Agreement") "to resolve the review and inspection role of the County." (*Id*. at p. 4.)

Roughly thirteen years later, in 2001, the County adopted Chapter 25B, which created a process for amending permits for oil and gas facilities to change the owner, operator, and/or guarantor under the permit. (Dkt. No. 86, ¶¶ 49-51.) In February 2024, Sable acquired the Facilities from ExxonMobil affiliates. (*Id.* at ¶ 63.) Thereafter, Sable submitted applications under Chapter 25B to amend the FDPs. (*Id.* at ¶ 64.) The Planning Commission approved the applications, an appeal was filed, and after two public hearings, the County Board of Supervisors directed staff to prepare findings to deny the applications. (*Id.* at ¶ 86.) On December 18, 2025, the Board took final action to deny the FDP applications.

After the Board directed staff to prepare findings for denial, but before the Board took final action, Sable submitted a Restart Plan and two requests to remove pressure restrictions to PHMSA. (Dkt. No. 86-11.) During this time, PHMSA conducted a field inspection with Sable to discuss its process and safety procedures for pipeline restart. (*Id*.) On December 22, 2025, four days after the Board took final action on Sable's FDP applications, PHMSA issued a one-page letter stating that it "approves the submitted Restart Plan." (*Id.*) The letter includes no findings or details. (*Id.*)

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

Sable also applied to PHMSA for two Special Permits—an emergency Special Permit in 2025 and a regular Special Permit in 2026, which were granted and authorize Sable to operate the Pipeline consistent with the conditions imposed therein. (*Id.* at ¶ 99.) The regular Special Permit was issued on June 25, 2026 and directs Sable to perform certain inspections, testing, and assessments and to perform necessary repairs identified from those activities on its Pipeline with prescribed timeframes. (*Id.* at ¶ 171.) Neither permit is attached to the Complaint.

## III. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) allows litigants to seek the dismissal of an action when the allegations in the complaint fail to state a claim upon which relief may be granted. Federal Rule of Civil Procedure 8's pleading standard requires a plaintiff to provide more than labels and conclusions; neither a formulaic recitation of the elements of a cause of action, nor "naked assertion[s]" unsupported by facts, will suffice. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557 (2007)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp.,* 550 U.S. at 555. A pleading must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

The plausibility analysis requires a two-pronged approach. *Iqbal*, 556 U.S. at 678-79. First, the court must recognize the elements a plaintiff must plead to state a claim. *Id.* at 675. Then the court identifies which statements in the complaint are factual allegations and which are legal conclusions. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678. The court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001).

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

Finally, drawing "on its judicial experience and common sense," the court must decide in the context of the specific case, whether the factual allegations, assuming they are true, allege a plausible claim. *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678; *see also In re Century Aluminum Co. Sec. Litig.,* 729 F.3d 1104, 1107 (9th Cir. 2013). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting Federal Rule of Civil Procedure 8(a)(2)).

## IV. ARGUMENT

### A. EXXONMOBIL AFFILIATES FAIL TO STATE A TAKINGS CLAIM.

The state and federal Constitutions prohibit government from taking private property for public use without just compensation. U.S. Const., 5th Amend.; Cal. Const., art. I, § 19; *Murr v. Wisconsin*, 582 U.S. 383, 392 (2017). For regulatory takings claims, like the one asserted by ExxonMobil affiliates, courts apply the standard articulated in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978). The three factors courts consider under *Penn Central* are "the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 140 (2021) (citing *Penn Central*, 438 U.S. at 124). This Court has already determined that Chapter 25B's interest in protecting public health and safety counsels against finding a taking, and the allegations in the Complaint do not undermine this conclusion. (Dkt. No. 83, p. 11-12.) As discussed below, ExxonMobil affiliates also fail to plausibly allege that the other two factors weigh in favor of finding a taking.

/ / /

/ / /

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

**1. ExxonMobil affiliates have not adequately alleged diminution in value that rises to the level of a compensable taking.**

The first factor under *Penn Central* is the economic impact of the regulation. "Not every diminution in property value caused by a government regulation rises to the level of an unconstitutional taking." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 451 (9th Cir. 2018). "[T]he *Penn Central* factors seek 'to identify regulatory actions that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain.'" *Id.* (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005)). The Ninth Circuit has therefore "observed that diminution in property value because of governmental regulation ranging from 75% to 92.5% does not constitute a taking." *Id.*

ExxonMobil affiliates allege they have a vested right to sell the Facilities and the County has rendered "the Facilities valueless and unsalable, depriving the ExxonMobil affiliates of all economically beneficial use of a property interest with value of at least $600 million." (Dkt. No. 86, ¶¶ 149, 151.) But ExxonMobil affiliates also allege Sable acquired the Facilities for $600 million. (*Id.* at ¶¶ 63, 151; *see also* Dkt. No. 86, p. 10 ("The Exxon Mobil Affiliates successfully sold the Facilities to Sable for $625,000,000.")). ExxonMobil affiliates do not allege the County prevented the sale or that Sable has rescinded the sales agreement. As this Court ruled on the motion for summary judgment, "the sale proceeded unhindered and without interference from the County." (Dkt. No. 86, p. 10.) Because the ExxonMobil affiliates no longer own the Facilities, their assertion that the Facilities are now "valueless and unsalable" does not plausibly allege an economic impact suffered by the ExxonMobil affiliates.

The ExxonMobil affiliates also allege they have a vested right to "exit the FDPs without encumbrance or improper County interference." (Dkt. No. 86, ¶ 149.) The County's actions allegedly deprive them of their property rights by

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

making them a forced indemnitor of any subsequent owner, operator, or guarantor. (*Id.* at ¶ 152.) They allege the costs of this forced indemnification is "currently incalculable but may total hundreds of millions of dollars in any worst-case-scenario[.]" (*Id.*)

The assertion that the County's action could potentially cause an incalculable future loss is not sufficient to state a plausible claim for relief under the Takings Clause. Such vague and conclusory allegations do not allow the Court to "compare the value that has been taken from the property with the value that remains in the property." *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 630-31 (9th Cir. 2020) (internal quotation marks omitted); *see also Evans Creek, LLC v. City of Reno*, 2022 WL 14955145, at *1 (9th Cir. Oct. 26, 2022) (noting it was not possible for the court to evaluate economic impact because the complaint lacked any information about the value of the property before and after the application was denied). "[S]peculation as to the worst-case scenario of what might occur" is inadequate to state a claim for a taking because "[s]peculation alone about the effect of a government's actions cannot provide the basis for a constitutional challenge." *Prop. Rsrv., Inc. v. Superior Ct.*, 168 Cal. Rptr. 3d 869, 908 (2014), *review granted and opinion superseded on other grouds sub nom. Prop. Rsrv. v. S.C.*, 326 P.3d 976 (Cal. 2014), and rev'd, 375 P.3d 887 (2016); *see also Andrus v. Allard*, 444 U.S. 51, 65–68 (1979) (speculation about "loss of future profits-unaccompanied by any physical property restriction-provides a slender reed upon which to rest a takings claim"); *Oregon Firearms Fed'n v. Kotek*, 682 F. Supp. 3d 874, 943 (D. Or. 2023) ("speculative assertions about loss are insufficient to prove that [the ballot measure] would have a negative economic impact on Plaintiffs").

Moreover, any losses ExxonMobil affiliates claim flow from their own business decision to sell the Facilities to Sable before the County approved the FDP applications. That is not a taking. *See Colony Cove Props., LLC*, 888 F.3d at

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

451 (no regulatory taking where losses resulted directly from the plaintiff's financing decision). Chapter 25B requires an application "[p]rior to any transfer." County Code § 25B-6(c)–(d). ExxonMobil affiliates argue it would be "economically unreasonable" to complete the transfer process before closing. (Dkt. No. 86, fn. 6.) But not every diminution in property value rises to the level of a taking. *Colony Cove Props., LLC*, 888 F.3d at 451; *see also Andrus*, 444 U.S. at 65–66 (holding a significant restriction imposed on one means of disposing property does not amount to a taking where an owner possesses a full "bundle" of property rights—the destruction of one "strand" of the bundle is not a taking, because the aggregate must be viewed in its entirety). An owner, operator, and guarantor that chooses to proceed with a sale before the application is approved under Chapter 25B assumes the risk that the County may later deny the application. The consequences of that business decision do not entitle ExxonMobil affiliates to compensation from the County.

**2. ExxonMobil affiliates have not adequately alleged the County interfered with any objectively reasonable investment-backed expectations.**

The second *Penn Central* factor also weighs against finding a taking even accepting the allegations in the Complaint as true. Courts use an "objective analysis to determine the reasonable investment-backed expectations" of a property owner. *Bridge Aina Le'a, LLC*, 950 F.3d at 633. "'[U]nilateral expectation[s]' or 'abstract need[s]' cannot form the basis of a claim that the government has interfered with property rights." *Id.* at 633–34. "[W]hat is relevant and important in judging reasonable expectations is the regulatory environment at the time of the acquisition of the property." *Id*. at 634 (internal quotation marks omitted).

At the time ExxonMobil affiliates acquired the Pipeline in 2023, over two decades had passed since Chapter 25B was enacted. (Dkt. No. 86, ¶¶ 49, 59.) "A

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

reasonable restriction that predates a landowner's acquisition" of property is an "objective factor[] that most landowners would reasonably consider in forming fair expectations about their property." *Murr*, 582 U.S. at 397–98; *see also Guggenheim v. City of Goleta*, 638 F.3d 1111, 1120 (9th Cir. 2010) (holding that rent control ordinance enacted before a mobile home park was purchased was a matter of public record and purchasers could have no "distinct investment-backed expectations" that they would obtain illegal amounts of rent). In addition, "[v]arious interested parties" appealed the transfer of the Pipeline FDPs from its prior owner to Exxon. (Dkt. No. 86, ¶ 60.) As this Court has observed, this shows ExxonMobil affiliates "could not have reasonably expected the FDP process to be a seamless rubber-stamping exercise when they faced 'similar' challenges one year prior to the sale of the Facilities to Sable." (Dkt. No. 83, p. 11.)

As to the POPCO and SYU facilities, ExxonMobil affiliates could not reasonably have expected the County's regulatory framework to remain static throughout their decades-long ownership. *See Murr*, 582 U.S. at 397–98 (noting a reasonable prospective enactment can limit the value of land without effecting a taking). Oil and gas transportation is a highly regulated field, and "those who do business in [a] regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end[.]" *Concrete Pipe & Prods. of California, Inc. v. Constr. Laborers Pension Tr. for S. California*, 508 U.S. 602, 645 (1993) (quoting *FHA v. The Darlington, Inc.*, 358 U.S. 84, 91 (1958)); *see also Pharm. Rsch. & Manufacturers of Am. v. Stolfi*, 153 F.4th 795, 835 (9th Cir. 2025) (reasonable expectations are necessarily tempered in areas "that ha[ve] long been the source of public concern and the subject of government regulation."); *Rancho de Calistoga v. City of Calistoga*, 800 F.3d 1083, 1091 (9th Cir. 2015) ("those who buy into a regulated field . . . cannot object when regulation is later imposed").

/ / /

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

ExxonMobil affiliates' asserted expectation that Chapter 25B would not apply to the Facilities is also unreasonable as a matter of Chapter 25B's plain text. Plaintiffs allege, "[t]here is no language in the text of Chapter 25B making it retroactive or expressly applying it to already-issued permits in existence at the time the ordinance was enacted." (Dkt. No. 86, ¶ 53.) But Chapter 25B expressly requires, "any existing owner, operator or guarantor, [to] submit a certification to the director" specifying certain listed information about "the current owner(s), operator(s), and guarantor(s)" within 30 days of the effective date of Chapter 25B. County Code § 25B-6(a). Thus, the ordinance explicitly required ExxonMobil affiliates to submit a certification for the POPCO and SYU facilities in 2001 to comply with Chapter 25B. (*Id.* at ¶¶ 28, 29, 49.) There are no allegations in the Complaint that ExxonMobil affiliates failed to do so or objected to the application of Chapter 25B to the Facilities at that time.

In addition, ExxonMobil affiliates provide no allegations that, if true, would show they reasonably expected to receive more than the $600 million it earned from selling to Facilities to Sable. ExxonMobil affiliates allege they have invested cumulatively millions of dollars in the Facilities, including in the development and long-term operation of the SYU and POPCO, and in the acquisition of the Pipeline. (Dkt. No. 86, ¶ 49.) But they recovered those investments when they sold the Facilities. Therefore, ExxonMobil affiliates have failed to plausibly allege any reasonable-investment backed expectations that have not been met.

In sum, even taking all of ExxonMobil affiliates' allegations as true, all three *Penn Central* factors weigh against finding an unconstitutional regulatory taking for which compensation is due. Therefore, dismissal with prejudice under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is proper. *See Schreiber Distrib. Co. v. Serv-Well Furniture Co*., 806 F.2d 1393, 1401 (9th Cir. 1986) (a court may deny leave to amend when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

cure the deficiency"); *Pakdel v. City & Cnty. of San Francisco* 636 F. Supp. 3d 1065, 1076 (N.D. Cal. 2022) ("[G]iven that each factor weighs against the Plaintiffs, and especially given the lack of a plausible showing of diminution in value, there is no other conclusion than that Plaintiffs have not plausibly averred a regulatory taking.").

### B. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE SUPREMACY CLAUSE OF THE UNITED STATES CONSTITUTION AND PIPELINE SAFETY ACT.

In their prior Complaint, Plaintiffs alleged the Board's denial of the Transfers was an impermissible attempt to regulate pipeline "safety standards" because of comments made by certain Board members in advance of the December 2025 vote. This Court ruled, "[t]he Board members' comments do not plausibly amount to an attempt to regulate 'safety standards.'" (Dkt. No. 83, p. 15.) At the hearing on the motions to dismiss the First Amended Complaint, however, Plaintiffs stated for the first time that PHMSA had approved Sable as operator of the Facilities in December of 2025. In response, this Court allowed Plaintiffs to amend their PSA preemption claim "[b]ecause it is unclear what factors were considered in PHMSA's findings and the extent of overlap, if any, with findings required under Chapter 25B[.]" (Dkt. No. 83, p. 16.) Plaintiffs have now alleged new facts and legal arguments, but they still fail to state a claim for violation of the Supremacy Clause.

#### 1. Chapter 25B does not conflict with the Special Permit.

Plaintiffs allege Chapter 25B is preempted because it directly conflicts with a Special Permit issued to Sable by PHMSA on June 25, 2026, under 49 U.S.C. § 60118(c) and 49 C.F.R. § 190.341. (Dkt. 86, ¶ 171.) Plaintiffs allege the Special Permit directs Sable to perform inspections, testing, and repairs on the Pipeline within prescribed timeframes, and that Sable cannot comply with the Special Permit without potential adverse action from the County under Chapter 25B. (*Id.* at ¶¶ 171, 172.)

SANTA BARBARA COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

A state or local law "directly conflicts with federal law in either of two cases[.]" *Draper v. Chiapuzio*, 9 F.3d 1391, 1393 (9th Cir. 1993). "[F]irst, if "compliance with both federal and state regulations is a physical impossibility[.]" *Id.* (quoting *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 (1963)). "[S]econd, if the state law is 'an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

The allegations in the Complaint fail to show that compliance with both a federal special permit and Chapter 25B is a "physical impossibility." To comply with both, an applicant need only to wait to apply for the Special Permit until after its FDP application is approved under Chapter 25B. "[T]he test is whether compliance is impossible, not whether noncompliance is possible." *Draper*, 9 F.3d at 1393 ("Only a plaintiff who waits more than one year to give the required notice under the state statute can no longer comply with both state and federal law.") Applying for a Special Permit after an FDP application is approved aligns with Chapter 25B, which expressly requires proposed new owners and operators to submit an application "[p]rior to any transfer." County Code § 25B-6(c)-(d). That Sable prematurely applied for a Special Permit, thereby manufacturing the alleged conflict it complains of, does not mean compliance with federal law is an impossibility. Moreover, the Complaint is devoid of any allegations that the County has stopped Sable from performing inspections, testing, and repairs on the Pipeline pursuant to the Special Permit.

Plaintiffs' conclusory allegations that Chapter 25B stands as an obstacle to the full purpose and objectives of the Special Permit are likewise deficient. Plaintiffs do not attach the Special Permit to the Complaint or include any information about what factors PHMSA considered or what findings it made. Plaintiffs therefore fail to show "the extent of overlap, if any, with findings required under Chapter 25B." (Dkt. No. 83, p. 16.)

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

The legal provisions Plaintiffs cite as authorizing the Special Permit reveal there is no overlap. Under 49 U.S.C. § 60118(c), the Secretary of Transportation may grant waivers of compliance with pipeline safety statutes, orders, and regulations. Nothing in 49 U.S.C.A. § 60118 suggests the legislature intended such waivers would be granted based on findings similar to those in Chapter 25B.

Regulations at 49 C.F.R. § 190.341 describe a special permit as "an order by which PHMSA waives compliance with one or more of the Federal pipeline safety regulations under the standards set forth in 49 U.S.C. 60118(c) and subject to conditions set forth in the order." 49 C.F.R. § 190.341(a). To apply for a special permit, the applicant must submit an application providing information about the facility and proposed waiver, not the operator. 49 C.F.R. § 190.341(c). The required information pertains to the pipeline, not the operator. For instance, the applicant must provide a detailed description of the pipeline facilities including things like the material, grade, diameter, wall thickness, and coating type as well as operating pressure, leak history, and most recent testing or assessment results. *Id.* The applicant must also explain why the regulation is unnecessary or inappropriate and what measures or activities the applicant proposes to undertake as an alternative to compliance with the relevant regulation. *Id.* Nothing in 49 C.F.R. § 190.341 suggests the issuance of a special permit depends on findings similar to those found in Chapter 25B.

In short, the Court allowed Plaintiffs to amend their PSA preemption claim for one reason—to allege new facts to show PHMSA's findings in issuing the Special Permit overlap with findings required under Chapter 25B. Plaintiffs fail to do so and do not plausible allege the Special Permit directly conflicts with the Board's denial.

**2. The Pipeline Safety Act Does Not Preempt Chapter 25B.**

Plaintiffs also reframe their express and field preemption arguments without invitation from the Court to do so. Previously, this Court ruled, "[t]he Board

SANTA BARBARA COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

members' comments do not plausibly amount to an attempt to regulate 'safety standards.'" (Dkt. No. 83, p. 15.) Now, Plaintiffs pivot away from supervisor comments and assert that because "safety standards" under the PSA include a requirement that operators ensure personnel are qualified to perform certain covered tasks, the PSA preempts Chapter 25B's operator capability finding. (Dkt. No. 86, ¶¶ 168-70.)

The PSA does not expressly preempt Chapter 25B's operator capability finding. "Express preemption is a question of statutory construction, requiring a court to look to the plain wording of the statute and surrounding statutory framework to determine whether Congress intended to preempt state law." *Jones v. Google LLC*, 73 F.4th 636, 641 (9th Cir. 2023). Although "congressional purpose "is the ultimate touchstone in every pre-emption case, [] the plain wording of the express preemption clause 'necessarily contains the best evidence of Congress'[s] pre-emptive intent." *Id.* at 641-42 (quoting *Puerto Rico v. Franklin Calif. Tax-Free Tr.*, 579 U.S. 115, 125 (2016)) (quotation and citation omitted).

Under the PSA, the Secretary of Transportation prescribes "safety standards" for interstate pipeline facilities, and state and local authorities are expressly preempted from adopting or enforcing their own "safety standards" except under circumstances not applicable here. 49 U.S.C.A. §§ 60102, 60104(c). "Safety standards" must "include a requirement that all individuals who operate and maintain pipeline facilities shall be qualified to operate and maintain the pipeline facilities." 49 U.S.C.A. § 60102(a)(2)(c).

Comparing Chapter 25B to the plain language of the regulations implementing section 60102(a)(2)(c) shows that the local and federal laws regulate different subject matter and operate in distinct spheres. The federal regulations are found in Part 195, subpart G. Subpart G was adopted to "reduce the risk of accidents on pipeline facilities attributable to human error." 64 Fed. Reg. 46853 (Aug. 27, 1999.) Subpart G requires operators to "have and follow a written

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

qualification program" that, among other things, ensures individuals performing covered tasks are qualified or are supervised by an individual who is qualified. 49 C.F.R. § 195.505. "Qualified" means the "individual has been evaluated and can: (a) Perform assigned covered tasks and (b) Recognize and react to abnormal operating conditions." 49 C.F.R. § 195.503. Subpart G also requires operators to maintain qualification records, which must include the identification of qualified individuals, the covered tasks the individual is qualified to perform, and the dates and method of qualification. 49 C.F.R. § 195.507.

Conversely, Chapter 25B concerns the operator, not the individuals the operator employs. With respect to the operator capability finding, the County looks at the operator as a whole and the company's compliance records, not whether individuals are qualified to perform certain covered tasks. Also unlike subpart G, Chapter 25 is applied when a facility is proposed to be transferred from one owner, operator, and guarantor to another. It does not create an on-going program like subpart G. Finally, Chapter 25B concerns liability for compliance with local permit conditions and abandonment, not the avoidance of human error.

Plaintiffs' field preemption claim likewise fails. "Field preemption occurs when states are precluded from regulating conduct in a field that Congress 'has determined must be regulated by its exclusive governance.'" *Deanco Healthcare, LLC v. Becerra*, 365 F. Supp. 3d 1029, 1037 (C.D. Cal. 2019), aff'd, 806 F. App'x 581 (9th Cir. 2020) (quoting *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1022 (9th Cir. 2013)). "Field preemption can be inferred from a regulation that is so pervasive that Congress left no room for the states to supplement it or where there is a federal interest so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Id.* (cleaned up).

The Complaint does not plausibly allege that Congress intended to displace the County's traditional land-use and development-permitting authority, including the requirement that operators obtain and maintain the FDPs necessary to construct

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

and operate the pipeline. Indeed, the PSA expressly contemplates state or local regulation of the location or routing of a pipeline facility. 49 U.S.C.A. § 60104(e). And the Celeron Agreement itself recognizes the County's ability to regulate aspects of the pipeline's development and operation, including environmental aspects of construction. (Dkt. No. 86-10, p. 4.) It follows that the County also has the authority, when a transfer is proposed, to ensure that the FDPs are appropriately amended and that a capable owner, operator, and guarantor remains responsible for compliance with FDP conditions and for abandonment obligations.

In addition, Chapter 25B largely concerns liability for compliance with local permit conditions and abandonment. County Code, Section 25B-4(h) & (i). Congress did not intend to occupy the field of pipeline liability because the PSA includes a savings clause that explicity states, "**Effect on tort liability.**--This chapter does not affect the tort liability of any person." 49 U.S.C. § 60120(c); *see In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 1001–02 (N.D. Cal. 2018) (holding Congress did not intend to occupy the field of motor vehicle emission because it included a savings clause).

The Complaint lacks well-pleaded facts showing a conflict between federal law and Chapter 25B or that Congress meant to expressly preempt, or occupy the field of, local land-use regulation and accountability for permit compliance and abandonment. Plaintiffs' preemption claim should therefore be dismissed.

### C. PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT.

In their Eighth Cause of Action, Plaintiffs claim the denial of the Transfers is a breach of the February 8, 1988 Celeron Agreement ("Agreement") between the County and a prior pipeline owner. (Dkt. 86, ¶ 175.) The Agreement was entered into to resolve a dispute between the parties about conditions of the Pipeline FDPs and fees. (Dkt. No. 86-10, p. 3-4.) Plaintiffs allege three ways the County has violated four provisions of the Agreement: "sections 2.5.2, 2.5.3, and 3.1.1. and 3.1.2." (Dkt. 86, ¶¶ 180, 181, 182.) As discussed below, the allegations

SANTA BARBARA COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

in the SAC, even if accepted as true, do not show the County violated the Agreement when it applied Chapter 25B.

**1. The County did not violate section 2.5.2 of the Agreement.**

Section 2.5.2 of the Agreement states: "The County agrees that, if it uses its lawful stop work authority, work stoppage shall be limited to the particular work that is objectionable and not to any other work being done by Celeron." (Dkt. No. 86-10, p. 8.) There are no allegations in the Complaint that the County has used its lawful stop work authority, so Plaintiffs have failed to allege a violation based on the scope of a work stoppage order.

**2. The County did not violate section 2.5.3 of the Agreement.**

Section 2.5.3 of the Agreement requires the County, upon notice by Celeron, to immediately cease any action "which involve Part 195 areas and is not authorized under 2.5.1 above, including suspending or withholding ministerial permits, and which will stop or delay Celeron's construction and/or operation[.]" (Dkt. No. 86-10, p. 9.) Section 2.5.1 states that "the County's stop work authority in those areas covered by Part 195 shall be limited" to cases where certain listed circumstances exist. (*Id.* at p. 8.)

As an initial matter, this Court granted leave to amend only to "plead additional facts to allege a breach of contract claim unrelated to 'Part 195.'" (Dkt. No. 83, p. 24 [emphasis added].) Plaintiffs violate this Court's order by, without seeking permission, amending the Complaint to reallege that the County breached the Agreement by taking action that is preempted by Part 195. (Dkt. No. 86, ¶¶ 179, 180-83.)

Nor have plaintiffs alleged the County has taken any action, including by requiring or withholding permits, "which will stop or delay Celeron's construction and/or operation[.]" (Dkt. No. 86-10, p. 9.) As this Court stated in its order on the motions to dismiss claims in the First Amended Complaint, "Plaintiffs do not allege the Board, at any point, has ordered them *through the FDP process* to cease

SANTA BARBARA COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

operations in the Facilities." (Dkt. No. 83, p. 15 [emphasis in original].) Plaintiffs have not added such allegations in the Second Amended Complaint. Plaintiffs may be suggesting that the County's authority under Chapter 25B to seek an injunction means it can stop or delay operation in the future. But the Agreement expressly allows for the County to "obtain[] judicial sanction by order of a State or Federal Court" for authority to stop or delay construction or operation of the Pipeline. (Dkt. No. 86-10, p. 9, Section 2.5.3.)

Moreover, although Plaintiffs have now provided a definition of "Ministerial Permits," they still fail to allege "what 'ministerial permits' the contracting parties considered at the time the Celeron Agreement was entered into." (Dkt. No. 86, ¶ 178; Dkt. No. 83, p. 24.) The Agreement contemplates that the County did and could require Final Development Plans for the Pipeline. (Dkt. No. 86-10, p. 3 & ¶ 2.2) The amendment of such permits to change the owner, operator, or guarantor is a discretionary process the parties did not consider at the time they entered into the Celeron Agreement because Chapter 25B had not yet been enacted.

Finally, Plaintiffs assert the County breached the Agreement by interfering with Sable's compliance with a Special Permit that was issued six months after the Board took action. (Dkt. No. 86, ¶ 182.) As discussed previously, there are no allegations in the Complaint that the County has prevented Sable from conducting inspections, testing, and repairs on the Pipeline and Sable has failed to allege sufficient facts to show a conflict between Chapter 25B and the Special Permit.

**3. The County did not violate sections 3.1.1 and 3.1.2 of the Agreement.**

Section 3.1 of the Agreement provides "an aid in determining what is preempted by Part 195." Subsections 3.1.1 and 3.1.2 state, it is presumed the County is preempted "if the activity to be performed is covered by Part 195" or is

/ / /

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

"impliedly but not expressly specified by Part 195 and it deals with the design, construction or operation of an interstate pipeline."

It is unclear how the County could violate these provisions given that they simply provide an "aid" in determining what is preempted. At any rate, as discussed in Section IV.B.2, *supra*, Chapter 25B is not a safety standard that is preempted under the PSA. Chapter 25B ensures capable operators are responsible for complying with permit conditions and local requirements and are liable for violations and abandonment. It does not regulate the design, construction, or operation of the pipeline or impose preempted safety standards. Nor does Chapter 25B create an ongoing program to reduce human error by ensuring individuals are qualified to perform covered tasks.

In addition, even if 49 U.S.C. § 60102(a)(2)(c) and Part 195, subpart G, preempted Chapter 25B, that would not support a claim for breach of contract claim because those provisions did not exist when the Parties entered into the Agreement. "[T]he fundamental goal of contract interpretation is to give effect to the mutual intent of the parties as it existed at the time of contracting." *Pauma Band of Luiseno Mission Indians of Pauma & Yuima Rsrv. v. California*, 813 F.3d 1155, 1165 (9th Cir. 2015) (quoting *U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 934 (9th Cir.2002). "[L]aws enacted subsequent to the execution of an agreement are not ordinarily deemed to become part of the agreement unless its language clearly indicates this to have been the intention of the parties." *Swenson v. File*, 475 P.2d 852, 854 (1970). An agreement must be interpreted based on its terms "and any indication of their meaning at the time the parties entered it," rather than looking at post-agreement developments. *Diaz v. Macys W. Stores, Inc.*, 101 F.4th 697, 703 (9th Cir. 2024).

The Celeron Agreement repeatedly references "Part 195" and attaches as an Exhibit to the Agreement, Part 195 as it existed when the Agreement was executed. The attachment, combined with the absence of any language indicating

an intent to incorporate future changes to the law, reflects the parties' intent to define the County's jurisdiction by the law that existed when the Parties entered into the Agreement. Plaintiffs did not include with the Complaint the attached Part 195. But it can be assumed it did not include any reference to 49 U.S.C. section 60102(a)(2)(c) or subpart G because those provisions did not exist when the parties entered into the Agreement in 1988. Public Law 104-304 (Oct. 12, 1996), 110 stat 3793; *see also* 64 Fed. Reg. 46854 (Aug. 27, 1999).

**4. Plaintiffs' construction would render the Agreement invalid.**

Plaintiffs' claim that the County breached the Agreement by requiring a permit to operate the pipeline or by suspending or withholding a ministerial permit should be dismissed for another reason. California courts have consistently found agreements that require the surrender of police power invalid. For instance, a court found invalid an agreement to give up a city's police power to regulate privileges and trip fees for taxis at the San Francisco airport. *Cotta v. City & Cnty. of San Francisco*, 157 Cal. App. 4th 1550, 1559 (2007). Another court found invalid a developer's estoppel claim, explaining that even assuming an agreement "constituted a promise by the government that zoning laws thereafter enacted would not be applicable to [the developer's tract], the agreement would be invalid and unenforceable as contrary to public policy." *Avco Community Developers, Inc. v. South Coast Regional Com.*, 17 Cal.3d 785, 799 (1976). Another court concluded that any construction of an Agreement that prevented a City from imposing updated impact fees on a development infringes on the City's police power and cannot be enforced. *Discovery Builders, Inc. v. City of Oakland*, 92 Cal. App. 5th 799, 812 (2023).

Here, Plaintiffs do not dispute that the County has authority under its police powers to issue FDPs and to regulate the transfer of FDPs from one owner, operator, and guarantor to another under Chapter 25B. Plaintiffs' argument is that the Celeron Agreement should be construed to prevent the County from applying

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

Chapter 25B to one particular facility—the Pipeline—due to a contract entered into decades ago. This would render the Agreement invalid as an improper infringement on the County's police power. The County's police power overrides any obligation of the County to approve a discretionary permit under the Celeron Agreement. *See Avco Community Developers, Inc.*, 17 Cal.3d at 800 (holding the state's police power "overrides any obligation of the state to perform" a contract to sell property).

## V. CONCLUSION

For all the foregoing reasons, Defendants County of Santa Barbara and Santa Barbara County Board of Supervisors respectfully request that this Court dismiss the Fifth, Sixth, Seventh, and Eighth claims in the Second Amended Petition and Complaint with prejudice.

Dated: August 25, 2026

Respectfully submitted,

RACHEL VAN MULLEM
COUNTY COUNSEL

By: /S/ - Callie Patton Kim
Callie Patton Kim
Senior Deputy County Counsel
Attorneys for Defendants
COUNTY OF SANTA BARBARA

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950

## CERTIFICATE OF COMPLIANCE

"The undersigned, counsel of record for Defendant County of Santa Barbara, certifies that this brief contains 6,693 words, which complies with the word limit of L.R. 11-6.1.

Dated: August 25, 2026

By: /S/ - Callie Patton Kim
Callie Patton Kim

SANTA BARBARA
COUNTY COUNSEL
105 E. Anapamu Street, #201
Santa Barbara, CA 93101
(805) 568-2950