LATHAM & WATKINS LLP
Jessica Stebbins Bina (Bar No. 248485)
*jessica.stebbinsbina@lw.com*
10250 Constellation Blvd. Suite 1100
Los Angeles, CA 90067
Telephone: +1 424.653.5500
Facsimile: +1 424.653.5501

*Attorneys for Plaintiffs and Petitioners Sable Offshore Corp., Pacific Pipeline Company, and Pacific Offshore Pipeline Company*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SABLE OFFSHORE CORP. et al.,

Petitioners/Plaintiffs,

v.

COUNTY OF SANTA BARBARA et al.,

Respondents/Defendants,

and

ENVIRONMENTAL DEFENSE CENTER, et al.

Intervenors.

CASE NO. 2:25-cv-04165-DMG-CTS

**SABLE'S REPLY IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT OR ORDER**

Complaint Filed: May 8, 2025

Date: October 23, 2026
Time: 9:30 a.m.
Ctrm.: 8C
Judge: Dolly M. Gee

# I. INTRODUCTION

Sable's Motion to Alter or Amend presents a straightforward legal question: whether the Court's Order correctly concluded that Sable lacks vested rights in the Facility Development Permits ("FDPs") that run with the Facilities Sable purchased. The County's Opposition does not meaningfully engage with that question. Instead, the County raises procedural objections based on a rule Sable never invoked, mischaracterizes the nature of vested rights under California law, and offers substantive arguments that, on close inspection, actually concede the very point Sable is making—that the County is impairing constitutionally protected property rights.

On procedure, the County's timeliness argument fails at the threshold. Sable did not move for reconsideration under Local Rule 7-18; it moved to alter or amend under Federal Rule of Civil Procedure 59(e) or, alternatively, Rule 54(b). The County concedes that Sable's motion was filed within Rule 59(e)'s 28-day deadline. And if the Court's decision is governed by Rule 54(b), the Court has inherent authority to revise it at any time before final judgment.

On the merits, the County's arguments rest on a fundamental misunderstanding of how vested rights operate under California law. The rights at issue here vested decades ago—when the original FDP holders relied on their permits and invested millions of dollars in the Facilities. Those rights run with the land and transferred intact to each subsequent purchaser, including Sable. The County cannot extinguish those rights through Chapter 25B—whether characterized as retroactive or prospective—absent a showing of compelling public necessity dangerous to public health or safety, a showing the County has not made and cannot make. Moreover, any attempt to recast Chapter 25B as a safety regulation would render it preempted by the Pipeline Safety Act. The County's attempts to distinguish Sable's authorities only underscore this point: whether the County characterizes its

actions as "terminating" or merely "prohibiting" the FDPs, the constitutional result is the same.

For these reasons, and as set forth more fully below, Sable respectfully requests that the Court grant its Motion and amend its Order.

## II. ARGUMENT

### A. The County's Procedural Argument Is Nonresponsive Because Sable Did Not Move for Reconsideration.

The County's two procedural arguments stand on a misinterpretation of Sable's Motion. First, the County argues that "Sable failed to file a timely request for reconsideration" because it "failed to meet the 14-day deadline under Local Rule 7-18." Opp. at 6. But Sable did not move for reconsideration under Local Rule 7-18; it moved "to Alter or Amend Judgment or Order" under Federal Rule of Civil Procedure 59(e) or, in the alternative, under Federal Rule of Civil Procedure 54(b). Mot. at 1-2. To the extent Rule 59(e) applies, there was a 28-day deadline to file the motion, *see* Fed. R. Civ. P. 59(b), which the County admits Sable met. *See* Opp. at 6 ("Sable filed its motion 28 days later").[1] At most, Sable's motion is *early*, not late, under Rule 59—but there is no reason the Court needs to wait until final judgment to consider a request to alter or amend its Order.[2] And if the motion is properly considered under Rule 54, it is within the Court's discretion to amend its Order at any reasonable time. *See Bautista v. Santacruz*, 813 F. Supp. 3d 1075, 1083 (C.D. Cal. 2025) ("'[A]ny order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and

---

[1] Local rules "must be consistent with" the federal rules, Fed. R. Civ. P. 83(a)(1), and thus a local rule cannot shorten the 28-day time limit specified in Rule 59(e). *See Dominguez v. Better Mortgage Corp.*, 88 F.4th 782, 789 (9th Cir. 2023).

[2] The County does not dispute that Sable could simply re-bring this motion under Rule 59(e) whenever final judgment is entered on all its claims—a plainly inefficient resolution. The Court can and should address this motion now.

liabilities.' This is an exercise of a Court's inherent authority and power to modify its own interlocutory orders." (quoting Fed. R. Civ. P. 54(b))). Accordingly, Sable's motion was timely.

The County also argues that Sable failed to "identify any grounds for reconsideration under Local Rule 7-18." Opp. at 6. But that is by design: Sable did not seek reconsideration under the Local Rule 7-18 standard. Rather, it seeks modification under different Rules, with different criteria—criteria Sable contends are met. Mot. at 7-8. Specifically, Sable is not contending that there are new facts or new law that were not considered by the Court, *but rather that the Court made a clear legal error*—something that is appropriately raised through the procedural vehicles that Sable has raised it through. Local Rule 7-18 governs motions for reconsideration that are based on the Local Rule's enumerated requirements; it does not bar the Court from exercising its inherent authority to correct legal error in its Order.[3]

**B. The County's Substantive Arguments Are Unavailing.**

Like its procedural arguments, the County's substantive arguments are nonresponsive and mistaken.

**1. The Rights Vested Thirty Years Ago, Not When Sable Acquired the Facilities.**

The County's opposition relies on a fundamental framing of Sable's vested rights as somehow contingent or subject to Chapter 25B. They were not. The vested rights in each FDP vested not only before Sable's purchase of the Facilities, but before Chapter 25B's enactment. These vested rights could not have been lawfully eliminated by *either* Chapter 25B's enactment in 2001 or the 2024-2025 permit transfer process leading to this lawsuit.

---

[3] Even if Local Rule 7-18 did apply, good cause exists here to consider the request to correct an error of law.

This Court held in July that "[a]n FDP is akin to a Conditional Use Permit ('CUP'), which is recognized in California law as a property right that runs with the land rather than the owner," and that "[l]ike a CUP, an FDP vests when it 'has been granted and the successful applicant has thereafter acted upon the grant to his or her detriment.'" Order at 7 (quoting *Malibu Mountains Recreation, Inc. v. Cnty. of Los Angeles*, 67 Cal. App. 4th 359, 367 (1998)). Under California law, where "[i]t is clear from the record that the ***prior*** owner of the property acted in reliance on the CUP for at least some period of time, . . . [and] [t]he CUP was in force at the time [the subsequent purchaser] bought the property," the subsequent purchaser is "***not required to obtain a new CUP,***" because that purchaser "***accede[s] to the same rights as held by the previous owner***." *Malibu Mountains Recreation*, 67 Cal. App. 4th at 370 (emphasis added). That chain of events—that the FDP vests when originally relied upon and passes in full to subsequent owners—controls here.

Here, Petitioners alleged that "[t]he FDPs for the Facilities were issued in 1987 (SYU), 1988 (Pipeline), and 1993 (POPCO Facilities)," that thereafter "the Facilities' initial owners constructed and began operating them" and in reliance on the FDPs "invested many millions of dollars in the Facilities." FAC ¶¶ 47-48. Under blackletter California law cited by this Court, this "vest[ed] the right to continue to operate the Facilities consistent with the FDPs." Order at 7; *Malibu Mountains Recreation*, 67 Cal. App. 4th at 370. Accordingly, the right to operate the Facilities vested long before Chapter 25B was enacted in 2001, which was "approximately a decade to a decade-and-a-half after the first of the FDPs for the Facilities was issued and years after they were built." FAC ¶ 50.

### 2. The County Lacked Authority To Strip Vested Rights Through Enactment of Chapter 25B, Regardless of Retroactivity.

The County first argues that Chapter 25B could lawfully strip the FDPs' vested right to operate the Facilities so long as it was retroactive. *See* Opp at 7-8.

Thus, the County argues, the vested rights had already been stripped away before Sable acquired the Facilities, so there were no vested rights for Sable to acquire. *Id.* But that is not how vested rights work: the right to operate each Facility pursuant to the terms of the FDPs "*vests when it has been granted and the successful applicant has thereafter acted upon the grant to his or her detriment.*" Order at 7 (internal quotation marks omitted and emphasis added). The vested rights thereafter "run[] with the land" to all subsequent purchasers. *Id.* An ordinance cannot take away vested rights (regardless of whether it purports to be "retroactive")[4] unless it complies with limited, enumerated circumstances; namely, as the County's own cases make clear, "public health and safety concerns." *S. Lake Tahoe Prop. Owners Grp. v. City of S. Lake Tahoe*, 92 Cal. App. 5th 735, 749 (2023).

Sable's argument is straightforward: the FDPs vested before Chapter 25B was enacted and those vested rights may be relied upon by subsequent owners. Sable acceded not only to the rights of the immediate previous owners of the Facilities—the ExxonMobil affiliates—***but to the rights held by all previous owners*** from the date the FDPs were first relied upon approximately thirty years ago. Once a permit

---

[4] The County argues Chapter 25B "is in [a] sense retroactive" and so applies to the FDPs—but that assertion misconstrues Sable's argument to attack a strawman. Sable disputes that Chapter 25B was retroactive. But regardless, even express retroactivity would not permit Chapter 25B to eliminate Sable's vested rights for the reasons outlined below: a subsequently-enacted ordinance may not impair vested rights outside very narrow circumstances. *See infra* at 6-7.

In its Motion, Sable raised Chapter 25B's lack of express retroactivity to point out that Chapter 25B does not even purport to have altered existing FDPs' vested rights at the time of its enactment—which makes sense, because Chapter 25B *could not have* altered those rights. *See* Mot. at 6 n.3. As the County's own cited cases demonstrate, when local governments *do* attempt to alter existing permits and their vested rights, they usually do so explicitly. *See*, *e.g.*, *S. Lake Tahoe Prop. Owners Grp. v. City of S. Lake Tahoe*, 92 Cal. App. 5th 735, 743 (2023) (rental ordinance amended to state, "[v]acation home rental permits *shall not be construed as providing property rights or vested interests and entitlements in continued operation* of a vacation home rental.") (emphasis added). Chapter 25B has no such language.

has vested, "[t]he right possessed by [the permittee] [is] in the nature of a property right. Such a right is rooted in the Constitution." *Pardee Constr. Co. v. Cal. Coastal Comm'n*, 95 Cal. App. 3d 471, 479 (1979). A subsequently enacted regulation *cannot* "negate a conceded vested right," *id.* at 480-81, meaning that whether or not Chapter 25B was retroactive, the County did not have the authority to burden the vested rights to operate the Facilities pursuant to the terms of the FDPs. Indeed, "[i]nterference with the right to ***continue an established business*** is ***far more serious*** than the interference a property owner experiences when denied a conditional use permit in the first instance." *Goat Hill Tavern v. City of Costa Mesa*, 6 Cal. App. 4th 1519, 1529 (1992) (emphasis added).

Under California law, once a permit has vested, an ordinance can extinguish existing vested rights only if where "there is a compelling public necessity." *Goat Hill Tavern*, 6 Cal. App. 4th at 1530; *Jones v. City of Los Angeles*, 211 Cal. 304, 314 (1930). This "compelling public necessity" exception is limited to circumstances where "failure to [impair] would create a condition dangerous to the public health or safety." *Davidson v. County of San Diego*, 49 Cal. App. 4th 639, 649 (1996). This is a bedrock principle of California law. *See, e.g.*, *Jones*, 211 Cal. at 314-16 (the law may not "uphold a municipal ordinance which destroys valuable businesses, built up over a period of years," unless "an undoubted menace to public health, safety, or morals is shown"). Thus, "'[t]he usual exercises of police power in the land use context' . . . do not justify the impairment of a vested right because they 'are not directly related to danger or potential danger to the health and safety of the public.' Although such regulations are arguably justified by the public welfare in its broader sense, *Davidson* establishes that only regulations 'reasonably necessary to prevent . . . a danger or nuisance to the public' justify the impairment of a vested right." *Stewart Enters., Inc. v. City of Oakland*, 248 Cal. App. 4th 410, 423 (2016) (quoting *Davidson*, 49 Cal. App. 4th at 649–650) (upholding finding that City's asserted

"negative impacts to the environment, public health, and businesses" were insufficient).

Chapter 25B's enactment—regardless of whether it was "retroactive" or not —thus could not lawfully have extinguished the vested rights to operate the Facilities pursuant to the FDPs' terms, whether in 2001 *or* 2025, unless "there [was] a compelling public necessity" that would otherwise "create a condition dangerous to the public health or safety"—something the County has not even attempted to demonstrate. *Goat Hill Tavern*, 6 Cal. App. 4th at 1530; *Davidson*, 49 Cal. App. 4th at 649; *see Jones,* 211 Cal. at 314.

Contrary to the County's arguments, mere "concerns" do not justify extinguishing vested rights, and the County's cases do not hold otherwise. *South Tahoe* did not feature ongoing final development permits that run with the land, as the Court found exist here (*see* Order at 7) but "revocable licenses which expire annually" and that explicitly "shall not run with the land." *South Tahoe*, 92 Cal. App. 5th at 743. This difference, the *South Tahoe* court held, was critical, because nothing beyond a one-year right to operate ever vested. *Id.* ("Any vested rights the members may have had in their permits were limited by their permits' terms and conditions, including the one-year expiration dates."). Here, the Court already found the FPDs run with the land and are akin to conditional use permits, making *South Tahoe* inapposite.

*Davidson*, on the other hand, was a *post-trial* appeal in which the appellate court reversed the lower court's conclusion that, as a matter of law, there were "no circumstances" where the appellant's vested rights could have been impaired. *Davidson*, 49 Cal. App. 4th at 645, 650. But *Davidson* also held that a local agency may impair vested rights ***only*** "if it determines failure to do so would create a condition dangerous to the public health or safety." *Id.* The *Davidson* court explained that the "usual exercises of police power in the land use context" may *not* impair a vested right: "Davidson had the right to have his building permit application

processed *without consideration of any such later-enacted provisions*." *Id.* at 649-50 (emphasis added). The County wholly fails to show that failing to apply Chapter 25B to eliminate Sable's vested rights would "create a condition dangerous to the public health or safety." And were the County to make that argument, it would create a disputed question of fact, unsuitable for resolution at the motion to dismiss stage.

**3. Any Safety Regulation Would Be Preempted.**

The County's failure to demonstrate the safety exception is unsurprising, given the County has also argued, through two rounds of briefing about the scope of PSA preemption, that "Chapter 25B is *not* a safety standard[.]" County's Second MTD, ECF 90-1, at 25. If Chapter 25B is not regulating the Facilities' safety, then it does not fit within the "compelling public necessity" exception, and the County has no right to impair the vested right to operate the Facilities. However, if Chapter 25B *does* regulate the safety of the Facilities, then it is preempted by the PSA's comprehensive pipeline-safety regulatory scheme. *See* Petitioners' Opp. to County's Second MTD, ECF 95, at 15-21; *see generally* Petitioners' Opp. to Intervenors' Second MTD, ECF 96. The County does not, and cannot, reconcile its contradictory positions.

**4. The County's Attempt to Distinguish Sable's Cases Again Concedes that the County is Impairing Vested Rights.**

The County attempts to distinguish the cases cited in the Motion on several grounds, but, as with the County's other arguments, the County fundamentally misunderstands the nature of a vested right.

First, the County argues that Sable's cases are "inapposite because they involve *termination* of a vested conditional use permit," whereas here the County has not *terminated* the FDPs but instead has only *prohibited* Sable from holding them. Opp. at 8-9 (discussing *Malibu Mountains Recreation*, *Goat Hill Tavern v. City of Costa Mesa*, 6 Cal. App. 4th 1519 (1992), and *Pardee Constr. Co. v. Cal. Coastal Comm'n*, 95 Cal. App. 3d 471 (1979)) (emphasis added). But a vested right

is not conditioned upon how the County construes its actions but instead is "a property right . . . rooted in the Constitution." *Pardee*, 95 Cal. App. 3d at 479. The FDPs "***run[] with the land***," Order at 7 (emphasis added). Sable acquired the Constitutional property right to operate the Facilities pursuant to the FDP's terms ***upon purchasing the Facilities with which the FDPs run***. It was not up to the County to grant or deny the FDPs to Sable because the FDPs were already vested and had become a property right that runs with the Facilities themselves. In denying Sable the right to the FDPs, the County denied the FDPs to Sable, something that—regardless of semantics—it cannot lawfully do. *Malibu Mountains*, 67 Cal. App. 4th at 370.[5]

Second, the County states that "[t]o the extent Sable is asserting the County should have granted its application under Chapter 25B, its unilateral expectation is not sufficient to *create* a vested property interest cognizable under the Takings Clause" because "[t]he denial of an application for a permit or license does not create a vested right." Opp. at 9-10 (emphasis added). But Sable does not allege the transfer denials *created* its vested rights. Sable's vested rights were *created* thirty years ago when its predecessor owners acquired and relied on the FDPs. FAC ¶¶ 46-49, 80; *see also generally* Mot. at 9-14; Order at 7. These vested rights transferred intact through each subsequent purchaser and could not have been impaired by Chapter 25B, unless Chapter 25B, as applied to these rights, met the extraordinary

---

[5] The County also attempts to distinguish *Anza Parking Corp. v. City of Burlingame*, 195 Cal. App. 3d 855 (1987), on the grounds that "Chapter 25B is a broadly applicable ordinance, not a permit condition, and it does not bar the transfer of permits, it proscribes a process for amending oil and gas permits to change the owner, operator, or guarantor." Opp. at 10. But Sable's takings claim rests on an as-applied challenge, and as applied, the County's new interpretation of Chapter 25B exists to prohibit the transfer of the FDPs to Sable, the only FDP transfer denial in Chapter 25B's 25-year history. *See* SAC ¶ 57. Sable's well-pleaded claim is that the County *does* effectively eliminate its vested rights in the FDPs. The County may not dispute these well-pleaded facts in a motion to dismiss posture, from which this motion arises.

requirements necessary to impair vested rights, which as explained *supra* pp. 6-7, it does not. The vesting process does not start anew each time the properties are sold; to hold otherwise would allow subsequent enactments to chip away or even destroy vested rights—something the law does not allow. *Malibu Mountains*, 67 Cal. App. 4th at 370.

Sable's well-pleaded facts, taken as true, establish that it had the right to acquire the FDPs "without consideration" of the later-enacted Chapter 25B. *Id.* Because the rights vested at the time the FDPs were first relied upon, they were not "subject to Chapter 25B," as the County claims, and thus Sable has pleaded a reasonable, investment-backed expectation in their transfer.

## III. CONCLUSION

Accordingly, Sable respectfully requests that the Court amend its Order, reversing its holding that the FDPs are not vested entitlements as to Sable and reversing the order dismissing Sable's Takings Clause claims with prejudice.

Dated: September 25, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/*Jessica Stebbins Bina*

Jessica Stebbins Bina
*Jessica.stebbinsbina@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Tel.: (424) 653-5500
Fax: (424) 653-5501

*Attorneys for Plaintiffs and Petitioners Sable Offshore Corp., Pacific Pipeline Company, and Pacific Offshore Pipeline Company*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Petitioners Sable Offshore Corp., Pacific Pipeline Company, and Pacific Offshore Pipeline Company, certifies that this brief contains 3,326 words, which complies with the word limit of L.R. 11-6.1.

Dated: September 25, 2026 /s/*Jessica Stebbins Bina*
Jessica Stebbins Bina